UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAY BRADSHAW,

                                        Plaintiff,

                                                            9:19-CV-428
v.                                                          (BKS/TWD)

N. LOCKE, *et al*.,

                                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

JAY BRADSHAW
Plaintiff, *pro se*
08-A-3654
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. LETITIA JAMES                      ERIK BOULE PINSONNAULT, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendant
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

Jay Bradshaw ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983,

regarding the alleged violation of his constitutional rights.  (Dkt. No. 1.)  The Honorable Brenda

K. Sannes, United States District Judge, reviewed the Complaint in accordance with 28 U.S.C.

§ 1915, and found the following claims survived initial review: (1) Plaintiff's First Amendment

retaliation claim against Fletcher; (2) his Eighth Amendment excessive force and failure-to-

intervene claims against Welch and Gallagher; and (3) his Eighth Amendment failure-to-protect claims against Locke, C.O. John Doe #1, C.O. John Doe #2, C.O. John Doe #3, C.O. John Doe #4, C.O. John Doe #5, C.O. John Doe #6, Lincoln, Fletcher, Sergeant John Doe #1, Sergeant John Doe #3, Trombley, St. Mary, Healy, Jeffries, Welch, and Woodruff.  (Dkt. No. 8.) Defendants now move for summary judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 29.)  Defendants' motion also asserts several of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  *Id.* Plaintiff responded in opposition to the motion, Defendants replied, Plaintiff filed a sur-reply, and Defendants filed a response to the sur-reply.  (Dkt. Nos. 32, 33, 34, 36.)  After this motion was fully briefed, Defendants filed an additional motion to revoke Plaintiff's *in forma pauperis* ("IFP") status and conditionally dismiss his complaint.  (Dkt. No. 38.)  This motion is now fully briefed.  (Dkt Nos. 40, 41, 42.)

For the reasons explained below, the Court recommends granting Defendants' motion for summary judgment and granting in part and denying in part Defendants' Rule 12(b)(6) motion. Finally, the Court recommends denying Defendants' motion to revoke Plaintiff's IFP status.

## I.    BACKGROUND

Plaintiff's claims center around eight separate incidents that occurred while he was incarcerated at Upstate Correctional Facility ("Upstate").  The following facts are set forth as alleged in Plaintiff's complaint and generally adopted from the District Court's initial review. (Dkt. No. 8.)

### A.    Incident 1

On September 28, 2018, at approximately 5:30 p.m., Corrections Officer N. Locke ("Locke") and Corrections Officer John Doe #1 ("C.O. John Doe #1") placed "Inmate J[,]" who had just attacked another inmate in a double-bunk cell, in a cell with Plaintiff.  (Dkt. No. 1 at 2.) Locke and John Doe #1 then "remain[ed] in front of the cell for about five (5) minutes[.]"  *Id*. Corrections Sergeant John Doe #1 ("Sergeant John Doe #1") and Deputy Superintendent for Security P. Woodruff ("Woodruff") approved Inmate J's placement in a double-bunk cell with Plaintiff even though they knew Inmate J was a member of the "Patrias," a Dominican gang, and Plaintiff had been "labeled a snitch by the Patrias[.]"  *Id*. at 3.

While in the cell with Plaintiff, Inmate J stated Locke told him, "You can get him[,]" in reference to Plaintiff.  *Id*. at 2.  "Inmates in the ajoining [sic] cells also urged Inmate J to attack plaintiff[,]" and referred to Plaintiff as a "snitch" and a "rapo[.]"  *Id*.  At approximately 6 p.m., Inmate J stopped Corrections Officer Lincoln ("Lincoln") during his round and stated, "I do not want to remain in the cell with [Plaintiff] and I want to see the sergeant to be moved, or I will attack him . . . ."  *Id*.  Lincoln responded, "Do what you want to do."  *Id*.

At approximately 6:30 p.m., Inmate J stopped Lincoln again during his round and stated, "if I am not moved or do not see a sergeant by your next round I am going to beat him . . . up." *Id*.  Defendant Lincoln responded, "Do what you have to do[,]" and walked away.  *Id*.  At approximately 7 p.m., Inmate J stopped Lincoln once again and stated, "Where is the sergeant[?] You not moving me[?]"  *Id*.  Inmate J then proceeded to attack Plaintiff.  *Id*.

### B.    Incident 2

On October 2, 2018, Corrections Sergeant Fletcher ("Fletcher") "directed several officers to forcefully bring Inmate Burton in the cell with Plaintiff."  *Id*. at 3.  Fletcher and Woodruff

approved Inmate Burton's placement in a cell with Plaintiff even though they knew that Inmate

Burton was a member of the "Bloods" gang and Plaintiff "was labeled a snitch by the Bloods[.]"

*Id.* at 4.

"While in the cell, Inmate Burton made repeated threats to [] Fletcher (and officers) that

he will 'snap plaintiff's neck,'" and further assault Plaintiff once his (Inmate Burton's) arm

healed. *Id.* Fletcher responded, "I know," then "laughed as he walked away." *Id.* Inmates in

the adjoining cells also urged Inmate Burton to attack Plaintiff. *Id.*

On October 5, 2018, between the hours of 2 a.m. and 8 a.m., Inmate Burton "repeatedly

attacked plaintiff." *Id.* at 3. Defendant Corrections Officer John Doe #2 ("C.O. John Doe #2"),

who was "the tour 10-6 gallery officer, knew Plaintiff was attacked but failed to intervene or . . .

report the incident." *Id.* Defendant Corrections Officer John Doe #3 ("C.O. John Doe #3") and

defendant Corrections Officer John Doe #4 ("C.O. John Doe #4"), who were the mail officers

that collected mail at approximately 6 a.m., also "knew that plaintiff was attacked but failed to

intervene, or . . . report the incident." *Id.* C.O. John Doe #3 and Defendant Corrections Officer

John Doe #5 ("C.O. John Doe #5") served Plaintiff food at approximately 7:30 a.m., and

"collected the food trays and gave out supplies at about 8 a.m. *Id.* Through these activities,

these officials "knew that plaintiff was attacked but failed to intervene, or . . . report the

incident." *Id.*

At approximately 9:30 a.m., Plaintiff was removed from his cell for a "legal call." *Id.* at

4. "Plaintiff informed his attorney that he had been repeatedly attacked by Inmate Burton," and

that officials failed to intervene, report the incident, or seek medical assistance for him. *Id.*

Thereafter, Plaintiff's attorney called the facility, and he was subsequently seen by medical for

his injuries. *Id.*

### C.    Incident 3

On October 9, 2018, at approximately 8 a.m., Fletcher "threatened to have plaintiff assaulted by his officers, and Inmate J, . . . by putting plaintiff with him in [a] cell." *Id.* Plaintiff refused to exit his cell without speaking to a more senior corrections official. *Id.* Thereafter, a corrections lieutenant arrived at Plaintiff's cell, and he informed this official about Fletcher's threat. *Id.* The lieutenant assured Plaintiff of his safety and relocated him to a different cell. *Id.* However, the exchange with defendant Fletcher placed Plaintiff "in extreme fear for his safety." *Id.* at 5.

### D.    Incident 4

On the morning of January 8, 2019, Plaintiff was in a double-bunk cell with Inmate Holbdy, who was not gang affiliated. *Id.* At approximately 7:30 a.m., Fletcher encountered Plaintiff and stated, "I am giving you a new bunky, . . . he will handle you." *Id.*

On January 9, 2019, "at the direction of [ ] Fletcher, defendant [Corrections Officer] Trombley [("Trombley")] and another officer took plaintiff out of [his] cell [ ] under the pretense of a cell search[.]" *Id.* When Plaintiff was returned to his cell, Inmate Wright was present in place of Inmate Holbdy. *Id.* Fletcher and Woodruff approved Inmate Wright's placement in a cell with Plaintiff even though they knew Inmate Wright was a member of the "Bloods" gang and Plaintiff "was labeled a snitch by the Bloods[.]" *Id.* at 6.

Inmate Wright informed Plaintiff he "works for defendant Fletcher to get extra trays by beating up any bunkies he wants and do[es] not get in trouble for it." *Id.* at 5. Thereafter, Inmate Wright was given an extra lunch tray by Trombley. *Id.* Plaintiff informed Corrections Lieutenant Eddy (not a party) about Fletcher's actions, including that he encouraged Inmate

Wright to attack him. *Id*. Lieutenant Eddy mocked Plaintiff and walked away from his cell with Fletcher. *Id*.

On January 10, 2019, between 9 a.m. and 11 a.m., Inmate Wright repeatedly attacked Plaintiff and "threatened to cut him with a scalpel" if Plaintiff did not have oral sex with him. *Id*. Plaintiff complied with Inmate Wright's demand. *Id*. Plaintiff notified Corrections Officer Healy ("Healy"), Corrections Officer Jeffries ("Jeffries"), Corrections Officer John Doe #6 ("C.O. John Doe #6"), and Trombley about the assaults when they made rounds between 9 a.m. and 11 a.m., yet each official failed to intervene. *Id*.

At 11 a.m., when lunch was served, Plaintiff prevented the feeding slot to his cell from closing because Trombley and defendant Corrections Officer R. St. Mary ("St. Mary") were ignoring his injuries and requests for medical treatment and a meeting with "the sergeant." *Id*. at 6. St. Mary "report[ed] to the sergeant that plaintiff refuse[d] to close the slot" without mentioning his injuries or the attack. *Id*.

Plaintiff was subsequently taken to medical and then referred to an outside hospital for further evaluation. *Id*. At the hospital, Plaintiff informed the doctor who initially examined him about the attack, and the doctor "made [Plaintiff's] complaint known." *Id*.

### E.     Incident 5

On February 21, 2019, Woodruff advised Fletcher that Plaintiff keeps filing grievances. *Id*. Fletcher approached Plaintiff's cell and asked him whether he wanted to move to a double-bunk cell because he continues to file grievances. *Id*. Plaintiff then stated his belief that Fletcher wanted someone to attack him, and "orchestrated" the "last attacks against [him]." *Id*. Fletcher responded, "This is good talk[.]" *Id*.

On February 25, 2019, "a sergeant informed plaintiff that . . . Fletcher and Woodruff . . . approved him to move [to] a double-bunk cell." *Id*. at 7. Plaintiff requested protective custody due to fear for his safety. *Id*. The next day, Fletcher directed Plaintiff to be removed from his cell under the pretense of a cell search. *Id*. Once Plaintiff was out of his cell, Fletcher "order[ed] the officers to use force to compel Plaintiff into a double-bunk cell." *Id*. Plaintiff again requested protective custody out of fear for his safety, but Fletcher denied the request, then stated, "Don't worry, your bunky is over 200 pounds." *Id*. Thereafter, Plaintiff entered a cell with "Inmate P," his new cellmate. *Id*.

"Inmate P repeatedly made numerous threats to defendant Fletcher (and officers) that if plaintiff is not moved out [of] the cell he will be attacked." *Id*. Inmate P was in the special housing unit for attacking another inmate with the same criminal charges as Plaintiff. *Id*. Fletcher and Woodruff approved Inmate P's placement in a cell with Plaintiff even though they knew that Inmate P was 240 pounds, and Plaintiff was 160 pounds, which is "against the facility's policy on weight criteria for two inmates in a double-bunk cell[,]" and Plaintiff had sought protective custody. *Id*.

**F.    Incident 6**

On March 5, 2019, Plaintiff was removed from his cell for a "legal call[.]" *Id*. at 8. When he returned to his cell, Inmate P was "replaced with Inmate E[.]" *Id*. Woodruff and Corrections Sergeant John Doe #3 ("Sergeant John Doe #3") approved Inmate E's placement in a cell with Plaintiff even though they knew Inmate E was a member of the "Patrias" gang and Plaintiff had been "labeled a snitch by the Patria and . . . requested protective custody[.]" *Id*. Inmate E immediately asked Plaintiff about his criminal charges and requested to see Plaintiff's "legal papers for his criminal case." *Id*. Inmates in the adjoining cells urged Inmate E to attack

7

Plaintiff, calling him a "snitch" and a "rapo." *Id*. Inmate E then attacked Plaintiff, causing him to suffer a bruise on the left side of his chest and chest pains. *Id*.

### G.    Incident 7

On March 11, 2019, at approximately 8:30 p.m., Fletcher directed officers to bring Inmate Cobb into Plaintiff's cell. *Id*. Fletcher and Woodruff approved Inmate Cobb's placement in a cell with Plaintiff even though they knew Inmate Cobb was a member of the "Bloods" gang and Plaintiff had been "labeled a snitch by the Bloods and . . . requested protective custody[.]" *Id*. at 9.

While in the cell, Inmate Cobb informed plaintiff that "he has agreed to work for defendant Fletcher for extra food and when he get[s] his sneaker[s] from State Shop the ball will start rolling." *Id*. at 8. Two days later, after Inmate Cobb received his property, he "threatened to cut plaintiff with his weapon if plaintiff did not turn around and pull down his pants." *Id*. at 8-9. Inmate Cobb then sexually assaulted Plaintiff in the cell. *Id*. at 9. On March 14, 2019, between 9 a.m. and 10 a.m., Inmate Cobb sexually assaulted Plaintiff for a second time. *Id*. Between noon and 1 p.m., Inmate Cobb sexually assaulted Plaintiff for a third time. *Id*.

### H.    Incident 8

On March 15, 2019, at approximately 9 a.m., Plaintiff was removed from his cell for a disciplinary hearing. *Id*. Plaintiff informed the hearing officer (not a party), as well Gallagher and Corrections Officer Welch ("Welch") he had been sexually assaulted and needed medical treatment. *Id*. at 7. Plaintiff was ignored. *Id*. Instead, Welch "yanked plaintiff to the floor," and he, along with Gallagher, "dragged plaintiff . . . across the floor back to the cell about half a football field [sic] away and banged plaintiff's head . . . on the gate in the process." *Id*.

Thereafter, Plaintiff was brought to medical where he informed a nurse he had been sexually assaulted. *Id*. Plaintiff was subsequently sent to an outside hospital. *Id*.

On March 29, 2019, during Plaintiff's disciplinary hearing, Woodruff stated Plaintiff would "be put back in a double-bunk cell as soon as possible." *Id*. at 10. Plaintiff asserts Woodruff knew he is labeled a snitch among inmates and has been attacked in a double-bunk cell for being a snitch or for the nature of his crime. *Id*. According to Plaintiff, these attacks were "orchestrated" by corrections staff and he had previously requested protective custody. *Id* Plaintiff asserts he risks future assaults if he were to be placed in a double-bunk cell. *Id*.

## I.    Plaintiff's Claims and Defendants' Motions

As noted above, after an initial review, the District Court allowed the following claims to proceed: (1) Plaintiff's First Amendment retaliation claim against Fletcher; (2) his Eighth Amendment excessive force and failure-to-intervene claims against Welch and Gallagher; and (3) his Eighth Amendment failure-to-protect claims against Locke, C.O. John Doe #1, C.O. John Doe #2, C.O. John Doe #3, C.O. John Doe #4, C.O. John Doe #5, C.O. John Doe #6, Lincoln, Fletcher, Sergeant John Doe #1, Sergeant John Doe #3, Trombley, St. Mary, Healy, Jeffries, Welch, and Woodruff.

Defendants now move for summary judgement with respect to Incidents 1, 5, 6, and 8 based on Plaintiff's alleged failure to exhaust his administrative remedies. (Dkt. No. 29-1.) Furthermore, Defendants argue that certain claims related to Incident 3 and 5 are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. *Id*. Finally, Defendants move to revoke Plaintiff's IFP status and conditionally dismiss his complaint. (Dkt. No. 38-1.)

## II.    ANALYSIS

### A.    Motion for Summary Judgement on Exhaustion

#### 1.    *Standard of Review*

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 & n.11 (1986). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will

be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005). To defeat summary judgment, nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (citation omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id*. (citation and quotation marks omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

### 2.    *Exhaustion of Administrative Remedies*

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

In New York State prisons, DOCCS has a well-established three-step inmate grievance program ("IGP").  N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5 (2013).  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence.  *Id*. § 701.5(a).  A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. § 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. § 701.5(c)(3)(ii).

Third, a grievant may appeal to the Central Office Review Committee ("CORC") within seven working days of receipt of the superintendent's written decision.  *Id*. § 701.5(d)(1)(i).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. § 701.5(d)(3)(ii).

Grievances involving claims of excessive force are subject to an expedited procedure.  *Id*. § 701.8.  The superintendent must initiate an in-house investigation by higher ranking supervisory personnel, request an investigation by the inspector general's office, or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved.  *Id*. § 701.8(d).  The superintendent must

12

render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g).

"An inmate transferred to another facility may continue an appeal of any grievance." *Id.* § 701.6(h)(2). Any response to a grievance pending at the time of an inmate's transfer must be mailed directly to that inmate at his new facility or location. *Id.* § 701.6(h)(1). To appeal, the inmate must mail a signed appeal form to the IGP at the facility where the grievance was filed within seven calendar days of receipt. *Id.* § 701.6(h)(2).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is a "next step" in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotations marks and citations omitted)).

13

Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. Whether a plaintiff has exhausted his administrative remedies is a question of law. *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment made in lieu of an answer where inmate failed to exhaust administrative remedies)).

As noted above, Defendants move for summary judgment on claims related to Incidents 1, 5, 6, and 8. To that end, Defendants have submitted sworn declarations from Rachel Seguin, the Assistant Director of the IGP and Sherri Debyah, the Supervisor of the IGP at Upstate. (Dkt. Nos. 29-2, 29-3.) These declarations propound that Plaintiff did not file a grievance related to Incidents 1, 5, and 6 and that Plaintiff did not appeal the Superintendent's decision with respect to Incident 8. (Dkt. No. 29-2 at ¶¶ 33-36; Dkt. No. 29-3 at ¶ 28.)

Plaintiff, in response, argues he filed grievances related to Incidents 1, 5, and 6 but that Ms. Debyah failed to accept these grievances. (Dkt. No. 32 at 5, 6.) Specifically, Plaintiff asserts his original attempt to file a grievance related to Incident 1 was returned to him because it was on "carbon-copy" paper. *Id*. at 15. He thereafter asserts he re-wrote the grievance and resubmitted it for consideration. *Id*. at 14-16. With respect to Incidents 5 and 6, Plaintiff states he filed grievances but did not include any further evidence. Moreover, Plaintiff asserts he appealed the grievance related to Incident 8 on June 29, 2019, and included a copy of the appeal statement. *Id*. at 20.

14

Given the record and considering the evidence in light most favorable to Plaintiff, the Court recommends finding Defendants are entitled to summary judgment with respect to Incidents 1, 5, 6, and 8 on exhaustion grounds.

First, Defendants have presented evidence Plaintiff never successfully filed a grievance related to Incidents 1, 5, and 6. (Dkt. No. 29-4 at ¶¶ 11-14.) Plaintiff, in response states he filed grievances regarding those incidents but never received a response, however, his self-serving statements are insufficient to overcome the evidence Defendants have presented relative to exhaustion. *See Khudan v. Lee*, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (holding inmate's testimony that he filed grievances was not enough to create issue of fact regarding exhaustion); *Nunez v. Goord*, 172 F. Supp. 2d 417, 428–29 (S.D.N.Y. 2001) (inmate's unsupported claims that his grievances were lost at the Grievance Committee Office or destroyed by officers thereby rendering his attempts to grieve futile, fails to excuse inmate from fully grieving remedies). Accordingly, Defendants have "adequately supported the affirmative defense of failure to exhaust." *See, e.g., Bennett v. Onua*, No. 09-cv-7227 (SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that defendants discharged their initial burden on summary judgment by producing affidavits that a search of prison records indicated that no grievances were ever filed).

The Court recognizes Plaintiff did submit some evidence related to his attempts to grieve Incident 1, specifically a letter ostensibly re-submitting his grievance after it was originally rejected. (Dkt. No. 32 at 16.) However, even if he sent a re-written grievance to the IGP, he still failed to complete the grievance process. It is well-settled that, where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. *See Khudan v. Lee*, No. 12-CV-8147, 2015 WL

15

5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response to his filed grievance). Thus, if Plaintiff suspected his grievance related to Incident 1 was discarded or ignored, he must still have appealed despite the lack of response. *See Chiarappa v. Meyers*, No. 09-CV-607, 2013 WL 6328478, at *5 (W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process.").

Plaintiff does not suggest, and the record does not demonstrate, that Plaintiff appealed the non-response to his grievance related to Incidents 1, 5, and 6. Accordingly, because Plaintiff failed to appeal the alleged non-response to the next level, he cannot be excused from the grievance process. *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations . . . , if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.'") (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) (2015)). The Court therefore recommends dismissing any claims related to Incidents 1, 5, and 6 on exhaustion grounds.

The inquiry is different with respect to Incident 8, but the result is the same. Here, in response to an affidavit from Ms. Seguin stating unequivocally that Plaintiff did not appeal his grievance to CORC, Plaintiff has presented a signed copy of his purported appeal to CORC on June 29, 2019. (Dkt. No. 32 at 20.) However, conclusory allegations that an inmate appealed the superintendent's grievance denial to CORC are insufficient to withstand a motion for summary judgment. *See Gibbs v. Gadway*, 19-CV-0281, 2019 WL 5191506, at *3 (N.D.N.Y.

16

Oct. 15, 2019) (recommending dismissal based on the plaintiff's failure to exhaust his administrative remedies where the plaintiff made "a purely conclusory allegation that he appealed the grievance denial to CORC."); *Gough v. Morris*, 16-CV-1107, 2018 WL 7199494, at *3 (N.D.N.Y. Dec. 14, 2018) (recommending dismissal based on the plaintiff's failure to exhaust his administrative remedies where he testified that he appealed the superintendent's response to CORC but there was no evidence in the record that (a) the grievance or the superintendent's response were appealed to CORC and, (b) despite not receiving a response from CORC, the plaintiff testified that he did not write to CORC to follow-up); *Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016) ("vague and conclusory allegations . . . [regarding] grievances . . . do not, in light of the documentation Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies."). Here, though Plaintiff has presented a putative appeal statement, he does describe how he submitted the appeal and whether he ever followed up to make sure CORC received his appeal. In the face of Ms. Seguin's declaration noting CORC did not receive Plaintiff's appeal, his conclusory allegations to the contrary do not create a question of fact.

Moreover, as Defendants argue, even if the Court were to credit Plaintiff's allegation that he sent an appeal to CORC, his claims would still have to be dismissed because he filed his lawsuit *before* he supposedly appealed. *See Smith v. Knee*, No. 08 CIV. 11079 SAS, 2011 WL 1483924, at *3 (S.D.N.Y. Apr. 18, 2011) ("Because the plain language of section 1997e(a) states 'no action shall be brought,' an inmate must have exhausted his claims at the time the initial complaint was filed as "[s]ubsequent exhaustion after suit is filed . . . is insufficient."); *Burgos v. Craig*, 307 F. App'x. 469, 470 (2d Cir. 2008) ("[Exhaustion] must be completed before suit is

filed, and completing the exhaustion requirements only after filing suit is insufficient."). Plaintiff's complaint was filed on April 10, 2019, and his purported appeal is dated more than two months later on June 29, 2019. Therefore, Plaintiff's failure to exhaust his administrative remedies prior to commencing this lawsuit justifies dismissal.

Based upon the foregoing, the Court finds Plaintiff did not exhaust his administrative remedies as the PLRA requires and recommends granting Defendants' motion for summary judgement.

### B.    Motion to Dismiss

#### 1.    Standard of Review

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion tests the legal sufficiency of the complaint and whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal citation and punctuation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears there are not "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. While Rule

8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  In other words, a complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id.*

### 2.    *Failure to Protect Claim Against Welch*

Defendants seek clarification on what claims against Welch survived initial review.  (Dkt. No. 29-1 at 15-16.)  The Court agrees with Defendants that the District Court dismissed the

failure to protect claims against Welch relative to Incident 8.  (Dkt. No. 8 at 23-24.)
Accordingly, if the District Court does not accept this Court's recommendation to dismiss all
claims related to Incident 8 for exhaustion, the Court recommends dismissing the failure to
protect claim against Welch related to Incident 8.

### 3.    *Claims Related to Incident 3*

Defendants argue Plaintiff's claims related to Incident 3 should be dismissed because
Plaintiff only asserts verbal threats and harassment.  (Dkt. No. 29-1 at 16.)  Though Plaintiff
failed to address these allegations in his response, he did so in his sur-reply.  (Dkt. No. 34.)
Specifically, Plaintiff argues Fletcher threatened Plaintiff that other inmates would attack him,
and his threats were particularly serious given Plaintiff's allegation that Fletcher previously
orchestrated an attack against Plaintiff.

The remaining claim relative to Incident 3 is a failure to protect claim.  Prison officials
may be held liable under Section 1983 for failing to protect an inmate from conditions posing a
substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  To establish
a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a
substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk
and the inmate's safety.  *Id*.  Deliberate indifference exists when "the official knows of and
disregards an excessive risk to inmate health or safety; the official must both be aware of facts
from which the inference could be drawn that a substantial risk of serious harm exists, and he
must also draw the inference."  *Id*. at 837.  "Neither mere negligence nor a prison guard's mere
failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim."
*Sawyer v. New York State Dept. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7
(W.D.N.Y. June 30, 2015) (*citing Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W .D.N.Y.

2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.  Mere negligence (for example if a prison guard should know of a risk but does not) is not enough . . . .").

Here, the Court finds the allegations in the complaint are insufficient to allege a failure to protect claim.  Though Plaintiff alleges Fletcher was aware placing Plaintiff into a double-bunk cell would pose a substantial threat—Plaintiff does not allege Fletcher actually *placed* Plaintiff into a double-bunk cell.  In other words, Fletcher's mere threats to *place* Plaintiff into a double-bunk cell does not establish that he was incarcerated under "conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see, e.g.*, *Coronado v. Goord*, No. 99 CIV. 1674 (RWS), 2000 WL 1372834, at *3 (S.D.N.Y. Sept. 25, 2000) (finding inmate satisfied objective prong by alleging he suffered stab wounds "serious enough to justify transporting [plaintiff] to an off-site hospital"); *King v. Dep't of Corr.*, No. 95 Civ. 3057 (JGK), 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) (finding inmate satisfied objective prong where he received at the hands of another inmate "a cut to his face, neck, and shoulder requiring 12-13 stitches"); *Warren v. Goord*, 476 F. Supp. 2d 407, 410-11 (S.D.N.Y. 2007) (finding inmate satisfied objective prong where he was attacked by other inmates, resulting in a "wound requiring twelve stitches across his left cheek"); *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (finding inmate "easily" satisfied objective prong where he sustained a deep cut to the face requiring sixty stitches and where he was "suddenly and unexpectedly slashed with a sharp instrument possessed by a fellow inmate").

Accordingly, the Court recommends granting Defendants' motion with respect to Incident 3 and dismissing this failure to protect claim against Fletcher.

### 4. Failure to Protect and First Amendment Retaliation Claims Related to Incident 5

Defendants argue Plaintiff failed to state failure to protect claim against Fletcher and Woodruff relative to this incident because Plaintiff—though placed into a cell with another inmate—was not assaulted.  (Dkt. No. 29-1 at 17-18.)  Plaintiff responded in his sur-reply and argued his placement in a cell with an individual (Inmate P) who weighed 240 pounds posed a substantial threat to Plaintiff.  Moreover, in his complaint, Plaintiff alleges "Inmate P repeatedly made numerous threats to defendant Fletcher (and officers) that if plaintiff is not moved out [of] the cell he will be attacked."  (Dkt. No. 1 at 7.)  Plaintiff further alleged Inmate P was in the special housing unit for attacking another inmate with the same criminal charges as Plaintiff.  *Id.* According to Plaintiff, Fletcher and Woodruff approved Inmate P's placement in a cell with Plaintiff even though they knew that Inmate P was 240 pounds, and Plaintiff was 160 pounds, which is "against the facility's policy on weight criteria for two inmates in a double-bunk cell[,]" and Plaintiff had sought protective custody.  *Id.*

Here, unlike the allegations related to Incident 3 discussed above, Plaintiff's placement in a double-bunk cell with a threatening individual who had a history of violence against other inmates and was substantially larger than Plaintiff constitutes a sufficiently objective dangerous condition.  Accordingly, the Court recommends denying Defendants' motion to dismiss Plaintiff's failure to protect claims against Fletcher and Woodruff related to Incident 5.

Additionally, Defendants argue Plaintiff cannot state a First Amendment retaliation claim against Fletcher because assignment to a double-bunk cell is not an adverse action.  (Dkt. No. 29-1 at 18.)  "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the

following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (*quoting Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)), *overruled on other grounds*, (*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  "As a general interpretive matter, the Second Circuit has admonished district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed act." *Burton v. Lynch*, 664 F. Supp. 2d 349, 366 (S.D.N.Y. 2009) (internal quotation and citations omitted).  Therefore, "[a] complaint of retaliation that is 'wholly conclusory' can be dismissed on the pleadings alone." *Graham*, 89 F.3d at 79 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

As noted above, Defendants argue Plaintiff failed to allege he suffered adverse action in retaliation for filing grievances.  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation and citation omitted).  "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Id*.

Here, Plaintiff asserts Fletcher placed him in a double-bunk cell with an inmate Fletcher knew posed a serious threat to Plaintiff.  (Dkt. No. 34 at 2.)  Framed in this way, the Court finds, at this early stage, such an action could constitute adverse action.  *See Bowens v. Pollock*, No. 06-CV-0457A SR, 2010 WL 5589350, at *11 (W.D.N.Y. Oct. 12, 2010), *report and recommendation adopted*, No. 06-CV-0457A SR, 2011 WL 146836 (W.D.N.Y. Jan. 18, 2011)

(allegation that inmate was relocated to double-bunk cell is sufficient adverse action). Accordingly, if the District Court does not accept this Court's recommendation to dismiss claims related to Incident 5 for failure to exhaust, it recommends denying Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim.

### 5. *Injunctive Relief*

Defendants argue Plaintiff's transfer from Upstate renders his request for injunctive relief moot. (Dkt. No. 29-1 at 19-20.) The District Court already effectively decided this issue when it denied Plaintiff's motion for a preliminary injunction. (Dkt. No. 23.) To that end, the District Court held Plaintiff's transfer rendered his claim for injunctive relief moot. *See id*. at 4 ("In light of plaintiff's transfer, and the absence of any credible evidence that he is likely to continue suffering the same harm that was the subject of his existing claims despite his transfer, his request for injunctive relief is moot." (citations omitted)). Accordingly, the Court recommends dismissing Plaintiff's claim for injunctive relief.

### C. Motion to Revoke Plaintiff's IFP Status

The "three strikes" section of the PLRA prohibits the filing of an IFP action when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g).[1] The purpose of section 1915(g) is to "stem the tide of egregiously meritless lawsuits" by "forcing prisoners to go through the same thought process non-inmates go through before filing a suit, *i.e.* is filing this suit worth the costs?" *Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (citations omitted).

Section 1915(g) provides that:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [IFP] if the prisoner has,

---

[1] Plaintiff has accumulated at least three strikes. (Dkt. No. 8 at 5.)

> on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

An action may be dismissed pursuant to section 1915(g), even if the court originally granted plaintiff IFP status. *See, e.g., Gamble v. Maynard*, 9:06–CV–1543 (DNH/DEP), 2008 WL 150364, at *5 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that IFP status was improvidently granted); *Luevano v. Clinton*, 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at *3 (N.D.N.Y. July 1, 2010).

If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action IFP unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis*, 293 F.3d 559, 562–63 (2d Cir. 2002).

In considering whether a plaintiff has sufficiently demonstrated he is entitled to *in forma pauperis* status pursuant to the "imminent danger" exception to the three-strikes rule, the Court is guided by the Second Circuit's decision in *Chavis v. Chappius*, 618 F.3d 162 (2d Cir. 2010). In *Chavis*, the court found that

> Chavis[ ] . . . stated that one of the officers who had allegedly beaten him on July 17 had 'verbally threatend[ed] to assault [him] again,' and that another of those officers had visited his cell 'for intimidation reasons.' This by itself would appear to be sufficient to allege imminent danger of serious physical injury. An allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is *clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception*.

618 F.3d at 170 (emphasis added). The court also stated that the feared physical injury must be "serious," and that the court should not make an "overly detailed inquiry into whether the allegations qualify for the exception, because [section] 1915(g) concerns only a threshold procedural question," while other portions of section 1915 deal with the early screening of meritless suits. *Id*. at 169–70 (quoting *Andrews, v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotations and other citation omitted).[2]

As Judge Sannes noted in her initial order granting Plaintiff IFP status, Plaintiff asserts throughout his complaint that he has been the victim of several inmate attacks since September 2018, with the most recent attack allegedly occurring on March 14, 2019. (Dkt No. 1 at 2-9.) Plaintiff alleges the attacks have been "orchestrated" by various corrections officials named as defendants, who have repeatedly disregarded substantial risks of harm to Plaintiff. *Id*. Plaintiff further alleged he was at risk of continued harm if he was placed in a double-bunk cell. Moreover, Woodruff informed Plaintiff on March 29, 2019–seven days before he signed the complaint–that "he will be put back in a double-bunk cell as soon as possible." *Id*. at 10.

The District Court, relying especially on Plaintiff's allegation that Woodruff threatened Plaintiff that he would be returned to a double-bunk cell after his disciplinary hearing, found he had alleged enough facts to qualify for the imminent danger exception. *Id*. Defendants now move to revoke Plaintiff's status and have submitted a memorandum of law along with sworn declarations from Defendant Woodruff and non-party nurse George Waterson. (Dkt. Nos. 38-1, 38-2, 38-3.)

---

[2] The court in *Chavis* also held that if plaintiff adequately alleges imminent danger on some claims, the action may proceed on any other claims contained in the same complaint, even though they may lack a nexus to imminent danger. 618 F.3d at 171

In his declaration, Woodruff stated Plaintiff was moved into a single cell on March 15, 2019, because he had recently been in an altercation with another inmate. (Dkt. No. 38-2 at ¶ 9.) Further, Woodruff asserted, on the date Plaintiff signed the complaint (April 5, 2019), he had been in a single cell for 21 days. *Id*. at ¶ 12. According to Woodruff, Plaintiff remained in a single cell until he was transferred to another facility on May 23, 2019. *Id*.

Mr. Waterson stated he saw Plaintiff on three occasions when he was housed in a single cell on March 21, 2019, March 22, 2019, and March 30, 2019. (Dkt. No. 38-3 at ¶¶ 10-12.) Mr. Waterson asserted Plaintiff had no complaints, was in good health, and was not in danger of being assaulted. *Id*.

Given these factual assertions, Defendants argue Plaintiff could not have been in imminent danger at the time he filed and signed his complaint. Rather, they assert Plaintiff's complaint focuses on past harm and the risk of any future harm is speculative and irrelevant given his transfer to another facility. (Dkt. No. 38-1.)

Here, the Court finds Defendants' arguments do not adequately address the basis for District Court's original finding regarding imminent danger. (Dkt. No. 8 at 6-7.) Specifically, Plaintiff alleged he would be attacked again if he was placed back in a double-bunk cell and that Woodruff told him he would be placed back in a double bunk as soon as possible just a few days before he filed his complaint. (Dkt. No. 1 at 10.) Thus, Plaintiff's apparent good health and safety when he was single-bunked is immaterial because the "imminent danger" relevant in this case involves an ongoing pattern of allegations that certain corrections officers facilitated inmate assaults against Plaintiff through his double-bunking assignments. *See Chavis*, 618 F.3d at 170 (holding that, "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that

27

beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger

exception."). Plaintiff's unrefuted allegation that—at the time he filed his complaint—he

anticipated being placed back into a double-bunk cell adequately alleges imminent danger.

Moreover, Plaintiff's eventual transfer to another facility is also irrelevant as it occurred

nearly two months after he filed his complaint and there is no reason to suspect his transfer was

already planned or known to him at the time he filed his complaint. *See e.g., Dillon v. Adams*,

No. 915CV106BKSATB, 2016 WL 1426305, at \*4 (N.D.N.Y. Mar. 10, 2016), *report and*

*recommendation adopted*, No. 915CV0106BKSATB, 2016 WL 1435693 (N.D.N.Y. Apr. 11,

2016) (holding a future facility transfer did not moot an inmate's claim of imminent danger).

While the District Court stated that her finding regarding imminent danger was

"preliminary," Defendants have not presented anything in their motion that would change that

finding. Thus, this Court recommends denying Defendants' motion to revoke Plaintiff's IFP

status and dismiss this action.

## III.    CONCLUSION

For the above stated reasons, the Court finds Plaintiff's claims related to Incidents 1, 5, 6,

and 8 were not exhausted as the PLRA requires and recommends granting Defendants' motion

for summary judgment. (Dkt. No. 29.) Further, the Court recommends granting in part and

denying in part Defendants' Rule 12(b)(6) motion. *Id*. Finally, the Court recommends denying

Defendants' motion to revoke Plaintiff's IFP status. Below is a table summarizing this Court's

recommendations related to each incident:

| Incident # | Claims Surviving After Initial Review | This Court's Recommendation | Remaining Claims |
|---|---|---|---|
| Incident 1 | Failure to protect against: Locke, C.O. John Doe #1, Sergeant John Doe #1, Lincoln, and Woodruff. | The Court recommends dismissing these claims for failure to exhaust. | None. |
| Incident 2 | Failure to protect against: Fletcher, C.O. John Doe #2, C.O. John Doe #3, C.O. John Doe #4, C.O. John Doe #5, and Woodruff. | Defendants did not move on these claims. | All claims. |
| Incident 3 | Failure to protect against Fletcher. | The Court recommends dismissing this claim for failure to state a claim. | None. |
| Incident 4 | Failure to protect against: Fletcher, Trombley, Woodruff, Healy, Jeffries, C.O. John Doe #6, St. Mary. | Defendants did not move on these claims. | All claims. |
| Incident 5 | Failure to protect against Fletcher and Woodruff and retaliation against Fletcher. | The Court recommends dismissing these claims for failure to exhaust. If the District Court rejects that recommendation, the Court further recommends denying Defendants' motion to dismiss these claims. | None. |
| Incident 6 | Failure to protect against Woodruff and Sergeant John Doe #3. | The Court recommends dismissing these claims for failure to exhaust. | None. |
| Incident 7 | Failure to protect against Fletcher and Woodruff. | Defendants did not move on these claims. | All claims. |
| Incident 8 | Excessive force, failure to intervene, and failure to protect claims against Welch and Gallagher. | The Court recommends dismissing these claims for failure to exhaust. If the District Court rejects that recommendation, the Court further recommends Plaintiff's failure to protect claims be dismissed for failure to state a claim. | None. |

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 29) be **GRANTED**; and it is further

**RECOMMENDED** that Defendants motion to dismiss for failure to state a claim (Dkt. No. 29) be **DENIED IN PART** and **GRANTED IN PART** as discussed above; and it is further

**RECOMMENDED** that Defendants' motion to revoke Plaintiff's IFP status and conditionally dismiss this action (Dkt. No. 38) be **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 5, 2020
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing Correctional
Facility, 354 Hunter Street, Ossining, NY 10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant Attorney
General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 *1  This is a civil rights action brought by *pro se* plaintiff
Terrell Eleby against three individuals employed by the
New York State Department of Corrections and Community
Supervision ("DOCCS"), one of whom has since been
dismissed from the action, pursuant to 42 U.S.C. § 1983.
In his complaint, plaintiff alleges that two of the defendants
assaulted him in violation of his Eighth Amendment rights,
and the third defendant violated his Fourteenth Amendment
rights by issuing an allegedly false misbehavior report against
him and confining him in the special housing unit ("SHU") at
the prison facility in which he was housed.

Currently pending before the court is a motion brought by
the remaining two defendants seeking the entry of summary
judgment in their favor based upon plaintiff's alleged failure
to exhaust available administrative remedies before filing
suit. For the reasons set forth below, I recommend that the
defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody of the
DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although plaintiff is
now confined elsewhere, at the times relevant to this action he
was housed in the Auburn Correctional Facility ("Auburn")
located in Auburn, New York. *Id.* at 18.

In his complaint, plaintiff alleges that on January 14, 2015, he
was waiting in one of Auburn's hospital dormitory rooms to be
escorted to an outside facility for a medical examination. Dkt.
No. 1 at 4; Dkt. No. 29-2 at 54. At approximately 10:00AM,
defendants Smith and Vevone, both of whom are corrections
officers, arrived at plaintiff's room to escort him on the
medical trip. Dkt. No. 1 at 4. While plaintiff was attempting
to remove his clothes for a mandatory strip search, defendant
Smith "violently and physically attacked [him]." *Id.*; *see also*
Dkt. No. 29-2 at 58. According to plaintiff, both defendants
Smith and Vevone "jumped on [his] back," and defendant
Smith punched him repeatedly in the eye, head, neck, back,
and ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant in the
action, arrived at plaintiff's dorm, physically intervened, and
ordered defendants Smith and Vevone to cease the assault and
leave the room. Dkt. No. 1 at 4-5; Dkt. No. 29-2 at 58-59,
64. As a result of the alleged assault, plaintiff suffered various
injuries, including a bloody and swollen eye, swelling and
redness to his neck, and sore ribs. Dkt. No. 1 at 5; Dkt. No.
29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing him
of violating six prison rules. Dkt. No. 22 at 9; Dkt. No.
29-2 at 72. Following a superintendent's hearing to address
the charges, plaintiff was found guilty on four of the six
counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at 72. As a result
of that finding, plaintiff was sentenced to serve thirty days of
disciplinary SHU confinement, with a corresponding loss of
commissary, package, and telephone privileges. Dkt. No. 22
at 13; Dkt. No. 29-2 at 73-72.

II. PROCEDURAL HISTORY
 *2  Plaintiff commenced this action on or about March 12,
2015, with the filing of a complaint and accompanied by an
application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1,
2. On May 12, 2015, Senior District Judge Thomas J. McAvoy
issued a decision and order granting plaintiff's IFP application
and accepting his complaint for filing, with the exception

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 32 of 164

*Eleby v. Smith*, Not Reported in Fed. Supp. (2017)

of one cause of action.[2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

#### 1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S.

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 33 of 164

*Eleby v. Smith*, Not Reported in Fed. Supp. (2017)

516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal.

*See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, —— Fed.Appx. ——, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can —and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.

*See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 34 of 164

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a

response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at \*9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously

by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g.,* 🔶 *McCoy v. Goord,* 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry,* 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See* 🔶 *Giannullo v. City of N.Y.,* 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." 🔶 *Hayes v. N.Y.C. Dep't of Corrs.,* 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. 🔶 *Hayes,* 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g.,* 🚩 *Goodson v. Silver,* No. 09-CV-0494, 2012 WL 4449937, at \*9 (N.D.N.Y.

Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 986123

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 36 of 164

### Footnotes

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9    In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10   If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                      © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.   6

🚩 KeyCite Yellow Flag - Negative Treatment

Clarified on Denial of Reconsideration by Crichlow v. Fischer, W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,

v.

Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW
|
Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

*1 Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to 🚩 42 U.S.C. § 1983 in the Southern
District of New York on October 16, 2012. (Dkt. 2). Plaintiff
filed an amended complaint seeking relief against 136
Defendants on June 17, 2013. (Dkt. 12). The action was
transferred to this Court on April 28, 2015. (Dkt. 168). The
action was then severed by this Court on February 10, 2017.
(Dkt. 223). Following severance, 35 Defendants (together
"Defendants") remain. (See id. at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'
motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;
Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**

Plaintiff's amended complaint spans 142 pages. (See Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(See Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (See Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (id. at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (Id. at 31; see, e.g., Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries
hip, back, shoulder, head" for "about 68 months." (Id. at 3).
Plaintiff also asserts that he was subjected to a risk of disease

due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at 35).

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

**\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most

favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

## B. Statute of Limitations

Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation doctrine generally applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of*

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 40 of 164

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

*N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while

he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v. Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and

fair hearing he was entitled to." *Bunting v. Fischer*, 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez*, 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

### C. **Failure to Exhaust Administrative Remedies**

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed*, 686 F.Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [ § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee

("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw*, 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " *Dabney v. Pegano*, 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting *Hemphill*, 380 F.3d at 686). However, the third prong of *Hemphill*, relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016). The inquiry which used to be under the third prong of *Hemphill*, is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1). Plaintiff misunderstands the exhaustion requirement. The filing of a grievance is but the first step in exhausting administrative remedies. To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC. Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)).

"Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl*, Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

### D. Plaintiff's Due Process Claims

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

### 1. SHU Confinement

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial

of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra*, 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

**\*7** There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz*, 380 F.3d at 654-55; *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " (quoting *Palmer*, 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt. 177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement

fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

### 2. Grievance Processing

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord*, No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy,* 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer*, 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

### E. Retaliation

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation

for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer,* 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim. (*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

### F. Summary

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

### III. Plaintiff's Motion for Discovery

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 44 of 164

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

### IV. Plaintiff's Motion to Appoint Counsel
As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,*

802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

**\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper,* the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

### V. Plaintiff's Motion for a Stay
Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 45 of 164

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

## VI. Plaintiff's Motion for a Medical Exam

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/ review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care." *Rodriguez v. Conway,* No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII. Plaintiff's Motion for Reconsideration

 **\*10** Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau,* 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd,* 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

## VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ] understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and 26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

## X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 46 of 164

the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see Ceglia v. Zuckerberg,* No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. 2014), *aff'd,* 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11** Defendants' motion is denied without prejudice.

## XI. Plaintiff's Motion for Sanctions

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (*See* Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions. As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2017 WL 920753

## Footnotes

1    Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses

Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under ▢ § 1983.

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4735364
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ramesh KHUDAN, Plaintiff,

v.

Superintendent William LEE, et al., Defendants.

No. 12-cv-8147 (RJS)
|
Signed 09/08/2016

**Attorneys and Law Firms**

Amy L. Bellantoni, The Bellantoni Law Firm, LLP, Scarsdale, NY, for Plaintiff.

Jeb Harben, Office of the Attorney General, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff brings this action against various officers of the New York State Department of Corrections and Community Supervision ("DOCCS") under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights while he was an inmate at Green Haven Correctional Facility ("Green Haven"). Now before the Court is Defendants' motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. For the reasons set forth below, Defendants' motion is granted.

I. BACKGROUND [1]

A. Facts

Plaintiff, a New York State prisoner currently housed at the Franklin Correctional Facility, was formerly incarcerated at Green Haven, a prison administered by the DOCCS. Plaintiff alleges that on October 31, 2009, while he was an inmate at Green Haven, he was "violently attacked and stabbed in the eye" by a fellow inmate in the facility's recreational yard (the "October 31 Incident"). (Counter Stmt. ¶¶ 3, 18, 20-22; *see also* 56.1 Stmt. ¶¶ 1-3.) Plaintiff attributes his injuries to the fact that Defendants Duane Malark and Jeffrey Erns, Corrections Officers at Green Haven, falsely informed members of a gang that he was a sex offender and rapist, and that Defendants Superintendent William Lee, Lieutenant Neal Greene, and Corrections Officers Rory Hamilton, David Deming, Arthur Andrews, Robert Sherman, and P. Allen failed to provide security in the recreational yard and take other security measures that would have prevented the attack. (Counter Stmt. ¶¶ 3-4.) For several days after the attack, Plaintiff was hospitalized at Putnam County Hospital, where he was treated for his injuries. (Counter Stmt. ¶ 12.)

For purposes of this motion, the parties' dispute centers entirely on whether Plaintiff properly exhausted the administrative remedies available to him with respect to the October 31 Incident. Specifically, DOCCS administers the Inmate Grievance Program ("IGP"), which ordinarily requires prisoners to complete a three-step process in order to exhaust administrative remedies. *See* N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5; *see also* Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009) (describing IGP regulations in effect in 2009). [2] At step one, the prisoner is obligated to file a grievance, consisting of, among other things, "a concise, specific description of the problem and the action requested," with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the incident. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a). The IGRC then has sixteen calendar days from receipt of the grievance to informally resolve the issue, and if there is no informal resolution, the IGRC must conduct a hearing within sixteen calendar days of receiving the grievance and issue a written decision within two working days after the hearing concludes. *Id.* § 701.5(b). At step two, a prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility within seven calendar days by completing and signing the appeal section on his IGRC response form and submitting it to the grievance clerk. *Id.* § 701.5(c). The superintendent then has twenty calendar days to respond to the prisoner's appeal. *Id.* Finally, at step three, the prisoner may appeal an adverse decision from the superintendent by submitting a "notice of decision to appeal" form to the Central Officer Review Committee ("CORC") within seven days. [3] *Id.* § 701.5(d). If at any level of review the decisionmaker fails to timely respond to the grievance, the inmate may appeal to the next level. *Id.* § 701.6(g); *see also* Heyliger v. Gebler, 624 Fed.Appx. 780, 782 (2d Cir. 2015). While an inmate may also ask the DOCCS Inspector General to investigate a complaint,

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 49 of 164

Khudan v. Lee, Not Reported in Fed. Supp. (2016)

"such an investigation is not a formal part of the IGP." *Dabney v. Pegano,* 604 Fed.Appx. 1, 3 (2d Cir. 2015).

**\*2** Here, Defendants contend that Plaintiff failed to complete any step of the three-step grievance process, and point to the absence of any records at Green Haven reflecting that Plaintiff ever filed a grievance related to the October 31 Incident. Specifically, Defendants rely on an affidavit from the inmate records coordinator at the facility, Jennifer Hotaling, who attests that a diligent search of Green Haven's records reveals no grievance being filed by Plaintiff in relation to the October 31 Incident, notwithstanding the fact that it is Green Haven's policy to maintain records of all grievances filed within the facility. (Doc. No. 64 ("Hotaling Decl.") ¶ 2.) Significantly, Ms. Hotaling's search did uncover a grievance from Plaintiff in Green Haven's records, filed March 2, 2010, in which Plaintiff made "general complaints about [his] medical care" at the facility and alleged violations of, among other things, the Health Insurance Portability and Accountability Act, but that grievance made no reference to the October 31 Incident. (*Id.* ¶ 2; *see also id.* at 7-12 (enclosing a copy of Plaintiff's grievance regarding medical care at Green Haven)). Defendants also point to the lack of evidence that Plaintiff ever appealed an adverse disposition of his purported grievance at step two or step three. (56.1 Stmt. ¶ 4.) Specifically, Jeffrey Hale, the assistant director of the IGP, attests that, having conducted a diligent search of the CORC's database for records of appeals, he could not locate any grievances relating to the claims presented in this case, even though the CORC maintains computer records of all appeals received from facilities participating in the IGP since 1990. (Doc. No. 63 ("Hale Decl.") ¶¶ 2-3, 9.)

For his part, Plaintiff claims that he completed all three steps of the IGP, although he provides no evidence other than his own declaration and deposition, which, as discussed further below, are insufficient to create a genuine dispute of material fact. Plaintiff also attests that the staff of Green Haven repeatedly interfered with his efforts to have his grievance adjudicated by ransacking his cell, threatening to kill him if he complained to the superintendent, and threatening him whenever he attempted to learn the status of his grievance. (Counter Stmt. ¶¶ 6, 23-24, 26-28; *see also* Doc. No. 65-2 ("Khudan Dep") 13:12-16, 14:22-15:4, 16:6-9.) However, Plaintiff fails to point to any specific dates when these incidents occurred, does not identify any names of officers who purportedly threatened him, fails to identify the specific locations in Green Haven where these alleged threats took

place, and does not provide any other details of the improper conduct.

## B. Procedural History

On October 29, 2012, Plaintiff, then proceeding *pro se* and *in forma pauperis,* submitted his first complaint in this action, which was originally assigned to the Honorable Loretta A. Preska. (Doc. Nos. 2, 6.) In April 2013, then-Chief Judge Preska ordered Plaintiff to file an amended complaint. (Doc. No. 7.) After retaining counsel, Plaintiff filed the first amended complaint on October 7, 2013. (Doc. No. 13.) That same date, this action was reassigned to my docket. On April 23, 2014, Plaintiff filed the operative pleading in this action, the second amended complaint, asserting two distinct violations of his Eighth and Fourteenth Amendment rights pursuant to Section 1983. (Doc. No. 32.) On October 17, 2014, Defendants moved to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to 12(b)(6). (Doc. Nos. 40, 43.) Specifically, Defendants argued for dismissal based on Plaintiff's failure to exhaust administrative remedies under the PLRA, among other grounds. (Doc. No. 43.) On September 17, 2015, the Court denied the motion to dismiss without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. (Doc. No. 55 at 11.) Nevertheless, because "the question of exhaustion of administrative remedies *must* be addressed before the Court can consider the merits of [P]laintiff's claims" (*id.* at 5) (quoting *Foreman v. Comm. Goord,* No. 02-cv-7089 (SAS), 2004 WL 385114, at \*6 (S.D.N.Y. Mar. 2, 2004)), the Court authorized the parties to conduct limited, expedited discovery on the issue of administrative exhaustion and directed Defendants to promptly file the instant motion for summary judgment solely on the issue of administrative exhaustion (*id.* at 10-11). Accordingly, Defendants submitted their motion for summary judgment on November 13, 2015 (Doc. Nos. 59, 60), Plaintiff submitted his opposition on December 3, 2015 (Doc. No. 66), and the motion was fully briefed when Defendants submitted their reply on December 29, 2015 (Doc. No. 70).

## II. LEGAL STANDARD

Case 9:19-cv-00428-BKS-TWD Document 44 Filed 08/05/20 Page 50 of 164

Khudan v. Lee, Not Reported in Fed. Supp. (2016)

**\*3** Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson,* 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

III. DISCUSSION

Defendants argue that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the PLRA. The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake,* 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's effort to reduce the quantity of prisoner suits" (internal quotation marks and alterations omitted)). As the Supreme Court and Second Circuit have instructed, "proper exhaustion ... means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Hernandez v. Coffey,* 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Woodford,* 548 U.S. at 90). "The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal,* 558 F.3d at 124. Furthermore, factual disputes related to administrative exhaustion are properly resolved by the Court, not by the jury. *See Messa v. Goord,* 652 F.3d 305, 309 (2d Cir. 2011).

**\*4** Under the IGP, an inmate must exhaust all available administrative remedies by completing all three steps before filing suit in federal court, and "only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Laguna v. Kwan,* No. 13-cv-7079 (VB), 2015 WL 872366, at \*3 (S.D.N.Y. Jan. 28, 2015) (quoting *Gardner v. Daddezio,* No. 07-cv-7201 (SAS), 2008 WL 4826025, at \*2 (S.D.N.Y. Nov. 5, 2008)). Here, under the IGP's three-step procedure, Plaintiff was initially required to file a grievance with the IGRC within twenty-one calendar days of the October 31 Incident, that is, no later than November 21, 2009. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a)-(b). Even assuming Plaintiff filed such a grievance, and even assuming he received no response, as he alleges (Counter Stmt. ¶ 8), Plaintiff was required to complete steps two and three as well – appealing both to the superintendent and to the CORC if the superintendent had adversely disposed of his grievance or failed to timely respond. N.Y. Comp. Codes R. & Regs., tit. 7, §§ 701.5(c)-

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 51 of 164

Khudan v. Lee, Not Reported in Fed. Supp. (2016)

(d), 701.6(g); *see also Heyliger,* 624 Fed.Appx. at 782 (noting that if a decisionmaker fails to timely respond to a grievance under the IGP, the inmate must appeal to the next step in order to properly exhaust).

As noted above, Defendants contend that no grievance was ever filed by Plaintiff regarding the October 31 Incident, and, as proof of that fact, point to the Hotaling Declaration, which indicates that a diligent search found no records of such grievance in Green Haven's records, and the Hale Declaration, which also attests that a diligent search of the CORC's database of appeals turned up no grievances relating to the claims in this case. (Hotaling Decl. ¶ 2; Hale Decl. ¶ 9.)[4] And while Defendants acknowledge that Plaintiff sent a complaint to the Inspector General, Defendants note, correctly, that the submission to the Inspector General did not constitute a proper appeal. *See Dabney,* 604 Fed.Appx. at 3. Accordingly, Defendants have "adequately supported the affirmative defense of failure to exhaust." *See, e.g., Bennett v. Onua,* No. 09-cv-7227 (SAS), 2010 WL 2159199, at *3 (S.D.N.Y. May 26, 2010) (finding that defendants discharged their initial burden on summary judgment by producing affidavits that a search of prison records indicated that no grievances were ever filed).

**\*5** For his part, Plaintiff has failed to produce a copy of his grievance and has introduced no other evidence, beyond his own testimony, that his grievance was actually filed pursuant to the IGP. Moreover, even if Plaintiff's testimony were enough to create a disputed issue of fact with respect to whether he filed a grievance form with the IGRC at Green Haven (Counter Stmt. ¶¶ 5, 12; Doc. No. 65-1 ("Khudan Decl.") ¶ 5; Khudan Dep. 7:21-23, 8:9-10), he fails to point to evidence that he properly appealed his grievance to the superintendent at step two. As noted above, Plaintiff was required to complete the appeal section on his IGRC response form and submit it to the grievance clerk. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(c). In his deposition, Plaintiff claimed that he "tried to speak with the [s]uperintendent about the grievance," but that unnamed officers in his unit deterred him from doing so through threats. (Counter Stmt. ¶ 27 (citing Khudan Dep. 15:5-17).) But the law is clear that prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison staff.

*Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir. 2007); *see also Bolton v. City of New York,* No. 13-cv-5749 (RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015) ("The law is well settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient"

to satisfy the "PLRA exhaustion requirement." (collecting cases)). Furthermore, although Plaintiff asserts that he never received a response to his grievance (Counter Stmt. ¶ 25), he was still required to appeal to the superintendent. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.6(g); *see also Heyliger,* 624 Fed.Appx. at 782. Accordingly, the Court concludes, as a matter of law, that Plaintiff failed to complete step two of the three-step IGP.

Plaintiff similarly fails to create a genuine dispute of fact as to whether he completed step three of the IGP – the filing of an appeal to the CORC. In his affidavit, Plaintiff makes no mention of submitting an appeal to the CORC, but curiously characterizes his complaint to the Inspector General's Office as his "effort to appeal to the highest level of the grievance process" (Doc. No. 65-1 ¶ 9), even though appeals to the Inspector General's Office are "not a formal part of the IGP," *Dabney,* 604 Fed.Appx. at 3. At his deposition, Plaintiff asserted that he sent an appeal of his grievance to "Albany" (Khudan Dep: 16:10-14), but Plaintiff fails to specify where in Albany he sent his grievance and fails to provide any other details, including the approximate date he submitted his appeal and whether he properly used a "notice of decision to appeal" form. Relying entirely on this vague and confusing deposition testimony, Plaintiff argues that he submitted his grievance to the CORC, which Plaintiff asserts is located in Albany. (Opp'n 5-6.)

While the Court recognizes that it "cannot resolve issues of credibility on summary judgment," it nonetheless finds that Plaintiff's "self-serving" and "incomplete" testimony that he sent an appeal to "Albany" is insufficient to create a *genuine* dispute of fact, particularly in light of Defendants' evidence that no grievance was ever sent to the CORC and Plaintiff's testimony that his complaint to the Inspector General was his "effort to appeal" his grievance. *See Lozada v. Delta Airlines, Inc.,* No. 13-cv-7388 (JPO), 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014) (concluding that plaintiff's "self-serving, incomplete, and inconsistent" deposition testimony was "not sufficient to create a genuine dispute of fact in light of [defendant's] documented evidence"); *see also Deebs v. Alstom Transp., Inc.,* 346 Fed.Appx. 654, 656-57 (2d Cir. 2009) (affirming grant of summary judgment where "plaintiffs rel[ied] almost exclusively upon" their "speculative" and "vague" testimony in the face of defendants' documentary evidence); *Toro v. City of New York,* No. 12-cv-4093 (RRM) (RLM), 2015 WL 1014044, at *5 (E.D.N.Y. Mar. 6, 2015) (granting summary judgment where "there is no evidence – beyond

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 52 of 164

Khudan v. Lee, Not Reported in Fed. Supp. (2016)

the allegations in his complaint and his own unsupported deposition testimony – that [plaintiff] actually reported such misconduct to the authorities"). Accordingly, the Court concludes as a matter of law that Plaintiff failed to complete step three of the IGP. Because Plaintiff failed to complete steps two and three of the IGP process, the Court thus finds that Plaintiff failed to properly exhaust administrative remedies under the IGP.

Plaintiff fares no better with his argument that the IGP's grievance process was not "available" to him at Green Haven. In June, the Supreme Court forcefully rejected judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *Ross,* 136 S. Ct. at 1858-59. As the Supreme Court clarified, an inmate's failure to exhaust may only be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Id.* The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief" and therefore constructively unavailable. *Id.* at 1859. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross,* 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.; see also* *Booth v. Churner,* 532 U.S. 731, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Ross,* 136 S. Ct. at 1859. To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, a grievance process is unavailable "when prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Id.* at 1860. While the Second Circuit has suggested that these scenarios are merely illustrative and "not ... exhaustive," these illustrations nonetheless guide the Court's inquiry. *See* *Williams v. Correction Officer Priatno,* ___ F.3d ____, No. 14-4777, 2016 WL 3729383, at *4 n.2 (2d Cir. July 12, 2016).

**\*6** Here, Plaintiff essentially asserts the third scenario, alleging that prison officials routinely interfered with his attempts to file grievances. However, much of Plaintiff's

Rule 56.1 Counterstatement relies on inadmissible hearsay. For example, Plaintiff attests that he "was informed by other [unnamed] inmates that grievances routinely go 'missing' and are not responded to" at Green Haven. (Counter Stmt. ¶ 7 (citing Khudan Decl. ¶ 7).) Plaintiff also maintains that he was warned on November 23, 2009 by an unidentified officer from the Inspector General's Office not to file a grievance because "in this facility, the officers ... will set you up" and "hurt you." (*Id.* ¶ 33 (citing Khudan Dep. 16:14-22).) Because Plaintiff offers these out-of-court statements in order "to prove the truth of the matter asserted" in them, Fed. R. Evid. 801(c)(2), and because these statements do not qualify for any exceptions to the hearsay rules, such testimony is not cognizable on summary judgment and will not be considered by the Court, *see, e.g.* *ABB Indus. Sys., Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 357 (2d Cir. 1997) (noting that hearsay that is inadmissible at trial is not cognizable on summary judgment motion); *Baity v. Kralik,* 51 F. Supp. 3d 414, 419-20 (S.D.N.Y. 2014) (disregarding plaintiff's affidavit that "contain[ed] a surfeit of improper averments, including statements not based on Plaintiff's personal knowledge and conclusory statements that are nothing more than speculation," including an averment that corrections officer "developed a reputation for missing time during his probationary period").

Plaintiff also claims that certain unnamed officers in Green Haven "ransacked" his room, tampered with his grievances and his mail, and threatened to kill him when he attempted to learn the status of his grievance from the superintendent and other officers. (Counter Stmt. ¶¶ 6, 15-16, 23-24, 26-28, 32; *see also* Khudan Dep. 6:24-7:5, 11:11-12, 11:14-21, 13:12-16.) However, Plaintiff fails to specify the dates of any threats, the names of any officers who threatened him, and the locations in Green Haven where these alleged threats took place. Courts generally review claims of "retaliation by prisoners 'with skepticism' because of the ease with which a retaliation claim may be fabricated." *Bolton,* 2015 WL 1822008, at *2 (quoting *Nunez v. Goord,* 172 F. Supp. 2d 417, 431 (S.D.N.Y. 2001)). Thus, it is well settled that "[c]onclusory allegations of intimidation are not sufficient" to create a genuine disputed issue of fact regarding the availability of administrative remedies. *See, e.g.,* *Hooks v. Howard,* No. 907-cv-0724 (TJM) (RFT), 2010 WL 1235216, at *5 n.3 (N.D.N.Y. Mar. 30, 2010) (collecting cases). Accordingly, Plaintiff's accusations, which "stand alone" and are "unsupported," are insufficient to withstand summary judgment. *See* *Bolton,* 2015 WL 1822008, at *2;

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 53 of 164

Khudan v. Lee, Not Reported in Fed. Supp. (2016)

*accord Heyliger v. Gebler,* No. 06-cv-6220 (FPG), 2014 WL 4923140, at *3 (W.D.N.Y. Sept. 30, 2014) (granting summary judgment, notwithstanding plaintiff's testimony that his "original grievance was discarded by prison officials," where plaintiff "never described or named the individual who allegedly took this action"), *aff'd,* 624 Fed.Appx. 780 (2d Cir. 2015); *Litchmore v. Williams,* No. 11-cv-7546 (DAB) (JCF), 2013 WL 3975956, at *6 (S.D.N.Y. Aug. 5, 2013) (granting summary judgment where there was "no evidence" that "plaintiff's appeal was actually mailed, intercepted, or ignored" and no "evidence of any particular officer's misconduct"); *Bennett v. James,* 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (granting summary judgment where plaintiff provided only "conclusory allegations" regarding unavailability of administrative remedies in his affidavit), *aff'd,* 441 Fed.Appx. 816 (2d Cir. 2011); *Rosado v. Fessetto,* No. 9:09-cv-67 (DNH) (ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held ... that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *report and recommendation adopted,* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); *Winston v. Woodward,* No. 05-cv-3385 (RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (granting summary judgment where plaintiff failed to "specify the dates of [officers'] alleged misconduct, the details of the particular incidents of threats and harassment, the officers who allegedly made threatening or harassing statements, or a copy of the alleged appeal that Plaintiff claims he sent through the mail that was, as he claims, fraudulently tampered with"); *Veloz v. New York,* 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (granting summary judgment where, "[e]ven assuming [plaintiff] did submit the grievances," plaintiff "offer[ed] no evidence that any particular officer thwarted his attempts to file," and instead, "simply contend[ed] that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost"), *aff'd,* 178 Fed.Appx. 39 (2d Cir. 2006).

**\*7** With respect to the other two "scenarios" identified in *Ross,* Plaintiff has not argued, nor pointed to any admissible evidence, that the IGP operated as a simple dead end – "with officers unable or consistently unwilling to provide any relief to aggrieved inmates" – or that it was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially 'unknowable.' " *Ross,* 136 S. Ct. at 1859. Although the Second Circuit recently found that certain grievance procedures under the IGP met this latter standard, the court's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams,* 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams,* who was housed in a special housing unit and segregated from the regular prison population, gave his grievance complaint to a correction officer to file on his behalf. *Williams,* 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.,* and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the district court's dismissal for failure to exhaust. Here, by contrast, Plaintiff asserts that he filed his grievance with Green Haven's IGRC. (Opp'n 4.) And while Plaintiff claims that his grievance received no response, the IGP clearly required him to properly appeal the IGRC's failure to respond to the superintendent and ultimately to the CORC. N.Y. Comp. Codes R. & Regs., tit. 7, § 701.6(g); *Heyliger,* 624 Fed.Appx. at 782. Given this unambiguous directive, Plaintiff has clearly failed to show that the IGP was "essentially unknowable." *See Ross,* 136 S. Ct. at 1859.

In light of the fact that none of the exceptional scenarios outlined by the Supreme Court in *Ross* apply, the Court concludes that Plaintiff has failed to establish a genuine dispute of material fact regarding the availability of administrative remedies at Green Haven. Therefore, the Court grants Defendants' motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is granted.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis,* any appeal would not be taken in good faith. *See Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir. 1995) (instructing that *in forma pauperis* status should be denied for the purpose of an appeal where the appeal would "lack ... an arguable basis in law or fact"). The Clerk is respectfully directed to terminate the motion pending at docket number 59 and to close this case.

SO ORDERED.

Khudan v. Lee, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 54 of 164

Dated: September 8, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4735364

## Footnotes

1    The following facts are taken from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 61 ("Rule 56.1 Statement" or "56.1 Stmt.")), and Plaintiff's Counter Rule 56.1 Statement (Doc. No. 67 ("Counter Statement" or "Counter Stmt.")). In deciding Defendants' motion for summary judgment, the Court also has considered Defendants' memorandum of law in support of their motion (Doc. No. 60 ("Mem.")), Plaintiff's memorandum of law in opposition (Doc. No. 66 ("Opp'n")), and Defendants' reply (Doc. No. 70 ("Reply")), as well as the declarations and exhibits submitted in connection with the instant motion.

2    By contrast, grievances that allege "harassment" by prison staff – in other words, "employee misconduct meant to annoy, intimidate or harm an inmate" – may be subject to expedited review and immediately referred to the superintendent, who must make a decision within twenty-five calendar days of receipt of a harassment grievance. N.Y. Comp. Codes R. & Regs., tit. 7, §§ 701.2(e), 701.8(f)-(h); *see also Leer v. Fisher,* No. 13-cv-8529 (JPO), 2015 WL 413253, at *4-5 (S.D.N.Y. Feb. 2, 2015) (describing the procedure for harassment allegations). However, Plaintiff avers, and Defendants do not dispute, that the ordinary three-step review process applied in this case. (Opp'n 3, 5; *see also* Doc. No. 31 at 2.) Accordingly, the Court assumes that Plaintiff's grievance was not eligible for expedited review.

3    Although the superintendent must forward grievances regarding DOCCS-wide policies directly to the CORC, *id.* at § 701.5(c)(3)(i), Plaintiff does not allege that he complained of DOCCS-wide policies.

4    Although Plaintiff urges the Court to disregard Ms. Hotaling's declaration because it is not based on her personal knowledge and contains hearsay (Opp'n 4-5), the Court is unpersuaded by this argument. Here, Defendants may offer Ms. Hotaling's declaration pursuant to Rule 803(10), which exempts from the hearsay bar statements offered to prove the absence of a public record after a diligent search in order to prove that a matter did not occur, where "a public office regularly kept a record or statement for a matter of that kind." Fed. R. Evid. 803(10)(A)(ii). Ms. Hotaling attests to being familiar with Green Haven's grievance record retention system in her capacity as inmate records coordinator. (Hotaling Decl. ¶¶ 1, 3.) She also attests that grievance records were "maintained and kept as records in the ordinary course of operations at Green Haven" pursuant to the facility's "policy and procedure." (*Id.* at ¶ 3) Accordingly, Defendants may offer Ms. Hotaling's declaration for the purpose of proving that Plaintiff never filed a grievance with the IGRC. The fact that Ms. Hotaling did not herself conduct the search, but merely directed that it be conducted, is also not a basis for striking the declaration. *See Davis v. U.S. Dep't of Homeland Sec.,* No. 11-cv-203 (ARR) (VMS), 2013 WL 3288418, at *7 (E.D.N.Y. June 27, 2013) ("[D]istrict courts within this circuit ... have found an official with broader supervisory authority who is not necessarily involved in the specific search for the records at issue to be capable of submitting a sufficient declaration."(collecting cases)). Furthermore, the fact that Ms. Hotaling did not attest to having been a "custodian" of Green Haven's records also is not reason to exclude her affidavit. *See United States v. Parker,* 761 F.3d 986, 992 (9th Cir. 2014); *United States v. McDonald,* 905 F.2d 871, 875 (5th Cir. 1990).

2010 WL 2159199
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Donald Mack BENNETT, Plaintiff,
v.
Edith ONUA, Edwin Oduro, and
June Yazzo Liason, Defendants.

No. 09 Civ. 7227(SAS).
|
May 26, 2010.

**Attorneys and Law Firms**

Donald Mack Bennett, Valhalla, NY, pro se.

Robert F. Meehan, Westchester County Attorney, Fay Angela
Jones, Senior Assistant Westchester County Attorney, White
Plains, NY, for Defendants.

***OPINION AND ORDER***

SHIRA A. SCHEINDLIN, District Judge.

**I. INTRODUCTION**

**\*1** Donald Mack Bennett, presently incarcerated and
proceeding pro se, brings this action against Edith Onua,
Edwin Oduro, and June Yazzo Liason [1] pursuant to section
1983 of Title 42 of the United States Code. Bennett seeks
monetary damages in the amount of $5,000,000 for alleged
emotional distress, negligence, deliberate indifference, and
medical malpractice. Defendants now move to dismiss
pursuant to Federal Rule of Civil Procedure 12(c) for
failure to exhaust administrative remedies under 42 U.S.C.
§ 1197e(a) and failure to state a claim under 42 U.S.C. §
1983. For the reasons stated below, the motion to dismiss is
granted.

**II. BACKGROUND** [2]

Bennett was incarcerated at the Westchester County Jail
("WCJ") from February 20, 2009, through February 27,

2009. [3] On February 20, 2009, Bennett was examined by
Edwin Odoro, a physician's assistant ("P.A."). [4] At the time
of the examination, Bennett had in his possession a hospital
discharge paper with all his prescribed medications. [5] During
the week of February 20, 2009 until Bennett's court date (on
February 27, 2009), he allegedly submitted five "sick-call
slips" but was not contacted until Edith Onua, also a P.A.,
called to tell him she could not prescribe his "life sustaining
medication." [6]

On February 27, 2009, Bennett was taken to court without
being given his medication. [7] Bennett subsequently became
ill and was taken to Sound Shore Medical Center, where
he was treated and released. [8] Bennett claims defendant
June Yazzo Liason, also a P.A., purposely informed the
WCJ staff that nothing was wrong with him because she
is racially biased against him. [9] Bennett further claims that
Yazzo denies any grievance he files on the same racially-
motivated grounds. [10]

**III. APPLICABLE LAW**

**A. Rule 12(c)**

Under Rule 12(c), after the pleadings close but before the
trial begins, a party may move for judgment on the pleadings
provided that the motion is made early enough so as not
to delay the trial. [11] Judgment on the pleadings should be
granted if it is clear that the moving party is entitled to
judgment as a matter of law. [12] In evaluating a motion
for judgment on the pleadings, the court applies the same
standard as that applicable to Rule 12(b)(6) motions to
dismiss for failure to state a claim. [13] As in the context of a
motion to dismiss, the court "must accept as true all of the
factual allegations contained in the complaint" [14] and "draw
all reasonable inferences in the plaintiff's favor." [15] Even so,
the court need not accord "[l]egal conclusions, deductions or
opinions couched as factual allegations ... a presumption of
truthfulness." [16] In deciding a motion for judgment on the
pleadings, a court may consider

the pleadings and exhibits attached thereto, statements
or documents incorporated by reference in the pleadings,
matters subject to judicial notice, and documents submitted
by the moving party, so long as such documents either are

in the possession of the party opposing the motion or were relied upon by that party in its pleadings. [17]

**B. Prison Litigation Reform Act**

**\*2** The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all administrative remedies before bringing an action regarding prison conditions. [18] The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [19] "[A]s long as other forms of relief are obtainable through administrative channels, the provision is applicable even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings." [20]

Failure to exhaust is an absolute bar to an inmate's action in federal court as "[ 🚩 section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court at all." [21] Failure to exhaust is an affirmative defense, however. [22] As such, plaintiff need not plead exhaustion in the complaint. [23]

While the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory, it has also recognized three exceptions to the exhaustion requirement:

> when (1) administrative remedies are not available [24] to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement. [25]

When any of the above are present, the affirmative defense of non-exhaustion fails. [26] Where (1) administrative remedies were available to the plaintiff, (2) defendants are not estopped and have not forfeited their non-exhaustion defense, and yet (3) plaintiff did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged to justify "the prisoner's failure to comply with administrative procedural requirements." [27]

The Second Circuit has held that " '[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought' ... does not constitute proper exhaustion." [28] "[N]otice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he ... system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.' " [29]

**C. Westchester County Department of Corrections Inmate Grievance Program**

The Westchester County Department of Corrections ("WCDOC"), Jail Division, has an established Inmate Grievance Program ("IGP") approved by the New York State Commission on Correction ("NYSCOC") . [30] A "grievance" is defined as "any inmate/detainee complaint relating to any facility policies, procedures, rules, practices, programs or the action or inaction of any person within the facility ." [31] In 2009, the IGP allowed inmates to make informal complaints to the Block Officer, who would log such complaint and attempt to resolve them. [32] Grievances that could not be resolved in this manner entered a formal process affording two levels of subsequent appeal. [33]

**IV. DISCUSSION**

**A. Defendants Have Adequately Demonstrated Bennett's Failure to Exhaust Administrative Remedies**

**\*3** Despite Bennett's claim that he filed a grievance at WCJ that was denied, [34] a search of the grievance log records maintained by WCDOC between February 20 and February 27, 2009 did not reveal any record of a grievance by Bennett concerning his medical care. [35] Bennett claims he informed Warden Amicucci of his grievance. [36] Warden Amicucci states in his sworn affidavit that Bennett never contacted him about any claims. [37] Regardless, notice to a prison official is insufficient. [38] As such, Defendants have adequately supported the affirmative defense of failure to exhaust.

## B. Bennett Has Not Sufficiently Alleged Facts Supporting an Exemption From the Exhaustion Requirement

In light of Defendants' affirmative defense of non-exhaustion, the instant motion now presents three issues: (1) whether administrative remedies were available to Bennett, (2) whether Defendants are estopped from asserting exhaustion as a defense, and (3) whether special circumstances excuse Bennett's failure to exhaust administrative remedies. Bennett has not alleged any facts to support an exemption from the exhaustion requirement.

*First,* Bennett does not allege that all available administrative remedies were procedurally unavailable at WCJ. When first processed into WCJ, inmates receive a packet called "The Inmate Rules and Regulations." [39] The Inmate Rules and Regulations advise inmates that grievance forms are available from the correction staff and from the Law Library. [40] Bennett does not allege that these forms were not available to him or that they did not "afford the possibility of some relief for the action complained of." [41]

*Second,* Bennett does not allege that all available administrative remedies were rendered unavailable by any action of any defendant. *Third,* Bennett does not allege that any defendant ever acted in any way that would estop Defendants from asserting non-exhaustion as a defense, or that any special circumstances exist to justify Bennett's failure to exhaust all possible remedies.

## V. CONCLUSION

Because Defendants have adequately supported the affirmative defense of failure to exhaust and because Bennett has not presented any facts on which this Court could base an exception, his Complaint is dismissed without prejudice. Bennett may file a new action once he has exhausted all remedies, as required by PLRA section 1997e(a). Accordingly, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [Docket No. 17] and this case.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2010 WL 2159199

## Footnotes

| | |
|---|---|
| 1 | Hereinafter, "Defendants." |
| 2 | The facts recited here are drawn from the Complaint ("Compl."), attached as Ex. A to the Declaration of Fay Angela Jones ("Fay Decl."), Senior Assistant County Attorney. |
| 3 | *See* Compl. Section II–D. |
| 4 | *See id.* |
| 5 | *See id.* |
| 6 | *Id.* |
| 7 | *See id.* |
| 8 | *See id.* Bennett alleges he had a "massive heart attack, grand mal seizure, and almost had a stroke" and that he "ran blood pressure 196 over 145, heart rate running over 230 beats." *Id.* Defendants include WCJ documentation of Bennett's lengthy medical problems. *See* Ex. C to Fay Decl. |
| 9 | *See* Compl. Section II–D. |
| 10 | *See id.* |
| 11 | *See* Fed.R.Civ.P. 12(c). |
| 12 | *See* Burns Int'l. Sec. Servs. v. International Union, 47 F.3d 14, 16 (2d Cir.1995). |
| 13 | *See* Patel v. Contemporary Classics, 259 F.3d 123, 126 (2d Cir.2001). |

14    *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 572 (2007). *Accord* *Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2d Cir.2009).

15    *Ofori–Tenkorang v. American Int'l. Group, Inc.,* 460 F.3d 296, 298 (2d Cir.2006).

16    *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007) (quotation omitted).

17    *Prentice v. Apfel,* 11 F.Supp.2d 420, 424 (S.D.N.Y.1998) (citing *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)).

18    *See* 42 U.S.C. § 1997e(a) (providing that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."). *See also* *Porter v. Nussle,* 534 U.S. 516, 516 (2002).

19    *Porter,* 534 U.S. at 532.

20    *Booth v. Churner,* 532 U.S. 731, 741 (2001) (requiring an inmate to complete the prison administrative process before suing over prison conditions even where the inmate sought only money damages, which could not be recovered through the administrative process).

21    *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *rev'd. on other grounds* (quotation marks and citation omitted) (emphasis in original).

22    *See* *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999).

23    *See* *Jones v. Bock,* 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

24    To be available, an administrative remedy must "afford the possibility of some relief for the action complained of." *Booth,* 532 U.S. at 738. In some circumstances, the behavior of the defendant may render administrative remedies unavailable. *See, e.g.,* *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (remanding case to the district court to determine whether some seeminglyavailable remedies were rendered unavailable by threats made by correction officers).

25    *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006).

26    *See* *Hemphill,* 380 F.3d at 686.

27    *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004).

28    *Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (quoting *Braham v. Clancy,* 425 F.3d 177, 184 (2d Cir.2005)) (noting that Braham cannot survive *Woodford v. Ngo,* 548 U.S. 81, 94–95 (2006), which states that plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to [prison] staff.").

29    *Id.* (quoting *Woodford,* 548 U.S. at 95).

30    *See* Affidavit of Anthony Amicucci ("Amicucci Aff."), Warden of the Westchester County Department of Correction, ¶ 5; *see also* Ex. 1 to Amicucci Aff. (copy of the WCDOC grievance procedures).

31    Amicucci Aff. ¶ 8.

32    *See id.* ¶ 9.

33    *See id.* ¶¶ 11–13. *See also* Westchester County Department of Correction Policy and Procedure, Ex. 1 to Amicucci Aff. at 4 (attached as Ex. E to Fay Deck) (chart showing time schedule for grievance filing and appeal).

34    *See* Compl. Section IV–F.

**Bennett v. Onua, Not Reported in F.Supp.2d (2010)**

35   *See* Amicucci Aff. ¶ 17. Although Bennett completed Complaint Section IV–F, which asks the inmate to describe the grievance claim if one had been made, he also completed Section IV–G, which states, "If you did *not* file a grievance, did you inform any officials of your claim(s)?" Also, in describing "all efforts to appeal [the instant claim] to the highest level of the grievance process," Bennett simply writes that he has "always appeal [sic] and never sign agreeing." Compl. Section IV–F(3). Bennett cannot have appealed if he never filed an initial grievance.

36   *See* Compl. Section IV–G

37   *See* Amicucci Aff. ¶ 18.

38   *See* *Macias,* 495 F.3d at 44.

39   *See* Amicucci Aff. ¶ 6; *see also* Ex. 2 to Amicucci Aff. (copy of the Inmate Rules and Regulations packet).

40   *See* Amicucci Aff. ¶ 6.

41   *Booth,* 532 U.S. at 738. Bennett was allegedly familiar with the WCJ grievance process, having filed an unrelated grievance about two years prior to commencing this action. *See* Amicucci Aff ¶ 19; *see also* Ex. 3 to Amicucci Aff. (photocopy of WCJ's log of Bennett's unrelated May 2007 grievance).

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5544316
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ramesh KHUDAN, Plaintiff,

v.

Superintendent William LEE, individually,
Corrections Officer Jeffrey Erns, individually,
Corrections Officer Duane Malark, individually,
Corrections Officer "John Doe 1", Lieutenant
Neal Greene, individually, Corrections Officers
Rory Hamilton, individually, David Deming,
individually, Arthur Andrews, individually,
Robert Sherman, individually, and "P." Allen,
individually, Nurse Sandy Fila, individually, and
Nurse Kathy Panuto, individually, Defendants.

No. 12–cv–8147 (RJS).
|
Signed Sept. 17, 2015.

*OPINION AND ORDER*

RICHARD J. SULLIVAN, District Judge.

**\*1** Plaintiff, a New York State Department of Corrections and Community Supervision ("DOCCS") inmate, brings this action under 42 U.S.C. § 1983 (" Section 1983"), alleging violations of his Eighth and Fourteenth Amendment rights while he was an inmate at Green Haven Correctional Facility ("Green Haven") in October 2009. Now before the Court is Defendants' motion to dismiss the action in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is DENIED without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion.

I. BACKGROUND

A. Facts

Plaintiff was an inmate at Green Haven from August 2008 until his transfer to Sing Sing Correctional Facility in

February 2010.[1] (Compl.¶ 16.) According to Plaintiff, in October 2009, while he was held at Green Haven, Corrections Officers Jeffrey Erns, Duane Malark, and John Doe 1 falsely informed other inmates—including a leader of a gang within the correctional facility-that Plaintiff was a " 'sex offender' and/or 'rapist,' " when in fact Plaintiff had not been charged with or convicted of any sexual offense. (*Id.* ¶¶ 20, 26.) Plaintiff alleges that these three corrections officers intended the false rumors to result in an attack on Plaintiff, causing him "physical injury, serious physical injury and/or death at the hands of other inmates." (*Id.* ¶ 29.) In addition to falsely branding Plaintiff as a sex offender, these three corrections officers also harassed Plaintiff by, *inter alia,* refusing to permit Plaintiff to shower or clean himself during a period when Plaintiff experienced medical difficulties with his bladder. (*Id.* ¶¶ 30–31.) Moreover, Plaintiff alleges that all Defendants, not merely the three corrections officers, knew that Plaintiff had been falsely identified as a sex offender and/or rapist and that such offenders are targets for violent attacks at Green Haven. (*Id.* ¶¶ 35–36.)

Plaintiff further alleges that, on October 31, 2009, Superintendent William Lee, Lieutenant Neal Greene, Corrections Officers Rory Hamilton, David Deming, Arthur Andrews, Robert Sherman, and "P." Allen "intentionally refused to require ... inmates to pass through metal detectors prior to their entry to the [recreation] [y]ard." (*Id.* ¶ 57.) Plaintiff further asserts that, at approximately 6:00 p.m. that evening, none of the assigned prison officials-Lieutenant Greene and Corrections Officers Hamilton, Deming, Andrews, Sherman, and Allen-was located at his assigned security posts in the recreation yard. (*Id.* ¶¶ 62–63.) Instead, these officials remained inside the prison building, behind closed doors. (*Id.* ¶ 64.) Plaintiff alleges that, as a result of these prison officials' "deliberate indifference and intentional disregard" for Plaintiff's safety, an inmate entered the recreation yard with a metal weapon and stabbed Plaintiff in the right eye, causing Plaintiff "immediate excruciating pain, bleeding and visual impairment." (*Id.* ¶¶ 60, 65–68.)

**\*2** Additionally, Plaintiff alleges that Lieutenant Greene, Corrections Officers Hamilton, Deming, Andrews, Sherman, and Allen, and Nurses Sandy Fila and Kathy Panuto failed to provide Plaintiff with immediate medical attention. (*Id.* 88.) Furthermore, Plaintiff claims that Nurses Fila and Panuto-in an attempt to cover up the fact that Plaintiff was attacked with a metal weapon-falsely identified the cause of Plaintiff's injury as a punch. (*Id.* ¶ 90.) Finally, Plaintiff alleges that Nurses Fila and Panuto, along with Lieutenant Greene,

improperly kept Plaintiff in Green Haven's medical unit for hours before transferring him for treatment to Putnam Hospital Center. (*Id.* ¶¶ 96, 110.)

### B. Procedural History

On October 31, 2012, Plaintiff, then proceeding *pro se,* mailed to the Clerk of Court the initial Complaint in this action, which was originally assigned to the Honorable Loretta A. Preska. (Opp'n at 5–6.) This initial *pro se* Complaint included at least thirteen "Doe" Defendants. (Doc. No. 48, Ex. A at 2.) In April 2013, Chief Judge Preska ordered Plaintiff to file an Amended Complaint. (Doc. No. 7.) On October 7, 2013, Plaintiff, after retaining counsel, filed the First Amended Complaint. (Doc. No. 13.) On the same date, this action was reassigned to my docket. The First Amended Complaint included at least eight "Doe" Defendants, and provided both a first and last name for only one of the other Defendants. (*Id.*) Following a conference on January 16, 2014, the Court permitted discovery for the limited purpose of identifying the "Doe" Defendants. On April 23, 2014, Plaintiff filed the operative pleading in this action, the Second Amended Complaint, asserting, pursuant to Section 1983, two distinct violations of his Eighth and Fourteenth Amendment rights. Specifically, Plaintiff alleges that, first, some of the Defendants "creat[ed] a dangerous environment for Plaintiff and fail[ed] to protect him from an attack," and, second, various Defendants "fail[ed] to provide immediate medical attention." (Compl.¶¶ 117, 119.) Consequently, Plaintiff is seeking monetary damages of at least $2,000,000. On October 17, 2014, Defendants filed their motion to dismiss, arguing that: (1) Plaintiff failed to exhaust his administrative remedies; (2) his claims are largely time-barred; (3) he fails to state a cause of action; and (4) Defendants are shielded from liability on qualified immunity grounds. (Doc. Nos.46–49.) The motion was fully submitted by December 5, 2014. (Doc. No. 54).

### II. LACK OF SUBJECT–MATTER JURISDICTION

Defendants first move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction, but none of their arguments actually pertains to the Court's subject-matter jurisdiction. Defendants perhaps view Rule 12(b)(1) as an appropriate vehicle to contend that: (1) Plaintiff failed to exhaust his administrative

remedies; (2) Plaintiff's claims are barred by the statute of limitations; or (3) Defendants are shielded by qualified immunity. However, these three affirmative defenses are not jurisdictional-they are waivable-and are thus properly raised pursuant to Rule 12(b)(6), not 12(b)(1). *See, e.g.,* Zappula v. Fischer, No. 11–cv–6733 (JMF), 2013 WL 1387033, at *3 n. 3 (S.D.N.Y. Apr. 5, 2013) ("The exhaustion requirement, however, is not jurisdictional, but an affirmative defense that may be raised under Rule 12(b)(6) if, on the face of the complaint, it is clear plaintiff did not exhaust all remedies." (citing Woodford v. Ngo, 548 U.S. 81, 101 (2006); Amador v. Andrews, 655 F.3d 89, 102–03 (2d Cir.2011); Richardson v. Goord, 347 F.3d 431, 434 (2d Cir.2003) (per curiam))); United States v. Koh, 968 F.Supp. 136. 137 (S.D.N.Y.1997) ("It is clear that the statute of limitations is a waivable affirmative defense." (citing United States v. Walsh, 700 F.2d 846, 855–56 (2d Cir.1983), *cert. denied,* 464 U.S. 825 (1983))); Sorano v. Taggart, 642 F.Supp.2d 45, 55 (S.D.N.Y.2009) (noting that "[q]ualified immunity is an affirmative defense" and "may be waived" (citing Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir.2003); McCardle v. Haddad, 131 F .3d 43, 51 (2d Cir.1997))). Accordingly, the Court rejects Defendants' argument that it lacks subject-matter jurisdiction in this action.

### III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

**\*3** Defendants next move to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b) (6). As noted above, the Court wi 11 consider Defendants' argument that Plaintiff failed to exhaust his administrative remedies pursuant to this Rule. Under the Prison Litigation Reform Act ("PLRA"), "exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action." Messa v. Goord, 652 F.3d 305, 309 (2d Cir.2011) (emphasis in original) (citation omitted); *see also* Foreman v. Comm. Goord, No. 02–cv–7089 (SAS), 2004 WL 385114, at *6 (S.D.N.Y. Mar. 2, 2004) (noting that "the question of exhaustion of administrative remedies *must* be addressed before the Court can consider the merits of plaintiff's claims" (emphasis added)). The PLRA, which Congress passed to reform and streamline the consideration of prisoner lawsuits by federal courts, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a) (emphasis added). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). It is well established that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007); *see also Woodford,* 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); *Zappulla,* 2013 WL 1387033, at *4 ("The PLRA exhaustion requirement is mandatory, and courts are not free to waive or ignore it."). Furthermore, "proper exhaustion" is required under the PLRA, meaning that a prisoner must "us[e] all steps that the agency holds out, and do[ ] so *properly* (so that the agency addresses the issues on the merits)." *Woodford,* 548 U.S. at 90 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002) (Easterbrook, J.) (emphasis in original)). As the Supreme Court has explained: "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Therefore, "[t]he exhaustion inquiry ... requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir.2009).

DOCCS's Inmate Grievance Program ("IGP") demands that prisoners complete three steps in order to exhaust their administrative remedies. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Espinal,* 558 F.3d at 125 (describing

the IGP). First, the prisoner is obligated to file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a)-(b). Second, the prisoner must appeal an adverse decision by the IGRC to the superintendent of the facility. *Id.* § 701.5(c). Third, the prisoner is required to appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). *Id.* § 701.5(d). "Only after the CORC has denied an appeal may the inmate bring the matter into federal court." *Vann v. Fischer,* No. 11–cv–1958 (KPF), 2014 WL 4188077, at *22 (S.D.N.Y. Aug. 25, 2014) (citation and internal quotation marks omitted), *reconsideration denied,* No. 11–cv–1958 (KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015); *see also Gan'in v. Rivera,* No. 13–cv7054 (RJS), 2015 WL 876464, at *4 (S.D.N.Y. Feb. 28, 2015).

**\*4** Since the failure to exhaust administrative remedies is an affirmative defense, prisoner plaintiffs are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. However, a court may nonetheless dismiss a prison condition suit on a Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply with the administrative exhaustion requirement. *Id.* at 215–16 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.... [That administrative exhaustion need not be pleaded] is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim."). "In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted." *Garvin,* 2015 WL 876464, at *2 (citing *Williams v. Dep't of Corr.,* No. 11–cv–1515 (SAS), 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of the Complaint, it is clear that plaintiff did not exhaust such remedies.")).

Here, it is not clear from the face of the Second Amended Complaint that Plaintiff failed to exhaust the IGP's requirements. Indeed, in the Second Amended Complaint, Plaintiff explicitly insists that he "exhausted his administrative remedies...." (Compl.¶ 2.) Thus, the Court has little difficulty rejecting Defendants' non-exhaustion arguments at the motion to dismiss stage.

However, as part of the submissions filed in connection with this motion, Defendants have presented evidence outside the pleadings to support their claim that Plaintiff failed to exhaust the IGP's requirements, including a declaration from a DOCCS custodian of records asserting that Plaintiff did not exhaust any of the claims raised in this action. (*See* Doc. No. 42 ¶¶ 2–9.) Significantly, Plaintiff has not attempted to contradict this statement, nor has he asserted that he followed the IGP's mandatory second and third steps: appealing any adverse decision by the IGRC to the superintendent of the facility, N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(c), and appealing any adverse decision by the superintendent to the CORC, *id.* § 701.5(d). (Doc, No. 54 at 3–4.)

Nevertheless, even assuming *arguendo* that Defendants are correct that Plaintiff failed to exhaust the administrative procedures, this conclusion would not end the analysis. Under certain circumstances, a plaintiff's failure to exhaust administrative remedies may be excused. This inquiry is generally guided by the three-part framework set forth by the Second Circuit in *Hemphill v. New York,* which considers: (1) "whether administrative remedies were in fact available to the prisoner," (2) "whether the defendants may have forfeited the affirmative defense of nonexhaustion by failing to raise or preserve it or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," and (3) "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." 380 F.3d 680, 686 (2d Cir.2004). [2]

**\*5** Perhaps anticipating this *Hemphill* inquiry, Plaintiff asserts that, first, he received no response to his grievance and, second, that his cell was ransacked by unspecified corrections officers, resulting in the loss of mail. (Doc. No. 50, Ex. 1 ¶¶ 5–8.) However, neither of these factual assertions, without more, excuses the failure to exhaust. With respect to Plaintiff's first contention, courts in this Circuit have consistently held that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies. *See, e.g., Smith v. City of New York,* No. 12–cv3303 (CM), 2013 WL 5434144, at \*7 (S.D.N.Y. Sept. 26, 2013) ("It is well settled that an inmate must complete all requisite steps of the IG[ ]P in order to fully exhaust his administrative remedies; even if he does not receive a response at a particular step in the proceedings, he must proceed in timely fashion to the next

step." (citation omitted)); *Zappulla,* 2013 WL 1387033, at \*4 ("If prison officials fail to respond to a prisoner's grievance or initial appeal, that does not excuse a prisoner from pursuing the matter to the third step, as prisoners are free to appeal the failure to respond to the next higher authority." (citations omitted)); *Harrison v. Goord,* No. 07–cv–1806 (HB), 2009 WL 1605770. at \*4 (S.D.N.Y. June 9.2009) ("Prisoners are required to exhaust their administrative remedies even if they believe that administrative remedies would be ineffective or futile." (citations and internal quotation marks omitted)); *Leacock v. N.Y.C. Health Hosp. Corp.,* No. 03–cv–5440 (RMB)(GWG), 2005 WL 483363, at \*7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore,* No. 99–CV–0966 (LMM) (THK), 2002 WL 91607, at \*8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if Plaintiff received no response to his initial grievance, Plaintiff could have sought the next level of review, in this case, to the prison superintendent."). With respect to Plaintiff's second contention-that his cell was ransacked-this too provides no excuse for Plaintiff's failure to exhaust his administrative remedies. As the Court has previously concluded in a similar case, the IGP "provides inmates with multiple avenues to file their grievances or appeals that do not depend upon access to outgoing mail," and, thus, conclusory allegations of mail tampering are not enough to excuse the failure to exhaust administrative remedies. *Bolton v. City of New York,* No. 13–cv–5749 (RJS), 2015 WL 1822008, at \*2 (S.D.N.Y. Apr. 20, 2015). Accordingly, there are no allegations in the current record that justify Plaintiff's failure to complete the administrative process.

Nevertheless, in light of the fact that failure to exhaust is an affirmative defense that, given the pleadings here, is properly reserved for a motion for summary judgment, the Court finds that the parties should have an opportunity to further develop the record with respect to whether Plaintiff in fact exhausted his administrative remedies and whether any non-exhaustion is excused as to each of the Defendants pursuant to the *Hemphill* factors. Thus, the Court will order limited, expedited discovery for this purpose. Accordingly, the Court denies Defendants' motion to dismiss without prejudice to renewal as a Rule 56 motion for summary judgment following limited, expedited discovery on the issue of administrative exhaustion. [3]

## IV. CONCLUSION

**\*6** IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is DENIED without prejudice to renewal as a motion for summary judgment on the issue of administrative exhaustion. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 46. Accordingly, IT IS FURTHER ORDERED THAT by October 8, 2015, the parties shall complete limited, expedited discovery on the narrow issue of whether Plaintiff exhausted his administrative remedies and, if not, whether his non-exhaustion is excused as to each of the Defendants. IT IS FURTHER ORDERED THAT Defendants shall file their motion for summary judgment on the issue of administrative exhaustion no later than October 29, 2015; Plaintiff shall file his opposition, if any, no later than November 19, 2015; and Defendants shall file their reply, if any, no later than November 30,

2015. The parties shall submit statements of material fact pursuant to Local Civil Rule 56.1 ("56.1 statements") in connection with Defendants' motion. In light of the foregoing, and the fact that-if the administrative exhaustion issue is not dispositive of this action-Defendants may renew their motion to dismiss on the other grounds raised in their brief, IT IS FURTHER ORDERED THAT Defendants' deadline to answer or otherwise respond to the Second Amended Complaint is ADJOURNED until after the Court has resolved Defendants' summary judgment motion or, if Defendants decline to file a summary judgment motion, to October 29, 2015.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5544316

## Footnotes

1   All facts are drawn from the Second Amended Complaint (Doc. No. 32 ("Compl.")) and are assumed to be true for purposes of this motion. In deciding this motion, the Court has also considered Defendants' Memorandum of Law in Support of their Second Motion to Dismiss the Second Amended Complaint (Doc. No. 47 ("Mem.")), Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. No. 51 ("Opp'n")), Defendants' Reply Memorandum of Law in Support of their Second Motion to Dismiss the Second Amended Complaint (Doc. No. 54 ("Reply")), and all accompanying declarations (Doc. Nos.48–50).

2   Following the Supreme Court's decision in Woodford, 548 U.S. at 90–91. which held that the PLRA requires "proper exhaustion" of administrative remedies in "compliance with an agency's deadlines and other critical procedural rules," the Second Circuit has noted, without holding, that the second and third prongs of the Hemphill analysis-estoppel and special circumstances-may no longer be applicable. See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir.2011) ("We have questioned whether, in light of Woodford, the doctrines of estoppel and special circumstances survived." (citing cases)). Nevertheless, the Second Circuit conducted a Hemphill analysis in Amador itself, see 655 F.3d at 102–04, and district court in this Circuit have continued to apply the Hemphill framework following Woodford and Amador, see, e.g., McClinton v. Connolly, No. 13–cv–2375 (KMW) (DCF), 2014 WL 5020593, at *2 n. 4 (S.D.N.Y. Oct. 8, 2014) ("Until the Second Circuit instructs otherwise, the Court will continue to consider the three Hemphill exhaustion exceptions."); Powell v. Corr. Med. Care, Inc., No. 13–cv–6842 (WHP), 2014 WL 4229980, at *2 n. 3 (S.D.N.Y. Aug. 15, 2014) (collecting cases); Stevens v. City of New York, No. 12–cv–1918 (JPO)(JLC), 2012 WL 4948051, at *6 (S.D.N.Y. Oct. 11, 2012).

3   Because the administrative exhaustion issue may be dispositive of this action, the Court does not address the other grounds for dismissal discussed in Defendants' motion to dismiss. Instead, in the event that Defendants decline to file a summary judgment motion on the exhaustion issue, they may renew their motion to dismiss on those other grounds at the conclusion of the limited discovery period. In the event that Defendants do file

a summary judgment motion, they may renew their motion to dismiss if the Court does not grant summary judgment on non-exhaustion grounds.

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Cortright v. Belloma, W.D.N.Y., July 22, 2016

2013 WL 6328478
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

William CHIARAPPA, Plaintiff,
v.
MEYERS, Levillis, Zelinski, Pestullka,
Durand, Jones, John Doe, Defendants.

No. 09–CV–607(JTC).
|
Dec. 5, 2013.

**Attorneys and Law Firms**

Western New York Law Center (Matthew A. Parham, Esq.,
of Counsel), Buffalo, NY, for Plaintiff.

Eric T. Schneiderman, Attorney General of the State Of
New York (Benjamin K. Ahlstrom, Esq., Assistant Attorney
General, of Counsel), Buffalo, NY, for Defendants.

H. KENNETH SCHROEDER, JR., United States Magistrate
Judge.

## INTRODUCTION

**\*1** Plaintiff brought this action pursuant to 42 U.S.C.
§ 1983 seeking compensatory and punitive damages for the
alleged violation of his rights under the Eighth Amendment
to the Constitution. Specifically, he alleges that he was subjected
to excessive force and that the defendants failed to protect him
from the use of excessive force. Currently pending before the
court is the defendants' motion for summary judgment. Dkt.
# 121.

## BACKGROUND

Plaintiff commenced this action on June 30, 2009 with the
filing of a *pro se* complaint pursuant to Title 42 U.S.C. §
1983. Dkt. # 1. By order of the court filed November 6, 2009
(Dkt.# 4), plaintiff's complaint was limited to the following
five specific claims:

1) excessive force against defendant Meyers arising from
an incident on January 14, 2009;

2) excessive force against defendant Meyers arising from
an incident on February 8, 2009;

3) excessive force against defendants Levulis [1] and Durand
arising from an incident on February 10, 2009;

4) failure to protect against defendants Zelinski, Pustullka,
and Jones arising from the incident of February 10, 2009;
and

5) procedural due process against an unserved John Doe
defendant hearing officer.

The defendants filed an answer to the complaint on May 6,
2010. Dkt. # 8. On October 6, 2010, the parties consented to
the jurisdiction of the undersigned pursuant to 28 U.S.C.
§ 636(c). Dkt. # 27. On September 27, 2011, Plaintiff secured
the services of an attorney. Dkt. # 112.

On November 28, 2012, defendants filed this motion for
summary judgment, arguing, *inter alia,* that plaintiff failed to
exhaust his administrative remedies and failed to adequately
state a constitutional violation. Dkt. # 121. Plaintiff conceded
that he failed to exhaust his administrative remedies with
respect to the incidents of January 14, 2009 and February 8,
2009 and did not oppose the motion dismissing those claims.
Additionally, he did not oppose the dismissal of his procedural
due process claim as against the unserved John Doe hearing
officer. Dkt. # 129, p. 1, n. 1. Accordingly, the only claim
remaining for the court's determination on the present motion
is plaintiff's Eighth Amendment excessive force/failure to
protect claim arising from the incident of February 10, 2009.

The court has determined that oral argument is unnecessary.
For the reasons that follow, defendants' motion for summary
judgment is granted and the complaint is dismissed.

## FACTS

During the relevant time period, plaintiff was an inmate in
the custody of the New York State Department of Corrections
and Community Supervision ("DOCCS"). From January
14, 2009 until March 9, 2009, plaintiff was housed at the
Gowanda Correctional Facility in Gowanda, New York.
Plaintiff testified in a deposition that on February 10, 2009,

he was told to open his locker for a cell search. As he reached down, he was struck in the face by defendant Levulis. He tried to run out of the cell, but defendants Zelinski and Pustullka blocked the doorway. Plaintiff was then told to lie on the floor. Dkt. # 124–1 ("Plaintiff's Dep."), p. 32. While on the floor, plaintiff was handcuffed from behind. Defendant Levulis straddled him and struck him about the face and head while other officers kicked and struck him. *Id.,* p. 33–34. Plaintiff was then escorted to the infirmary. He testified that while being escorted, he was held by defendant Durand and beaten about the head and body. His head was slammed against the wall. *Id.,* pp. 35–36. Plaintiff claims to have suffered bruising and soreness. *Id.,* p. 46.

**\*2** As a result of the incident, plaintiff was served with a misbehavior report charging him with various violations, including assault, and was moved to the Special Housing Unit ("SHU"). Within a few days, plaintiff wrote a grievance regarding the beating on plain lined paper because he had no grievance form. Dkt. # 127 ("Plaintiff's Declaration"), ¶ 9. He placed the grievance on the ledge of his cell with outgoing mail. *Id.* Plaintiff theorized that the grievance was intercepted and destroyed, as he received no response. *Id.,* ¶ 12. Plaintiff stated that the officers in the SHU "made various threatening statements ... alluding to the fact that [he] tried to file a grievance." *Id.,* ¶ 15. For example, plaintiff was told he was on the "beat up" list because he had complained about a corrections officer. *Id.* As a result of the "threats and harassment," plaintiff was afraid to further pursue his grievance. *Id.,* ¶ 16.

At a hearing on February 17, 2009, plaintiff was found guilty of the disciplinary charges and was sentenced to six months in the SHU and a loss of privileges and good time. Plaintiff's Declaration, ¶ 14. Plaintiff appealed the decision to the Commissioner of Corrections on February 17, 2009. Dkt. # 127–10. In a letter received February 26, 2009, which was dated, apparently mistakenly, March 21, 2009, plaintiff wrote to the Commissioner "to further address the issue." Dkt. # 127–1. He stated that he endured "assaultive behavior," was "mentally distraught," and a weapon had been planted in his cell. He further stated, "I do not or had not wanted any officer to suffer reprimand and still do not want any reprimand, just my own peace of mind ....." *Id.*

Plaintiff wrote again to the Commissioner in a letter dated February 26, 2009 and received on March 2, 2009, asserting his innocence and asking that the charges be overturned and that he be transferred to another facility. In a subsequent letter

dated February 28, 2009 and received March 5, 2009, plaintiff stated that he was unsure of the appeal process, but again stated that the charges were false and asked the Commissioner to overturn the decision. Dkt. # 127–1. In a letter dated March 4, 2009 and received March 10, 2009, plaintiff again asked that the decision be overturned and his privileges restored. *Id.* He stated, "I am not looking for any disciplinary action to take place, I just would like my privileges back, to put this behind me...." *Id.* He also stated that the attitude of the corrections officers in the SHU had changed and that they believed he had been "set up." *Id.* His final letter to the Commissioner was dated March 8, 2009 and received March 13, 2009. Plaintiff reasserted his innocence and stated that he was being transferred from Gowanda. *Id.* The decision was affirmed on March 18, 2009. Dkt. # 127–10.

On March 9, 2009, plaintiff was transferred to the Upstate Correctional Facility. Plaintiff's Dep., p. 51; Dkt. # 123–1. On March 21, 2009, he wrote to DOCCS complaining of the assault and asking for assistance. The letter was forwarded to the Inspector General's Office. Dkt. # 127–2. [2] Two weeks after his transfer, on March 23, 2009, plaintiff filed a grievance regarding the incident of February 10, 2009. Dkt. # 127–3. That grievance was rejected as untimely by the Inmate Grievance Program "IGP") at Upstate Correctional Facility, but plaintiff was advised that an exception to the time limit could be granted if he submitted proof of mitigating circumstances. Additionally, plaintiff was advised that he could file a separate grievance regarding the denial of an exception to the time limit. Dkt. # 127–4.

**\*3** On March 26, 2009, plaintiff wrote to the IGP to explain the mitigating circumstances of his untimely grievance. He stated that he "attempted to file two grievances while housed at Gowanda SHU" and could only assume that they were misfiled. Dkt. # 124–2. He also stated that an "atmosphere of retribution delayed the filing of" his grievance until he was transferred out of Gowanda. *Id.* Additionally, on March 26, 2009, plaintiff submitted a separate grievance regarding the denial of an extension of time. Dkt. # 127–5. On April 4, 2009, plaintiff was advised that the IGP supervisor found no merit to his statement of mitigating circumstances and the grievance was not processed. Dkt. # 127–6. Plaintiff appealed this decision on April 29, 2009. Dkt. # 127–7. The appeal was denied on June 10, 2009. Dkt. # 127–8.

In support of the motion for summary judgment, defendants submitted a declaration of Molly M. Kennedy, Acting IGP Supervisor at Gowanda Correctional Facility (Dkt.# 122).

The grievance policy in effect at the time plaintiff was incarcerated provided that inmates must submit a grievance within 21 days of the act or occurrence giving rise to the grievance. *Id.,* ¶ 5. Ms. Kennedy stated that she reviewed the grievance file for the time period that plaintiff was incarcerated at the Gowanda Correctional Facility and found no grievances filed by the plaintiff. *Id.,* ¶ 8. Additionally, Ms. Kennedy stated that inmates in SHU may bypass corrections officers by submitting grievances directly to a grievance program supervisor who makes weekly rounds. *Id.,* ¶ 9.

In further support of the motion, defendants submitted a declaration of defendant Stephen Jones, Sergeant at Gowanda Correctional Facility. Dkt. # 123. Sergeant Jones stated that none of the named defendants were assigned to the Gowanda SHU during the time period plaintiff was housed there, from February 10, 2009 until March 9, 2009. *Id.,* ¶¶ 4,5.

### DISCUSSION

**1. Summary Judgment Standard**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC,* 797 F.Supp.2d 299, 311 n. 7 (S.D.N.Y.2011). Under those standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.,* 746 F.Supp.2d 528, 532 (S.D.N.Y.2010), *aff'd,* 445 F.App'x 387 (2d Cir.2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law ...." *Id.*

**\*4** Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed ...."

*R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson,* 792 F.Supp.2d 657, 662 (W.D.N.Y.2011)). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004) (internal quotation marks and citation omitted).

The defendants contend that summary judgment should be granted dismissing the complaint as plaintiff failed to exhaust his administrative remedies in accordance with the grievance procedures in place at the Gowanda Correctional Facility in February 2009. Alternatively, should the court deny the motion based on non-exhaustion, defendants argue that the claim against defendant Jones should be dismissed for plaintiff's failure to show defendant Jones' personal involvement in the assault or his ability to intervene. Plaintiff contends that he has presented a genuine issue of material fact regarding exhaustion of administrative remedies, precluding summary judgment.

**2. Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act of 1995 ("PLRA"), mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Supreme Court has held that the PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Smart v. Goord* 441 F.Supp.2d 631, 636 (S.D.N.Y.2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Failure to exhaust is an absolute bar to an inmate's action in federal court; section1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." *Neal v.*

*Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds by* Porter v. Nussle, 534 U.S. 516 (2002).

 **\*5** In New York, formal exhaustion for prison inmates requires compliance with a three-step grievance and appeal procedure. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Hernandez v. Coffey,* 582 F.3d 303, 305 (2d Cir.2009). First a grievance complaint is submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination. The grievance must be submitted within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a). Next, if the IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id.* at § 701.5(c). If dissatisfied with the superintendent's decision, an inmate has another seven calendar days to appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d). Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Hairston v. LaMarche,* 2006 WL 2309592, at *7 (S.D.N.Y. August 10, 2006) (citing cases).

As stated by Ms. Kennedy, the grievance procedure was in place at the Gowanda Correctional Facility and was available to plaintiff. *See* Dkt. # 122, ¶ 4. Pursuant to this policy, an inmate must complete and submit a grievance within 21 days of the act or occurrence giving rise to the grievance. *Id.,* ¶ 5. Ms. Kennedy stated she reviewed the grievance file for the relevant time period and found no grievances filed by the plaintiff between January and March 2009. *Id.,* ¶ 8.

Despite the lack of a record of a grievance filed with regard to the incident of February 10, 2009, the court must credit plaintiff's allegation that he submitted a grievance that was apparently misplaced and to which he received no response. In his letter to the IGP at Upstate Correctional Facility explaining the mitigating circumstances behind his untimely filing of the grievance on March 23, 2009, plaintiff explained that he submitted two grievances while at Gowanda and, simultaneously, that he waited until his transfer away from the "atmosphere of retribution" at Gowanda to file any grievance at all. However, even if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process. Here, plaintiff does not contend that he timely pursued his grievance through the appeal process. After submitting a grievance that was never filed or responded to, he admits he

did nothing until March 23, 2009, when he filed an untimely grievance at Upstate Correctional Facility. Plaintiff thus failed to exhaust his administrative remedies with regard to the incident of February 10, 2009. *See Belile v. Griffin,* 2013 WL 1776086, at *3–4, 7 (N.D.N .Y. Feb. 12, 2013), *Report and Recommendation adopted by,* 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013) (plaintiff failed to exhaust his administrative remedies where he alleged he filed two grievances by placing the grievances in his meal slot to be filed by corrections officers, but claimed they were intercepted or discarded, never received a determination on the grievances, and failed to appeal to the superintendent of the facility or CORC); *Atkins v. Menard,* 2012 WL 4026840, at *4 (N.D.N.Y. Sept. 12, 2012) (plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); *Murray v. Palmer,* 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (finding that in order to exhaust available administrative remedies with regard to his grievance, plaintiff had to file an appeal with the superintendent from the IGRC's nonresponse, which included a failure to acknowledge the receipt of a grievance and assign it a number); *Williams v. Hupkowicz,* 2007 WL 1774876, at *4 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA.") (citation omitted); *Midalgo v. Bass,* 2006 WL 2795332, at *6 (N.D.N.Y. Sept. 26, 2006) (observing that plaintiff was required to seek an appeal to the superintendent, even though he never received a response to his grievance and was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 516 (S.D.N.Y.2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd,* 178 F. App'x 39 (2d Cir.2006). Accepting the truth of plaintiff's allegation, that he attempted to submit a timely grievance regarding the incident of February 10, 2009, he failed to timely pursue an appeal of that grievance and, accordingly, failed to exhaust his administrative remedies as required under the PLRA.

 **\*6** In response to the motion, plaintiff argues that administrative remedies were unavailable to him at Gowanda, that the defendants are estopped from asserting the defense of

non-exhaustion, or that special circumstances should excuse his failure to exhaust. "When a plaintiff seeks to counter a contention that he has failed to exhaust administrative remedies under the PLRA, ... the proper inquiry is whether: (1) administrative remedies were in fact available to the prisoner; (2) ... the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense; and (3) special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Chavis v. Goord,* 333 F. App'x 641, 643 (2d Cir.2009) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (internal quotation marks omitted)).

Unavailability of administrative remedies is governed by an objective test—"that is, would a similarly situated individual of ordinary firmness have deemed [grievance procedures] available." *Hemphill,* 380 F.3d at 688 (internal quotation marks omitted). Here, plaintiff has offered no proof that he was prevented from utilizing the grievance procedure that was in place at the Gowanda Correctional Facility. There is no question that plaintiff was provided writing implements, as he has stated that he prepared a grievance on plain lined paper. It is also apparent that his outgoing mail was collected and properly forwarded, as he submitted a timely appeal of his disciplinary hearing disposition and wrote five letters to the DOCCS Commissioner complaining that he was innocent of the charges related to the incident of February 10, 2009. In those letters, plaintiff repeatedly stated that he did not seek disciplinary action against the officers at Gowanda, but simply wanted his disciplinary charges overturned and his privileges restored. Additionally, plaintiff indicated in his letters to the Commissioner that the officers in the Gowanda SHU believed that plaintiff had been "set up" on February 10, 2009. Dkt. # 127–1. This is plainly inconsistent with plaintiff's position on the motion that he was threatened by the SHU officers and afraid to pursue an appeal of his grievance regarding the alleged beating of February 10, 2009. Accordingly, the record indicates that administrative remedies were available to plaintiff, but that he chose not to pursue them.

An inmate may invoke estoppel in the PLRA context where the "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Amador v. Andrews,* 655 F.3d 89, 103 (2d Cir.2011) (internal quotation marks omitted). Generally, defendants cannot be estopped

from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray v. Palmer,* 2010 WL 1235591, at *5 & n. 26 (collecting cases); *McCloud v. Tureglio,* 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question."). Defendants have submitted the affidavit of defendant Jones, who stated that none of the named defendants were assigned to the Gowanda SHU during the time period that plaintiff was housed there following the incident of February 10, 2009. Dkt. # 123, ¶¶ 4, 5. Plaintiff does not claim, and has submitted no evidence showing, that any of the named defendants threatened or prevented him from exhausting his administrative remedies with regard to the alleged assault. Accordingly, the defendants are not estopped from raising the defense of failure to exhaust administrative remedies.

**\*7** Finally, the Second Circuit has recognized that "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004). The inquiry with respect to special circumstances is the same as that for unavailability—namely, "whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures." *Hemphill,* 380 F.3d at 690 (internal citation and quotation marks omitted). "Special circumstances" have been found to include an incorrect but reasonable interpretation of DOCCS regulations, or the failure to file a grievance in the precise manner prescribed by DOCCS as a result of threats. *See, e.g., Giano v. Goord,* 380 F.3d at 675–76 (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate). The issue of whether special circumstances justify a prisoner's failure to comply with administrative procedural requirements "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way." *Giano,* 380 F.3d at 678.

The court credits plaintiff's allegation that he failed to timely pursue the grievance through the established grievance

process while at Gowanda because he was told by the SHU guards that he was on the "beat up" list for complaining about a corrections officer. Despite this alleged threat, however, plaintiff promptly appealed his disciplinary disposition and sent five letters to the Commissioner of DOCCS in a period of approximately two weeks, asserting his innocence, naming the officers involved, complaining of his loss of privileges, and maintaining that he did not wish to see any corrections officer reprimanded or disciplined. This indicates that plaintiff was not deterred from accessing the facility's mechanisms for redressing inmate concerns and that plaintiff's failure to exhaust his administrative remedies had nothing to do with alleged threats from the guards at the Gowanda SHU. Additionally, plaintiff did not promptly file the grievance following his transfer from Gowanda, but waited two full weeks after his arrival at Upstate Correctional Facility to file a formal grievance regarding the alleged beating on February 10, 2009. This further undercuts plaintiff's argument that he could not pursue a grievance until he was free of the "atmosphere of retribution" at Gowanda. "[N]othing in the record, other than the bare allegation of a purported threat, suggests that 'a similarly situated individual of ordinary firmness would have been deterred from following regular procedures.' " *See Black v. Fischer,* 2013 WL 1314940, *9 (S.D.N.Y. March 29, 2013)

(quoting *Hemphill,* 380 F.3d at 690 (internal citation and quotation marks omitted)) (despite alleged threat, inmate freely complained to superintendent and outside DOCCS personnel). The court thus concludes that no rational fact finder could determine that plaintiff was deterred from exhausting his administrative remedies by the actions of the defendants or any other DOCCS employee. Accordingly, plaintiff's failure to exhaust his administrative remedies in compliance with the PLRA does not fall within any of the *Hemphill* exceptions and the case must be dismissed.

### CONCLUSION

**\*8** The defendants' motion for summary judgment (Dkt.# 121) is granted and the complaint is dismissed. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2013 WL 6328478

### Footnotes

1    The name of this defendant is alternatively spelled "Levillis" and "Levulis" in the papers.
2    Following an investigation, in a report dated June 9, 2009, the plaintiff's allegation that he was beaten on February 10, 2009 was found to be unsubstantiated. Dkt. # 127–9.

---

    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

624 Fed.Appx. 780
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Jason HEYLIGER, Plaintiff–Appellant,

v.

Thomas GEBLER, Prison Guard, Jeffrey
Pilley, Prison Guard, Defendants–Appellees,

D. O'Connell, Sergeant of the Guards, Defendant. *

No. 14–4092–pr.
|
Sept. 25, 2015.

**Synopsis**
**Background:** Former prisoner brought § 1983 action against
prison guards, alleging that they violated his constitutional
rights. The United States District Court for the Western
District of New York, Frank P. Geraci, Jr., J., 2014 WL
4923140, granted summary judgment in favor of guards
based on prisoner's failure to exhaust administrative remedies.
Prisoner appealed.

**[Holding:]** The Court of Appeals held that prisoner's failure
to exhaust administrative remedies as required by Prison
Litigation Reform Act (PLRA) was not excused.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (3)

**[1]    Prisons**  ⚷  **Particular cases**

Prisoner's administrative remedies were not
rendered unavailable when grievance program
supervisor allegedly threw prisoner's grievance
form in the garbage, and thus prisoner's failure
to exhaust administrative remedies as required
by Prison Litigation Reform Act (PLRA) was
not excused; when prisoner did not receive
written response from grievance committee,
appeal to superintendent was still available as
administrative remedy. Prison Litigation Reform
Act of 1995, § 101(a), 🚩 42 U.S.C.A. §
1997e(a); 7 NYCRR 701.8 (2005).

19 Cases that cite this headnote

**[2]    Prisons**  ⚷  **Particular cases**

Grievance program supervisor's alleged
destruction of prisoner's grievance form did
not estop prison guards from raising failure
to exhaust administrative remedies, as required
by Prison Litigation Reform Act (PLRA), as
affirmative defense to prisoner's claim; prisoner
failed to adduce any evidence that prison guards
were involved in destruction of grievance form.
Prison Litigation Reform Act of 1995, § 101(a),

🚩 42 U.S.C.A. § 1997e(a).

1 Cases that cite this headnote

**[3]    Prisons**  ⚷  **Particular cases**

Prisoner's administrative remedies were not
rendered unavailable when prison guard
allegedly threatened prisoner, and thus prisoner's
failure to exhaust administrative remedies as
required by Prison Litigation Reform Act
(PLRA) was not excused, where prisoner
filed grievance after guard allegedly threatened
him, and threat did not deter prisoner
from pursuing administrative remedies. Prison
Litigation Reform Act of 1995, § 101(a), 🚩 42
U.S.C.A. § 1997e(a).

5 Cases that cite this headnote

**\*781** Appeal from a judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., Judge).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 30, 2014, is AFFIRMED.

**Attorneys and Law Firms**

David M. Tang (Paul F. Keneally, on the brief), Underberg & Kessler LLP, Rochester, NY, for Appellant.

Jonathan Hitsous, Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Andrea Oser, Deputy Solicitor General, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY, for Appellees.

PRESENT: WALKER, ROBERT D. SACK and REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Plaintiff Jason Heyliger, formerly incarcerated at Attica Correctional Facility, appeals from an award of summary judgment in favor of defendants Thomas Gebler and Jeffrey Pilley on Heyliger's claims under 42 U.S.C. § 1983.[1] Heyliger contends that the district court erred in granting summary judgment based on his failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). We review an award of summary judgment de novo, see Johnson v. Killian, 680 F.3d 234, 236 (2d Cir.2012), and will affirm if the record, viewed in the light most favorable to the non-moving party, reveals no genuine issue of material fact, see Fed.R.Civ.P. 56(a); Lynch v. City of New York, 737 F.3d 150, 156 (2d Cir.2013). We assume the parties' familiarity with the facts and procedural history of this case, which we reference only as necessary to explain our decision to affirm.

1. *Exhaustion*
The PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). It is undisputed that Heyliger failed to exhaust all available administrative remedies because he did not complete the second and third steps of the New York State Department of Correctional Services' Inmate Grievance Procedure, which require an inmate to appeal an unfavorable decision of the Inmate Grievance Resolution Committee ("IGRC") first to the superintendent and, then, to the Central Office Review Committee ("CORC"). *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7(b)-(c) (2005) (now codified **\*782** as amended at N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(c)-(d) (2015)).[2]

Heyliger contends, however, that his failure to exhaust should be excused under *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004). We have recognized that an inmate's failure to exhaust administrative remedies may be excused where (1) administrative remedies were effectively not "available to the prisoner," (2) defendants are estopped from raising failure to exhaust as an affirmative defense because their "own actions inhibit[ed] the inmate's exhaustion," or (3) "special circumstances ... justify the prisoner's failure" to exhaust. *Hemphill v. New York,* 380 F.3d at 686 (internal quotation marks omitted); *accord Messa v. Goord,* 652 F.3d 305, 309 (2d Cir.2011).[3] None of these exceptions applies here.

**[1]** Heyliger argues that administrative remedies were rendered unavailable when Sergeant Denis O'Connell, the grievance program supervisor, "threw ... [Heyliger's] grievance form] in the garbage" on June 10, 2005 before it could be "processed." J.A. 74. We are not persuaded. Under the regulations in effect in 2005, if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to "appeal[ ] to the next step." N.Y. Comp.Codes R. & Regs. tit. 7, § 701.8 (2005) (now codified at N.Y. Comp.Codes R. &

Regs. tit. 7, § 701.6(g)(2) (2015)). Thus, when Heyliger did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy. [4]

[2] Nor did O'Connell's alleged destruction of Heyliger's grievance estop Gebler and Pilley from raising failure to exhaust as an affirmative defense. A prisoner may invoke "estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures," such as "verbal and physical threats of retaliation, physical assault, [or] denial of grievance forms or writing implements." *Amador v. Andrews,* 655 F.3d 89, 103 (2d Cir.2011) (internal quotation marks omitted). Heyliger, however, has failed to adduce any evidence that Gebler or Pilley were involved in the destruction of his grievance form. *See generally* *Macias v. Zenk,* 495 F.3d 37, 45–46 (2d Cir.2007) ("[D]epending on the facts pertaining to each defendant, it is possible that some individuals may be estopped, while others may not be." (quoting *Hemphill v. New York,* 380 F.3d at 688)).

**\*783** [3] Heyliger argues on appeal that his failure to exhaust should be excused because threats made by Gebler on June 5, 2005, and a June 18, 2005 altercation with a fellow inmate—which Heyliger argues Gebler orchestrated—rendered administrative remedies unavailable, estop defendants from raising exhaustion as an affirmative defense, and establish special circumstances. But Heyliger failed adequately to raise these arguments below. Indeed, in opposing defendants' motion for summary judgment before the district court, Heyliger argued only O'Connell's alleged destruction of Heyliger's grievance form as excuse for his failure to exhaust administrative remedies. [5] Thus, we deem forfeited the new grounds Heyliger cites to support excusal and decline to consider them on appeal. *See* *Parada v. Banco Indus. de Venez., C.A.,* 753 F.3d 62, 70 (2d Cir.2014) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (quoting *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 114 (2d Cir.2005))).

Even absent forfeiture, we note that Heyliger filed a grievance after Gebler allegedly threatened him on June 5, 2005. It is

therefore clear from the record that the threat did not actually deter Heyliger from pursuing his administrative remedies. It follows that the threat cannot excuse exhaustion. Insofar as Heyliger relies on the June 18, 2005 altercation with another inmate to excuse his failure to exhaust, he has not adduced sufficient facts connecting the altercation to Gebler to defeat summary judgment.

Accordingly, we conclude, as the district court did, that Heyliger's failure to exhaust available administrative remedies is not excused. Further, contrary to Heyliger's contention, he was not entitled to trial on the issue of exhaustion. *See* *Messa v. Goord,* 652 F.3d at 310 (holding that "Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA"). The district court therefore properly granted summary judgment for defendants.

### 2. *District Court's Denial of Leave To Proceed In Forma Pauperis On Appeal*

Heyliger faults the district court for denying him leave to proceed on appeal *in forma pauperis* ("IFP"), *see* 28 U.S.C. § 1915(a)(3), without first affording him an opportunity to brief the issue. This argument fails because where, as here, the district court certifies that an appeal would not be taken in good faith, a party may nonetheless file "a motion to proceed on appeal in forma pauperis in the court of appeals within 30 days after service of the notice" of the district court's denial of IFP status. Fed. R.App. P. 24(a)(5). Indeed, the district court informed Heyliger that any request to proceed IFP on appeal should be made by motion to this court. Heyliger failed to file such a motion.

### 3. *Conclusion*

We have considered Heyliger's remaining arguments and conclude that they are without merit. Therefore, the district court's judgment is AFFIRMED.

### All Citations

624 Fed.Appx. 780

# Footnotes

\*    The Clerk of Court is directed to amend the caption as set forth above.

1    In his second amended complaint, Heyliger also named as a defendant Sergeant Denis O'Connell. The district court dismissed all claims against O'Connell by order dated July 30, 2010, which Heyliger does not challenge on appeal.

2    Because the alleged incidents occurred in 2005, we rely on the regulations that were in effect at that time.

     *See* Amador v. Andrews, 655 F.3d 89, 96 n. 3 (2d Cir.2011).

3    We have previously noted that the Supreme Court's decision in *Woodford v. Ngo,* which held that § 1997e(a) requires "proper exhaustion," 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may call certain of these exceptions into question, *see* Amador v. Andrews, 655 F.3d at 102; Macias v. Zenk, 495 F.3d 37, 43 n. 1 (2d Cir.2007); Ruggiero v. Cty. of Orange, 467 F.3d 170, 176 (2d Cir.2006). As in those cases, however, we need not decide that issue here because Heyliger has failed to satisfy the PLRA even under our pre-*Woodford* precedents.

4    Heyliger also could have availed himself of the expedited procedure for grievances that allege "[e]mployee misconduct meant to annoy, intimidate, or harm an inmate." N.Y. Comp.Codes R. & Regs. tit. 7, § 701.11(a) (2005) (now codified at N.Y. Comp.Codes R. & Regs. tit. 7, § 701.2(e) (2015)). Such grievances are forwarded directly to the superintendent and, if he fails to take action within the required time limit, the inmate may appeal directly to the CORC. *Id.* § 701.11(b)(6) (now codified as amended at N.Y. Comp.Codes R. & Regs. tit. 7, § 701.8(g) (2015)).

5    We note that, although Heyliger proceeded *pro se* in this action for several years, he was assigned *pro bono* counsel prior to briefing on defendants' motion for summary judgment, and it was that counsel who filed the brief in opposition to defendants' motion. We need not, therefore, afford Heyliger's motion papers a "liberal construction." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir.2010).

---

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 5191506
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bryant GIBBS, Plaintiff,
v.
Christopher GADWAY, Defendant.

9:19-CV-281 (GTS/DJS)
|
Signed 10/15/2019

**Attorneys and Law Firms**

BRYANT GIBBS, 11-R-0220, Plaintiff, Pro Se, Five Points Correctional Facility, Caller Box 119, Romulus, New York 14541.

HON. LETITIA JAMES, Attorney General of the State of New York, OF COUNSEL: NICHOLAS L. ZAPP, ESQ., Assistant Attorney General, Attorney for Defendant, The Capitol, Albany, New York 12224.

<u>**REPORT-RECOMMENDATION and ORDER**</u>

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Plaintiff, presently an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights. Dkt. No. 1, Compl. Following initial review of the Complaint under 28 U.S.C. §§ 1915(e) and 1915A, all claims other than an Eighth Amendment excessive force claim against Defendant Gadway were dismissed. Dkt. No. 7. In lieu of answering the Complaint, Defendant has moved for summary judgment based on Plaintiff's alleged failure to exhaust his administrative remedies. Dkt. No. 14. Plaintiff opposes the Motion. Dkt. No. 17 ("Pl.'s Opp."). Defendant has filed a Reply. Dkt. No. 18. For the reasons which follow, the Court recommends that the Motion for Summary Judgment be granted.

**I. BACKGROUND**

Plaintiff alleges that he was assaulted by Defendant Gadway in June 2016. Compl. at p. 2. That same month Plaintiff filed an administrative grievance making this same allegation. Dkt. No. 14-3, Declaration of Christine Gregory ("Gregory Decl.") at Ex. B. Given that the grievance concerned alleged staff misconduct the grievance was forwarded directly to the facility Superintendent. Gregory Decl. at ¶ 12. On July 16, 2016, the Superintendent responded to the grievance. *Id.* at ¶ 12 & Ex. C. Plaintiff alleges that he then appealed the Superintendent's determination to DOCCS' Central Office Review Committee. Pl.'s Opp. at pp. 4-5. DOCCS has no record of any such appeal. Gregory Decl. at ¶ 15; Dkt. No. 14-4, Declaration of Rachael Seguin ("Seguin Decl."), ¶ 9 & Ex. A.

**II. LEGAL STANDARD FOR
SUMMARY JUDGMENT**

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. Scott v. Coughlin, 344 F.3d at 289 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.

1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*2** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendant seeks summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies by failing to appeal the facility-level denial of his grievance. Dkt. No. 14-1, Def.'s Mem. of Law at pp. 6-7. Plaintiff counters that he attempted to exhaust his administrative remedies and that, even if he did not, he should be excused from the exhaustion requirement. Pl.'s Opp. at pp. 4-5.

#### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

**\*3** An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires the grievant

receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

### B. Plaintiff's Failure to Exhaust Administrative Remedies

#### 1. Whether Plaintiff Actually Filed a Grievance

The record before the Court establishes that while DOCCS has a record of Plaintiff's initial grievance, there is no record of any appeal of the decision on that grievance to CORC. Gregory Decl. at ¶ 15; Seguin Decl., ¶ 9 & Ex. A. "Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit." *White v. Drake*, 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011), *report and recommendation adopted*, 2011 WL 4478921 (N.D.N.Y. Sept. 26, 2011); *see also Berkley v. Ware*, 2018 WL 3736791, at *5 (N.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018) (citing cases).

Plaintiff makes a purely conclusory allegation that he appealed the grievance denial to CORC. Pl.'s Opp. at p. 4 ("Plaintiff appealed to the CORC"). [1] Significantly, Plaintiff has not provided a copy of the grievance appeal or even asserted on what date he filed the appeal. *Gough v. Morris*, 2018 WL 7199494, at *3 (N.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 416150 (N.D.N.Y. Feb. 1, 2019) ("there is no evidence in Plaintiff's opposition, or any other submission, of ... Plaintiff's alleged appeal to CORC."). In light of the documented proof that no such appeal was filed, such a conclusory statement is insufficient to create a material question of fact on this Motion. *Toliver v. Stefinik*, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016); *Richardson v. Eberth*, 2016 WL 1271078, at *4 (W.D.N.Y. Mar. 29, 2016).

Under these circumstances, the record before the Court establishes that Plaintiff did not fully appeal his grievance

regarding the alleged assault by Gadway. He, therefore, did not exhaust his administrative remedies.

#### 2. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

**\*4** Plaintiff appears to make two arguments for finding that administrative remedies were unavailable to him: the lack of guidance in DOCCS' grievance procedure and alleged threats made against him. Pl.'s Opp. at p. 5. Neither is sufficient to defeat the pending Motion.

Plaintiff first claims that when he became aware that the appeal he claims to have filed was never received by CORC he looked to DOCCS's grievance procedure "for guidance on what to do ... and found no guidance whatsoever on what the next step would be." Pl.'s Opp. at p. 5. Relying on *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016), he contends he should be excused from the exhaustion requirement. *See* Pl.'s Opp. at p. 3.

At the outset, this case presents a readily distinguishable fact pattern from that which the Second Circuit was confronted with in *Williams*. In that case, the District Court had dismissed the complaint based on lack of exhaustion because Plaintiff had not administratively appealed his grievance, even though the grievance had never been officially filed by DOCCS personnel at the correctional facility. *Williams v. Priatno*, 829 F.3d at 121. The Second Circuit reversed, finding that DOCCS' grievance procedures "do not describe a mechanism

for appealing a grievance that was never filed." *Id.* at 126. On the contrary here, there is no dispute that Plaintiff filed a grievance at the facility and that he received a response. Gregory Decl., Exs. B & C. It is also clear that DOCCS regulations specifically address what should have been done in a situation such as this when an appeal has allegedly been filed, but not responded to. Specifically, the applicable regulation provides that "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R. § 701.5(d)(3)(i). This provision provided specific guidance to Plaintiff on how to proceed - when he did not receive notice that his appeal had been received by CORC he should have contacted the facility inmate grievance staff to verify that his appeal had been received and processed. There is no evidence that Plaintiff did so here and his failure cannot provide the basis for excusing him from the exhaustion requirement. This is not a situation, as in *Williams*, where the procedure was "so opaque and confusing" that the Plaintiff could have not understood how to proceed. *Williams v. Prianto*, 829 F.3d at 126.

Finding Plaintiff's claims unexhausted is consistent with the decision in *Gizewski v. New York State Dep't of Corr. and Cmty. Supervision* which found that an inmate's claim is not exhausted if he fails to avail himself of the procedure in section 701.5(d)(3)(i). 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016). In *Gizewski*, the record established that the plaintiff had filed an administrative appeal, but DOCCS personnel had failed to timely forward it to CORC. *Id.* at *3. Plaintiff then filed his federal lawsuit before receiving a decision on the appeal from CORC. *Id.* at *13. The Court acknowledged DOCCS' failure to properly process the appeal, but nonetheless granted judgment to defendants in part because "Plaintiff [wa]s also at fault for not taking any further action" pursuant to section 701.5. *Id.* Plaintiff here has a less compelling case than *Gizewski* since there is no admissible evidence that he ever, in fact, filed an appeal to CORC.

**\*5** Plaintiff also claims that he was threatened and retaliated against by Defendant. Pl.'s Opp. at p. 5. Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. Plaintiff's allegations are entirely conclusory, however. Plaintiff's Complaint claimed he was threatened only *after* filing the grievance, Compl. at p. 1, and he makes

no claim that this alleged threat impacted his ability to appeal the grievance. *McGinnis v. Crissell*, 2019 WL 4395410, at *6 (N.D.N.Y. Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 3228867 (N.D.N.Y. July 18, 2019) (citing cases). There is no specific allegation made by Plaintiff at all that any retaliatory action was ever taken against him as a result of filing the grievance. Such "general and conclusory statements that he was threatened are insufficient to raise a triable issue of fact as to the unavailability of the grievance procedure because of intimidation by prison administrators." *Lewis v. Wasielewski*, 2018 WL 4732755, at *6 (W.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 4692476 (W.D.N.Y. Oct. 1, 2018) (citing cases). Plaintiff's conclusory claims, therefore, are no basis for denying summary judgment.

To the extent Plaintiff attempts to argue that his grievance appeal may have been tampered with, Pl.'s Opp. at p. 5 ("Once [inmate mail] is picked up plaintiff no longer has any control over what happens to that piece of mail."), his conclusory allegation in this regard is not sufficient to defeat summary judgment. "Courts have consistently held [ ] that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010); *see also Rodriguez v. Cross*, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."); *Artis v. Dishaw*, 2016 WL 11266599, n.13 (N.D.N.Y. Sept. 12, 2016) (finding that plaintiff's failure to exhaust was not excusable, in part because, while the plaintiff "state[d] that some grievances were destroyed, but he has not submitted any copies of these grievances, nor does he specify when he attempted to file them.").

Accordingly, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that Defendants' Motion be **granted** based upon Plaintiff's failure to exhaust.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 14) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2019 WL 5191506

---

**Footnotes**

1   Plaintiff did not submit a sworn statement attesting to the fact that he filed an appeal. Nor did he file a response to Defendant's Statement of Material Facts. Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Marino v. Watts*, 2018 WL 3121612, at *1 (N.D.N.Y. Mar. 7, 2018), *report and recommendation adopted sub nom. Marino v. Schult*, 2018 WL 1578163 (N.D.N.Y. Mar. 30, 2018), *aff'd*, 764 Fed. Appx. 73 (2d Cir. 2019). The Court therefore will deem the facts as set forth in Defendant's Statement of Material Facts admitted, to the extent they are properly supported by the record.

---

**End of Document**                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 81 of 164

Gough v. Morris, Not Reported in Fed. Supp. (2018)

2018 WL 7199494
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lamont GOUGH, Plaintiff,

v.

Sergeant MORRIS, Sergeant Davidson, John Doe
Correctional Officer 1, John Doe Correctional Officer
2, and John Doe Correctional Officer 3, Defendants.

9:16-CV-1107 (GTS/DJS)
|
Signed 12/14/2018

**Attorneys and Law Firms**

LAMONT GOUGH, Plaintiff, Pro Se, 13-A-0134, Coxsackie
Correctional Facility, Box 999, Coxsackie, New York
12051-099.

BARBARA D. UNDERWOOD, Attorney General of the
State of New York, OF COUNSEL: WILLIAM A. SCOTT,
ESQ., The Capitol, Albany, New York 12224, Attorney for
Defendants.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** On September 9, 2016, *pro se* Plaintiff Lamont Gough
commenced this action pursuant to 42 U.S.C. § 1983,
asserting claims arising from his confinement at Coxsackie
Correctional Facility ("Coxsackie C.F."). Dkt. No. 1, Compl.
Plaintiff has named two Defendants, Sergeant Davidson
and Sergeant Morris, and three John Doe Defendants
who are purported to be officers at Coxsackie C.F.
Following initial review by the District Court, Plaintiff's
First Amendment retaliation claim against Defendant Morris,
Eighth Amendment excessive force claim against Defendant
Morris, and Eighth Amendment failure to intervene claim
against Defendant Davidson and the three John Does survive.
Dkt. No. 9. Specifically, Plaintiff contends that in retaliation
for filing a grievance, he was assaulted by Defendant Morris
while Defendant Davidson witnessed and did not intervene.
Compl.

Presently before this Court is the Motion for Summary
Judgment of Defendants Davidson and Morris, which

Plaintiff opposes and to which Defendants have filed a
reply. Dkt. No. 47, Defs.' Mot. Summ. J.; Dkt. No. 49,
Pl.'s Opp.; Dkt. No. 50, Defs.' Reply. Defendants contend
that Plaintiff failed to exhaust his administrative remedies,
and that his Complaint should therefore be dismissed. Dkt.
No. 47-13, Def.'s Mem. of Law. The Court finds that
Defendants have established that Plaintiff failed to exhaust
his administrative remedies and therefore recommends that
the Motion be **granted**. In addition, as discussed below, the
Court recommends that Plaintiff's claims against the still
unidentified Defendants be **dismissed** *sua sponte*.

**I. LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), summary
judgment is appropriate only where "there is no genuine
dispute as to any material fact and the movant is entitled
to judgment as a matter of law." The moving party bears
the burden to demonstrate through "pleadings, depositions,
answers to interrogatories, and admissions on file, together
with [ ] affidavits, if any," that there is no genuine issue of
material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d
Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,
323 (1986) ).

To defeat a motion for summary judgment, the non-movant
must set out specific facts showing that there is a genuine
issue for trial, and cannot rest merely on allegations or denials
of the facts submitted by the movant. FED. R. CIV. P. 56(c);
*see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir.
2003) ("Conclusory allegations or denials are ordinarily not
sufficient to defeat a motion for summary judgment when the
moving party has set out a documentary case."); *Rexnord
Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir.
1994). To that end, sworn statements are "more than mere
conclusory allegations subject to disregard ... they are specific
and detailed allegations of fact, made under penalty of perjury,
and should be treated as evidence in deciding a summary
judgment motion" and the credibility of such statements is
better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at
289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.
1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.
1995) ).

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 82 of 164

Gough v. Morris, Not Reported in Fed. Supp. (2018)

**\*2**  When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. EXHAUSTION

### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with

"deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999).[1]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also* *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by* *Porter v. Nussle*, 534 U.S. 516.

### B. Plaintiff's Failure to Exhaust Administrative Remedies

**\*3**  At the time of the relevant events of this action, Coxsackie C.F. had a grievance program to which inmates had full access. Dkt. No. 47-3, Decl. of Rachel Seguin, at ¶¶ 4-12; Dkt. No. 47-4, Seguin Decl., Ex. A.

There are no recorded grievances filed by Plaintiff regarding any alleged assault or use of excessive force claims against Defendant Morris, an alleged failure to intervene claim against Defendant Davidson, or a retaliation claim against Defendant Morris. *See* Seguin Decl. at ¶¶ 20-23. While Plaintiff was housed at Coxsackie, Plaintiff filed five grievances. Dkt. No. 47-8, Decl. of Tisha Surprenant, ¶ 10;

Dkt. No. 47-9, Surprenant Decl., Ex. A. Three of those five grievances were filed before the events at issue in this lawsuit, and so Plaintiff could not have exhausted his administrative remedies utilizing these grievances. Surprenant Decl. at ¶ 11; Surprenant Decl., Ex. A (reflecting filing dates of February 28, 2014, April 23, 2014, and September 10, 2014). Plaintiff filed two grievances at Coxsackie after the date of the alleged incident. *Id.* Those grievances are not related to the events at issue in the Complaint. The first, "Unprofessional Remarks," was filed on April 22, 2015, four months after the events at issue in the Complaint, and is dated March 20, 2015, nearly three months after the events at issue. Dkt. No. 47-7, Seguin Decl., Ex. D. This grievance alleged that Plaintiff was being verbally harassed, that Plaintiff's mail was being violated, and that he was being called a rapist; that grievance only named Counselor Iarusso. *Id.* While this grievance has some similar allegations as does Plaintiff's claim, it has to do with Counselor Iarusso "going around the jail" talking about Plaintiff, and other verbal harassment which was allegedly ongoing, unlike the verbal and physical alteration alleged in the Complaint. It does not provide any allegations regarding the physical assault and is not otherwise particularized to the January 22, 2015 incident. The other grievance filed after the alleged assault, "Sneakers Not Mailed Out," pertained to sneakers that Plaintiff believed were in the package room. Dkt. No. 47-6, Seguin Decl., Ex. C. This grievance is not relevant to the events at issue in the Complaint and did not name any of the Defendants in this case. As such, neither of these grievances could have been used to properly exhaust Plaintiff's claims.

In his deposition, Plaintiff claimed that he did file a grievance regarding harassment that went to the superintendent. Dkt. No. 47-11, Decl. of Louis Jim, Ex. A, Pl.'s Dep., pp. 20-23. Such harassment grievances are subject to expedited review, which provides for first level review by the superintendent, and a subsequent appeal to the Central Office Review Committee to have fully exhausted the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. While Plaintiff claims that he did appeal the superintendent's response to CORC, there is no evidence in Plaintiff's opposition, or any other submission, of either the harassment grievance itself, the superintendent's response, or Plaintiff's alleged appeal to CORC. Pl.'s Dep. at pp. 21-22. Indeed, Plaintiff testified at his deposition that he never received a response from CORC, and that he did not write a grievance complaining that he did not receive a response. *Id.* at p. 39. Plaintiff's "vague and conclusory allegations that he filed other grievances ... do not, in light of the documentation that Defendants have

provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies." *Toliver v. Stefinik*, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016). As such, Plaintiff failed to exhaust his administrative remedies relative to the complaint.

## C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

**\*4** A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in that case, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In his opposition papers, Plaintiff claims that (1) he followed the proper procedures and was ignored; (2) his mail was tampered with; (3) he feared retaliation, and (4) he grieved through informal means. *See* Compl. at p. 13; [2] Dkt. No. 1-1, Exs. to Compl. at pp. 18-21; Pl.'s Opp. at pp. 2-5. None of these allegations, however, are sufficient to raise an issue of material fact as to the availability of administrative remedies that would excuse his failure to exhaust.

First, in his Complaint, Plaintiff describes frustration with Coxsackie C.F.'s grievance process, stating that he followed the proper procedures and that he did not get any responses and that he was "basically ignored." Exs. to Compl. at p. 20. In his letters to correctional facility staff, Plaintiff specifically describes issues with Coxsackie C.F.'s mail process, stating that the mail he attempts to send is not properly delivered and that he believes his mail is being tampered with. Seguin Decl., Ex. C at p. 21; Seguin Decl., Ex. D at p. 6. Plaintiff also makes loose claims that his paperwork gets lost. Seguin Decl., Ex. D at p. 6. Plaintiff attaches to his Opposition a written request dated February 15th, 2015, in which Plaintiff asked for his

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 84 of 164

*Gough v. Morris, Not Reported in Fed. Supp. (2018)*

grievances back and described his frustration regarding lack of responses and allegedly missing paperwork. Pl.'s Opp. at p. 6. However, it is entirely unclear to what this refers; it is not evident that this relates to the claims in Plaintiff's Complaint, and Plaintiff does not demonstrate that it does.

In his general allegations regarding the mail and being ignored, Plaintiff fails to provide any facts regarding when he tried to file administrative grievances or appeals regarding the alleged assault. For example, he offers no evidence about when or to whom he allegedly provided grievances regarding the incident at issue in this case. Nor does he provide copies of the any alleged grievances regarding this incident. "Courts have consistently held [ ] that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010); *Rodriguez v. Cross*, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."); *Artis v. Dishaw*, 2016 WL 11266599, n.13 (N.D.N.Y. Sept. 12, 2016) (finding that plaintiff's failure to exhaust was not excusable, in part because, while the plaintiff "state[d] that some grievances were destroyed, but he has not submitted any copies of these grievances, nor does he specify when he attempted to file them.").

**\*5**  Further, even if Plaintiff did believe that his attempts at filing a grievance regarding his assault would be ineffective, this does not excuse his failure to do so. The case law is clear that "[p]risoners are required to exhaust their administrative remedies 'even if they believe that administrative remedies would be ineffective or futile.' " *Harrison v. Goord*, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009); *see also Woodford v. Ngo*, 548 U.S. at 89-90 (stating that "exhaustion requirements are designed to deal with parties who do not want to exhaust," including those who "conclude —correctly or incorrectly—that exhaustion is not efficient in that party's particular case.").

Plaintiff asserts in his Complaint and deposition that he is being consistently harassed and intimidated by officers at Coxsackie C.F. Exs. to Compl. at p. 20; Pl.'s Dep. at p. 39. Plaintiff also stated in his deposition that he stopped writing grievances because he had been threatened. Pl.'s Dep. at p. 39; *see also* Exs. to Compl. at p. 36. Under *Ross*, threats or other

intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. However, on this record such a contention is inconsistent with Plaintiff's assertions that he did properly grieve the assault, and with Plaintiff's filing of grievances after that time. *See, e.g.*, Pl.'s Opp. at ¶ 20; Seguin Decl. Ex. B; *Crawford v. Baltazar*, 2018 WL 2041711, at *6 (S.D.N.Y. Apr. 30, 2018).

Instead, Plaintiff's allegations amount to a "generalized fear of retaliation" without allegations of any specific threats or other actions that would prevent him from filing a grievance regarding the alleged assault. Such allegations are insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance[.]"); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made.") (internal citation omitted).

Plaintiff also appears to contend that he satisfied the exhaustion requirement via informal means, as in his Complaint he states that he was interviewed by the Inspector General. Compl. at p. 13. However, the described interactions, indicating that prison officials were likely aware of the nature of Plaintiff's complaint, are insufficient to constitute "proper exhaustion." *See Davis v. Doe*, 2017 WL 8640829, at 3 (N.D.N.Y. Dec. 29, 2017). *See also Macias v. Zenk*, 495 F.3d 37,44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.' ") (internal citation omitted). "Regardless of whether ... informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' ... to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Id.* at 43.

Plaintiff has not provided any evidence that could satisfy any of the three circumstances that could excuse failing to exhaust under *Ross*. Plaintiff does not demonstrate that the grievance procedure operated as a dead end in that officers were unable or unwilling to provide relief, or that the administrative scheme was so opaque that it was incapable of use. *Ross v. Blake*, 136 S. Ct. at 1853-54. Nor does Plaintiff sufficiently allege that prison officials " 'misled, threatened, or otherwise deterred' him from utilizing the IGP." *Hooks v. Howard*, 2010 WL 1235236, at *7 (N.D.N.Y. Mar. 30, 2010).

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 85 of 164

Gough v. Morris, Not Reported in Fed. Supp. (2018)

**\*6**  Accordingly, for the foregoing reasons, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that Defendants' Motion be **granted** based upon Plaintiff's failure to exhaust.

### III. JOHN DOE DEFENDANTS

As to the still unidentified John Doe Defendants, I recommend these Defendants be **dismissed** for a number of reasons: (1) Plaintiff's failure to comply with a court order under Fed. R. Civ. P. 16(f);[3] (2) Plaintiff's failure to prosecute under Fed. R. Civ. P. 41(b) and N.D.N.Y.L.R. 41.2(a); and (3) Plaintiff's failure to serve within 90 days under Fed. R. Civ. P. 4(m). I also note that even if Plaintiff had properly named the John Doe Defendants, it would be of no consequence because, as noted above, Plaintiff has failed to exhaust his administrative remedies.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 47) be **GRANTED** and that Plaintiff's claims be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's claims against the John Doe Defendants be **DISMISSED** *sua sponte*; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 7199494

### Footnotes

1    Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). The Named Defendants properly raised the affirmative defense in their Answer to the Complaint. Dkt. No. 18 at ¶ 14.

2    When citing to Plaintiff's submissions, the Court will cite to the pagination assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

3    The District Judge ordered Plaintiff to "take reasonable steps through discovery to ascertain their identities," and "advised that any unnamed individual is not timely served, the action may be dismissed against that defendant." Dkt. No. 9 at p. 12; *see also* Dkt. No. 13 (Decision and Order providing guidance on identifying the John Doe Defendants). Discovery ended in this matter on January 31, 2018. *See* Dkt. No. 41.

4    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 86 of 164

2016 WL 3349316
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michel TOLIVER, Plaintiff,

v.

J. STEFINIK, Correction Officer, Shawangunk
Correctional Facility; J. Gardner, Lieutenant
Hearing Officer, Shawangunk Correctional
Facility; Stone, Corrections Officer, Shawangunk
Correctional Facility; Aube, Sgt. in House Unit,
Shawangunk Correctional Facility; Gaye (John
Doe), Corrections Officer, Shawangunk Correctional
Facility; Keys, Corrections Officer, Shawangunk
Correctional Facility; L. Pingott, Captain (Security),
Shawangunk Correctional Facility; D. Degraff,
Corrections Officer, Shawangunk Correctional
Facility; Sergeant Preston, Sergeant Corrections,
Shawangunk Correctional Facility; R. Cutler,
Corrections Officer, Shawangunk Correctional
Facility; Budziszewski, Corrections Officer,
Shawangunk Correctional Facility; R. Kane,
Corrections Officer, Shawangunk Correctional
Facility; C.O. North; J. Peterson, Defendants.

9:12-CV-00077
|
Signed 06/15/2016

**Attorneys and Law Firms**

MICHEL TOLIVER, 464 Hudson Street, #222, New York,
New York 10014, Plaintiff Pro Se.

OFFICE OF THE NEW YORK, STATE ATTORNEY
GENERAL, The Capitol, OF COUNSEL: CATHY Y.
SHEEHAN, AAG, Albany, New York 12224, Attorneys for
Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**\*1** On January 17, 2012, Plaintiff commenced this civil
rights action, pursuant to 42 U.S.C. § 1983, alleging
that twenty employees of the New York State Department

of Corrections and Community Supervision ("DOCCS")
violated his constitutional rights during his confinement at the
Shawangunk Correctional Facility ("Shawangunk"). See Dkt.
No. 1. By Decision and Order dated May 3, 2012, this Court
dismissed, *sua sponte*, Defendants Schneiderman, Bellamy,
and Prack from the action because the complaint did not state
facts suggesting their personal involvement in the alleged
violations of Plaintiff's constitutional rights. *See* Dkt. No. 9
at 8-10.

On June 28, 2012, Plaintiff filed an amended complaint (Dkt.
No. 27), which, by Decision and Order dated December
6, 2012 (Dkt. No. 85), this Court accepted for filing
against seventeen of the original Defendants, as well as
Correction Officer ("C.O.") North, who was not named in
the original complaint. Liberally construed, the surviving
claims in Plaintiff's amended complaint include (1) a First
Amendment claim, based on Defendants' alleged filing of
false misbehavior reports against Plaintiff, in retaliation for
his pursuit of complaints, grievances, appeals, and Article
78 actions; (2) an equal protection claim based on alleged
discrimination against Plaintiff because of his race, disability,
and/or sexual orientation; (3) a conspiracy claim related to
the retaliation and discrimination claims; (4) a Fourteenth
Amendment claim alleging denial of procedural due process
in connection with various disciplinary proceedings; and (5)
an Eighth Amendment claim for failure to provide adequate
medical care. Dkt. No. 27 at 8-9; Dkt. No. 35. Plaintiff seeks
both monetary and injunctive relief. Dkt. No. 27 at 14.

Defendants filed a motion, pursuant to Fed. R. Civ. P.
12(b)(6), seeking dismissal of Plaintiff's amended complaint
in its entirety, on behalf of all but one of the remaining
Defendants. [1] *See* Dkt. No. 134. Plaintiff responded to the
motion to dismiss, and defense counsel chose not to file a
reply. Dkt. No. 150. On November 17, 2014, Magistrate Judge
Baxter issued a Report-Recommendation recommending
that the Court grant-in-part and deny-in-part Defendants' motion
to dismiss. Dkt. No. 155. This Court adopted Magistrate
Judge Baxter's November 17, 2014 Report-Recommendation,
dismissing Plaintiff's conspiracy claim and all claims against
Defendants Fischer, Maly, and LeClaire.

This Court has previously found that, in litigating this case,
Plaintiff has made numerous

abusive and frivolous filings, which
have included more than twenty

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 87 of 164

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

motions, for preliminary injunctive relief, eight motions to amend the amended complaint, several requests for sanctions, repeated motions to compel discover seeking evidence which is clearly irrelevant to the matter at hand, numerous motions for reconsideration of the Court's denials of Plaintiff's frivolous motions, and countless appeals to this Court of Magistrate Judge Baxter's denials of his frivolous requests.

**\*2** *See* Dkt. No. 233. Since Defendants filed their summary judgment motion, Plaintiff has filed several additional motions to amend or supplement his amended complaint, which this Court denied as frivolous, vexatious, and in clear contravention of repeated notices to Plaintiff "that the Court will not permit [him] to amend the amended complaint in this now four-year old case." *See* Dkt. Nos. 244, 246. Plaintiff filed two Interlocutory Appeals both of which were dismissed by the Second Circuit. *See* Dkt. Nos. 252, 256.

On March 22, 2016, Magistrate Judge Andrew T. Baxter issued a Report-Recommendation recommending that Defendants' summary judgment motion be granted in full. [2] *See* Dkt. No. 249. Specifically, Magistrate Judge Baxter found that Plaintiff's retaliation, equal protection, and Eight Amendment medical indifference claims should be dismissed without prejudice for failure to exhaust all available administrative remedies. *See id.* Further, Magistrate Judge Baxter recommended dismissing Plaintiff's procedural due process claims with prejudice because Plaintiff's factual allegations failed to implicate a liberty interest that would warrant due process protection.

Currently before this Court is Magistrate Judge Baxter's Report-Recommendation, to which neither party has objected.

## I. DISCUSSION

### A. Standard

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." [28 U.S.C. § 636(b)(1)(C)]. However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." [28 U.S.C. § 636(b)(1)(C)].

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a pro se party's failure to object to a report-recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites [28 U.S.C. § 636(b)(1)] and Rules 72, 6(a), and former [6(e) of the Federal Rules of Civil Procedure]).

**\*3** In the present matter, Magistrate Judge Baxter provided Plaintiff adequate notice that he was required to file any objections to the Report-Recommendation, and specifically informed him that failure to object to any portion of the report would preclude his right to appellate review. *See* Dkt. No. 249 at 26. Specifically, Magistrate Judge Baxter informed Plaintiff that "**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); [28 U.S.C. § 636(b)(1)]; [Fed. R. Civ. P. 6(a), 6(e), 72]." Dkt. No. 249 at 26.

Magistrate Judge Baxter clearly provided Plaintiff with sufficient notice of the consequences of failing to object to the Report-Recommendation. Although Plaintiff requested and was granted two extensions of time to file objections, no objections have been filed.

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and, based on the undisputed facts, judgment for the movant is warranted as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* at 295 (quoting *Traguth v. Zuck*,

710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B. Exhaustion**

**\*4** The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1983; 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *see, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford*, 548 U.S. at 90-103.

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 89 of 164

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice" (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

*5 When the Second Circuit decided *Giano*, it also decided four other related cases, further clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and carved out particular instances in which the requirement could be waived or excused. *See* *Hemphill*, 380 F.3d at 686; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ortiz v. McBride*, 380 F. 3d 649 (2d Cir. 2004). Based on these cases, the Second Circuit adopted a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement: (1) whether the administrative remedies were available to the inmate; (2) whether the defendants' own actions inhibited exhaustion, estopping them from raising the defense of exhaustion; (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *See* *Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry to recent cases. *See*, *e.g.*, *Heyliger v. Gebler*, 624 Fed. Appx. 780, 782-83 (2d Cir. 2015); *Davis v. State of New York*, 311 Fed. Appx. 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 Fed. Appx. 89, 91 (2d Cir. 2011).

In their answer to the amended complaint, Defendants properly asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to bringing this federal civil rights action. *See* Dkt. No. 171 at 4. Plaintiff's argument that Defendants waived their right to assert an exhaustion defense by not raising it in their pre-answer motion to dismiss is without merit. *See* Dkt. No. 242-1 at 12; *Villante v. VanDyke*, 93 Fed. Appx. 307, 309 (2d Cir. 2004) (explaining that "[f]ederal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, such as an answer, not that it be the subject of a pretrial motion" and finding that the defendants, "having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment"); *see also* *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (permitting a defendant to amend its answer to state an exhaustion defense). As Magistrate Judge Baxter correctly found, Defendants did not waive the exhaustion defense by not asserting it in their initial motion to dismiss. *See* Dkt. Nos. 104, 171.

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 90 of 164

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

Defendants have submitted an affidavit from Michael Cunningham, the supervisor of the Inmate Grievance Program ("IGP") at Shawangunk listing all of the grievances filed by Plaintiff between February 2011 (the date of Plaintiff's transfer to Shawangunk) and July 2012. *See* Dkt. No. 236-3 at 2. Additionally, Defendants submitted a certified copy of a CORC report showing Plaintiff's appeals to CORC of grievances filed between 2011 and 2015. [3]  *See* Dkt. No. 236-8 at 3-5. This data indicates that Plaintiff filed five grievances at Shawangunk before he filed his initial complaint on January 17, 2012, and that although he fully exhausted two of those claims, they were not exhausted until February and March of 2011, after Plaintiff filed his initial complaint. *See* Dkt. No. 236-10 at 21.

In his response in opposition to Defendants' motion for summary judgment, Plaintiff claims, in conclusory terms, that he submitted many more grievances than Defendants acknowledged in their motion, which the IGRC refused to file, and that he filed additional appeals to CORC, which CORC refused to accept. *See* Dkt. No. 242-1 at 2-3. Plaintiff's amended complaint, although often vague and confusing, appears to allege that he "circulated" or filed "complaints" or grievances on the following dates: March 9, 22, 25, and 30. *See* Dkt. No. 27 at 11-12. Plaintiff attached a letter to his amended complaint sent by DOCCS Deputy Commissioner LeClaire dated April 26, 2011, in response to a complaint from Plaintiff, which reminds Plaintiff that "[a]llegations of misconduct by facility staff should be directed to facility officials through the established grievance mechanism or by writing to the Superintendent." *See* Dkt. No. 27 at 63. Thus, it appears as though Plaintiff may be referring to informal complaints that he failed to properly direct to the established grievance mechanism.

 **\*6** Plaintiff has submitted a copy of one formal grievance, dated March 9, 2011, that does not appear to be reflected on Defendants' spreadsheet. In the amended complaint, however, Plaintiff merely alleges that he "circulated" this grievance to "the above named defendants," so it is unclear whether he properly submitted this grievance to IGRC. *See* Dkt. No. 27 at 11, 63; Dkt. No. 236 at 21; Dkt. No. 243-4 at 31. Further, Plaintiff has not submitted any documentation to suggest that he appealed a denial of the March 9, 2011 grievance. *See* Dkt. No. 27 at 11. Finally, whether Plaintiff properly submitted the March 9, 2011, grievance is unimportant as the substance of that grievance was covered, in much greater detail, in Plaintiff's March 10, 2011 grievance, which was properly submitted to IGRC and appealed. *See* Dkt. No. 236 at 21.

As Magistrate Judge Baxter correctly found, Plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies before he filed his initial complaint. *See* *Jeffreys v. City of new York*, 426 F.3d 549, 554 (2d Cir. 2005) (explaining that where a plaintiff, in response to a motion for summary judgment, provides only their "own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account") (quotation and internal citation omitted); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case") (citations omitted).

Similarly, as Magistrate Judge Baxter correctly found, Plaintiff's claim that CORC sometimes refused to accept his appeals does not create a material issue of fact with respect to the exhaustion issue. Plaintiff has submitted two letters, received by him from CORC, dated July 20, 2011, [4] and June 12, 2012, returning papers to him and advising Plaintiff that appeals of grievances must be submitted through the IGRC at his facility, and not sent directly to CORC for review. *See* Dkt. No. 4-2 at 8-9; Dkt. No. 27 at 70. Only the July 20, 2011 letter is relevant to the exhaustion issue in this case because it pre-dates the filing of Plaintiff's initial complaint, whereas the June 12, 2012, letter was sent and received after the commencement of this action. *See* Dkt. No. 4-2 at 9. It is clear that the July 20, 2011 letter refers to Grievance No. 26770-11, which Plaintiff did ultimately appeal to exhaustion. *See* Dkt. No. 236-10 at 21. While CORC's return of Plaintiff's initial inquiry relating to Grievance No. 26770-11 may have delayed CORC's decision, it was Plaintiff's own mistake that would have caused that delay and would not estop Defendants from using the affirmative defense of exhaustion, nor is it a "special circumstance" under the *Hemphill* factors.

Plaintiff's primary argument as to why his failure to exhaust administrative remedies before filing this action should be excused, is that CORC far exceeded the time limits set by DOCCS regulations in denying his final appeal of Grievance

No. 26770-11. *See* Dkt. No. 242-1 at 4-8. However, it is well-established law in the Second Circuit that a plaintiff must wait for a final decision from CORC before filing an action, even if CORC's decision is untimely under DOCCS internal rules and regulations. *See Casey*, 2015 WL 8008728, at *6 ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory*, 2015 WL 268933, at *12 ("although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense" (citation omitted)). The numerous grievances pursued by Plaintiff in 2011 and 2012, as well as the two appealed grievance decisions, clearly indicate that Plaintiff had access to, and took advantage of, the grievance process and was thus not inhibited from fully utilizing the grievance process. *See* Dkt. No. 236-10 at 21. Therefore, Plaintiff has failed to establish a material issue of fact with respect to the availability of the administrative grievance remedies that might justify Plaintiff's failure to exhaust the administrative grievance process before filing this action.

**\*7** As Magistrate Judge Baxter correctly found, Plaintiff's retaliation, equal protection, and Eighth Amendment medical claims must be dismissed without prejudice for failure to exhaust the administrative grievance process prior to filing this action. While requiring Plaintiff to initiate a new lawsuit now that at least two of his claims have been fully exhausted may seem judicially inefficient, if the resulting decision is favorable to the plaintiff "the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Neal*, 267 F.3d at 123. Moreover, "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Id.*

## C. Due process claims

Defendant's have not argued that Plaintiff failed to fully appeal the disciplinary hearings challenged in the Amended Complaint. *See* Dkt. Nos. 27, 236. Accordingly, as Magistrate Judge Baxter correctly found, the due process claims cannot be dismissed based on failure to exhaust, and must be addressed on the merits. *See* Dkt. No. 249.

The Fourteenth Amendment to the Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). These procedural protections include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)) (other citation omitted). Additionally, the hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (other citation omitted).

To successfully state a claim under section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)); *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In *Sandin*, the Supreme Court held that although states may create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 483-84 (internal citations omitted).

The Second Circuit has refused to set a bright line rule on when confinement becomes atypical. "In order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement ... and to identify with specificity the facts upon which

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 92 of 164

Toliver v. Stefanik, Not Reported in Fed. Supp. (2016)

[their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that confinement in a Special Housing Unit ("SHU"), without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654;

*see Colon v. Howard*, 215 F.3d 227, 231, 232 n.5 (2d Cir. 2000). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

**\*8** "Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 Fed. Appx. 120, 122 (2d Cir. 2008) (citation omitted). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous *and* (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271, 2007 WL 4555932, \*8 (N.D.N.Y. Dec. 19, 2007) (collecting cases) (emphasis in original).

Although all relevant disciplinary proceedings involved Tier II hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock and would not, therefore, trigger due process protection individually, it is appropriate to aggregate two discrete periods in 2011 for due process analysis purposes. During these two discrete periods, Plaintiff served consecutive terms of confinement exceeding 30 days, and all of Plaintiff's disciplinary hearings at Shawangunk were conducted by the same individual, Defendant Gardner. [5] *See* Dkt. No. 236-10 at 17 (citing N.Y. Comp. Codes R. & Regs. Tit. 7 § 253.7(a)(1)(iii)). [6] When aggregated, these two distinct periods constitute a 59 day consecutive period of keeplock served between March 14 and May 11, 2011, and a 64 day consecutive period of keeplock served between October 14 and December 16, 2011. *See* Dkt. No. 236-9 at 7-8. However, as Magistrate Judge Baxter correctly found, Plaintiff's liberty interests were not implicated by the disciplinary proceedings challenged

in the amended complain, even after aggregating the two consecutive periods of keeplock, given the absence of any allegations from Plaintiff about unusually harsh conditions of his keeplock.

Plaintiff's inmate history does not list two misbehavior reports filed by Defendant Budziszewski, which Defendants included with their motion. *See* Dkt. No. 236-6 at 69, 82-84. Plaintiff contends in his amended complaint that there were additional misbehavior reports filed against him in 2011 which are not reflected on the disciplinary history submitted by Defendants. *See* Dkt. No. 27 at 11, 24, 34-35, 48. Plaintiff, however, does not provide any specific allegations to suggest that he served punishment on disciplinary charges brought against him prior to the filing of his amended complaint on June 26, 2012 beyond that reflected in his disciplinary history or in the other disciplinary records submitted by Defendants.

Plaintiff has not submitted any evidence establishing, or even made any allegations, that the conditions he experienced while serving keeplock sentences at Shawangunk were more harsh than typical keeplock conditions. Therefore, as Magistrate Judge Baxter correctly found, none of the periods of keeplock confinement he served would implicate a liberty interest warranting due process protection. *See, e.g., Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, \*7 (W.D.N.Y. July 13, 2006) (finding 77 days in keeplock during which the plaintiff was deprived of TV, phone, packages, and commissary, and was unable to attend Muslim services and classes, did not constitute a liberty interest); *Pilgrim v. Bruce*, No. 9:05-CV-198, 2008 WL 2003792, \*15 (N.D.N.Y. May 7, 2008) (finding that a plaintiff's conclusory allegations, which notably failed to include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subject to more severe conditions than in normal restrictive confinement); *Holmes v. Grant*, No. 03-CIV-3426, 2005 WL 2839123, \*5 (S.D.N.Y. Oct. 25, 2005) (finding that sixty days in the SHU at Shawangunk is "insufficient to constitute a deprivation of a liberty interest").

**\*9** Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's due process claims.

## II. CONCLUSION

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 93 of 164

After carefully considering Magistrate Judge Baxter's Report-Recommendation, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's March 22, 2016 Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' summary judgment motion is **GRANTED in full**; and the Court further

**ORDERS** that Plaintiff's retaliation, equal protection, and Eighth Amendment medical indifference claims are **DISMISSED** without prejudice; and the Court further

**ORDERS** that Plaintiff's procedural due process claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3349316

## Footnotes

1    C.O. North, who, by then, was no longer an active DOCCS employee, had not been served with the amended complaint and was not then represented in this action. *See* Dkt. No. 91. C.O. North has since accepted service, and is currently represented by the Attorney General's Office, as are the other remaining thirteen Defendants.

2    Although Magistrate Judge Baxter's March 22, 2016, Report-Recommendation indicates that the Defendants' summary judgment motion should be granted in part, it is clear upon review that all remaining claims in Plaintiff's amended complaint must be dismissed on the grounds stated. Magistrate Judge Baxter found it unnecessary, as does this Court, to address multiple grounds on which to dismiss the same claims. Therefore, the Report-Recommendation actually recommends granting Defendants' summary judgment motion in full, terminating the instant action in its entirety.

3    The information from these two sources was collated in a spreadsheet summarizing Plaintiff's grievance filings and appeals, attached as Appendix A to Defendants' Memorandum of Law. *See* Dkt. No. 236-10 at 20-21.

4    Magistrate Judge Baxter's March 22, 2016, Report-Recommendation refers to this as the July 11, 2011 letter, which was the date on which Plaintiff received an adverse decision to his SHG-26770-11 Grievance; however, the actual letter from Karen Bellamy, Director of IGP, is dated July 20, 2011.

5    Plaintiff began serving more severe disciplinary sentences following disciplinary proceedings in July 2012, but that, and subsequent disciplinary hearings occurred after Plaintiff filed his amended complaint, and are not part of this action. *See* Dkt. No. 236-9 at 6-7.

6    The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the due process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore*, No. 9:08-CV-085, 2010 WL 980233, *5 (N.D.N.Y. Mar. 15, 2010)* (collecting cases).

**End of Document**                                        © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk Darnell v. Pineiro, 2nd Cir., February 21, 2017

2011 WL 1483924
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Allen SMITH, Plaintiff,
v.
Officer KNEE and Capt. Richardson, Defendants.

No. 08 Civ. 11079(SAS).
|
April 18, 2011.

**Attorneys and Law Firms**

Allen Smith, Marcy, NY, pro se.

David A. Rosinus, Jr., Assistant Corporation Counsel, New York City Law Department, New York, NY, for Defendants.

*OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

**I. INTRODUCTION**

*1 Allen Smith, proceeding pro se, filed this action pursuant to section 1983 of Title 42 of the United States Code ("section 1983") against Officer Nee [1] and Captain Richardson alleging violations of his constitutional rights. Defendants now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the following grounds: (1) plaintiff failed to exhaust administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"); and (2) plaintiff failed to show that defendants exhibited deliberate indifference toward him in violation of his constitutional rights. [2] For the reasons set forth below, defendants' motion for summary judgment is granted.

**II. BACKGROUND**

Smith is currently an inmate at Mid–State Correctional Facility. At the time of the incident, he was a pretrial detainee in the Otis Bantum Correctional Center ("OBCC") on Rikers Island. [3] Upon his arrival at OBCC on November 11, 2008, at approximately 2:00 a.m., Smith was placed in the punitive segregation area at 1 South, Isolation Unit, 2 Cell. [4] He alleges that the cell had "trash everywhere" and a "strong foul od[o]r" which he "discovered was fe[c]es and urine on the floor and mattress." [5] Smith further alleges that the light did not function and the toilet was also covered with feces. [6] Smith testified that he complained about the conditions of his cell to Officer Nee, who was on duty at the time. [7] Officer Nee immediately changed plaintiff's mattress [8] and brought plaintiff a soap ball and some tissues. [9] Smith used the soap ball and tissues to clean the area of the cell where he put his mattress. [10] Smith testified that Officer Nee told him that he could not change cells at that time of night. [11] Officer Nee told Smith that he "did what he could do to ... straighten it out a little bit," and that he would have to discuss the matter with the sergeant on duty the following day. [12] Smith also alleges that Captain Richardson was "told numerous times about [his] problem and [his] request for another cell." [13] However, Smith testified that he never spoke to Richardson himself. Nor did Smith specify how Richardson was made aware of any of his complaints . [14] Smith remained in the same cell for a period of "thirty-something days." [15]

Smith alleges that as a result of the conditions of his cell, he suffered from "los[s] of sleep, los[s] of appetite, [a]nd developed fear of becoming sick in a unsanitized and unhealthy envirement [sic]." [16] Smith testified that he decided to plead guilty to the then-pending criminal charge "because [he] couldn't live [in his cell] any longer." [17]

Smith claims to have adequately grieved the conditions of his cell; he alleges that he put a piece of paper, marked "grievance," on the door of his cell, which an officer picked up. [18] He did not retain a copy of this grievance. [19] Smith testified that he submitted "about three or four" grievances to which he did not receive a response. [20] Smith then wrote to several outside agencies, such as the Legal Aid Society, [21] seeking assistance and basically "left [his case] in their hands." [22]

*2 Smith now seeks money damages allegedly caused by the unsanitary conditions of his cell. [23]

**III. LEGAL STANDARDS**

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [24] " 'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.' " [25] "[T]he burden of demonstrating that no material fact exists lies with the moving party ...." [26] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence ... on an essential element of the nonmovant's claim." [27]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. [28] The non-moving party must do more than show that there is " 'some metaphysical doubt as to the material facts' " [29] and " 'may not rely on conclusory allegations or unsubstantiated speculation.' " [30] However, " 'all that is required [from the non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " [31]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor. [32] However, " 'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.' " [33] " 'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.' " [34] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." [35]

When the non-moving party " 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.' " [36] If the movant does not meet its burden of production, then the court must deny summary judgment even if the non-moving party does not oppose the motion. [37] Moreover, the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement. [38] The court must be satisfied that the movant's assertions are supported by evidence in the record. [39]

Although the same standards for dismissal apply where a pro se litigant is involved, courts must give pro se litigants special latitude in responding to a summary judgment motion. [40] In particular, courts must apprise pro se plaintiffs of the consequences of failing to respond to a motion for summary judgment. [41] In this case, as required by Local Rule 56.2, defendants provided plaintiff with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," dated November 8, 2010, which sets out the responsibilities of a pro se plaintiff in responding to a motion for summary judgment. Despite receipt of this notice, Smith failed to respond.

### B. PLRA—Exhaustion Requirement and Scope

**\*3** The PLRA mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions. [42] The PLRA's exhaustion requirement is mandatory. [43] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all."* [44] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time the initial complaint was filed as "[s]ubsequent exhaustion after suit is filed ... is insufficient." [45] Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [46]

Before bringing suit, an inmate must fully present his claim for internal resolution within the correctional facility where he is incarcerated and the New York State Department of Correctional Services ("DOCS"). The Inmate Grievance Program ("IGP") is the relevant administrative vehicle in New York. [47] In order to survive a motion to dismiss, an inmate must fully exhaust all administrative remedies, at all levels of appeal. [48] Thus, an inmate's claim is not exhausted until he appeals to CORC and receives a final

decision regarding his grievance.[49] Only upon such a final determination by CORC is an inmate deemed to have exhausted his administrative remedies.[50]

"While the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory,"[51] it has also recognized the following three exceptions to the exhaustion requirement: "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement."[52] The Second Circuit has held that "alerting the prison officials as to the nature of the wrong for which redress is sought," does not constitute proper exhaustion.[53] "[N]otice alone is insufficient because '[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance' and '[t]he prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules.' "[54]

**C. Deliberate Indifference Under 42 U.S.C. § 1983**

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....[55]

**\*4** Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[56] "The purpose of [ section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[57] In order to state a claim under section 1983, a plaintiff must show; (1) that the conduct complained of was committed by a person or entity acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[58] Furthermore, imposition of liability under section 1983 requires a defendant's direct involvement in the alleged constitutional violation.[59]

As a pre-trial detainee at the time of the incident, Smith's claims are governed by the Fourteenth Amendment.[60] In substance, Smith alleges a claim under the Eighth Amendment, which applies to the States through the Fourteenth Amendment and enjoins them from inflicting cruel and unusual punishments.[61] The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation if the prisoner satisfies both an objective and a subjective prong.[62]

Under the objective prong, an inmate must prove "that the deprivation alleged is 'objectively sufficiently serious' such that plaintiff was denied 'the minimal civilized measure of life's necessities.' "[63] This includes "not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain."[64] The condition, however, must be "one of urgency that may produce death, degeneration, or extreme pain."[65] This is "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."[66] Thus, the Eighth Amendment protects only "an inmate's right to be free from conditions of confinement that impose an excessive risk to the inmate's health or safety."[67]

The subjective prong requires a showing that defendant acted with a "sufficiently culpable state of mind," *i.e.,* with 'deliberate indifference to inmate health or safety.' "[68] The level of culpability must be something "more than negligence, but less than conduct undertaken for the very purpose of causing harm."[69] Under the subjective prong, plaintiff must demonstrate that defendants engaged in conduct that was

more than simply negligent. [70] Thus, deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it." [71]

## IV. DISCUSSION

### A. Smith Has Failed to Exhaust Administrative Remedies

Defendants argue that Smith has not exhausted the required administrative remedies. [72] Smith contends that he submitted "about three or four" grievances about the alleged conditions of his cell, but that he did not receive a response to these grievances . [73] Smith testified that he "figured [the grievance system at OBCC] worked the same as it works anywhere else ... [where] you fill out your grievance and send it to the grievance office." [74] However, instead of appealing this alleged lack of a response, he wrote several outside agencies describing his situation . [75]

 **\*5** After submitting an initial informal grievance about the conditions of his cell, Smith failed to exhaust the remaining levels of appeal. The Second Circuit does not excuse a failure to exhaust when an inmate/plaintiff admittedly did not appeal to the highest available level of administrative review and provides no justifiable explanation for his failure to do so. [76] Smith has not submitted any opposition papers, nor has he attempted to justify his failure to meet the exhaustion requirement. However, this Court need not address whether Smith fully exhausted his administrative remedies as it is clear that Smith's claim is fatally flawed on the merits.

### B. 📑 Section 1983 Claim of Deliberate Indifference

In order to prevail on his 📑 section 1983 claim for the violation of his Eighth Amendment right, Smith must show that Officer Nee and Captain Richardson were directly involved in the alleged violation of his constitutional rights. Smith has not shown that Richardson was directly involved in the allegedly unsanitary conditions of his cell or in any failure to mitigate the situation. [77] Although Smith alleges that Richardson "was told numerous times about [his] problem," [78] he has failed to submit any evidence to show that Richardson even knew of the conditions of his

cell. [79] In fact, Smith admitted that he had not personally spoken with Richardson, and conceded that he was not actually aware whether Richardson had ever learned of the alleged conditions of his cell. [80] Moreover, Richardson states that he "only learned about the allegedly filthy conditions of Plaintiff's cell after reading Plaintiff's Complaint in this lawsuit." [81] Because Smith has failed to establish that Richardson was personally involved in the alleged constitutional violations, the claim against Richardson must be dismissed.

In order to establish liability as to Officer Nee, Smith must satisfy both the objective and subjective prongs of an Eighth Amendment violation. Assuming that Smith experienced a sufficiently serious deprivation under the objective prong based on the unsanitary conditions of his cell, [82] Smith still fails to establish that Officer Nee acted with a "sufficiently culpable state of mind" to satisfy the subjective prong—*i.e.,* deliberate indifference. Reading Smith's pro se Complaint liberally, [83] Smith alleges that Nee knew of and disregarded the conditions of his cell. [84] Despite these allegations, Smith has failed to offer any evidence that Officer Nee was deliberately indifferent to the conditions of his cell. Although Nee did not place Smith in a different cell as Smith would have preferred, [85] Smith testified that Nee changed Smith's mattress at 2:00 a.m. on the day of Smith's arrival to OBCC, [86] provided him with soap and tissues to clean up the cell, [87] and advised him that he would have to "wait until the next day to straighten [the situation] out." [88] Moreover, Smith stated that Nee had "[done] what he could do to-to-straighten it out a little bit." [89] Officer Nee took reasonable measures to abate Smith's situation and did not exhibit deliberate indifference to Smith's needs. Therefore, the claim against Nee must be dismissed.

## V. CONCLUSION

 **\*6** For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's Complaint is dismissed in its entirety. The Clerk of Court is directed to close this motion (Docket # 9) and this case.

## All Citations

Not Reported in F.Supp.2d, 2011 WL 1483924

## Footnotes

1    Plaintiff refers to Officer Nee as "Officer Knee."

2    Defendants' Memorandum of Law in Support of Motion ("Def.Mem.") at 1–2.

3    *See* Complaint ("Compl.") § II. D.; Defendants' Rule 56.1 Statement of Material Facts ("Def.56.1") ¶¶ 1–2.

4    *See* Compl. § II. D.

5    *Id.*

6    *See id.*

7    *See* Deposition of Allen Smith ("Pl.Dep."), Ex. A to Declaration of David A. Rosinus, Defendants' Counsel, in Support of Motion at 18:5–9; 56.1 Statement ¶¶ 6–7.

8    *See* Compl. § II. D.; Pl. Dep. at 20:7–14.

9    *See* Compl. § II. D.; Pl. Dep. at 24:10–25:1.

10    *See* Pl. Dep. at 24:23–25:1.

11    *See id.* at 21:16–18.

12    Pl. Dep. at 18:22–19:1. *See also id. at* 20:15–21:18.

13    Compl. § II. D.

14    *See* Def. 56.1 ¶ 11; Pl. Dep. at 27:2–19.

15    Pl. Dep. at 23:14–17.

16    Compl. § III.

17    Pl. Dep. at 32:10–15.

18    *See id.* at 33:3–17,

19    *See id.* at 33:20–21.

20    *Id.* at 34:6–12.

21    *See id.* at 27:17–23.

22    *Id.* at 36:18–21.

23    *See* Compl. § V.

24    Fed.R.Civ.P. 56(c).

25    *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir.2009) (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 34 (2d Cir.2008)).

26    *Miner v. Clinton County, N.Y.,* 541 F.3d 464, 471 (2d Cir.2008).

27    *Jaramillo v. Weyerhaeuser Co.,* 536 F.3d 140, 145 (2d Qr.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).

28    *See id.*

29    *Higazy v. Templeton,* 505 F.3d 161, 169 (2d Cir.2007) (quoting *Matsushita Elec. Indus, v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

30    *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001)).

31    *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 206 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

32    *Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir.2009) (citing *Anderson,* 477 U.S. at 247–50, 255).

33    *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 264 (2d Cir.2009) (quoting *Raskin v. Wyatt Co.,* 125 F .3d 55, 65 (2d Cir.1997)).

34    *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (quoting *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997)).

35    *Pyke v. Cuomo,* 567 F.3d 74, 76 (2d Cir.2009).

36    *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004) (quoting *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001)).

37    *See id.*

38    *See id.*

39    *See id.*

40    *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (a pro se plaintiff's papers should be interpreted "to raise the strongest arguments they suggest").

41    *See id.* at 282.

42    *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

43    *See Neal v. Gaord,* 267 F.3d 116, 122 (2d Cir.2001).

44    *Id.* (quotation marks and citation omitted, emphasis in original).

45    *Id.*

46    *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

47    DOCS established the IGP with specific procedures which must be followed in order for a prisoner to exhaust his administrative remedies. See N.Y. Correct. Law § 139 (2003) (directing the DOCS Commissioner to establish grievance resolution committees in each correctional facility under his jurisdiction); N.Y. Comp.Codes R. & Regs., tit. 7, § 701.1 (2006) (instituting IGP). The grievance system available to an inmate incarcerated in New York is a three-step process. First, the formal grievance process is started by an inmate submitting a written complaint on a readily available Inmate Grievance Complaint Form, or on plain paper, containing a concise, specific description of the problem and the requested action. The grievance must be submitted to the Grievance Clerk of the Inmate Grievance Resolution Committee ("IGRC") within fourteen calender days of the alleged occurrence. *See* N.Y. Comp.Codes R. & Regs., tit. 7, § 701.7(a)(1). The second step of the administrative procedure is filing an appeal with the Superintendent of the facility within four working days after receipt of the IGRC's written response, if that response unfavorable. *See id.* § 701.7(b). The third step is to appeal to the Central Office Review Committee ("CORC") for a final administrative determination within four working days after receipt of the Superintendent's written response, if unfavorable. *See id.* § 701.7(c). These grievance procedures are outlined in the inmate behavior booklets which are routinely distributed to inmates when they enter a correctional facility. *See Arnold v. Goetz,* 245 F.Supp.2d 527, 539 (S.D.N.Y.2003).

48    *See Porter,* 534 U.S. at 524 ("[E]xhaustion is a prerequisite to suit.").

49    *See Hemphill v. State of New York,* 380 F.3d 680, 682 (2d Cir.2004).

50    *See id. See also Sulton v. Greiner,* No. 00 Civ. 727, 2000 WL 1809284, at *4 (S.D.N.Y. Dec. 11, 2000) ("[B]ecause Sulton failed to exhaust his administrative remedies by appealing the grievance to the CORC, his claims of medical indifference will be dismissed pursuant to 42 U.S.C. § 1997e.").

51    *Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801, 2009 WL 1835939, at *3 (S.D.N.Y. June 26, 2009).

52    *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006).

53    *Marias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) (quotation marks, citation and brackets omitted) (finding that inmate could not satisfy the PLRA's exhaustion requirement by making informal complaints to prison officials).

54    *Id.* (quoting *Woodford v. Ngo,* 548 U.S. 81, 95 (2006) (brackets in original)).

55    42 U.S.C. § 1983.

56    *Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist.,* 423 F.3d 153, 159 (2d Cir.2005) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)). *Accord* *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) (" '[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.' ") (quoting *Chapman v. Houston Welfare Rights Org,* 441 U.S. 600, 617 (1979)).

57    *Wyatt v. Cole,* 504 U.S. 158, 161 (1992).

58    *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir.2004).

59    In section 1983 suits, "a plaintiff must plead that each Governmentofficial defendant, through the official's own individual actions, has violated the Constitution." *Iqbal v. Ashcroft,* 129 S.Ct. 1937, 1948 (2009). *Accord* *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' ") (quoting *Moffitt v. Town of Brookfteld,* 950 F.2d 880, 885 (2d Qr.1991)").

60    *See* *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Qr.2000). In the case of a pre-trial detainee, " 'the cruel and unusual punishment proscription of the Eighth Amendment to the Constitution does not apply,' because 'as a pre-trial detainee, [the plaintiff is] not being punished.' Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the ... Due Process Clause of the Fourteenth Amendment if held in state custody." *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Qr.2009) (quoting *Cuoco,* 222 F.3d at 106 (alteration in original)).

61    *See* *Robinson v. California,* 370 U.S. 660, 666 (1962). "[T]he standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." *Thomas v. Nassau County Corr. Ctr.,* 288 F.Supp.2d 333, 337 (E .D.N.Y.2003).

62    *See* *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

63    *Trammell v. Keane,* 338 F.3d 155, 162 (2d Cir.2003) (quoting *Farmer,* 511 U.S. at 834).

64    *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977). *Accord Brady v. Griffith,* No. 95 Civ. 2364, 1998 WL 814630, at *3 (S.D.N.Y. Nov. 23, 1998).

65    *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

66    *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999).

67    *Farmer,* 511 U.S. at 837.

68    *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (quoting *Farmer,* 511 U.S. at 837).

69    *Hathaway,* 37 F.3d at 66.

70    *See Bryant v. Mafucci,* 923 F.2d 979, 983 (2d Cir.1991) (defining gross negligence or reckless conduct as conduct "where defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk").

71    *Farmer,* 511 U.S. at 847.

72    *See* Def. Mem. at 3–5.

73    Pl. Dep. at 34:8–12.

74    *Id.* at 33:24–34:5.

75    *See id.* at 27:17–23.

76    *See* 🔖 *Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004) (stating that "in the absence of any justification for not pursuing available remedies," plaintiff/inmate's federal lawsuits were properly dismissed for failure to exhaust).

77    *See* Def. Mem. at 8.

78    Compl. § II.D.

79    *See* Def. Mem. at 8; *Accord* Declaration of Defendant Captain Freddy Richardson ("Richardson Decl.") ¶¶ 3–4.

80    *See* Pl. Dep. at 27:6–28:16.

81    Richardson Decl. ¶¶ 3–4.

82    *See* 🔖 *Blissett v. Coughlin,* 66 F.3d 531, 537 (2d Cir.1995) (noting that, "[u]nder contemporary standards of decency, a jury could justifiably consider incarceration of [an inmate] for several days in a dark, stuffy, feces-smeared ... cell [to be a] violation of [his] Eighth Amendment right to be free from cruel and unusual conditions of confinement").

83    *See, e.g., Baldwin County Welcome Ctr. v. Brown,* 446 U.S. 147, 164 (1984) ("[P]ro se pleadings are to be given a liberal construction.").

84    *See* Compl. § II.D.

85    *See* Pl. Dep. at 20:17.

86    *See id.*

87    *See id.*

88    *Id.* at 18:13–14.

89    *Id.* at 18:24–19:1.

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

307 Fed.Appx. 469
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Franklyn BURGOS, Plaintiff–Appellant,

v.

T.S. CRAIG, Warden, FCI Raybrook; D. Marini,
Clinical Director; Liberty, Defendants–Appellees.

No. 06–5505–pr.
|
Dec. 15, 2008.

**Synopsis**
**Background:** Prisoner brought action against prison
officials, alleging that they were deliberately indifferent to
his medical needs. The United States District Court for the
Northern District of New York, Strom, J., entered summary
judgment in defendants' favor, and prisoner appealed.

**Holding:** The Court of Appeals held that prisoner required
to exhaust administrative remedies as prerequisite to filing
action.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (1)

[1]     **Prisons** 🔑 **Particular Cases**

        Prisoner was required to exhaust administrative
        remedies as prerequisite to filing action
        against prison officials for alleged deliberate
        indifference to prisoner's medical needs. Prison
        Litigation Reform Act of 1995, § 101(a), 🚩 42
        U.S.C.A. § 1997e(a).

        42 Cases that cite this headnote

**\*470** UPON DUE CONSIDERATION of this appeal from a
judgment of the United States District Court for the Northern
District of New York, it is hereby ORDERED, ADJUDGED,
AND DECREED, that the judgment is AFFIRMED.

**Attorneys and Law Firms**

Franklin Burgos, White Deer, PA, pro se.

Paula Ryan Conan, for Glenn T. Suddaby, U.S. Attorney
for the Northern District of New York, Syracuse, N.Y., for
Respondent.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon.
DEBRA A. LIVINGSTON, Circuit Judges, and Hon. JOHN
G. KOELTL, [*] District Judge.

### *SUMMARY ORDER*

**\*\*1** Plaintiff–Appellant appeals from a judgment of the
District Court (Strom, J.) granting Defendants–Appellees'
motion for summary judgment on Plaintiff–Appellant's claim
that Defendants were deliberately indifferent to Plaintiff's
medical needs during his incarceration. Plaintiff sought $1
million in damages and immediate medical attention. We
assume the parties' familiarity with the facts, procedural
history, and scope of issues presented on appeal.

The district court's grant of summary judgment is reviewed
de novo, construing the evidence in the light most favorable
to the nonmoving party. *See Jaramillo v. Weyerhaeuser Co.,*
536 F.3d 140, 145 (2d Cir.2008). "However, reliance upon
conclusory statements or mere allegations is not sufficient
to defeat a summary judgment motion." *Davis v. New
York,* 316 F.3d 93, 100 (2d Cir.2002). A district court's ruling
on whether a plaintiff has exhausted administrative remedies
under the Prison Litigation Reform Act, 18 U.S.C. § 3626,
28 U.S.C. § 1932, is also reviewed de novo. *See Ortiz v.
McBride,* 380 F.3d 649, 653 (2d Cir.2004).

Under the Prison Litigation Reform Act, "[n]o action shall
be brought with respect to prison conditions under section
1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison, or other correctional facility until
such administrative remedies as are available are exhausted."
42 U.S.C. § 1997e(a). The exhaustion requirement extends
to federal prisoners asserting actions under *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See* *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). It must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient. *See* *Neal v. Goord,* 267 F.3d 116, 121–22 (2d Cir.2001), *abrogated in part on other grounds by* *Porter,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." **\*471** *Porter,* 534 U.S. at 532, 122 S.Ct. 983. Federal prisoners have twenty days after an incident to request an administrative remedy, 28 C.F.R. § 542.14(a), and twenty days to appeal an unfavorable decision to the regional director, with an additional appeal to general counsel, *id.* § 542.15(a). Extensions of these time limits are sometimes available. *See id.* §§ 542.14(a), 542.15(a).

In this case, Plaintiff–Appellant effectively concedes that he sued just a few days after requesting administrative remedies, and before there was any decision on his administrative request. Assuming arguendo that Plaintiff–Appellant subsequently exhausted his administrative remedies, that is not enough to save his suit, because he is required to have properly exhausted before he sues. The inmate's request for a continuance was based on a statute that has been amended in relevant part and is no longer effective.

 **\*\*2** We have considered the Plaintiff–Appellant's remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

**All Citations**

307 Fed.Appx. 469, 2008 WL 5210890

## Footnotes

\*    The Honorable John G. Koeltl, District Judge for the Southern District of New York, sitting by designation.

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 104 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

🚩 KeyCite Red Flag - Severe Negative Treatment

Report and Recommendation Adopted in Part, Rejected in Part by Sawyer v. New York State Dept. of Correctional Services, W.D.N.Y., October 28, 2015

2015 WL 6644112

Only the Westlaw citation is currently available.

United States District Court,

W.D. New York.

Trazz SAWYER, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Brian Fischer, Commissioner, Dept. of Corr. Services, Mark Bradt, former Superintendent of Elmira Corr. Facility, S.E. Racette, Superintendent, Elmira Corr. Facility, S.J. Wenderlich, Deputy Superintendent of Security, Raymond Coveny, Captain, Elmira Corr. Facility, Jeffrey Gray, Lieutenant, Elmira Corr. Facility, Sgt. Michael Backer, Sergeant, Elmira Corr. Facility, Tim Sewalt, Corr. Officer, Elmira Corr. Facility, D.J. Knuth, Corr. Officer, Elmira Corr. Facility, Jason Elliott, Corr. Officer, Elmira Corr. Facility, and Karen Bellamy, Director, Inmate Grievance Program, Defendants.

No. 11–CV–00152S(F).

|

Signed June 30, 2015.

**Attorneys and Law Firms**

Trazz Sawyer, Moravia, NY, pro se.

Eric T. Schneiderman, Attorney General, State of New York, Kathleen M. Kazcor, Assistant Attorney General, of Counsel, Buffalo, NY, for Defendants.

REPORT and RECOMMENDATION

LESLIE G. FOSCHIO, United States Magistrate Judge.

*JURISDICTION*

**\*1** This case was referred to the undersigned by Honorable William M. Skretny on October 29, 2014, for all pretrial matters including preparation of a report and recommendation on dispositive motions. The matter is presently before the court on Defendants' motion to dismiss (Doc. No. 23), filed November 28, 2014.

*BACKGROUND*

On February 23, 2011, Plaintiff Trazz Sawyer ("Plaintiff" or "Sawyer"), proceeding *pro se,* commenced this civil rights action pursuant to 🔖 42 U.S.C. § 1983, alleging Defendants, employees of New York State Department of Correctional Services ("DOCCS"),[1] at Elmira Correctional Facility ("Elmira" or "the correctional facility"), engaged in conduct resulting in numerous constitutional violations against Plaintiff. On March 7, 2012 (Doc. No. 8) ("March 7, 2012 Order"), District Judge Michael A. Telesca, *inter alia,* screened the Complaint pursuant to the criteria of 🔖 28 U.S.C. §§ 1915(e) and 1915A, dismissing some claims and Defendants, allowing other claims to proceed, and granting Plaintiff until April 12, 2012 to file any amended complaint, which the United States Marshal was directed to serve upon Defendants.

On April 20, 2012, Plaintiff filed the Amended Complaint (Doc. No. 9) ("Amended Complaint"), asserting nine claims for relief, including, as relevant here, Eighth Amendment claims for failure to protect, deliberate indifference and cruel and unusual punishment against former Superintendent of Elmira Mark Bradt ("Bradt"), Amended Complaint ¶¶ 27–30 ("Third Claim"), Lieutenant Jeffery Gray ("Gray"), Amended Complaint ¶¶ 36–38 ("Fifth Claim"), and Correctional Officer Jason Elliott ("Elliott"), Amended Complaint ¶¶ 64–69 ("Ninth Claim"). Plaintiff's Third Claim also alleges denial of due process by Defendant Bradt. Amended Complaint ¶ 30. On March 13, 2014 (Doc. No. 11) ("March 13, 2014 Order"), Judge Telesca stated "[t]he amended complaint has been screened by the Court with respect to the 🔖 28 U.S.C. §§ 1915(e) and 1915A criteria." March 13, 2014 Order at 1.

On August 6, 2014, a motion seeking dismissal of the action (Doc. No. 14) ("First Motion to Dismiss"), was filed by Defendants Backer, Coveny, Fischer, Knuth, Sewalt, and Wenderlich. On November 28, 2014, the instant motion seeking dismissal of the action (Doc. No. 23) ("Second Motion to Dismiss"), was filed by Defendants Bradt, Gray and Elliott (together, "Defendants"), supported by the attached Defendants' Memorandum of Law in Support of Motion to Dismiss (Doc. No. 23–1) ("Defendants' Memorandum"), and an appendix of unpublished decisions

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 105 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

on which Defendants rely (Doc. No. 23–2) ("Unpublished Decisions Appendix"). On December 18, 2014, Plaintiff filed Plaintiff's Second Memorandum of Law in Opposition to Defendants Motion to Dismiss (Doc. No. 25) ("Defendant's Response").

In a Report and Recommendation filed December 23, 2014 (Doc. No. 26) ("December 23, 2014 R & R"), the undersigned recommended the First Motion to Dismiss be granted. No objections to the December 23, 2014 R & R were filed and, by text order entered January 14, 2015, District Judge William M. Skretny adopted the R & R (Doc. No. 27) ("January 14, 2015 Order"), and the action was dismissed as against Defendants Backer, Coveny, Fischer, Knuth, Sewalt, and Wenderlich. On February 20, 2015, Defendants filed Defendants' Memorandum of Law in Further Support of the Second Motion to Dismiss (Doc. No. 29) ("Defendants' Reply"). Oral argument was deemed unnecessary.

**\*2** Based on the following, Defendants' Second Motion to Dismiss should be GRANTED in part and DENIED in part.

### FACTS [2]

At all times relevant to this action, Plaintiff Trazz Sawyer ("Plaintiff" or "Sawyer"), was incarcerated at Elmira Correctional Facility ("Elmira" or "the correctional facility"). Plaintiff's claims against Defendants Bradt, Gray, and Elliott arise from an alleged scheme at the correctional facility in which certain unidentified DOCCS employees who worked in the correctional facility's mess hall were stealing boxes of meat from the correctional facility by transferring the food from the correctional facility to a state vehicle, and then to their personal vehicles by which the food was then driven to the thieving employee's homes. Plaintiff claims the thieving DOCCS employees shared some of the stolen food with other inmates in return for the inmates' cooperation by not reporting the thefts. Plaintiff claims that after Plaintiff reported the theft to other DOCCS employees, the inmates who had benefited from the alleged thefts made physical threats against Plaintiff, calling plaintiff a "rat" and snitch," which DOCCS employees ignored. Plaintiff also filed several inmate grievances regarding the alleged threats against him, including a grievance of February 8, 2008 ("February 8, 2008 grievance"), none of which were found to have any merit.

At 11:00 A.M. on February 28, 2008, an unidentified gallery officer opened Plaintiff's cell door despite the fact that

Plaintiff was not scheduled to attend any program at that time. Plaintiff looked out of the open cell door, and was attacked by two unidentified inmates who punched Plaintiff in the face and slashed him several times with a weapon, resulting in two deep cuts to Plaintiff's arm requiring 28 staples to close, as well as a cut to his chest and face ("the assault"). Plaintiff reported the assault to a corrections officer making his rounds, who arranged for Plaintiff to be escorted to the correctional facility's hospital, subsequent to which Plaintiff was placed in the correctional facility's Special Housing Unit ("SHU"). On February 29, 2008, Plaintiff was charged in an Inmate Misbehavior Report ("the Misbehavior Report") with self-harm based on the injuries Plaintiff sustained during the assault. On March 17, 2008, Plaintiff, following a Tier III Superintendent's Hearing, was found guilty of self-harm and sentenced to six months SHU confinement with loss of personal property and mail. Plaintiff ultimately served only 60 days in SHU during which he maintains he was served food that was tampered with and continued to receive threats, was harassed and was "poked with a needle like object" that caused Plaintiff further stress, *i.e.,* a fear of infection, until he was able to take an HIV/AIDS test several months later. Amended Complaint ¶ 20. Plaintiff maintains he although knew "that making such outlandish sounding claims would make him sound not too mentally sound and like a person who would harm himself by cutting," it was clear no correctional officer truly believed Plaintiff was mentally unsound because Plaintiff was never offered mental or psychological care. *Id.*

**\*3** Plaintiff claims Defendant Bradt, as former Elmira Superintendent, supervised all DOCCS employees at the correctional facility, was aware of each grievance filed, and in receipt of Plaintiff's claim that a physical assault against him by other inmates was imminent, yet failed to appoint staff to properly investigate Plaintiff's complaints, failed to protect Plaintiff from the threatened assault and was deliberately indifferent to Plaintiff's risk of harm. According to Plaintiff, despite repeatedly complaining to Bradt, prior to the assault, that a "hit" had been placed on him and that corrections officers were calling Plaintiff a "snitch" and "rat" because Plaintiff had complained about the food theft, Bradt failed to provide Plaintiff with any protection. Amended Complaint ¶ 30. Plaintiff further maintains Bradt violated Plaintiff's Fourteenth Amendment due process rights by appointing to preside over the Tier III disciplinary hearing a hearing officer who had previously been appointed to investigate Plaintiff's food theft complaints against the hearing officer's co-workers and friends. *Id.* ¶ 29.

Case 9:19-cv-00428-BKS-TWD Document 44 Filed 08/05/20 Page 106 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

Plaintiff alleges that Defendant Gray investigated Plaintiff's grievances and claims prior to the assault, including a February 13, 2008 grievance, EL–984–08, concerning plots by officers and other inmates to harm Plaintiff, had information that Plaintiff had been labeled a "snitch" and "rat," and knew inmates so labeled were often assaulted such that Gray was aware of the need to protect Plaintiff from the threatened assault. Amended Complaint ¶¶ 36–37. According to Plaintiff, because Gray disliked Plaintiff for reporting the food theft, Gray was deliberately indifferent to the threats directed toward Plaintiff and then supported the self-harm Misbehavior Report to protect staff from culpability for the thefts. *Id.* ¶ 38.

With regard to Defendant Elliott, Plaintiff maintains that while housed in SHU following the assault, Elliott twice physically assaulted Plaintiff by pricking Plaintiff with a needle or needle-like object, and that following the second assault, Plaintiff noticed a small prick mark on his hand from which blood issued when squeezed. Amended Complaint ¶¶ 64–66. Plaintiff had to wait months for an HIV/AIDS test, the results of which were negative, but that Plaintiff suffered much stress while awaiting the test results. *Id.* ¶ 69.

### *DISCUSSION*

#### 1. Service of Amended Complaint
Preliminarily, although Defendants argue in support of their Second Motion to Dismiss that the Amended Complaint was not timely served, Defendants' Memorandum at 2–6, the undersigned, in the December 23, 2014 R & R, recommended this same argument made by Defendants in support of the First Motion to Dismiss be denied, December 23, 2014 R & R at 12–13, and that recommendation was adopted by Judge Skretny. January 14, 2015 Order. Accordingly, that decision is now the law of the case and applies with equal force to the Second Motion to Dismiss. *Rezzonico v. H & R Block, Inc.,* 182 F.3d 144, 148 (2d Cir.1999) ( "The law of the case doctrine is similar to the issue preclusion prong of *res judicata* in that it limits relitigation of an issue once it has been decided."). Alternatively, although Plaintiff argued in opposition that the Amended Complaint was timely served, Plaintiff's Response at 4–6, Defendants, by failing in their Reply, filed February 20, 2015, to argue in further support of the argument have effectively conceded it. *See Ceglia v. Zuckerberg,* 2013 WL 1208558, at * 20 (W.D.N.Y. Mar. 26, 2013) (citing cases), *report and recommendation adopted by*

2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd,* 600 Fed Appx. 34 (2d Cir. Apr. 20, 2015).

**\*4** Accordingly, Defendants' Second Motion to Dismiss should be DENIED insofar as Defendants challenge the service of the Amended Complaint as untimely.

#### 2. Motion to Dismiss
Defendants further argue in support of dismissal that Plaintiff has not stated a plausible claim against Defendants, asserting Plaintiff's claims against Bradt and Gray rely on *respondeat superior* without making the necessary showing of personal involvement, Defendant's Memorandum at 7–10, and that the injury Elliott allegedly inflicted on Plaintiff by the needle prick did not cause the requisite physical injury to support Plaintiff's claim for mental or emotional distress. *Id.* at 10. In opposition, Plaintiff asserts that the Amended Complaint alleges sufficient facts to state a claim against each Defendant, Plaintiff's Response at 6–8, including personal involvement in investigating Plaintiff's complaints by Bradt, *id.* at 8–9, and Gray, *id.* at 10–11, and that Plaintiff suffered the requisite physical harm to support an Eighth Amendment violation when Elliott used a needle to penetrate Plaintiff's skin. *Id.* at 11–12. In further support of dismissal, Defendants reiterate that Plaintiff has failed to show the requisite personal involvement of Defendants Bradt, Defendants' Reply at 2–4, and Gray, *id.,* at 4–5, and that administering a needle prick on two separate occasions is insufficient to satisfy the objective standard for an Eighth Amendment claim. *Id.* at 5–7.

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b) (6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.' " *Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action,

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 107 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

supported by mere conclusory statements, do not suffice.' " *Harris,* 572 F.3d at 72 (quoting *Iqbal,* 556 U.S. at 678). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* (quoting *Iqbal,* 556 U.S. at 679).

**\*5** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Sykes v. Bank of America,* 723 F.3d 399, 403 (2d Cir.2013) (quoting *Ashcroft,* 556 U.S. at 678); *see Twombly,* 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 570. "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached, and any document upon which the complaint heavily relies." *ASARCO LLC v. Goodwin,* 756 F.3d 191, 198 (2d Cir.2014) (quoting *In re Thelen LLP,* 736 F.3d 213, 219 (2d Cir.2013)).

*See Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000) (considering the complaint to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit...."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which render the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

In the instant case, Plaintiff, by attaching as exhibits to the original complaint numerous documents, including, *inter alia,* copies of letters sent and grievances filed by Plaintiff, which are not also attached as exhibits to the Amended Complaint and only generally referenced therein, has established that Plaintiff is, nevertheless, in possession of such documents. Furthermore, because the numerous letters exchanged between Plaintiff and Defendants, Plaintiff's February 8, 2008 grievance, the allegedly false Misbehavior Report charging Plaintiff with self-harm, and the resulting investigations conducted by Defendants regarding the grievances and Misbehavior Report provide the basis for Plaintiff's claims, the court considers the documents Plaintiff attached as exhibits to his original complaint as incorporated by reference into the Amended Complaint, allowing the court to consider them in analyzing Defendant's Second Motion to Dismiss. *Chambers,* 282 F.3d at 153; *Rothman,* 220 F.3d at 88–89.

### 3. Personal Involvement

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, for which a valid claim requires the plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875–76 (2d Cir.1994)). Here, Plaintiff's claims include denial of due process in violation of the Fourteenth Amendment, and failure to protect and excessive force in violation of the Eighth Amendment.

**\*6** It is basic that a defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to liability in a § 1983 action. *Spavone v. New York State Dept. of Correctional Services,* 719 F.3d 127, 135 (2d Cir.2013) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). A supervisor's liability in a § 1983 action "cannot rest on respondeat superior." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (citing cases)). "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violation." *Id.* (citing *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995)). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Id.* (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985), and citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (noting a § 1983 defendant may not be held liable for

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 108 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

constitutional violations merely because he holds a position of high authority)). Instead, the requisite personal involvement

> "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* (quoting *Hernandez v. Keane,* 341 F.3d 137, 145 (2d Cir.2003)).

**4. Defendant Bradt**

Plaintiff claims Defendant Bradt, as former Elmira Superintendent who supervised all DOCCS employees at the correctional facility, was aware of Plaintiff's grievance complaining corrections officers were calling Plaintiff a "snitch" and a "rat" for complaining about theft of food, and that a physical assault against him by other inmates was imminent, yet failed to appoint staff to properly investigate Plaintiff's complaints, failed to protect Plaintiff from the threatened assault and was deliberately indifferent to Plaintiff's situation. Amended Complaint ¶¶ 27–28, 30. Plaintiff further maintains Bradt violated Plaintiff's Fourteenth Amendment due process rights by appointing to preside over the Tier III disciplinary hearing regarding the allegedly false Misbehavior Report charging Plaintiff with self-harm, a hearing officer who had previously been appointed to investigate Plaintiff's food theft complaints against the hearing officer's co-workers and friends. *Id.* ¶ 29.

Defendants move to dismiss the claims against Bradt for lack of personal involvement, asserting Plaintiff's Eighth Amendment claim against Bradt is based on respondeat superior which is insufficient for liability under § 1983.

Defendants' Memorandum at 7–9. In opposition, Plaintiff argues Bradt was obligated, upon learning of the threats to Plaintiff, to take steps to ensure Plaintiff's safety. Plaintiff's Response at 8–9. Plaintiff further maintains that because 2,000 inmates are housed at Elmira, it was not reasonable to expect Plaintiff to identify by name the inmates who assaulted him. *Id.* at 9. In further support of dismissal, Defendants characterize Plaintiff's allegations against Bradt as "conclusory statements," asserting that Bradt's mere receipt of Plaintiff's letters complaining about threats and conditions of confinement which Bradt forwarded and ordered investigations, is insufficient to hold Bradt liable for the alleged constitutional deprivations. Defendants' Reply at 2–3. Defendants further maintain that Plaintiff's admission in his responding papers that he did not know the identity of the inmates who were planning to assault Plaintiff underscores the insufficient detail to state a claim against Bradt for failing to protect Plaintiff from the assault. *Id.* at 4.

**\*7** To establish a constitutional violation under the Eighth Amendment, an inmate must meet both an objective and subjective requirement. *Jolly v. Coughlin,* 76 F.3d 468, 480 (2d Cir.1996) (citing cases). The objective requirement is met where the alleged violation is "sufficiently serious" by objective standards. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v.. Seiter,* 501 U.S. 294, 298 (1991)). The subjective prong requires the inmate allege facts which, if true, would establish a prison official was deliberately indifferent to his health or safety. *Farmer,* 511 U.S. at 837. The Eighth Amendment also "imposes a duty on prison officials 'to take reasonable measures to guarantee the safety of inmates in their custody.' " *Garcia v. Witkowski,* 988 F.Supp.2d 360, 361 (W.D.N.Y.2013) (quoting *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer,* 511 U.S. at 832–33))). "A failure-to-protect claim requires a showing that prison officials acted with 'deliberate indifference' to the inmate's safety." *Id.* (citing *Morales v. New York State Dep't of Corr.,* 842 F.2d 27, 30 (2d Cir.1988)). A prison official acts with deliberate indifference toward an inmate's safety only if the official, despite knowledge that the inmate faces a substantial risk of serious harm, disregards that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 835–37. *See Garcia,* 988 F.Supp.2d at 362 ("in failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 109 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

a specific harm to his safety."). Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim. *Garcia,* 988 F.Supp.2d at 362 (citing *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir.1996)). Instead, the inmate must show "actual or imminent harm." *Benjamin v. Fraser,* 343 F.3d 35, 41 n. 17 (2d Cir.2003) (quoting *Lewis v. Casey,* 518 U.S. 343, 350 (1996)), *overruled on other grds., Caiozzo v. Koreman,* 581 F .3d 63 (2d Cir.2009).

Insofar as Plaintiff claims Bradt, as the recipient of Plaintiff's letters complaining about threats and conditions of confinement, failed to properly investigate such complaints and is thus is responsible for the assault, Amended Complaint ¶¶ 28–28, 30, mere receipt of a letter is insufficient to establish the requisite personal involvement for § 1983 liability; rather, personal involvement may be found were a supervisory official receives and acts on or undertakes an investigation of the inmate's complaint or grievance. *Rivera v. Fischer,* 655 F.Supp.2d 235, 238 (W.D.N.Y.2009). Nor is the forwarding of a letter to a subordinate for investigation and response sufficient to hold the prison official personally involved in the alleged constitutional deprivation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). Significantly, Plaintiff fails to allege any facts establishing that Bradt became personally involved in the investigation into the matters raised by Plaintiff's letters of complaint. *Rivera,* 655 F.Supp.2d at 238. Furthermore, not only has Plaintiff failed to allege, but the letters and grievances Plaintiff filed do not reveal that Plaintiff ever asserted a physical attack was imminent such that Bradt cannot be found to have known that Plaintiff was being threatened by certain inmates with "actual or imminent harm." *Benjamin,* 343 F.3d at 41 n. 17. As such, Defendants' Second Motion to Dismiss should be GRANTED at to the Eighth Amendment claim against Bradt because Plaintiff has failed to plead facts which, liberally construed in favor of Plaintiff, could plausibly establish the requisite personal involvement of Bradt in the alleged Eighth Amendment violations.

**\*8** Nor does the Amended Complaint adequately allege a Fourteenth Amendment due process violation against Bradt based on Bradt's appointing as the hearing officer for the Tier III disciplinary hearing held on the Misbehavior Report falsely charging Plaintiff with self-harm a DOCCS employee who had previously been directed to investigate the food theft complaints Plaintiff made against the hearing officer's

coworkers and friends such that the hearing officer was biased against Plaintiff. Amended Complaint ¶ 29. Defendants argue in support of summary judgment that Plaintiff fails to allege Bradt's personal involvement in the investigation of the Misbehavior Report and disciplinary hearing and thus fails to establish Bradt knew Plaintiff's due process rights were being violated. Defendants' Memorandum at 9. Plaintiff does not offer any argument in opposition to dismissal of this claim.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). "[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution as outlined in *Wolff.*" *Shakur v. Selsky,* 391 F.3d 106, 119 (2d Cir.2004). As such, a violation of a state prison regulation during a prison disciplinary hearing does not give rise to a § 1983 due process claim. *Blouin v. Spitzer,* 356 F.3d 348, 363 (2d Cir.2004) ( "federal law, not state regulations, determined the procedures necessary to protect that liberty interest ."). Prison inmates nevertheless are "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as ... special confinement that imposes an atypical hardship." *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). In particular, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary action taken." *Sira,* 380 F.3d at 69.

Although Plaintiff does allege that he was denied at the Tier III disciplinary hearing a "fair and impartial hearing officer," *Sira,* 380 F.3d at 69, Plaintiff's Fourteenth Amendment due process claim should be dismissed because Plaintiff's 60–day confinement in SHU [3] did not constitute the requisite denial of a liberty interest within the meaning of *Sandin v. Conner,* 515 U .S. 472, 484 (1995) (holding inmate does not suffer the deprivation of a liberty interest supporting a Fourteenth Amendment due process violation based on a prison disciplinary hearing unless the subsequent punishment imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."). Here, Plaintiff does not allege the SHU conditions in which

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 110 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

he was held upon being found guilty on the Misbehavior Report charging him with self-harm were any more extreme than generally encountered in SHU such that Plaintiff's 60–day confinement in SHU is too short to establish the requisite deprivation of a liberty interest. *See* Colon v. Howard, 215 F.3d 227, 231 (2d Cir.2000) ("The longest confinement in normal SHU conditions that we have ruled was not shown to meet the *Sandin* standard was 101 days."). Accordingly, Defendants' Second Motion to Dismiss should be GRANTED as to Plaintiff's Fourteenth Amendment due process claim against Bradt.

**5. Defendant Gray**

**\*9**  Plaintiff alleges that because Defendant Gray investigated Plaintiff's grievances and claims prior to the assault, had information that Plaintiff had been labeled a "snitch" and "rat," and knew inmates so labeled were often assaulted, Gray was aware of the need to protect Plaintiff from the threatened assault, but because Gray disliked Plaintiff for reporting the food theft, Gray was deliberately indifferent to the threats directed toward Plaintiff and then supported the self-harm Misbehavior Report to protect itself from culpability for the thefts. Amended Complaint ¶¶ 36–38. Defendants argue in support of dismissal that Plaintiff fails to allege facts sufficient to establish Gray's personal involvement, such as that Plaintiff ever requested protection from Gray prior to the assault, that Gray knew an attack was imminent, or that Gray had any ability or authority to place Plaintiff in protective custody for an undefined harm. Defendants' Memorandum at 9. Nor does Plaintiff allege facts to establish Gray knew the identity of Plaintiff's attackers or their intent to attack Plaintiff, had the ability to prevent the assault, or even that Gray was at work when Plaintiff was assaulted. *Id.* Defendants maintain that Plaintiff essentially is alleging that Gray's investigation of Plaintiff's February 8, 2008 grievance somehow vested Gray with knowledge of and imputed wrongdoing for failure to protect Plaintiff from the assault, which Defendants further maintain is too attenuated to state a plausible Eighth Amendment claim based on a failure to protect. *Id.* at 9–10. Plaintiff argues in opposition that Gray knew an attack on Plaintiff was imminent because Plaintiff filed multiple grievances asserting physical threats were being made against him, and Plaintiff also told Gray "face-to-face" that some of the DOCCS employees were stealing food. Plaintiff's Response at 10. Nevertheless, according to Plaintiff, Gray ignored the threats because he wanted Plaintiff to be assaulted as punishment for reporting the food thefts. *Id.* In further support of dismissal, Defendants reiterate that

Plaintiff fails to allege Gray denied any requests from Plaintiff for protection, that Gray knew an attack on Plaintiff was imminent, that by investigating one grievance, Gray became personally involved in protecting Plaintiff from the undefined future assault, or that Gray had any ability to prevent the assault on Plaintiff. Defendants' Reply at 4–5. Defendants further maintain that insofar as Plaintiff claims that Gray's failure to protect Plaintiff was motivated by Gray's desire to punish Plaintiff for reporting that other DOCCS employees were stealing food could be construed as retaliation, Plaintiff fails to allege the requisite causal connection between Gray's investigation of the February 8, 2008 grievance and the opening of his cell door on February 28, 2008, just prior to the attack. *Id.* at 5.

A plain reading of the Amended Complaint establishes it fails to allege sufficient personal involvement by Gray in any Eighth Amendment failure to protect claim, and also fails to allege the requisite causal connection to state a claim for retaliation. In particular, although Plaintiff alleges that Gray, despite being advised by Plaintiff that unidentified inmates were threatening to attack him, yet failed to take steps to protect the inmate from a physical attack, an Eighth Amendment claim based on an alleged failure to protect requires not mere conclusory statements that a defendant was aware of threats to an inmate's personal safety, but that the inmate show "actual or imminent harm." Benjamin, 343 F.3d at 41 n. 17. *See* Discussion, *supra,* at 13–14. Here, Plaintiff failed to allege, and the February 8, 2008 grievance Plaintiff filed concerning plots involving physical threats toward Plaintiff, and which Plaintiff alleges Gray investigated, failed to reveal that Plaintiff ever asserted a physical attack was imminent such that Gray cannot be found to have known that Plaintiff was being threatened by certain inmates with "actual or imminent harm." Benjamin, 343 F.3d at 41 n 17. Nor do any of the other letters and grievances Plaintiff attached as exhibits to the original complaint show Plaintiff was complaining of any threat of imminent harm or by any specific inmate or correctional facility staff member. Rather, most of the documents filed as exhibits are dated after the February 28, 2008 assault, and the few that pre-date the assault do not mention any specific threat. Accordingly, Defendants' Second Motion to Dismiss should be GRANTED as to Plaintiff's claim alleging an Eighth Amendment violation against Gray for failing to protect Plaintiff from the February 28, 2008 assault.

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 111 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

**\*10**  Furthermore, insofar as the Amended Complaint can be construed as alleging Gray's failure to protect Plaintiff was motivated by Gray's desire to punish Plaintiff for reporting that other DOCCS employees were stealing food could be construed as retaliation, Plaintiff fails to allege the requisite causal connection between Gray's investigation of the February 8, 2008 grievance and the opening of his cell door on February 28, 2008, just prior to the attack. Defendants' Second Motion to Dismiss should thus be GRANTED as to any retaliation claim against Gray.

### 6. Defendant Elliott

Plaintiff claims that while housed in SHU following the assault, Elliott, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, twice physically assaulted Plaintiff by pricking Plaintiff with a needle or needle-like object, and that Plaintiff suffered much stress during the two-month period Plaintiff had to wait for the results of an HIV/AIDS test. Amended Complaint ¶¶ 64–66, 69. Defendants, in support of dismissal of this claim, rely on the Prisoner's Litigation Reform Act ("PLRA"), 42 U .S.C. § 1997e[e], providing as relevant that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury...." Defendants' Memorandum at 10. As such, Defendants maintain that because Plaintiff is suing for mental or emotional harm unrelated to a physical injury, the claim must be dismissed. *Id.* In opposition to dismissal, Plaintiff maintains that when Elliott pricked him twice with a needle, breaking his skin, he suffered the requisite physical injury to state a claim for mental suffering under the PLRA. Plaintiff's Response at 1112. In further support of dismissal, Defendants maintain that the needle pricks of which Plaintiff complains posed no more than a *'de minimis* injury' which is insufficient to support an Eighth Amendment claim. Defendants' Reply at 6.

It is settled that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian,* 503 U.S. 1, 9–10 (2d Cir.1992) (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Hudson,* 503 U.S. at 9–10 (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). Nevertheless, the deliberate stabbing of an inmate with a needle has been held sufficient to allege an Eighth Amendment violation. *See, e.g., Wills v. Haines,* 20 Fed.Appx. 573, 573–74 (8th Cir. Sept. 26, 2001) (allegation that prison nurse deliberately stabbed prison inmate with a needle because she was angry with him sufficiently stated Eighth Amendment claim). Significantly, unlike the *de minimis* injury resulting from a push or a shove, the resulting injury from a needle prick can subject the injured inmate to such serious and uncurable conditions as hepatitis or HIV, as is evident from the fact that Plaintiff was given an HIV/AIDS test following the incident. Furthermore, because Plaintiff's claim against Elliott as alleged in Plaintiff's 12th claim in the original complaint is essentially identical to Plaintiff's ninth claim alleged against Elliott in the Amended Complaint, Judge Telesca's determination that "[t]o the extent that Claim # 12 [of the original complaint] describes the alleged needle assault on plaintiff, it states an excessive force claim and may proceed against defendant Elliott," March 7, 2012 Screening Order at 21–22, is now the law of the case.

*See* Discussion, *supra,* at 7.

**\*11**  Accordingly, Defendants' Second Motion to Dismiss should be DENIED as to the Eighth Amendment claim against Elliott.

### 7. Dismissal with Prejudice

Although not discussed by the parties, the Amended Complaint should be dismissed with prejudice and without leave to file a further amended complaint with regard to Defendants Bradt and Gray. In particular, "a *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (bracketed material in original)). Nevertheless, dismissal may be with prejudice and without leave to amend where " 'the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.' " *Id.* (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999)). Here, the factual basis alleged in support of the claims asserted in the Amended Complaint against Defendants Bradt and Gray, along with Plaintiff's arguments made in opposition to Defendants' Second Motion to Dismiss seeking the dismissal of such claims, demonstrates the absence of any possibility

that Plaintiff, if permitted to file a further amended complaint, could state a plausible claim for relief against any of these Defendants. Accordingly, the claims against Defendants Bradt and Gray should be DISMISSED with prejudice.

## CONCLUSION

Defendants' Second Motion to Dismiss (Doc. No. 23), should be GRANTED in part and DENIED in part; the Amended Complaint should be DISMISSED with prejudice as against Defendants Bradt, and Gray, but should not be dismissed against Defendant Elliott.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen

(14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6644112

## Footnotes

1    On April 1, 2011, the New York State Department of Correctional Services and Division of Parole merged into one agency entitled the New York State Department of Corrections and Community Supervision, referred to as "DOCCS."
2    Taken from the pleadings and motion papers filed in this action.
3    Plaintiff, in connection with the guilty disposition on the Misbehavior Report, was sentenced to six months confinement in SHU, but served only 60 days.

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 113 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

2015 WL 6641471
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Trazz SAWYER, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES et al., Defendants.

No. 11–CV–152S(F).
|
Signed Oct. 27, 2015.
|
Filed Oct. 28, 2015.

**Attorneys and Law Firms**

Trazz Sawyer, Attica, NY, pro se.

Kathleen M. Kaczor, Attorney General's Office, Buffalo, NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, District Judge.

**I. INTRODUCTION**

**\*1** Presently before this Court are the parties' objections to the June 30, 2015 Report and Recommendation of the Honorable Leslie G. Foschio, United States Magistrate Judge, on the motion to dismiss of Defendants Bradt, Elliott, and Gray. (Docket Nos. 23, 30, 31, 35.)

The Plaintiff commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 on February 23, 2011. Plaintiff was subsequently directed to file additional documentation in support of his motion to proceed *in forma pauperis,* which he timely filed; however, leave to so proceed was not granted until March 7, 2012. At that time, the Honorable Michael A. Telesca, United States District Judge, dismissed several claims and several defendants from the action with prejudice and directed Plaintiff to file an Amended Complaint to correct several claims by April 12, 2012. If Plaintiff failed to do so, the United States Marshals were directed to serve copies of Plaintiff's original summons,

complaint, and Judge Telesca's order on the remaining Defendants, including Bradt, Elliott, and Gray. (Docket No. 8.)

An Amended Complaint was received on April 20, 2012 and subsequently accepted as timely filed. *See Kalican v. Dzurenda,* 583 F. App'x 21, 23 (2d Cir.2014) (citing *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (pro se prisoner's complaint considered filed when given to prison officials for mailing); (*see* Docket No. 9 at 25 (Plaintiff's assertion that a copy of the Amended Complaint was given to officials for mailing on April 8, 2012).). Nonetheless, nothing further occurred until March 2014 when Judge Telesca issued an order stating that "[t]he amended complaint has been screened by the Court with respect to the 28 U.S.C. § 1915(e) and 1915A criteria" without elaboration and directing the U.S. Marshals to serve the summons and Amended Complaint. (Docket Nos. 11, 12 (duplicate orders were filed).)

All Defendants except Bradt, Gray, and Elliot were served on June 6, 2014, and a motion to dismiss the complaint was filed on behalf of the served Defendants on August 6, 2014 ("first motion to dismiss"). (Docket Nos. 13, 14.) Plaintiff moved for an order directing the Attorney General's Office to disclose the addresses or whereabouts of Defendants Bradt, Gray, and Elliott on August 18, 2014, and Magistrate Judge Scott, to whom this matter was then referred, directed the Attorney General's Office to confirm whether it would represent these Defendants and, if so, whether service was waived. (Docket Nos. 16, 19.) The matter was then reassigned to Magistrate Judge Foschio. (Docket No. 20.) The Assistant Attorney General confirmed on November 7, 2014, that the Office would be representing Bradt, Gray, and Elliott, waived service on their behalf, and then filed the present motion to dismiss on November 28, 2014. (Docket Nos. 2123.) In his Report and Recommendation granting the first motion to dismiss, which was subsequently accepted by this Court, Judge Foschio expressly stated that because the motion to dismiss of Bradt, Gray, and Elliott was not yet fully briefed, it would not being considered at that time. (Docket Nos. 26 at 5 n. 2; 27.)

**\*2** On June 30, 2015, Judge Foschio issued a Report and Recommendation on the present motion to dismiss, recommending that the motion be granted with the exception of Plaintiff's Eighth Amendment claim against Defendant Elliott. (Docket No. 30.)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 114 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

## II. DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1)(C), any party may serve and file written objections to a report and recommendation of a magistrate judge within fourteen days after being served with a copy. Local Rule of Civil Procedure 72(b) further requires that written objections to a magistrate judge's report "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." After *de novo* review of those portions of the report and recommendation to which proper objections are made, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Gardin,* 451 F.Supp.2d 504, 506 (W.D.N.Y.2006). Here, both parties have filed objections to Judge Foschio's June 30, 2015 Report and Recommendation.

### A. Timeliness of Service of Defendants Brandt, Gray, and Elliott

The present Defendants moved to dismiss the complaint pursuant to Rule 4(m) of the Federal Rules of Civil Procedure due to Plaintiff's failure to timely serve the Amended Complaint. Judge Foschio rejected this argument because: (1) he had previously considered and rejected this argument on the first motion to dismiss, and as that recommendation was adopted by this Court, that determination was now the law of the case and applied with equal force to the present Defendants; (2) he was precluded from reconsidering Judge Telesco's March 2014 Decision and Order that directed service on Defendants; and (3) by failing to provide further support for this argument in their reply brief following Plaintiff's opposition on this issue, Defendants effectively conceded this argument. Defendants object to all three conclusions, and continue to assert that dismissal is warranted for the failure to effect timely service.

Initially, this Court agrees with Defendants that the magistrate judge was not compelled to reject the timeliness argument for the reasons stated in the Report and Recommendation. This motion pertains to different Defendants with different facts relevant to service. The law of the case doctrine, in addition to being discretionary, *see Pescatore v. Pan American World Airways,* 97 F.3d 1, 8 (2d Cir.1996), does not control different factual situations or different parties.

*See Weslowski v. Zugibe,* –F. Supp.3d—, 2015 WL 1455857, *6 (S.D.N.Y.2015) (collecting cases); *East End Eruv Ass'n, Inc. v. Town of Southampton,* No. 13–4810(AKT), 2014 WL 4826226, 13 (E.D.N.Y. Sept.24, 2014). Further, unlike where a non-movant fails to address an argument raised in a motion, there is no reason here to find that Defendants' failure to address this issue in a discretionary reply amounts to a waiver of this argument. *See generally* Local Rule of Civil Procedure 7(a)(2)(A) (a moving party may, but is not required to, file a reply memorandum).

**\*3** Defendants are also correct that Judge Telesca did not consider whether Plaintiff timely effected service in his March 2014 order. However, Defendants' argument is nonetheless without merit because Plaintiff was proceeding *pro se* and *in forma pauperis.* In order to protect a *pro se* plaintiff from confusion or delay, the time in which that plaintiff must effect service is tolled during the pendency of an *in forma pauperis* application. *See Sidney v. Wilson,* 228 F.R.D. 517, 522–23 (S.D.N.Y.2005); *see generally Toliver v. Sullivan County,* 841 F.2d 41, 42 (2d Cir.1088). Once granted *in forma pauperis* status, Plaintiff was entitled to rely on the U.S. Marshals for service. *See Walker v. Schult,* 717 F.3d 119, 123 n. 6 (2d Cir.2013) (citing *Wright v. Lewis,* 76 F.3d 57, 59 (2d Cir.1996) (once *in forma pauperis* status is granted, the responsibility for service shifts from the plaintiff to the court)). The Marshals were not ordered to do so until the Court conducted its requisite review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A—a review that was not conducted until March 2014. Thus, the delay here was unfortunately caused by the Court, not Plaintiff. Further, unlike *Terry v. Village of Ossining,* on which Defendants rely, here Plaintiff was not only entitled to rely on the Marshals for service, he also consistently updated the Court on his current address, completed an acknowledgment of service, and timely moved for an order directing the disclosure of the location of Defendants Bradt, Gray, and Elliott. *Cf. Terry,* No. 12 Civ. 5855(ER), 2013 WL 5952834, *5 (S.D.N.Y. Nov.5, 2013) (dismissal of *pro se* complaint warranted where plaintiff was not entitled to rely on the Marshals for service and failed to contact or update the court with his current address). Defendants' motion to dismiss due to Plaintiff's failure to comply with Rule 4(m) is therefore denied.

### B. Eighth Amendment Claim against Defendant Elliott

Defendants further object to Judge Foschio's conclusion that Plaintiff sufficiently stated an Eighth Amendment violation

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 115 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

claim against Defendant Elliott. Plaintiff alleges that on or about April 8, 2008, Defendant Elliott escorted Plaintiff to the shower with Plaintiff handcuffed behind his back. (Am Compl ¶ 65.) As the handcuffs were removed, "Elliott pricked him with a needle or needle-like object." (Am Compl ¶ 65.) After being escorted back to his cell, Plaintiff "once again felt pricked by a needle or needle like object" when the handcuffs were removed, "and found when he examined his hand, a small prick mark that issued blood when squeezed." (Am Compl ¶ 66.) Plaintiff further alleges that he "had to wait months before he could get an HIV/AIDS test (which returned negative), but the wait and the unknown was very stressful and the needle/pin extraction point did hurt, maybe more than it should have because such an outrageous act can affect a person psychologically." (Am Compl ¶ 69.) As a result, Plaintiff seeks compensatory and punitive damages.

**\*4** Initially, this Court agrees with Defendants that dismissal of this claim is not barred by Judge Telesca's earlier decisions. *See* Cusumano v. Sobek, 604 F.Supp.2d 416, 435 n. 29 (N.D.N.Y.2009) (a court's initial screening pursuant to § 1915(e) and/or § 1915A does not preclude a later dismissal of that complaint under Fed.R.Civ.P. 12(b)(6)).

Defendants next object on the ground that Judge Foschio failed to appropriately consider Plaintiff's claim in light of 42 U.S.C. § 1997e(e). This section of the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." A prisoner plaintiff is therefore precluded from recovering compensatory damages for mental or emotional injury for a constitutional violation, including an Eighth Amendment violation, in the absence of a showing of actual physical injury. *Thompson v. Carter,* 284 F.3d 411, 417 (2d Cir.2002). Although "there is no statutory definition of 'physical injury' as used in section 1997e(e)," the Second Circuit has held that a plaintiff's physical injury must be "more than *de minimis.*" *Liner v. Goord,* 196 F.3d 132, 135 (2d Cir.1999) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997)).

Here, Plaintiff himself frames his claim as one based on the mental and emotional stress resulting from the alleged incident. (Am Compl ¶¶ 65–69.) Further, although he

claims his hand did "hurt" without elaboration, the alleged physical result is merely *de minimus*—indeed, Plaintiff himself was unsure at first if anything in fact happened. Accordingly, Plaintiff's claim for compensatory damages must be dismissed. However, dismissal of the claim in its entirety is not necessarily warranted. Section 1997e(d) does not preclude a plaintiff from seeking non-compensatory relief, including nominal damages, injunctive and declaratory relief, and punitive damages. *Thompson,* 284 F.3d at 418. Because Defendants' argument that dismissal of the claim against Elliott relies solely on the preclusive effect of § 1997e(e) and does not address whether a claim for nominal or punitive damages (which Plaintiff has requested) has been stated, the claim will not be dismissed in its entirety at this time.

## C. Plaintiff's Objection

Plaintiff argues generally that there were sufficient allegations of personal involvement on the behalf of "superiors" and "commanding officers" to state a claim. This argument fails to "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection." Local Rule of Civil Procedure 72(b). Where, as here, only general or conclusory objections to a report and recommendation are made, review for only clear error is appropriate. *See Singh v. N.Y.S. Dep't of Taxation & Finance,* 865 F.Supp.2d 344, 348 (W.D.N.Y.2011). Having so reviewed Judge Foschio's report and recommendation with respect to Plaintiff's claims against Defendants Bradt and Gray, no clear error is found.

## III. CONCLUSION

**\*5** Plaintiff's claim against Defendant Elliott will not be dismissed insofar as it seeks nominal or punitive damages. Defendants' motion to dismiss the Amended Complaint is granted with respect to all other claims.

## IV. ORDERS

IT HEREBY IS ORDERED that the June 30, 2015 Report and Recommendation of Magistrate Judge Foschio (Docket No. 30) is ACCEPTED with respect to his recommendation regarding Plaintiff's claims against Defendants Bradt and Gray and otherwise VACATED;

Case 9:19-cv-00428-BKS-TWD   Document 44   Filed 08/05/20   Page 116 of 164

Sawyer v. New York State Dept. of Correctional Services, Not Reported in F.Supp.3d...

FURTHER, that Defendants' Objections (Docket No. 31) are GRANTED in part and DENIED in part;

FURTHER, that Plaintiff's Objection (Docket No. 35) is DENIED;

FURTHER, that the motion to dismiss of Defendants Brandt, Gray, and Elliott (Docket No. 23) is GRANTED IN PART and DENIED IN PART as stated above.

FURTHER, that the Clerk of the Court is DIRECTED to terminate Brandt and Gray as defendants.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6641471

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Warren v. Goord, S.D.N.Y., March 6, 2007

2000 WL 1372834
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rolando CORONADO, Plaintiff,

v.

Gleen S. GOORD, et al., Defendants.

No. 99 CIV. 1674(RWS).
|
Sept. 25, 2000.

**Attorneys and Law Firms**

Rolando Coronado, Sullivan Correctional Facility, Fallsburg,
Plaintiff Pro Se.

Honorable Eliot Spitzer, Attorney General of the State of
New York, New York, By Efrem Z. Fischer, Esq., Assistant
Attorney General, Of Counsel, for Defendants.

OPINION

SWEET, D.J.

**\*1** Plaintiff Rolando Coronado ("Coronado") moves to
reinstate his 42 U.S.C. § 1983 "failure to protect"
complaint now that he has exhausted his administrative
remedies pursuant to the Prisoner Litigation Reform Act,
42 U.S.C. § 1997e (a) ("PLRA"). Defendants Glenn S.
Goord ("Goord"), Christopher P. Artuz ("Artuz"), and George
Schneider ("Schneider") (the "Green Haven Defendants")
and George E. Pataki ("Pataki"), (collectively "Defendants"),
move that Plaintiff be required to refile this action under
a new index number. If the complaint is refiled or
reinstated, Defendants move pursuant to Rule 12(b)(6),
Fed.R.Civ.P., to dismiss for failure to state a claim, lack of
personal involvement on the part of the defendants, Eleventh
Amendment and qualified immunity.

For the reasons stated below, Plaintiff's complaint is
reinstated, and the Defendants' motions to dismiss are granted
in part and denied in part.

*The Parties*

Plaintiff Coronado is a prisoner of the New York State
Department of Correctional Services ("DOCS"). At the time
of the incident giving rise to this complaint, Coronado was
housed at the Green Haven Correctional Facility ("GHCF")
in Stormville, New York. Coronado has since been moved to
the Attica Correctional Facility ("Attica") and most recently,
to the Sullivan Correctional Facility ("Sullivan") in Fallsburg,
New York.

Defendant Goord is the Commissioner of DOCS.

Defendant Artuz is the Superintendent of DOCS.

Defendant Schneider is the Deputy of Security of GHCF.

Defendant Pataki is the Governor of New York.

*Prior Proceedings*

The prior proceedings in this case were set forth in a former
opinion of this Court, which dismissed Coronado's complaint
without prejudice for failure to exhaust his administrative
remedies. *See Coronado v. Goord,* No. 99 Civ. 1674(RWS),
2000 WL 52488 (S.D.N.Y. Jan. 24, 2000).

*Background*

The complaint alleges that on June 30, 1997, while Coronado
was in the recreation yard at GHCF in Stormville, New York,
he was attacked by several inmates while two corrections
officers did nothing to prevent the attack. As a result,
Coronado was stabbed in the back seven times, sustaining
a punctured lung which required hospitalization for several
weeks.

Coronado alleges that because the sergeant of security failed
to supervise the door to the recreation yard, prisoners were
able to smuggle weapons into the yard. Coronado further
alleges that the Superintendent and Deputy Superintendent
of Security should have installed metal detectors because of
alleged ongoing threats of violence. Coronado also claims
that Defendants should have classified him as "vulnerable to
attacks" because he had been stabbed on October 1, 1986, July
18, 1988, and September 8, 1988. Finally, Coronado claims
that Governor George Pataki allowed the prisons in New York
State to become overcrowded with prisoners and understaffed
by guards.

Coronado seeks declaratory and injunctive relief and damages
for violation of his Eighth and Fourteenth Amendment rights.

**\*2** Defendants' motion to dismiss was filed on July 13, 1999. Answer and reply papers were received through October 13, 1999, at which point the motion was deemed fully submitted. The Court granted Defendants' motion to dismiss on January 24, 2000 for Coronado's failure to exhaust administrative remedies. *Coronado v. Goord,* No. 99 Civ. 1674(RWS), 2000 WL 52488 (S.D.N.Y. Jan. 24, 2000).

Coronado filed a motion to reinstate the complaint on June 9, 2000, and Defendants moved by letter of June 21, 2000 to bar reinstatement, require refiling, and dismiss the complaint on all the grounds not reached in the Court's January 24, 2000 opinion. The current motions were deemed fully submitted upon the filing of the Defendants' June 21, 2000 letter.

*Discussion*

### I. *The Complaint is Reinstated*

After the complaint was dismissed pursuant to 42 U.S.C. § 1997e(a) and (e) for failure to exhaust administrative remedies, Coronado sought and was granted leave for an extension of time within which to file a grievance. On February 4, 2000, Coronado filed Inmate Grievance Complaint No. A-40326-00, which was denied. Coronado appealed that decision to the Superintendent of Attica, where he was then housed, and was denied relief on February 25, 2000. Coronado then appealed to the Central Office Resolution Committee of the DOCS ("CORC"), which denied Coronado's grievance on March 29, 2000. (*See* Motion to Reinstate Complaint Ex. A.) There is no longer any avenue of relief open to Coronado in the prison system, so he has now exhausted his administrative remedies pursuant to § 1997e(a).

As Coronado has complied with the terms of this Court's dismissal without prejudice, the complaint is hereby reinstated.

### II. *Legal Standard for Motion to Dismiss*

In reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993) (citing *IUE AFL-CIO Pension Fund v. Hermann,* 9 F.3d 1049, 1052 (2d Cir.1993)). A *pro se* complaint is given liberal

construction, particularly where civil rights violations are alleged. *See George v. Lorenzo,* No. 98 Civ. 0769(LAP), 1999 WL 397473, at \*1 (S.D.N.Y. June 15, 1999); *Cruz v. Jackson,* No. 94 Civ. 2600(RWS), 1997 WL 45348, at \*3 (S.D.N.Y. Feb. 5, 1997) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Morgan v. LaVallee,* 526 F.2d 221, 224 (2d Cir.1975)). Dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (footnote omitted). *See also Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986).

### III. *The Complaint Fails to State a Claim under the Eighth Amendment*

#### A. *Legal Standard for* § 1983 *Failure to Protect Claim*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege conduct, under color of state law, amounting to a deprivation of rights guaranteed by the Constitution or laws of the United States. *Katz v. Klehammer,* 902 F.2d 204, 206 (2d Cir.1990). A § 1983 complaint "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). *See also Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1976); *Powell v. Jarvis,* 460 F.2d 551 (2d Cir.1972).

**\*3** Coronado claims that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by virtue of the fact that Defendants failed to protect him from serious harm at the hands of other inmates. The Eighth Amendment protects against the unnecessary and wanton infliction of pain, *Whitley v. Albers,* 475 U.S. 312, 320 (1986), and requires prison officials to take "reasonable measures to guarantee the safety of inmates in their custody," *Hayes v. New York City Department of Corrections,* 84 F.3d 614, 620 (2d Cir.1996). A prison official's negligence alone does not give rise to a § 1983 claim. *Id.; Morales v. New York State Dep't of Correctional Services,* 842 F.2d 27, 30 (2d Cir.1988); *Williams v. Vincent,* 508 F.2d 541,

Coronado v. Goord, Not Reported in F.Supp.2d (2000)

546 (2d Cir.1974); *Knowles v. New York City Dep't of Corrections,* 904 F.Supp. 217, 220 (S.D.N.Y.1995).

Failure to provide an inmate with adequate security may be the basis for a § 1983 claim. In *Farmer v. Brennan,* 511 U.S. 825 (1994), the Supreme Court has established that a prison official's failure to protect an inmate violates the Eighth Amendment when two requirements are satisfied: "First, the deprivation [of rights] alleged must be, objectively, 'sufficiently serious.' " *Farmer,* 511 U.S. at 834 (*quoting Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Second, there must be an "unnecessary and wanton infliction of pain," which, in the prison failure-to-protect context, is defined as the defendant's subjective "deliberate indifference" to an inmate's safety. *Wilson,* 501 U.S. at 297. *See Hayes,* 84 F.3d at 620-21.

A claim for money damages under § 1983 may not lie unless the defendants were personally involved in the constitutional violation. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) ("[i]t is well-settled in this circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983' ") (*quoting Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (internal citations omitted); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.) (*respondeat superior* does not show personal involvement under § 1983), *cert. denied,* 414 U.S. 1033 (1973).

**B. *Serious Harm***
Although the Supreme Court did not determine in *Farmer* the specific level of risk to an inmate that is significant enough to constitute a deprivation of Eighth Amendment rights, *see Farmer,* 511 U.S. at 834 n. 3, the Court did state that "[f]or a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

In this case, Coronado alleges that he suffered seven stab wounds in the back, which punctured his lung and

hospitalized him for weeks. The DOC's denial of Coronado's grievance reports that Coronado was eventually transported to a hospital outside the prison for treatment. (*See* Motion to Reinstate Complaint Ex. A (March 29, 2000 letter).) [1] The documentation of several stab wounds serious enough to justify transporting Coronado to an off-site hospital is evidence that there was a risk of sufficiently serious harm to state a claim for the deprivation of Coronado's Eighth Amendment rights.

**C. *Deliberate Indifference***
**\*4** "An isolated omission to act by a state prison guard does not support a claim under section 1983 absent special circumstances indicating evil intent, recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent on him." *Avers v. Coughlin,* 780 F.3d 205, 209 (2d Cir.1985) (per curiam) (*citing Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974)). "Deliberate indifference" requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate safety; the official must both [have been] aware of facts from which the inference could be drawn and that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer,* 511 U.S. at 837. *See Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d Cir.1986); *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997). One way to make out such a claim is to allege that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it." *Id.,* 511 U.S. at 842-43 (quotations and internal citation omitted).

Coronado's complaint alleges the following omissions by Defendants: (1) the Green Haven Defendants failed to take the precautions of searching prisoners for weapons or installing metal detectors at the entrance to the yard, or assigning guards to "each post" in the recreation area, despite their knowledge of the "constant threat of violence" in that area; (2) the Green Haven Defendants failed to classify Coronado as "vulnerable to attacks" (which would presumably have qualified him for a more protected status) after he was victimized in three prior stabbing incidents; and (3) Governor Pataki failed to alleviate the chronic overcrowding and understaffing of state prisons,

which significantly increased the risk of assaults against Coronado. (Statement of Claim at ¶ 2.) In sum, Coronado alleges that in light of prior attacks against him and the general level of violence in the yard, Defendants' failure to stop this most recent attack evidences their "callous disregard" for his safety in violation of his Eighth Amendment right to be free of cruel and unusual punishment. (Id.)

### 1. The GHCF Defendants

The constitutional gravity of the omissions alleged in the complaint depends entirely on whether or not the Green Haven Defendants knew that Coronado was at risk of serious harm in the yard and consciously disregarded it. *See* Farmer, 511 U.S. at 837; Hathaway v. Coughlin, 37 F.3d at 66. As the Supreme Court has stated, "it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, 511 U.S. at 843. If Defendants did not know of the risk to Coronado-either by receiving notice of prior attacks and a lingering threat against him personally or by their awareness that a substantial risk of attacks in the yard was pervasive and well-documented-then they cannot be held liable for failure to protect him under the Eighth Amendment standard. *See* Ayers, 780 F.2d at 209.

### a. Knowledge of a Risk to Coronado in Particular

**\*5** Although he does not allege that he notified any of the Defendants of a specific threat posed to him, Coronado argues that the "pattern of attacks" against him should have put the Defendants on notice that he was at risk of serious harm. *See* Statement of Claim at ¶ 2. The attacks Coronado cites took place on 10/1/86, 7/18/88 and 9/8/88, approximately nine and eleven years before the stabbing in question here. The significant amount of time that has passed since these prior attack lessens the imminence of the threat of their being repeated. Furthermore, Coronado has failed to allege where the prior attacks took place [2] and whether the same attackers were in custody at GHCF and had access to him at the time of the 1997 attack. *See* Hayes, 84 F.3d at 621.

Most importantly, Coronado has failed to allege that any of the Defendants-who were either employed in supervisory positions at GHCF or in state-level administrative positions-actually knew of the prior attacks on him at Clinton. For example, he has introduced nothing to suggest that he either sought protection from any of the Defendants while at

GHCF or notified them of the Clinton attacks. The mere fact that Coronado had been attacked 10 years before at another correctional facility is not sufficient to prove that the Defendants knew he was at risk at Green Haven. If the Green Haven Defendants did not know that Coronado was in fact "vulnerable to attack" in 1998, they cannot be held responsible for failing to so classify him. *See, e.g.,* Pippion v. Peters, 1994 WL 530801, \*3 (N.D.Ill. Sept. 29, 1994).

Furthermore, even if Coronado could allege facts showing that correctional officers working in the yard on June 30, 1997 had knowledge of the risk to him, this knowledge would not be attributable to any of the named Defendants under a *respondeat superior* theory. Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir.1989); Ayers, 780 F.2d at 210. Coronado must allege "a tangible connection between the acts of [each] defendant and the injuries suffered." Bass, 790 F.2d at 263. That the Defendants "should have known" is not enough. Absent a showing that Defendants Goord, Artuz and Schneider actually knew of a substantial risk of serious harm to Coronado in 1998, he cannot make out a § 1983 claim against them for failure to protect. *See, e.g.,* Hazelwood v. Monroe, et al., No. 95 Civ. 3648, 1996 WL 312355, at \*2 (S.D.N.Y. June 11, 1996).

### b. Knowledge of a High Level of Risk to Inmates in the GHCF Yard in General

Coronado also claims that the Green Haven Defendants had "knowledge of the level of violence and of the numerous attacks in the GHCF recreation area." Statement of Claim at ¶ 2. As stated above, Coronado need not show a particularized risk to him personally; it is sufficient under *Farmer* that prison conditions posed a generalized threat to the safety of all inmates. However, "allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983 ." Alfaro Motors, 814 F.2d at 887. *See* Yunich, 533 F.2d at 85 (2d Cir.1976).

**\*6** In order to make out a claim under the theory of failure to protect against the general threat of harm, Coronado must plead facts stating every one of the following elements: (1) there were numerous inmate-on-inmate attacks in the GHCF yard; (2) these attacks posed a substantial risk of serious harm to inmates; (3) the Defendants knew about these prior attacks; (3) despite their knowledge of the prior attacks, Defendants failed to take steps to reduce the risk of harm to

inmates; (4) the prior attacks and the stabbing of Coronado were similar enough that any steps Defendants could have taken to alleviate the danger posed by the other attacks would also have reduced the risk to Coronado; and (5) if Defendant had taken such steps, Coronado would not have been stabbed in the yard on June 30, 1997.

The complaint is missing several links in this logical chain. Coronado has not alleged the nature of the other attacks in the GHCF yard, for example whether they were perpetrated with knives or fists, by individuals or gangs, or provided any estimate as to the number of such incidents during the period he was incarcerated at Green Haven. This information is necessary to determine what the level of violence was, and whether it was similar enough to the attack on Coronado to put the Defendants on notice that he was at risk of being stabbed. For example, if the other attacks did not involve sharp weapons, then Defendants would have had no reason to install metal detectors, the prior attacks would not have given the Defendants notice that Coronado was in danger of being stabbed, and any remedial measures that might in fact have been taken might not have protected Coronado.

### 2. *Governor Pataki*

The thrust of the claim against Governor Pataki is apparently that he knew that New York state prisons were overcrowded but failed to alleviate the problem, which heightened the generalized risk to the prison population and "caused and subjected" Coronado to the 1998 attack. (Statement of Claim at ¶ 2.) Prison overcrowding is properly the subject of an Eighth Amendment claim only if the plaintiff can show that overcrowding caused the infliction of cruel and unusual punishment against him personally. *See* Rhodes *v. Chapman,* 452 U.S. 337, 348 (1981); 18 U.S.C. § 3626(a)(1) ("A Federal court shall not hold prison or jail crowding unconstitutional under the eighth amendment except to the extent that an individual plaintiff inmate proves that the crowding causes the infliction of cruel and unusual punishment of that inmate.").

As alleged, the overcrowding allegation against Governor Pataki fails to state a claim. Coronado has failed to allege-in more than a conclusory fashion-a causal relationship between overcrowding/understaffing and the attack against him. Even if Coronado made this showing, he would still have to address the subjective knowledge element discussed above, in this context whether Governor Pataki knew that the combination of overcrowding and understaffing posed a risk to inmate

safety, and was deliberately indifferent to it. *See, e.g.,* Houston *v. Sheahan,* 62 F.2d 902 (7th Cir.1995); Morgan *v. District of Columbia,* 824 F.2d 1049, 1058 (D.C.Cir.1987).

**\*7** It is the rare case when a plaintiff can make out a claim that his injuries were caused by overcrowding. *See, e.g.,* Bert *v. Essex County, N.J. Hall of Records,* 986 F.2d 54 (3d Cir.1993) (jail officials not responsible for attack by one prisoner on another based on fact that jail overcrowded); Marsh *v. Barry,* 824 F.2d 1139, 1146 (D.C.Cir.1987) ("The underlying rate of ... random acts of violence may rise with overcrowding, to be sure, but it would still be the unusual case in which a specific act could be attributed to the effects of overcrowding."); Waldo *v. Goord,* No. 97-CV-1385 LEK DRH, 1998 WL 713809, at \*4 (N.D.N.Y. Oct. 1, 1998). Based upon a liberal construction of the facts alleged, this is not one of those rare cases.

The Court finds that there is no set of facts by which Coronado could prove that Governor Pataki knew of and deliberately disregarded a substantial risk of serious harm to inmates that may have been caused by the combination of overcrowding and understaffing at GHCF. The complaint fails to state an Eighth Amendment claim on these grounds and will be dismissed as against Governor Pataki.

### IV. *Failure to State a Claim under the Fourteenth Amendment*

Coronado also claims that the Green Haven Defendants' "gross negligence" and "callous disregard" in failing to protect him deprived him of his Fourteenth Amendment liberty and due process rights. (See Plaintiff's Reply Mem. at 11.) The Supreme Court has not yet established a specific standard for level of culpability required to find a deprivation of Fourteenth Amendment rights in the context of failure to protect inmates. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 n. 8 (1989); Whitley v. Albers, 475 U .S. 312, 327 (1986); *Daniels v. Williams,* 474 U.S. at 334 n. 3.

The Court has specified that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). *See* Davidson v. Cannon, 474 U.S. 344, 348 (1986) (holding that prison officials did not violate prisoner's due process rights where the prisoner alleged only that the officials

"negligently failed to protect him from another inmate");
*Bryant v. Maffuci,* 923 F.2d 979, 984 (2d Cir.) ("simple
negligence is not enough"), *cert. denied,* 502 U .S. 849
(1991).

This Circuit recognizes that the same standard for proving
an Eighth Amendment claim also applies to the Fourteenth:
"[a]n inmate who is injured as a result of a prison official's
deliberate indifference to his safety may maintain a damage
action for the deprivation of his civil rights under the ...
Fourteenth Amendment[ ]." *Snider v. Dylag,* 188 F.3d 51,
54 (2d Cir.1999) (citing *Stubbs v. Dudley,* 849 F.2d 83,
85 (2d Cir.1988)). In *Dylag,* the Second Circuit reversed a
district court's dismissal of an inmate's complaint alleging that
a prison guard had acted with "deliberate indifference" and
violated the plaintiff inmate's Fourteenth Amendment rights
by declaring "open season" on the plaintiff in front of other
inmates. 188 F.3d at 56.

**\*8** As discussed above with regard to the Eighth
Amendment claim, Coronado has not alleged facts to suggest
that the Green Haven Defendants knew of a substantial risk
of serious harm to inmates and deliberately disregarded it.
Coronado has therefore failed to state a claim for deprivation
of Fourteenth Amendment rights.

### V. *Defendants' Personal Involvement*

A claim for money damages under § 1983 may not
lie unless the Defendants were personally involved in
the constitutional violation. *Colon,* 58 F.3d at 873. A
supervisory official's personal involvement in a constitutional
violation may be shown in any one of five ways: (1) direct
participation, (2) failure to remedy a wrong after learning
of it, (3) creation or maintenance of a policy under which
unconstitutional violations occurred, (4) gross negligence in
managing subordinates who committed the unconstitutional
acts, and (5) deliberate indifference by failing to act on
information indicating that unconstitutional violations were
occurring. *Colon,* 58 F.3d at 873. "The bare fact that [a
defendant] occupies a high position in the New York prison
hierarchy is insufficient to sustain [a] claim." *Id.,* 58 F.3d
at 874. *See also* Gill, 824 F.2d at 196 ("[d]ismissal of a
section 1983 claim is proper where, as here, the plaintiff
'does no more than allege that [defendant] was in charge of
the prison' ") (citation omitted).

Coronado does not allege that the Defendants were actively
involved in the attack against him, but rather claims that they
deliberately disregarded the high risk of harm to him, which
qualifies as "personal involvement" under the fifth approach
described above. *See id.* As discussed above, however,
Coronado's allegation that the Green Haven Defendants knew
of "numerous attacks" in the GHCF yard is not sufficient
to support a finding of deliberate indifference. As such,
Coronado has not shown that the Green Haven Defendants
were personally involved in causing his injuries.

In addition, there is no allegation that Governor Pataki
had any knowledge of the risk to inmates due to
overcrowding. Coronado has therefore not shown Pataki's
personal involvement either.

### VI. *Immunity*

Although the complaint will be dismissed for failure to state a
constitutional claim against all of the Defendants, the question
of immunity will be addressed here for purposes of judicial
economy in the event that plaintiff seeks and the Court grants
permission to refile or reinstate the complaint.

All of the Defendants are employees of the State of New
York. The complaint does not specify whether the Defendants
are charged in their personal or official capacities. Allowing
this *pro se* Plaintiff some latitude in pleading, the Court will
construe his complaint as pleading a cause of action against
Defendants in both their official and personal capacities.

### A. *Eleventh Amendment*

The Eleventh Amendment bars suit in federal court against
an unconsenting state. *See Pennhurst State School and
Hospital v. Halderman,* 465 U.S. 89, 100 (1984). To the
extent that this action brings claims against Defendants in
their official capacities, the State is the "real party in interest."
*Id.,* 465 U.S. at 101. Under the Eleventh Amendment,
this Court is without jurisdiction to hear claims for money
damages against a state that would require the payment of
funds from the state treasury. *Papasan v. Allain,* 478 U.S.
265, 278 (1986) (Eleventh Amendment prohibits the award of
damages against state officials sued in their official capacity);
*Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993)
(Eleventh Amendment prohibits suits for monetary damages
against DOCS officials sued in their official capacities).

**\*9** Furthermore, state officials acting in their official capacities are not "persons" for the purpose of § 1983 actions, "and thus are not subject to liability for deprivations of constitutional rights thereunder." *Dube v. State University of New York,* 900 F .2d 587, 595 (2d Cir.1990), *cert. denied, 501 U.S. 1211 (1991)* (*citing Will v. Michigan Department of State Police,* 491 U.S. 58, 64 (1990)); *Young v. Patrice,* 832 F.Supp. 721, 724 (S.D.N.Y.1993). To the extent that the Defendants are sued in their official capacities, then, they are not "persons" as defined by § 1983. *Kentucky v. Graham,* 473 U.S. 159, 163 (1985); *see Papasan,* 478 U.S. at 278.

Accordingly, the cause of action against the Defendants in their official capacities cannot be sustained. Furthermore, because only state authorities acting in their official capacities have the power to implement forward-looking equitable relief, Coronado's claims for injunctive and declaratory relief also fail.

B. *Qualified Immunity*
Defendants claim that they are subject to qualified immunity from liability for civil damages because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Anderson v. Creighton,* 483 U.S. 635 (1987); *Ceccere v. City of New York,* 967 F.2d 826, 829 (2d Cir.1992).

Defendants argue that their actions (or omissions) were not "clearly established" to constitute deprivations of Coronado's constitutional rights. The test in this Circuit is whether "in light of pre-existing law the unlawfulness [of defendants' actions] was apparent." *Piesco v. City of New York,* 933 F.2d 1149, 1160 (2d Cir.1992). It is well established that the failure to protect an inmate from attacks at the hands of another inmate is a deprivation of the victim's constitutional rights if prison authorities knew of and

deliberately disregarded the substantial risk of serious harm. *Farmer,* 511 U.S. at 837. There is no doubt that "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id., 511 U.S. at 833.*

However, Defendants argue that the Court must also decide that a constitutional violation in fact occurred before deciding whether they are entitled to qualified immunity. *Seigert v. Gilley,* 500 U.S. 226, 232 (1991); *Calhoun v. New York State Div. of Parole,* 999 F.2d 647, 652 (2d Cir.1993). However, given the procedural posture of this case, this inquiry is premature. There has been no discovery, and whether or not a constitutional violation took place in this case would be a fact-dependent determination. At this juncture, Coronado has not pleaded facts sufficient to state a claim against the Green Haven Defendants for depriving him of his Eighth Amendment right to be free of "unnecessary and wanton infliction of pain," *Albers,* 475 U.S. at 320, by deliberately disregarding a serious risk of harm to him.

**\*10** Accordingly, the Court will not decide the hypothetical question of whether or not qualified immunity would apply to the Defendants if Coronado were able to state a constitutional claim.

*Conclusion*
For the foregoing reasons, Coronado's motion to reinstate the complaint is granted. Defendants' motion to dismiss the complaint is granted for failure to state a claim and upon Eleventh Amendment immunity for Defendants in their official capacities. However, Coronado is granted leave to replead in accordance with this opinion.

It is so ordered.

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1372834

**Footnotes**

1    Coronado submitted three color photographs of his wounds with his Complaint. Although the date on two of the photographs is cut off, one of them is dated June 30, 1997, the date of the attack at issue here. This photograph shows several long red scars running lengthwise down Coronado's lower back.

2    *Coronado v. LeFevre, et al.,* 886 F.Supp. 220 (N.D.N.Y.1995), addressed the two prior attacks, both of which took place at the Clinton Correctional Facility ("Clinton"). *LeFevre,* 886 F.Supp. at 222. Coronado claims that in *LeFevre,* the court held that he was at substantial risk of serious harm in a case brought on identical claims for attacks on Coronado while he was housed at Clinton Correctional Facility. In fact, that opinion held that Coronado had failed to allege that prison authorities knew of a substantial risk of serious harm to him, and dismissed his complaint for failure to state a claim. *Id.,* 886 F.Supp. at 224. In any case, the *LeFevre* court's holding with regard to Coronado's ability to state a deliberate indifference claim for those attacks has no bearing on this Court's determination of the allegations pleaded in the instant complaint.

---

**End of Document**                                           © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2020 Thomson Reuters. No claim to original U.S. Government Works.    8

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 125 of 164

King v. Department of Correction, Not Reported in F.Supp. (1998)

1998 WL 67669
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jamel KING, Plaintiff,

v.

DEPARTMENT OF CORRECTION and
Captain J. Shipmen # 1208, Defendants.

No. 95 Civ. 3057(JGK).
|
Feb. 18, 1998.

**Attorneys and Law Firms**

Jamel King, Comstock, New York, pro se.

Kathleen A. Handke, Assistant Corporation Counsel, Corporation Counsel for the City of New York, New York City, for the defendants.

**OPINION AND ORDER**

KOELTL, J.

 *1 Plaintiff Jamel King, an inmate currently incarcerated at Great Meadow Correctional Facility, filed this pro se action against the New York City Department of Correction and Captain Jerome Shipman ("Shipman," sued as "Shipmen").

The plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that Shipman coordinated an attack on the plaintiff by another inmate and that he failed to protect him from the attack.

The defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or, alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The defendants argue that the claim against the Department of Correction should be dismissed because the Department of Correction is not a suable entity and because the plaintiff has failed to demonstrate that a municipal custom or policy caused his injury. With respect to the claim against Captain Shipman, the defendants argue that the plaintiff has offered no evidence to support his claim that Shipman conspired to attack him. In addition, the defendants contend that to the extent that the plaintiff has alleged a failure to protect, he has offered no evidence to support that claim as well.

After the defendants filed their motion, the plaintiff subsequently moved for judgment on the pleadings or for summary judgment as well. The plaintiff asserts that the evidence offered by him, alone or in conjunction with the evidence the plaintiff has sought but failed to obtain from the defendants, shows that his injury resulted from the defendants' intentional actions or inactions.

**I.**

The plaintiff's claim arises from events occurring while the plaintiff was incarcerated in the Central Punitive Segregation Unit ("CPSU") on Rikers Island. (Pl.'s Reply to Def.'s Summ. J. Mot. ("Response") at 2.) The following facts are undisputed.

On January 21, 1995, the plaintiff had an altercation with another inmate while in the recreation yard. (Compl. at 3; Shipman Aff. ¶ 3.) Following the fight, and under the direction of Captain Shipman, the plaintiff was transferred to a new cell. (Compl. at 3–4; Shipman Aff. ¶ 4.) Shortly thereafter, the plaintiff was slashed by another inmate, suffering injuries to his face, neck and shoulder that required twelve stitches. (Compl. at 4; Shipman Aff. ¶ 5.)

The plaintiff alleges that Shipman orchestrated the attack on the plaintiff. (Response at 2.) The plaintiff states that following the fight in the yard, Shipman came to the plaintiff's cell and indicated that the plaintiff would be charged for having a razor during the fight, despite the plaintiff's protestations to the contrary. (King Dep. at 18.) The plaintiff alleges that Shipman threatened him by saying, "[m]atter of fact, pack up your bags, my boys are going to handle you." (Id. at 19.) The plaintiff states that when he refused to pack, Shipman told him to, "pack up or my boys will come in and get you." (Id.) In accordance with this order, the plaintiff allegedly packed his belongings and walked with Shipman to a new cell. (Id. at 20.) The plaintiff states that Shipman preceded him down the gallery, entered the new cell momentarily, then exited and walked off the gallery. (Id.) After entering the cell and depositing his belongings in it, the plaintiff walked back through the gallery, at which point he was slashed with a razor. (Id. at 37–38.) The plaintiff believes the attacker to be one of Shipman's "Boys." (Response at 2.) A team under Shipman's supervision subsequently identified the inmate who slashed the plaintiff and discovered the razor that had been used. The second inmate was disciplined for the

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 126 of 164

King v. Department of Correction, Not Reported in F.Supp. (1998)

attack on the plaintiff and was transferred to another tier in the prison. (Shipman Aff. ¶ 5.)

## II.

**\*2** While both parties have moved for judgment on the pleadings or, alternatively, for summary judgment, both parties have also submitted additional evidentiary materials.[1] The Court has considered those materials, and, pursuant to Federal Rule of Civil Procedure 12(c), this motion will be treated as a motion for summary judgment.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.* at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also*

*Gallo,* 22 F.3d at 1223; *Knowles v. New York City Dep't of Corrections,* 904 F.Supp. 217, 220 (S.D.N.Y.1995).

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Knowles,* 904 F.Supp. at 220.

When a pro se litigant is involved, although the same standards for summary judgment apply, the pro se litigant "should be given special latitude in responding to a summary judgment motion." *Gonzalez v. Long,* 889 F.Supp. 639, 642 (E.D.N.Y.1995); *see also Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) ("special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment"); *Ruotolo v. Internal Revenue Serv.,* 28 F.3d 6, 8 (2d Cir.1994); *Knowles,* 904 F.Supp. at 220.

## III.

**\*3** The plaintiff has named the Department of Correction as a defendant in this suit. The Department of Correction argues that the complaint should be dismissed against it because it is not a suable entity. In this context, the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17 § 396. Thus, where a plaintiff has named the Department of Correction as a defendant, he has sued a non-suable entity. *See Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997); Campbell v. Dept. of Correction of New York City, No. 95 Civ. 3242, 1996 WL 79869, at \*1 (S.D.N.Y. Feb.26, 1996); *see also East Coast Novelty Co., Inc. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992); *Martin v. City of New York,* 627 F.Supp. 892, 894 n. 2 (E.D.N.Y.1985).

Furthermore, the Department of Correction also argues that even if the plaintiff had named the City of New York as a defendant, the plaintiff's claim must still fail as a matter of law since the plaintiff has not made the necessary allegations for municipal liability under 42 U.S.C. § 1983. The plaintiff asserts that the Department of Correction negligently failed to protect him from the assault and that the Department of Correction is "liable for the wrongful actions of the DOC's employees." (Response at 3.) It is well established that a municipality may not be held liable under § 1983 simply because it employs a tortfeasor—or, in other words, that a municipality cannot be held liable under § 1983 on a respondeat superior basis. See Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Instead, after Monell and its progeny, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused the plaintiff's injury. See Monell, 436 U.S. at 694; Brown, 520 U.S. at ——, 117 S.Ct. at 1388. The plaintiff must demonstrate that the municipality was the "moving force" behind the injury alleged. See Brown, 520 U.S. at ——, 117 S.Ct. at 1388; Monell, 436 U.S. at 692. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at ——, 117 S.Ct. at 1388.

Here, the plaintiff has not indicated or even alleged a municipal policy or custom which caused his injury. Rather, he has indicated only a single injurious event from which he asserts the Department of Correction negligently failed to protect him. Even if all of the plaintiff's allegations are true, he has failed to identify any municipal policy or custom, pursued with the requisite degree of culpability, which caused the plaintiff's injury. Moreover, the plaintiff's allegations that the Department of Correction is liable for the acts of its employees demonstrates that he is attempting to assert liability against the Department of Correction on a respondeat superior basis, which is clearly insufficient under Monell. See Monell, 436 U.S. at 691; Brown, 520 U.S. at ——, 117 S.Ct. at 1388. Thus, the plaintiff's § 1983 claim against the

City of New York would fail, even had the City been named as a defendant.

**\*4** Accordingly, the Department of Correction's motion for summary judgment is granted.

## IV.

### A.

The plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated because defendant Shipman organized and planned the assault against him. Shipman argues that the plaintiff has failed to make the required showing that Shipman was personally involved in the alleged constitutional violation. "In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir.1991) (citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977), cert. denied 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); see also Koehl v. Dalsheim, 85 F.3d 86, 89 (2d Cir.1996); Champion v. Artuz, 76 F.3d 483, 487 (2d Cir.1996); Fry v. McCall, 945 F.Supp. 655, 661 (S.D.N.Y.1996). "Personal involvement includes, but is not limited to, direct participation in the infraction." Fry, 945 F.Supp. at 661; Moffitt, 950 F.2d at 886. [2]

Here, the plaintiff has failed to show that Shipman was in any way involved in the attack. Significantly, the plaintiff has not provided any evidence to contradict Shipman's statement in his affidavit that he neither conspired with the plaintiff's attacker nor knew an attack was imminent. (Shipman Aff. ¶ 5.) The plaintiff did not see or hear Shipman speak to other inmates prior to the attack, (King Dep. At 36, 38), and he does not even have any second-hand information from other inmates or officers that Shipman was responsible for the attack. (Id. at 54.)

Instead, the plaintiff testified at his deposition that he "feel[s] that Captain Shipman set [him] up ... because it was no more than two minutes—five minutes apart that he made that threat —between the time of the threat and when I got slashed." (Id. at 53). The plaintiff reiterated this "feeling" as the basis for his claim:

King v. Department of Correction, Not Reported in F.Supp. (1998)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 128 of 164

Q: Did anyone ever tell you that [Shipman] set you up?

A: No, it was just that—you know that feeling you get when you know someone did dirty to you.

(*Id.* at 54.) However, this "feeling," without more, would be plainly insufficient evidence to support Shipman's personal involvement in the attack. [3] The plaintiff's allegations of Shipman's collusion with his attacker are no greater than other conclusory allegations of conspiracy which have often been held insufficient to sustain a claim. *See, e.g., Sykes v. James,* 13 F.3d 515, 521 (2d Cir.1993), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); *Malsh v. Garcia,* 971 F.Supp. 133, 139 (S.D.N.Y.1997).

Nor do the alleged threats that the plaintiff testified to provide the necessary connection between Shipman and the slashing incident to demonstrate personal involvement. Shipman's alleged statement shortly after the prison yard fight to "put a razor on King's ticket" was understood by the plaintiff to mean that he would receive an infraction for having a razor, not that he was being set up to be slashed. (*Id.* at 20). Likewise, Shipman's alleged order that the plaintiff should "pack up or my boys will come in and get you" actually bolsters Shipman's assertion that he intended to move the plaintiff to separate him from the inmate with whom the plaintiff had fought in the recreation yard. (Shipman Aff. ¶ 4.) Thus, the plaintiff has presented no competent evidence that defendant Shipman was directly involved in the attack against the plaintiff by orchestrating it.

### B.

**\*5** The plaintiff also claims that Shipman violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him for harm. The Eighth Amendment "places restraints on prison officials who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted); *Knowles,* 904 F.Supp. at 221. The Eighth Amendment

also "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't Of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *see also Farmer,* 511 U.S. at 832; *Knowles,* 904 F.Supp. at 221. Prison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is "simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer,* 511 U.S. at 833–34 (citation omitted).

However, "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety. *Id.* at 834. To establish that a prison official violated the Eighth Amendment, a plaintiff must satisfy a two-part test. First, there must be a "sufficiently serious" deprivation resulting in the denial of the "minimal civilized measure of life's necessities." *Id.; Knowles,* 904 F.Supp. at 221. This objective test requires that the plaintiff be subjected to a "substantial risk of serious harm." *Farmer,* 511 U.S. at 834; *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). Second, the charged prison officials must have acted with a sufficiently culpable state of mind by being deliberately indifferent to the health or safety of the inmate. *See Farmer,* 511 U.S. at 834; *Knowles,* 904 F.Supp. at 221. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847.

As explained above, to the extent the plaintiff contends that Shipman orchestrated the attack against him, there is no credible evidence to support the claim. Even if the plaintiff's claim is construed as one based upon a failure to protect him, the plaintiff has failed to present sufficient evidence to withstand the motion for summary judgment. With respect to the first part of the Eighth Amendment test, the injury sustained by the plaintiff, a cut to his face, neck, and shoulder requiring 12–13 stitches, and the manner in which he received the injury, are sufficient to satisfy the objective requirement of the Eighth Amendment claim. *Knowles,* 904 F.Supp. at 221; *see also Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997).

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 129 of 164

King v. Department of Correction, Not Reported in F.Supp. (1998)

However, to satisfy the second, subjective element of his Eighth Amendment claim, the plaintiff must demonstrate a sufficiently culpable state of mind of the prison official. While "the failure of prison guards to employ reasonable measures to protect an inmate from violence by other prison inmates has been considered cruel and unusual punishment," *Knowles,* 904 F.Supp. at 221, "[a]n isolated omission to act by a ... prison guard does not support a claim under § 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (per curiam) (citing *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974)). In Eighth Amendment cases dealing with the failure to prevent harm, "[r]eckless disregard of plaintiff['s] right to be free from attacks by other inmates may be shown by the existence of a 'pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk.' " *Rucco v. Howard,* No. 91 Civ. 6762, 1993 WL 299296, at *4 (S.D.N.Y. Aug.4, 1993) (quoting *Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984); *see Ayers,* 780 F.2d at 209 (risk of harm to plaintiff due to repeated threats by fellow inmates of which prison guard was aware supports a claim under § 1983); *Knowles,* 904 F.Supp. at 221–222. Mere negligence, however, on the part of a prison official will not give rise to a claim under § 1983. *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974); *Knowles,* 904 F.Supp. at 222.

**\*6** The plaintiff is this case has failed to present any evidence to rebut Shipman's insistence in his affidavit that he had no knowledge of any impending attack on the plaintiff. (Shipman Aff. ¶ 5.) The record shows that Shipman attempted to protect the plaintiff by transferring him to another cell away from his recreation yard co-combatant. And, as the plaintiff describes the incident, the plaintiff was injured when he walked along the gallery outside his cell and was attacked by a second inmate. The plaintiff has no information from other inmates or prison guards to substantiate his belief that Shipman orchestrated the attack against him. Moreover, the plaintiff has no evidence that Shipman had orchestrated attacks against other inmates or that Shipman knew an attack on the plaintiff was imminent. (King Dep. at 65.) Thus, the plaintiff has failed to provide any facts showing that Shipman intentionally subjected him to a "substantial risk of serious harm," or was

deliberately indifferent to such risk. *See Fischl,* 128 F.3d at 55.

**V.**

Finally, the plaintiff urges that the Court should deny the defendants' motion for summary judgment or should grant his cross-motion for summary judgment because the defendants have failed to provide him with copies of the shower log for January 21, 1995. He believes that the logs would contradict a statement made by a corrections officer in an incident report that she had escorted the plaintiff to take a shower at the time of the incident. (King Dep. at 34.) The Court construes this as a request pursuant to Fed.R.Civ.P. 56(f) to grant further discovery to oppose the motion. Pursuant to Rule 56(f), a party must make a four-part showing before further discovery should be granted prior to resolution of a pending motion for summary judgment: (1) the party must specify the nature of the uncompleted discovery; (2) the party must demonstrate how the facts sought are reasonably expected to create a genuine issue of fact; (3) the party must explain what efforts he has made to obtain those facts; and (4) the party must explain why those efforts were unsuccessful. *Askir v. Brown & Root Servs. Corp.,* No. 95 Civ. 11008, 1997 WL 598587, at *7 (S.D.N.Y. Sept.23, 1997); *see also Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994); *Contemporary Mission, Inc. v. United States Postal Serv.,* 648 F.2d 97, 107 (2d Cir.1981).

In this case, the plaintiff's request for further discovery presents no basis to deny the defendants' motion for summary judgment. The discovery could not reasonably be expected to create a genuine issue of material fact, even if the plaintiff had timely pursued this discovery. Even if the shower logs would contradict the officer's incident report, this would not provide any connection between Shipman and the assault. At most, the plaintiff seeks to contradict another officer's incident report, but that does not suggest any evidence to support liability against Captain Shipman.

**\*7** Accordingly, the plaintiff's request for additional discovery is denied.

**CONCLUSION**

King v. Department of Correction, Not Reported in F.Supp. (1998)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 130 of 164

For the reasons explained above, the plaintiff's motion for summary judgment or for additional discovery pursuant to Fed.R.Civ.P. 56(f) is **denied.** The defendants' motion for summary judgment dismissing the complaint is **granted.** The Clerk of the Court is directed to enter judgment dismissing the complaint and closing the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp., 1998 WL 67669

## Footnotes

1    The plaintiff has presented a sworn statement in his response brief. The defendants have submitted an affidavit, a deposition, and other evidence.

2    Personal involvement for purposes of a § 1983 action may be established by showing "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). The plaintiff has alleged only the first type of personal involvement, direct participation, by Shipman.

3    The plaintiff had alleged in his complaint that after his stay in the clinic, Shipman said, "My boys work fast." (Compl. at 4.) But this claim is not reiterated in the plaintiff's response to the present motion, is not reflected in the plaintiff's deposition, and is contradicted by the plaintiff's sworn statements that no one told him Shipman set him up and that he refused to speak with Shipman after the attack. (King Dep. at 22, 54, 60.)

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5589350
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Donald BOWENS, Plaintiff,

v.

M.E. POLLOCK, et al., Defendants.

No. 06–CV–0457A(Sr).
|
Oct. 12, 2010.

**Attorneys and Law Firms**

Donald Bowens, Utica, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

*REPORT, RECOMMENDATION AND ORDER*

H. KENNETH SCHROEDER, JR., United States Magistrate Judge.

**\*1** This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to Title 28, United States Code, Section 636(b) (1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. # 19.

Plaintiff, proceeding *pro se,* commenced this action pursuant to Title 42, United States Code, Sections 1981, 1983, 1985 and 1986, alleging that defendants engaged in a conspiracy and violated his constitutional rights to free speech, access to the courts, equal protection and due process and subjected him to cruel and unusual punishment in retaliation for the performance of his duties as Secretary of the Groveland Correctional Facility ("Grove land"), Inmate Liaison Committee ("ILC"), during his incarceration at that facility. Dkt. # 1.

Currently before the Court are defendants' motions for summary judgment (Dkt. 31 and 51), and plaintiff's motion for summary judgment. Dkt. # 45. For the following reasons, it is recommended that defendants' motions be granted in part and denied in part and that plaintiff's motion be denied in its entirety.

*BACKGROUND*

Plaintiff arrived at Groveland in January 2004. Dkt. # 1, ¶ 23. Plaintiff signed a client participation contract for the Veterans Residential Therapeutic Program ("Veterans Program"), on April 8, 2004, and subsequently completed both the basic and after care portions of that program. Dkt. # 26, p. 106. The Veterans Program Conduct Guide provides, *inter alia:*

> Be reminded that **NO** pornographic materials, or gambling are allowed as a participant of this Program, or dorm resident.

Dkt. # 26, p. 104.

Following completion of the Veterans Program, plaintiff continued as a Clerk in the Veterans Program and remained in the Veterans Program Housing Unit. Dkt. # 1, ¶ 23. Plaintiff chose to volunteer as a Clerk so that he could keep his higher paying position as a Clerk in the Law Library, but understood that he would have the option of dropping his position in the Law Library should it become necessary for him to be paid as a Clerk in order to remain in the Veterans Program Housing Unit. Dkt. # 1, ¶ 24.

In February 2005, plaintiff was elected as the Veterans Program Representative to the ILC and in July 2005, he was elected Secretary of the ILC. Dkt. # 1, ¶ 25. In October 2005, the Chair of the ILC, inmate McDuffy, instructed plaintiff to speak to Sergeant Pollock, the ILC Staff Advisor, regarding the movie selection for November. Dkt. # 1, ¶ 26. When he was unable to locate Sergeant Pollock on October 13th and 14th, plaintiff typed two letters and placed them both under Sergeant Pollock's door, expecting that Sergeant Pollock would forward the second letter to Deputy Superintendent Bartlett. Dkt. # 26, p. 51. Plaintiff states that he did not send copies of these letters to anyone else. Dkt. # 26, p. 52.

The first letter requested that Sergeant Pollock "let the movie selection that was voted on by the inmate population and submitted for November, go unchanged." Dkt. # 1–2, p.9. The second letter was addressed to Deputy Superintendent Bartlett and advised that:

**\*2** It has come to the attention of the I.L.C. that D.O.C.S. has approved all movies that are listed in the Swank Catalog for all Correctional Facilities throughout the State of New York.

At this time the I.L.C. is respectfully requesting that they be provided with a Swank Movie Catalog. A Swank Catalog will increase the Population's viewing selection and assure that the selection[s] are in compliance with D.O.C.S., and Media review. Also, the I.L.C. is respectfully requesting that they be provided with a catalog of the movies that are available from the Dansville Block Buster Video Store.

Thank you for your time in this matter, and may we please hear from you soon.

Dkt. # 1–2, p. 10.

Sergeant Pollock explained that,

[o]n 10/18/05, I found two letters, on I.L.C. letterhead, that had been shoved underneath my office door in the Peterson Building. I reviewed the letters; one was a letter to me requesting that I rescind my decision to change the November movies that had been voted on by population. The second was a letter to DSP Bartlett requesting movie catalogs from two vendors. Both letters were photocopies and there was no cover letter. Inmate Bowens signed both. Bowens is the Secretary for the Inmate Liaison Committee.

I had Inmate Liaison Committee Chairman M. McDuffie [1] ... report to my office so I could ask what the memos were about. Inmate McDuffie had knowledge of the situation, but denied giving Inmate Bowens permission to send any letters. McDuffie stated that he delegated Bowens to talk to me, but not put anything in writing. There is a standing order from me that no letter from the I.L.C. can be sent out unless signed by the Chair or Vice–Chair. Further, I must review the letter and sign off first before it goes beyond the I.L.C. It appeared that the letters from Bowens were in violation of these orders. McDuffie asked if I could call Bowens to my office for further information.

When Inmate Bowens reported to my office, I asked him to sit down. Inmate McDuffie was still present. I asked what the memos were all about. I explained that I did not change the November listings, nor do I ever see the list. D. Petric, Senior Librarian, supervises the Movie program with permission from D.S.P. Bartlett. I also asked when

was there ever a vote taken by population over the monthly movies. I asked how many inmates voted, where did they vote, etc? I do admit being assertive, but not hostile or irate. Inmate Bowens admitted that there had not been a vote. Just some inmates came up to him in the yard and suggested some films.

In regard to the memo to DSP Bartlett, Inmate Bowens then stated he had not yet sent it to her. I asked whether he had spoken to Mr. Petric about the movie catalogs and he admitted he had not. He could offer no explanation for not going through the chain of command. He stated he would give all copies of both memos to ILC Chair McDuffie. Both inmates were then sent on their way.

**\*3** Dkt. # 26, p. 124. Sergeant Pollock further explained that he

did take [the] memo issued by Bowens very seriously because it was a breach of protocol and additionally placed my creditability [sic] with the Inmate population at risk. As the Inmate Liaison Committee Staff Advisor, my creditability [sic] is what allows me to do my job effectively.

Dkt. # 26, p. 137.

On October 19, 2005, Sergeant Pollock explained that he was reviewing my notes and found that Inmate Bowens was residing in G–2 Dorm. The entire G–Block is reserved for inmates programmed into the V.R.T.P. program or the G–Block porters. Inmate Bowens was a full time paid Eve/Late Eve Law Library Clerk. Records reflected that he was a volunteer clerk for the V.R.T.P. program. I spoke with Correction Counselor Strollo and confirmed that Inmate Bowens was not active in the Treatment Program. After Mr. Strollo and I spoke about the incident, he stated that there was no need for Inmate Bowens to reside in the

block. I notified Captains' Office of my findings and they ordered him to be moved to another dorm to allow another inmate to begin the Treatment program. As a sergeant, I do not have the authority to make such a move on my own.

Dkt. # 26, p. 135. Captain Wilcox authorized plaintiff's move after Sergeant Pollock brought to his attention the fact that plaintiff was a volunteer clerk, explaining to plaintiff during the course of his Tier III hearing that it was his policy for inmates to be housed where they are programmed, and noting that,

> [a]ccording to Mr. Strollo you were not on the payroll but you were a volunteer. Now if you're a volunteer and [you are taking] bed space from an inmate that is supposed to be programmed there, I will move you ...

Dkt. # 26, pp. 12 and 14.

In response to plaintiff's grievance concerning his removal from the Veterans Program Housing Unit, Inmate Grievance Program Supervisor O'Brien responded that Captain Wilcox advised that,

> the Veteran's dorm is for those actively participating in the Veteran's Program. Facility records confirm that the grievant completed his active participation in the program on 10/2/05. It is not the policy of this facility to house inmates based upon their choice of volunteer service. The grievant was properly moved at the discretion of security for facility needs. The space in the Veteran's dorm is correctly given to those actively in the program, for which a waiting list exists.

Dkt. # 26, pp. 156–158. Plaintiff complains that he was removed from a therapeutic housing environment of 34 inmates "to one of the most incident prone dorms in the facility" housing 60 inmates and that he was "moved from a single man cube to the top bunk in a double bunk area." Dkt. # 1, ¶ 53.

At approximately noon on October 19, 2005, Sergeant Pollock authored a misbehavior report charging plaintiff with a violation of Rule 113.15 (Contraband—Inmates shall not purchase, sell, loan, give, or exchange personally owned articles without authorization); Rule 113.22 (Contraband—Inmates shall not use or possess authorized articles in unauthorized areas); Rule 113.23 (Contraband—Inmates shall not be in possession of any article that is not authorized by the Superintendent or designee); Rule 116.10 (Inmates shall not lose, destroy, steal, misuse, damage or waste any type of State property); and Rule 180.17 (Unauthorized Legal Assistance). Dkt. # 26, p. 5. Sergeant Pollock described the incident as follows:

 **\*4** On 10/19/05, C.O. R. Dickerson ordered D. Bowens ... to pack up his personal property to move to K–1. The inmate took the draft bags. A short time later the officer went to check on Bowens and could not locate him. The office [r] went to the basement V.R.T.P. Clerk's Office where Bowens was a volunteer clerk. Officer Dickerson found and checked a bag and found Bowen's personal legal work and some state office supplies. He then secured the office. A short time later, he found Inmate Bowens packing in his cube. The inmate finished and before leaving asked for access to the basement Clerk's office to get his personal draft bag. At that point the inmate was directed to complete his move. Officer Dickerson had the bag transport[ed] to the watch commander's office so I could investigate further. I found inmate Bowen's personal legal work, other inmate's legal work, law books (Jailhouse Lawyers Manual with the name "Jose" on the cover, Statsky Legal Thesaurus/ Dictionary with "Groveland Correctional/Main Library" crossed out with the initials "D.B." in it, NYS Homeless Veteran's Service Guide marked "Guidance Unit Main"; State owned office supplies [ ] tape, paper clips, folder labels, wire bound spiral memo book, 3 pornographic magazines, lined [paper], photocopies of pornographic photos from the magazine, assorted blank paper, 12" ruler marked "Book Room—Clerk."

The VRTP Clerk's Office is a program area for the Guidance Unit. No personal property, especially legal work

or pornographic materials are allowed. Further the inmate was not authorized to remove state-owned office supplies from any area and place them in his personal property except for a Mead Composition Book (09910) for use as the ILC Secretary. Inmate Bowens is a Eve/Lt Eve Law Library Clerk.

Dkt. # 26, pp. 5–6. C.O. Dickerson endorsed the misbehavior report. Dkt. # 26, p. 5. As part of his duties as Review Officer, defendant Irving Schoenacker received the misbehavior report. Dkt. # 53, ¶ 8. Initially, defendant Schoenacker determined that the misbehavior report was complete and stated a valid charge. *Id.* "Then, given the serious nature of plaintiff's alleged infractions, I determined that plaintiff should be entitled [sic] a Superintendent's hearing and coded the misbehavior report as a Tier III." *Id.* Plaintiff was not confined following issuance of the misbehavior report. Dkt. # 26, p. 10.

Sergeant Pollock informed Lt. Keller that:

[o]n October 21, 2005, I again interviewed Inmate Bowens in my office. This was a follow-up to a ticket I wrote on Inmate Bowens concerning contraband he had in the V.R.T.P. Clerk's office that was discovered by R. Dickerson, C.O., the day of his move out of G–2. I explained the seriousness of the misbehavior report and that it would be a Tier III ticket and the possible dispositions. I then asked Inmate Bowens about other inmate law library clerks violating the condition of their assignments as law library clerks. Inmate Bowens denied any knowledge of any unauthorized activities in the Law Library. Serving Officer J. Martin contacted me during the interview and asked for me to send Inmate Bowens to C–School after I was done with him, so he could serve him his ticket.

**\*5** Concerning the inmate's accusation on any note I allegedly authored to the Law Library officers stating that he could not work his assigned job, I do not recall writing any such note. I asked the officer covering the Activities Building today to look for such a note, all that could be found on this date is Bowens name scratched off the roster. I have not spoken to any of the assigned Law Library officers at all about Inmate Bowens....

Dkt. # 26, p. 136. As part of the investigation into plaintiff's complaints, however, C.O. Bauman wrote:

My only involvement in this matter is that I did work the law library on 10–21–05 and upon reporting to the law library at 3:00 p.m., I did find a note on my desk saying to not let inmate Bowens work in the law library until further notice per Sgt. Pollock. Inmate Bowens showed up for work and I told him to leave & not show up again until further notice.

Dkt. # 1–2, p. 12. C.O. Austin explained that,

[o]n Oct. 24 ... 2005 I reported to my bid [sic] in the law lib. I opened the log book and there was a note inside that stated inmate Bowens ... was not allowed in the law library until after his hearing per Sgt. Pollock. I explained this to Bowens and told him he would be handled as if he were [keeplock] that if he needed any legal assistance he could drop me a tab stating what he needed for his hearing. He did not send me any tabs saying he needed help.

Dkt. # 1–2, p. 13.

Plaintiff appeared before the Program Committee on October 24, 2005. Dkt. # 1, ¶ 37. Sergeant Pollock explained that this was a scheduled appearance and that,

[p]rior to his coming into the room, I did inform Mr. Lindsay, the Program Committee Chair[,] about Bowen's situation. As Chair, Mr. Lindsay decided that Inmate Bowens should be removed from the Law Library Clerk position pending his hearing. This is a normal procedure, when a misbehavior

ticket is written in an inmate's program area.

Dkt. # 26, p. 136. By Memorandum dated November 14, 2005, in response to plaintiff's complaints, S.C.C. Lindsay advised Inmate Grievance Supervisor O'Brien that plaintiff was,

scheduled for Program Committee on a routine basis due to his completion of Transitional Services Phase III.

Prior to his entry into the room, the Program Sergeant informed me that inmate Bowens ... had a misbehavior report pending. When inmate Bowens came into the room, I informed him that I wanted to review the misbehavior report. When we checked the misbehavior report we found that the Tier III misbehavior report contained three charges which involved his Program in the Law Library, where he was assigned as an administrative clerk. As program Chairperson I decided to remove him from the assignment until the misbehavior report had been resolved. If he is found not guilty of those charges, he will be restored to the law library, including back pay. If he is found guilty of those charges he will be rescheduled for Program Committee when the disciplinary sanctions are completed and re-Programmed to another assignment.

**\*6** Dkt. # 26, p. 146. Deputy Superintendent for Security Gerard Krempasky affirms that it was "standard procedure" to remove an inmate from his programming pending resolution of a disciplinary hearing where the misbehavior report involved allegations pertaining to that programming. Dkt. # 38, ¶ 7.

The Tier III hearing commenced on November 1, 2005 before Captain Wilcox. Dkt. # 26, p. 10. In response to plaintiff's concern that he needed an employee assistant, Captain Wilcox advised plaintiff that he could request documents during the course of the hearing and made arrangements for plaintiff to access the Law Library. Dkt. # 26, p. 16. Inmate assistance is not required when an inmate is not confined. Dkt. # 42, ¶ 6.

Plaintiff explained to Captain Wilcox that he was in possession of the *Jailhouse Lawyers Manual* because another inmate, Jose Marrero, put them on the [Veterans Program's] office desk Wednesday morning so that he could donate them to the Law Library. Dkt. # 26, p. 25. Inmate Marrero testified that he brought the manual and its supplement to the office for plaintiff to drop off at the Law Library because he is getting

ready to be released and rarely leaves his dorm so as to avoid any trouble before his release. Dkt. # 26, pp. 41–42. It was confirmed that inmate Marrero properly received the books through legal mail. Dkt. # 26, p. 58. Captain Wilcox informed plaintiff that inmate Marrero could not leave books with an inmate to donate, but was required to follow a process through the Dep. of Programs. Dkt. # 26, p. 25. Plaintiff responded that he had tried to find the appropriate procedure for an inmate wishing to donate books to the Law Library, but found none, and noted that he had only received the book the morning he was directed to move. Dkt. # 26, p. 26.

Plaintiff informed Captain Wilcox that he had checked the legal thesaurus out of the Law Library and Captain Wilcox confirmed that was so. Dkt. # 26, pp. 30 and 73. Plaintiff also stated that the ruler was inside a folder and that he would have removed it if he had been able to go though his bag inside the office because he understood that it would be considered contraband inside the K dorm. Dkt. # 26, p. 44. He explained that the file folders and file folder labels were in his draft bag because he used them in both the veterans office and in the Law Library to assist veterans who were not residents of the Veterans Program Housing Unit. Dkt. # 26, p. 30.

C.O. Dickerson testified that he went down to the basement in the office and observed a bag half full of property which contained contraband. Dkt. # 26, p. 44. C.O. Dickerson locked the door and confirmed the bag was plaintiff's when he asked C.O. Dickerson to unlock the door so he could get his bag. Dkt. # 26, p. 45. Sergeant Pollock testified that he considered the Playboy magazines contraband because pornography is forbidden in the veteran's residential treatment program dorm, as well as in any program areas, including the veteran's inmate clerk's office. Dkt. # 26, p. 56. Sergeant Pollock testified that plaintiff was a Volunteer Clerk in the Veterans Program and resided in the Veterans Program Housing Unit, which would subject him to the conditions of that housing unit. Dkt. # 26, p. 56. Sergeant Pollock confirmed that he believed the assorted legal papers of plaintiff and other inmates to be contraband because they were discovered in an area where they did not belong. Dkt. # 26, p. 57. Sergeant Pollock explained that although the wire bound memo pads were once issued to the ILC, "a revised memo came out making them contraband." Dkt. # 26, pp. 57–58.

**\*7** Sergeant Pollock spoke with the Veterans Program director, Mr. Strollo, and determined that plaintiff could be moved as he had completed the program and was a volunteer clerk. Dkt. # 26, p. 60. Corrections Counselor

Strollo perceived that Sergeant Pollock "was upset about what Mr. Bowens had done," but was handling the situation himself. Dkt. # 26, p. 89. Corrections Counselor Strollo testified that plaintiff was part of the Veterans Program and had been hired as a clerk in the Veterans Program. Dkt. # 26, p. 87. Corrections Counselor Strollo testified that inmates residing in the Veterans Program Housing Unit, regardless of whether they were a program participant or not, were not allowed to possess magazines such as Playboy. Dkt. # 26, p. 87. Corrections Counselor Strollo also testified that plaintiff was not allowed to take personal property, including legal work, into the clerk's office. Dkt. # 26, pp. 87–88.

Plaintiff conceded possession of the Playboy magazines, but testified that they were in his locker until he was directed to pack his belongings, at which time he attempted to put all his books, magazines, and papers into one bag. Dkt. # 26, p. 94. Similarly, plaintiff explained that his legal materials had been in his locker and was taken to the veterans office when he was directed to pack his bags so that all his books and papers would be in the same draft bag. Dkt. # 26, pp. 32–33. Plaintiff explained that the legal materials containing other inmates' names were draft pleadings available as reference materials in the Law Library and drafts of work he did for inmates as part of his duties as a clerk in the Law Library. Dkt. # 26, pp. 34–35. He conceded that he "must have grabbed too many files when he" retrieved his own possessions from the Law Library, adding that he would have returned them to their proper spot had he had a chance to go through his draft bag as he had planned. Dkt. # 26, p. 35. Plaintiff testified that he kept his veterans related material and books for a business course he was taking in the veterans office. Dkt. # 26, p. 33. He testified that the business class was sponsored by the Veterans Program and explained that he would work on the course work in the veterans office whenever he had free time, adding that he was never told he couldn't work on the business course in the Veterans Program office and assumed that he could "because it was all veteran's related stuff that I was doing." Dkt. # 26, p. 29. Plaintiff reiterated that the program director gave him the memo pads. Dkt. # 26, pp. 28–29.

Sergeant Pollock testified that he spoke with the Chair of the ILC, inmate McDuffy, about the letter and was informed that plaintiff had been instructed to speak to Sergeant Pollock, but had not been given authority to write a letter. Dkt. # 26, p. 64. Inmate McDuffy confirmed that he had told plaintiff to get in touch with Sergeant Pollock about the movies but never told him to write to Deputy Superintendent Bartlett. Dkt. # 26, p. 79. Sergeant Pollock assumed that the letter addressed

to Deputy Superintendent Bartlett had been sent. Dkt. # 26, pp. 68 and 81. Sergeant Pollock testified that as the ILC staff advisor, he maintained an open door policy with the Chair or the Vice Chair of the ILC. Dkt. # 26, p. 65. Sergeant Pollock challenged the content of the letter and testified that plaintiff admitted that there was no vote by the population. Dkt. # 26, p. 65. Sergeant Pollock testified that he was very disappointed by the way this issue was handled by plaintiff and that he reprimanded plaintiff because,

> **\*8** this letter brings up a question of my credibility to population and that I can't work efficiently and effectively as an ILC staff advisor if my credibility is at stake. Also that I had nothing to do with the movie selection.

Dkt. # 26, p. 66.

Sergeant Pollock testified that plaintiff was removed from his program at the library because he had completed the program and was scheduled for a program change. Dkt. # 26, p. 70. Sergeant Pollock sat on plaintiff's program committee. Dkt. # 26, p. 69. Sergeant Pollock also testified that he conferred with Mr. Lindsay and

> advised him that this inmate had a pending tier three that may [have] something to do with this program area and Mr. Lindsay determined that pursuant to facility procedure that he be removed pending the outcome of the hearing.

Dkt. # 26, p. 70. Sergeant Pollock explained that if plaintiff was found not guilty, he would be programmed back with back pay. Dkt. # 26, p. 71. Sergeant Pollock denied leaving any instructions denying plaintiff access to the Law Library. Dkt. # 26, p. 71.

Captain Wilcox found plaintiff guilty of unauthorized exchange based upon plaintiff's acceptance of the Jailhouse Lawyers Manual from inmate Jose Marrero; possession of Playboy magazines in an unauthorized area; and misuse of state property based upon his use of office supplies designated

for the Veterans Program in his capacity as clerk in the Law Library, but found plaintiff not guilty of possessing contraband and providing unauthorized legal assistance. Dkt. # 1–2, p. 39. In support of the disposition, Captain Wilcox relied upon

> the written report by Sgt. Pollock ... and his verbal testimony at this hearing that on the date of 10/19/05 while packing for a housing unit move, you were found to be in possession of items allowed in general population but not allowed in the housing unit you were in, possessed books belonging to another inmate and were using office supplies issued from one area of the facility in other areas. Your allegation that Sgt. Pollock issued the report as a form of retaliation was not substantiated.

Dkt. # 1–2, p. 40. Captain Wilcox imposed two months keeplock, with loss of commissary and phone privileges and confiscation of plaintiff's law books, thesaurus, homeless veterans dictionary, tape dispenser, paper clips, ruler and wire bound steno pads. Dkt. # 1–2, p. 39. Plaintiff was immediately transferred to Livingston Correctional Facility. Dkt. # 1–2, p. 44.

### DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin,* 981 F.Supp. 794, 798 (W.D.N.Y.1997) (internal citations omitted).

**\*9** A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *see Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant,* 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

**Title 42, United States Code, Section 1981**

Title 42, United States Code, Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a claim under Title 42, United States Code, Section 1981, a plaintiff must demonstrate that (1) the plaintiff is a member of a racial minority, (2) the defendants intended to discriminate on the basis of race, and (3) the discrimination concerns one of the statute's enumerated activities. *Brown v. City of Oneonta, New York,* 221 F.3d 329, 339 (2d Cir.2000), *cert. denied,* 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001). "Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano,* 851 F.2d 561, 571–72 (2d Cir.1988) (internal citations omitted). Although direct evidence of discrimination is not necessary, a plaintiff must do more than cite to his mistreatment and ask the court to conclude that it must have been related to his race. *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104 (2d Cir.2001).

"To support a claim of selective enforcement, [plaintiff] must allege purposeful and systematic discrimination by specifying instances in which they were singled ... out for unlawful oppression in contrast to others **similarly situated."** *Brown,* 221 F.3d at 573 (internal quotation omitted). While the circumstances need not be identical, there should be a reasonably close resemblance of facts and circumstances where the plaintiff seeks to draw inferences of discrimination by showing that he was similarly situated in all material respects to the individuals to whom he compares himself. *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001).

**\*10** To establish retaliation, a plaintiff must show that he was (1) engaged in an activity protected under anti-discrimination statutes, (2) the defendant was aware of plaintiff's participation in the protected activity, (3) the defendant took adverse action against plaintiff based upon that activity, and (4) a causal connection existed between plaintiff's protected activity and the adverse action taken by defendant. *Id.* at 105.

As there is no evidence before the Court to suggest that plaintiff was disciplined or moved from his housing unit

or removed from his prison work and volunteer assignment because of his race or because of his complaints of racial discrimination, or that similarly situated inmates of other races were treated preferentially to plaintiff, it is recommended that plaintiff's claims pursuant to 42 U.S.C. § 1981 be dismissed.

**Title 42, United States Code, Section 1983**

Title 42, United States Code, Section 1983 provides "a method for vindicating federal rights elsewhere conferred, including under the Constitution.' " *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010), *cert. denied,* —— U.S. – – – – , 131 S.Ct. 158, 178 L.Ed.2d 243, 2010 WL 2300385 (2010) (internal quotation omitted).

**Retaliation**

Plaintiff alleges that his constitutional rights were violated in retaliation for his performance of his duties as Secretary of the ILC. Dkt. # 1, ¶ 21. Specifically, plaintiff complains that he was removed from his housing unit, issued a Tier III misbehavior report for infractions undeserving of such disciplinary procedures, removed from his job in the Law Library, denied access to the Law Library, subjected to loss of his personal legal work, and denied timely resolution of his grievances, all in retaliation for writing two letters regarding the inmate movie selection. Dkt. # 1.

A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all,

of the prohibited conduct charged in the misbehavior report.

*Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002) (internal quotations and citations omitted). "Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Moreover, the Court of Appeals has recognized that prisoners' claims of retaliation should be examined "with skepticism and particular care" given the "near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

**Housing Unit Transfer**
*11 To sustain a First Amendment retaliation claim, a prisoner must demonstrate that (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the prisoner; and (3) there was a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004).

Prisoners possess a substantive right to free and uninhibited access to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers.

*Davis v. Goord,* 320 F.3d 352–53 (2d Cir.2003); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988). Thus, plaintiff possessed a constitutional right to raise his concerns about the inmate movie selection and inmate access to movie selections to prison authorities.

Adverse action is defined objectively as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. *Id.* Within a day of the discovery of the letters raising concerns about the inmate movie selection, Sergeant Pollock requested that plaintiff be removed from his housing unit. Dkt. # 26, p. 137. As a result, plaintiff alleges that he was removed from a therapeutic housing environment of 34 inmates "to one of the most incident prone dorms in the facility" housing 60 inmates and that he was "moved from a single man cube to the top bunk in a double bunk area." Dkt. # 1, ¶ 53. This is sufficient to satisfy the adverse action requirement.

The causal connection may be established by the contemporaneous timing of Sergeant Pollock's discovery of the letters and his request to Captain Wilcox that plaintiff be transferred. *See Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) (Causal connection may be established by demonstrating that the protected activity was close in time to the adverse action). In addition, Sergeant Pollock admitted that he took the memos "very seriously because it was a breach of protocol and additionally placed my creditability [sic] with the Inmate population at risk." Dkt. # 26, p. 137. Moreover, the Veterans Program Director, Corrections Counselor Strollo, testified at plaintiff's disciplinary hearing that Sergeant Pollock showed him the letters and "was upset about what [plaintiff] had done." Dkt. # 26, pp. 68 and 88–89.

Whether plaintiff would have been transferred out of the housing unit absent Sergeant Pollock's distress over the letters authored by plaintiff is a question of fact which must be resolved by a jury, particularly in light of plaintiff's allegation that he understood that he would be afforded the option of dropping his higher paying position as a Paralegal in the Law Library should it become necessary for him to be paid as a Clerk in order to remain in the Veterans Program Housing Unit. Dkt. # 1, ¶ 24. Thus, it is recommended that Sergeant Pollock's motion for summary judgment be denied with respect to plaintiff's claim of retaliatory transfer from the Veterans Program Housing Unit.

**Misbehavior Report**
*12 Although "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," the issuance of a false misbehavior report in retaliation for exercising a constitutional right is actionable under Title 42, United States Code, Section 1983. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *see Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.").

For the same reasons set forth above with respect to the housing transfer, plaintiff has demonstrated that the letters raising concerns regarding inmate movie selection were protected activity. In addition to subjecting plaintiff to the

prospect of discipline, the issuance of the misbehavior report by Sergeant Pollock caused plaintiff to be removed from his work assignment at the Law Library pending resolution of the disciplinary proceeding and excluded from the Law Library generally for the period between the issuance of the misbehavior report and the start of the disciplinary hearing, thereby satisfying the adverse action requirement.

As set forth above, the issuance of the misbehavior report authored by Sergeant Pollock within one day of his discovery of the letters raising concerns over the movie selection and Sergeant Pollock's admission that he took the memos "very seriously" and Corrections Counselor Strollo's testimony that Sergeant Pollock "was upset about what [plaintiff] had done" is evidence of causal connection. Dkt. # 26, pp. 68, 88–89 and 137. In addition, Captain Wilcox commented at the hearing that plaintiff had not had a disciplinary ticket in five years. *See Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995) (evidence of prior good behavior may be circumstantial evidence of retaliation). Finally, although plaintiff conceded possession of a book owned by another inmate and pornography in a housing unit where pornography was prohibited, as well as using state property issued for use in the Veterans Program in the Law Library instead, he was cleared of more serious charges of providing unauthorized legal assistance and possession of unauthorized articles. *See Gayle,* 313 F.3d at 683 ("vindication of the inmate after a hearing may constitute circumstantial evidence of a defendant's retaliatory motive.").

Although plaintiff conceded possession of a book owned by another inmate and pornography in a housing unit where pornography was prohibited, as well as using state property issued for use in the Veterans Program in the Law Library instead, the Court finds a question of fact as to whether plaintiff would have been subjected to a misbehavior report for these infractions absent Sergeant Pollock's unhappiness over plaintiff's perceived breach of protocol in writing letters of concern regarding the inmate movie selection. Accordingly, it is recommended that this aspect of defendants' motion for summary judgment be denied.

### Determination of Appropriate Disciplinary Tier

**\*13** Lieutenant Schoenacker's determination that the charges set forth in the misbehavior report were sufficiently serious as to warrant a Superintendent's hearing is not actionable. Even accepting for purposes of this motion that Sergeant Pollock authored the misbehavior report in

retaliation for plaintiff's letters, there is no evidence that Lieutenant Schoenacker was aware of that fact or had any communication with Sergeant Pollock which would support the inference of conspiracy. Accordingly, it is recommend that this aspect of defendants' motion for summary judgment be granted.

### Removal from Law Library Job

New York law does not give a prisoner any statutory, regulatory or precedential right to a prison job. *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987). However, a claim for relief may be stated pursuant to Title 42, United States Code, Section 1983 "if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights" such as the right to petition government for the redress of grievances. *Id.* Thus, plaintiff could not be removed from his work assignment in retaliation for his exercise of his right to question the selection of inmate movies.

The record reveals that the decision to remove plaintiff from his position within the Law Library was made by Senior Corrections Counselor Lindsay after Sergeant Pollock informed him of the pending misbehavior report. Dkt. # 26, pp. 137 and 146. Moreover, the record is uncontroverted that it was standard procedure to remove an inmate from his program pending resolution of disciplinary proceedings relating to an inmate's program. Dkt. # 26, pp. 137 and 146; Dkt. # 38, ¶ 7. There is no evidence to suggest that S.C.C. Lindsay was motivated by, or was even aware of, plaintiff's complaints regarding the inmate movie selection when he determined that plaintiff should be removed from his position in the Law Library until the disciplinary proceeding was resolved and no suggestion of any agreement between Sergeant Pollock and S.C.C. Lindsay to retaliate against plaintiff for the exercise of his right to complain about the inmate movie selection. *See Dawes,* 239 F.3d at 492 (allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983) ("Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983."). Accordingly, it is recommended that this aspect of defendants' motion for summary judgment be granted.

**Timely Resolution of Grievances**

Plaintiff alleges that the grievances he filed following the issuance of the misbehavior report were not resolved in a timely fashion and were not resolved in the order in which his grievances were received. Dkt. # 1, ¶ 73. As a result, plaintiff complains that he was denied evidence for use in his disciplinary hearing. Dkt. # 1, ¶ 75.

**\*14** The grievance process is not an appropriate vehicle for gathering evidence for use in a disciplinary proceeding. Moreover, as the Inmate Grievance Supervisor Bonnie O'Brien declares, there is no requirement or expectation that grievances will be handled in the order in which they are received, as some grievances require more time to investigate and resolve than others. Dkt. # 40, ¶ 9. In any event, plaintiff's grievances were resolved within three weeks of the filing of the first grievance and were dismissed, negating any suggestion that an earlier resolution would have supported his arguments at the disciplinary hearing. There is no evidence to suggest any agreement between Sergeant Pollock and the inmate grievance committee to deny his grievances in retaliation for plaintiff's letters regarding the inmate movie selection. Accordingly, it is recommended that this aspect of defendants' motion for summary judgment be granted.

**Access to the Courts**

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), accord *Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). "The right of access to the courts requires that prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement ... not be impeded from presenting those defenses and claims for formal adjudication by a court." *Bourdon v. Loughren,* 386 F.3d 88, 96 (2d Cir.2004). Inmate access to the court must be "adequate, effective, and meaningful." *Bounds,* 430 U.S. at 822. To establish a violation of this right, an inmate must demonstrate "actual injury" by showing "that a non-frivolous legal claim had been frustrated or was being impeded" because of the inadequate access. *Lewis,* 518 U.S. at 353 (footnotes omitted).

Although the Court finds a question of fact as to whether Sergeant Pollock denied plaintiff access to the Law Library

in retaliation for the letters concerning the inmate movie selection, this claim fails for lack of evidence of actual injury. Accordingly, it is recommended that this aspect of defendants' motion for summary judgment be granted.

**Due Process Claim**

To state a cognizable section 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996); *Frazier v. Coughlin,* 81 F.3d 313, 316 (2d Cir.1996).

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004), quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id.,* quoting *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999).

**\*15** In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 64–65. As a result, district courts are "required to examine the conditions of confinement in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir.2009) (internal quotations omitted). The district courts are "required to examine the actual

circumstances of confinement and to identify with specificity the facts upon which their conclusions are based." *Id.* at 134 (internal quotations omitted). A detailed factual record is required unless the period of time spent in SHU was exceedingly short—less than 30 days—and there is no indication that the plaintiff endured unusual SHU conditions. *Id.* at 135. "Only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law." *Id.* at 134.

As defendants have presented no evidence regarding typical conditions of keeplock confinement as compared to the general population and the actual conditions of plaintiff's keeplock confinement, the Court lacks a sufficient factual record upon which to assess whether plaintiff has demonstrated a liberty interest with respect to his keeplock confinement of two months. Accordingly, it is recommended that defendants' motion be denied on this ground.

## Sufficiency of Process

### Impartiality of Hearing Officer

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see Wolff v. McDonnell,* 418 U.S. 539, 570–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Russell v. Selsky,* 35 F.3d 55, 59 (2d Cir.1994). An impartial hearing officer "is one who, *inter alia,* does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990); *see Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges

generally." *Allen,* 100 F.3d at 259; *see Francis,* 891 F.2d at 46.

**\*16** Plaintiff complains that Captain Wilcox refused to recuse himself from conducting the hearing, denied plaintiff's request for an employee assistant, denied plaintiff's request for documents and was predisposed to a finding of guilt. Dkt. # 1. Contrary to plaintiff's allegations, the record establishes that Captain Wilcox conducted an impartial hearing. The evidence in the administrative record (hearing transcript) establishes that plaintiff's acceptance of a book from another inmate and thereafter, maintaining possession of that book after it could not be donated to the law library even though the other inmate was still at Groveland, was a clear violation of Sub Section 113.15 of the Standards of Inmate Behavior. Dkt. # 42, ¶ 14. In addition, the evidence clearly established that plaintiff was not allowed to possess the Playboy magazine in the dorm where he was housed pursuant to the Veteran's Residential Therapeutic Program Conduct Guide Sub Section Housing Unit K and therefore, was in violation of Sub Section 113.22, property in an unauthorized area. *Id.* Lastly, the evidence clearly supported the finding of plaintiff guilty of Sub Section 116.10, theft of state property. *Id.*

Plaintiff was found not guilty of the charges of contraband and unauthorized legal assistance, as Captain Wilcox found that there was not enough evidence available to show his culpability for these charges. *Id.* As discussed below, Captain Wilcox's disposition was supported by evidence in the form of the misbehavior report, as well as the testimony of defendant Pollack, inmate McDuffy and Mr. Strollo. It is clear from the record that Captain Wilcox was impartial and unbiased in the conduct of the Tier III disciplinary hearing and clearly evaluated all of the evidence presented during the hearing, as demonstrated by the fact that he found plaintiff not guilty of several of the charges. Therefore, it is recommended that this portion of defendants' motion for summary judgment be granted.

## Sufficiency of the Evidence

Regardless of plaintiff's explanation for why he was in possession of inmate Marrero's Jail House Lawyer's Manual, there is no dispute that inmate Marrero transferred possession of this book to plaintiff. Dkt. # 26, pp. 25–26, 41–42, 58. Thus, the evidence was sufficient to find plaintiff guilty of unauthorized exchange of personal property. Similarly, plaintiff does not dispute that he possessed pornographic magazines within the confines of the Veterans Program

Housing Unit, in violation of the Veterans Program Conduct Guide. Dkt. # 1–3, p. 20. Finally, the evidence is sufficient to support a finding that plaintiff was using office supplies issued to the Veterans Program in the Law Library, as plaintiff testified at his disciplinary hearing that he used the supplies in the Veterans Office and in the Law Library to assist veterans who were not residents of the Veterans Program Housing Unit. Accordingly, it is recommended that this aspect of defendants' motion be granted.

**Employee Assistant and Request for Documents**

**\*17**  Plaintiff also complains that Captain Wilcox denied plaintiff's request for an employee assistant and denied plaintiff's requests for two unspecified documents to be used as evidence during the disciplinary hearing. Plaintiff requested an employee assistant to aid in the retrieval of two documents to support his defense. Captain Wilcox denied plaintiff's request pursuant to DOCS Directive 4932 Sub Section 251.4, 1, because plaintiff was not confined in segregated confinement while awaiting the Tier III disciplinary hearing and could have obtained the documents himself. Dkt. # 42, ¶ 6. An inmate's right to an employee assistant while being confined has been well established. *Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). However, the right to an employee assistant does not extend to an inmate who is able to conduct his own investigative work. *Hameed v. Mann,* 57 F.3d 217 (2d Cir.1995).

Insofar as plaintiff claims that he was denied access to certain unspecified documents, as noted above, plaintiff was in a position to conduct his own investigative work. With respect to the two documents specifically discussed during the disciplinary hearing, one was a copy of the housing unit change form plaintiff thought was used when he was moved from G–2 form to K–1 dorm. However, because Captain Wilcox oversaw all movement within the facility and further, authorized all moves, Captain Wilcox explained that he did not use any move forms and thus, the document requested by plaintiff simply did not exist. The second document requested by plaintiff was a form to the law library program recommending that plaintiff be removed from his program assignment. During the hearing, plaintiff was given ample opportunity to produce the document. Moreover, once plaintiff was advised that he needed to obtain the document on his own, he never formally requested the document from Captain Wilcox. Notwithstanding the foregoing, Captain Wilcox determined that such document would be cumulative and duplicative because other evidence was presented during

the hearing concerning plaintiff's removal from the law library program. For the foregoing reasons, the alleged denial of the employee assistant and failure to provide plaintiff with the requested documents does not constitute a denial of due process in the conduct of the Tier III disciplinary hearing. For the foregoing reasons, it is recommended that this portion of defendants' motion for summary judgment be granted.

**Equal Protection**

"The equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1985), *citing Cleburn v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class." *Id.* Alternatively, plaintiff may proceed on a "class of one" theory, in which case "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain." *Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005), *overruled on other grounds, Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008). Thus, in a "class of one" case, a plaintiff must establish that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.*

**\*18**  Plaintiff cannot sustain a claim that Captain Wilcox denied him due process of law in finding plaintiff, but not inmate Marrero, guilty of unauthorized exchange because inmate Marrero was not subject to a misbehavior report and therefore, not before him for a disciplinary hearing. Accordingly, it is recommended that this aspect of defendants' motion for summary judgment be granted.

**Personal Involvement**

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. *Gaston v.*

*Coughlin,* 249 F.3d 156, 164 (2d Cir.2001); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Al-Jundi v. Estate of Rockefeller,* 885 F.2d 1060,1065 (2d Cir.1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy the wrong; (3) created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon,* 58 F.3d at 873, *citing Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

Defendants Hunt, Kruppner, Krempasky, Bartlett, Keller and Kelsay all claim that they lack the requisite personal involvement and therefore, plaintiff's claims against each of them should dismissed. In his complaint, plaintiff alleges that defendants Hunt, Kruppner, Krempasky and Bartlett each had personal knowledge that defendant Pollack issued a deprivation order and further that defendants Pollack and Lindsay conspired in retaliatory removal of plaintiff from his job in the law library, but did nothing. Dkt. # 1, ¶¶ 107–115. Plaintiff further claims that these defendants had knowledge that defendant O'Brien had obstructed and hindered plaintiff's grievances from going forward. *Id.* at ¶ 16. Moreover, plaintiff claims that defendant Hunt was responsible for appointing defendant Wilcox to serve as the hearing officer, notwithstanding the fact that he knew of defendant Wilcox's personal involvement in the removal of plaintiff from the Veterans Residential Treatment Program and the dorm. *Id.* at ¶ 114.

There is nothing in the record before this Court to support a conclusion that Superintendent Hunt, Deputy Superintendents Kruppner, Krempasky and Bartlett and Lieutenants Keller and Kelsay were more involved than simply by virtue of the fact that they held supervisory positions within the prison chain of command. The fact that Superintendent Hunt issued two memos in response to plaintiff's claims of retaliation does not alter the analysis of whether he was sufficiently personally involved thereby requiring denial of his motion for summary judgment. Similarly, defendant Krempasky's review of the investigation which concluded that no wrongdoing had occurred does not require a finding that he was sufficiently personally involved. Both Lieutenant Keller's and Lieutenant

Kelsay's involvement was limited to conducting the subject investigation. Dkt.36 and 37. Finally, defendants Bartlett and Kruppner neither participated in the investigation nor knew plaintiff. Dkt.34 and 39. Accordingly, because defendants Hunt, Kruppner, Krempasky, Bartlett, Keller and Kelsay were not sufficiently personally involved in the alleged constitutional deprivations, it is recommended that plaintiff's claims against each of them fail as a matter of law.

## Conspiracy—Title 42, United States Code, Section 1983

**\*19** "To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds that violated the plaintiff's rights, privileges, or immunities secured by the Constitution or federal courts." *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992) (internal quotation omitted). "To establish that a conspiracy existed plaintiff must demonstrate the defendants 'agreed' or 'reached an understanding' to violate his rights." *Id.* "Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983). As plaintiff does not allege and the record does not reflect any agreement among the defendants, summary judgment is appropriate with respect to plaintiff's vague allegations of conspiracy. For the foregoing reasons, it is recommended that defendants' motion for summary judgment on plaintiff's conspiracy claim be granted.

## Conspiracy—Title 42, United States Code, Section 1985(3)

42 U.S.C. § 1985(3) provides:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... if one or more persons ... do, or cause to be done,

any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United states, the party so injured or deprived may have an action for the recovery of damages.

"The conspiracy must be motivated by racial or related class-based discriminatory animus." *Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir.1996). Other than plaintiff's speculative and conclusory allegations that defendants conspired to retaliate against the plaintiff in racially motivated ways, the complaint is devoid of any allegations of invidious discriminatory animous on the part of the defendants. Conclusory allegations are wholly insufficient to state a claim pursuant to section 1985(3). Accordingly, it is recommended that defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1985(3) be granted.

**Conspiracy—Title 42, United States Code, Section 1986**

Title 42, United States Code, Section 1986 imposes liability on an individual who has knowledge of discrimination prohibited under Title 42, United States Code, Section 1985. *Graham,* 89 F.3d at 82. Thus, a section 1986 claim is contingent upon a valid section 1985 claim. *Id.* Because plaintiff fails to establish a cause of action pursuant to Title 42, United States Code, Section 1985, his claim pursuant to Title 42, United States Code, Section 1986 must also be dismissed. For the foregoing reasons, it is recommended that defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1986 be granted.

### *CONCLUSION*

**\*20**  For the foregoing reasons, this Court recommends that:

1. Defendants' motion for summary judgment on plaintiff's claim pursuant to Title 42, United States Code, Section 1981 be granted;

2. Defendants' motion for summary judgment on plaintiff's retaliation claim (Housing Unit Transfer) be denied;

3. Defendants' motion for summary judgment on plaintiff's retaliation claim (Misbehavior Report) be denied;

4. Defendants' motion for summary judgment on plaintiff's retaliation claim (Determination of Appropriate Disciplinary Tier) be granted;

5. Defendants' motion for summary judgment on plaintiff's retaliation claim (Removal from Law Library Job) be granted;

6. Defendant's motion for summary judgment on plaintiff's retaliation claim (Timely Resolution of Grievances) be granted;

7. Defendants' motion for summary judgment on plaintiff's access to the courts claim be granted;

8. Defendants' motion for summary judgment on plaintiff's due process claim be denied;

9. Defendants' motion for summary judgment on plaintiff's sufficiency of due process (disciplinary hearing) be granted;

10. Defendants' motion for summary judgment on plaintiff's equal protection claim be granted;

11. Defendants' motion for summary judgment based on lack of personal involvement of defendants Hunt, Kruppner, Krempasky, Bartlett, Keller and Kelsay be granted;

12. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1983 be granted;

13. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1985(3) be granted;

14. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1986 be granted; and

15. Plaintiff's motion for summary judgment be denied in all respects.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo,* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g.,* *Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988). ***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.*** *Thomas v.*

*Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.***

**\*21  SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5589350

---

## Footnotes

1    The record in unclear whether the correct spelling of Inmate Liaison Committee Chairman's last name is McDuffie or McDuffy. Accordingly, it appears in this Report, Recommendation and Order as it appears in the documents in the record, either McDuffie or McDuffy.

---

2011 WL 146836
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.

Donald BOWENS, Plaintiff,
v.
M.E. POLLOCK, et al., Defendants.

No. 06–CV–0457A(Sr).
|
Jan. 18, 2011.

**Attorneys and Law Firms**

Donald Bowens, Utica, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

ORDER

RICHARD J. ARCARA, District Judge.

**\*1** This case was referred to Magistrate Judge H. Kenneth Schroeder, Jr., pursuant to 28 U.S.C. § 636(b)(1)(A). Defendants filed motions for summary judgment (Dkt.31 and 51), and plaintiff filed a motion for summary judgment (Dkt.# 45.) On October 12, 2010, Magistrate Judge Schroeder filed a Report and Recommendation, recommending that:

1. Defendants' motion for summary judgment on plaintiff's claim pursuant to Title 42, United States Code, Section 1981 be granted;

2. Defendants' motion for summary judgment on plaintiff's retaliation claim (Housing Unit Transfer) be denied;

3. Defendants' motion for summary judgment on plaintiff's retaliation claim (Misbehavior Report) be denied;

4. Defendants' motion for summary judgment on plaintiff's retaliation claim (Determination of Appropriate Disciplinary Tier) be granted;

5. Defendants' motion for summary judgment on plaintiff's retaliation claim (Removal from Law Library Job) be granted;

6. Defendant's motion for summary judgment on plaintiff's retaliation claim (Timely Resolution of Grievances) be granted;

7. Defendants' motion for summary judgment on plaintiff's access to the courts claim be granted;

8. Defendants' motion for summary judgment on plaintiff's due process claim be denied;

9. Defendants' motion for summary judgment on plaintiff's sufficiency of due process (disciplinary hearing) be granted;

10. Defendants' motion for summary judgment on plaintiff's equal protection claim be granted;

11. Defendants' motion for summary judgment based on lack of personal involvement of defendants Hunt, Kruppner, Krempasky, Bartlett, Keller and Kelsay be granted;

12. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1983 be granted;

13. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1985(3) be granted;

14. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1986 be granted; and

15. Plaintiff's motion for summary judgment be denied in all respects.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties, and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Schroeder's Report and Recommendation:

1. Defendants' motion for summary judgment on plaintiff's claim pursuant to Title 42, United States Code, Section 1981 is granted;

2. Defendants' motion for summary judgment on plaintiff's retaliation claim (Housing Unit Transfer) is denied;

3. Defendants' motion for summary judgment on plaintiff's retaliation claim (Misbehavior Report) is denied;

4. Defendants' motion for summary judgment on plaintiff's retaliation claim (Determination of Appropriate Disciplinary Tier) is granted;

**\*2** 5. Defendants' motion for summary judgment on plaintiff's retaliation claim (Removal from Law Library Job) is granted;

6. Defendant's motion for summary judgment on plaintiff's retaliation claim (Timely Resolution of Grievances) is granted;

7. Defendants' motion for summary judgment on plaintiff's access to the courts claim is granted;

8. Defendants' motion for summary judgment on plaintiff's due process claim is denied;

9. Defendants' motion for summary judgment on plaintiff's sufficiency of due process (disciplinary hearing) is granted;

10. Defendants' motion for summary judgment on plaintiff's equal protection claim is granted;

11. Defendants' motion for summary judgment based on lack of personal involvement of defendants Hunt, Kruppner, Krempasky, Bartlett, Keller and Kelsay is granted;

12. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1983 is granted;

13. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1985(3) is granted;

14. Defendants' motion for summary judgment on plaintiff's conspiracy claim pursuant to Title 42, United States Code, Section 1986 is granted; and

15. Plaintiff's motion for summary judgment is denied in all respects. This case is referred back to Magistrate Judge Schroeder for further proceedings.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 146836

---

2008 WL 150364
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kevin GAMBLE, Plaintiff,
v.
Patrick MAYNARD, Prison Guard; Sergeant
Silver; Donah, Prison Guard; A. Babbie, Prison
Guard, and S. Miller, Prison guard, each of
Clinton Correctional Facility, Defendants.

No. 9:06-CV-1543.
|
Jan. 14, 2008.

**Attorneys and Law Firms**

Kevin Gamble, Pine City, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Christopher W. Hall, Esq., Asst. Attorney General,
of Counsel, Albany, NY, for Defendants.

### *ORDER*

DAVID N. HURD, District Judge.

**\*1** Plaintiff, Kevin Gamble, brought this civil rights
action pursuant to 42 U.S.C. § 1983. In a Report
Recommendation dated November 2, 2007, the Honorable
David E. Peebles, United States Magistrate Judge,
recommended that the order granting the plaintiff IFP status
be vacated; and that defendants' motion to dismiss plaintiff's
complaint be granted as to all defendants and all claims unless
plaintiff pays the full required filing fee of $350.00 within
thirty days after entry of the final order by the district judge
addressing the recommendation. Objections to the Report
Recommendation have been filed by the plaintiff.

Based upon a de novo review of the portions of the Report-
Recommendation to which the plaintiff has objected, the
Report-Recommendation is accepted and adopted. *See* 28
U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. The order (Docket No. 4) granting the plaintiff IFP status
is VACATED;

2. Defendants' motion to dismiss plaintiff's complaint is
GRANTED as to all defendants and all claims unless the
plaintiff pays the required filing fee of $350.00, in full, within
thirty days after entry of this order;

2. In the event the plaintiff fails to pay the necessary filing fee
of $350.00 within the required time period, the complaint will
be DISMISSED in all respects without further order; and

3. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Kevin Gamble, a New York State prison inmate
who is no stranger to this court, has commenced this
action pursuant to 42 U.S.C. § 1983, alleging that
through their actions the defendants have deprived him of
his civil rights. In his complaint, plaintiff contends that
he was assaulted by various prison officials, in violation
of the Eighth Amendment's prohibition against cruel and
unusual punishment. As relief, plaintiff seeks recovery of
compensatory and punitive damages.

Currently pending before the court is a motion by the
defendants seeking revocation of the *in forma pauperis*
("IFP") status previously conferred and conditionally
dismissing plaintiff's complaint absent prepayment in full of
the required filing fee. In light of a prior finding by another
judge of this court, to the effect that by the time this complaint
was filed three prior civil rights actions commenced by the
plaintiff while a prison inmate had been dismissed as frivolous
or for failure to state a claim upon which relief may be
granted, and discerning no basis to conclude, based upon
plaintiff's complaint, that he is under imminent danger of
serious physical injury, I recommend that defendants' motion
be granted.

I. *BACKGROUND* [1]

At the times relevant to his claims, plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services (the "DOCS"), and designated to the Clinton Correctional Facility ("Clinton"), located in Dannemora New York. *See generally* Complaint (Dkt. No. 1). Early on the morning of September 22, 2006, apparently in preparation for a transfer, plaintiff was instructed by a corrections officer to prepare his cell and to place his sheet and blankets in a pillow case. As plaintiff was preparing to exit the E Block area of Clinton, where his cell was located, he was struck by defendant Patrick Maynard in the face with a closed fist. The assault continued, with Corrections Officers A. Babbie and S. Miller assisting and forcing the plaintiff to the floor where additional physical force was administered, and with defendants striking him in the rib cage and twisting his body and legs. Following the encounter, plaintiff was placed in mechanical restraints and taken to the prison infirmary, where he was examined to determine the extent of his injuries, if any. [2]

## II. *PROCEDURAL HISTORY*

**\*2** Plaintiff commenced this action on December 26, 2006. Dkt. No. 1. Named as defendants in Gamble's complaint are Patrick Maynard, A. Babbie, S. Miller, and M. Donah, all corrections officers assigned to work at Clinton, and a Mr. Silver, identified by the plaintiff as a corrections sergeant at the facility. *Id.* With the filing of his complaint, plaintiff also submitted an application for permission to proceed *in forma pauperis.* Dkt. No. 2. That application was granted by order issued by me on January 10, 2007. Dkt. No. 4.

On March 8, 2007 issue was joined by the filing of an answer on behalf of the defendants generally denying the material allegations of plaintiff's complaint and asserting various affirmative defenses. Dkt. No. 14. Defendants subsequently filed a moved on May 29, 2007 seeking revocation of plaintiff's IFP status and dismissal of plaintiff's complaint, absent prepayment in full of the required filing fee, based upon the fact that at least three of his prior inmate civil rights actions have been dismissed as either frivolous or for failure to state a claim upon which relief may be granted. Dkt. No. 20. On July 9, 2007 an affirmation from the plaintiff in opposition to defendants' motion was filed with the court. Dkt. No. 22. That affirmation, however, speaks to the merits of plaintiff's claims and does not address defendant's argument that his complaint is subject to conditional dismissal under 28 U.S.C. § 1915(g). [3] *See id.*

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

In his complaint in this action, when responding to the question of whether he had "ever filed any other law suits in any state in federal court relating to [his] imprisonment," plaintiff stated that he had not. Complaint (Dkt. No. 1) § 5. Oddly, plaintiff followed that answer with reference to a single action, identified as *Gamble v. Monette, et al.,* 9:06-CV-0979 (N.D.N.Y., 2006), filed in this court, but did not list any others. In point of fact, however, it appears from publically available records that Gamble is a frequent litigator, having commenced at least ten cases in this district alone, seven of which are now closed and with at least five having been dismissed as either frivolous or for failure to state a cognizable claim. *See Gamble v. Kelsh,* No. 9:07-CV-00474 (N.D.N .Y.) (TJM/RFT) (dismissed on May 30, 2007); *Gamble v. Kelsh,* No. 9:07-CV-00093 (N.D.N.Y.) (LEK/DRH) (dismissed on January 24, 2007); *Gamble v. Cox,* No. 9:05-CV-1093 (N.D.N.Y.) (FJS/RFT) (dismissed on February 13, 2006); *Gamble v. Loran,* No. 9:05-CV-01088 (N.D.N .Y.) (LEK/RFT) (dismissed on December 20, 2005); *Gamble v. Monette,* No. 9:05-CV-1095 (N.D.N.Y.) (DNH/ GJD) (dismissed on December 15, 2005).

**\*3** Defendants now seek conditional dismissal of plaintiff's complaint on the basis of those prior dispositions. In their motion, defendants invoke 28 U.S.C. § 1915(g), arguing that under that section, plaintiff's litigation history, which includes at least three merit-based dismissals, warrants revocation of his IFP status.

Section 1915(g), which was enacted as part of sweeping inmate litigation reform brought about by adoption of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), though engendering far less litigation than some of its PLRA counterparts including, notably, the exhaustion of remedies requirement of 42 U.S.C. § 1997e(a), provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment

in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The manifest intent of Congress enacting this "three strikes" provision was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues,* 473 F.3d 440, 443-44 (2d Cir.2007); *Gill v. Pidlypchak,* No. 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, S.J. & Treece, M.J.). The prophylactic effect envisioned under section 1915(g) is accomplished by requiring a prisoner who has had three previous strikes to engage in the same cost-benefit analysis that other civil litigants must make before deciding whether to commence suit, accompanied by the filing of the full fee-that is, to assess whether the result to be achieved justifies the filing fee expenditure. *See Ibrahim v. District of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006). As the Second Circuit has noted, in the context of PLRA amendments requiring inmates to authorize prison officials to make deductions from inmate accounts to be applied as partial payments of appellate filing fees for prisoners granted *in forma pauperis* status,

[p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing law suits. Indeed, the very nature of incarceration-prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials-has fostered a " 'nothing to lose and everything to gain' " environment which allows inmates discriminately to file suit at taxpayers' expense.

*Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997), *cert. denied sub nom., Nicholas v. Miller,* 523 U.S. 1126, 118

S.Ct. 1812 (1998) (citations omitted); *see also Gill,* 2006 WL 3751340, at *2.

**\*4** The question of whether the dismissal of a prior action qualifies as a strike, for purposes of section 1915(g), is a matter of statutory interpretation, and as such a question for the court. [4] *Tafari,* 473 F.3d at 442-43. In determining whether a dismissal satisfies the failure to state a claim prong of the statute, implicated in this case, courts have drawn upon the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance, particularly in light of the similarity in phrasing utilized in the two provisions. *Tafari,* 473 F.3d at 442 (citing *Andrews v. King,* 398 F.3d 1113, 1121 (9th Cir.2005)).

In a report and recommendation issued in another of plaintiff's actions by Chief United States Magistrate Gustave J. DiBianco on May 25, 2007, a finding was made that plaintiff has in fact had three prior "strikes", qualifying under section 1915(g), and that the dismissals of the prior actions all occurred prior to the filing of plaintiff's complaint in this matter on December 26, 2006. *See Gamble v. Monette,* No. 9:06-CV-136 (N.D.N.Y. May 25, 2007) (adopted in full by decision and order issued by District Judge Lawrence E. Kahn on July 20, 2007). This finding is entitled to preclusive effect, *see* *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288-89 (2d Cir.2002), and thus establishes the existence of three prior "strikes" qualifying under section 1915(g) as a potential basis for revocation of plaintiff's *in forma pauperis* status, absent a finding that the imminent danger set forth in the governing statute applies.

As a safety valve, obviously intended to protect a prison inmate exposed to potential danger from the harsh consequences of his or her earlier folly, section 1915(g) provides that a prisoner who is in "imminent danger of serious physical injury" may avoid application of the three strikes rule of section 1915(g). *See* 28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). This exception requires a showing that the prisoner was under such imminent danger at the time of filing; the exception does not provide a basis to avoid application of the three strikes on the basis of past harm. *Malik,* 293 F.3d at 562-63. An inmate who claims the benefit of this exception must also show that the danger faced rises to the level of a "serious physical injury."

28 U.S.C. § 1915(g). The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical. *Johnson v. Barney,* No. 04 Civ. 10204, 2005 WL 2173950, at *1-*2 (S.D.N.Y. Sept. 6, 2005) (finding that inmate's allegation of danger at facility he was not housed at, but may pass through at infrequent occasions in the future, did not establish imminent danger)

The term "serious physical injury", as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a "disease that could result in serious harm or even death [.]" *Ibrahim,* 463 F.3d at 7. In deciding whether to invoke the exception, a court must examine the available pleadings, construed in a light most favorable to the plaintiff, to determine whether the plaintiff has alleged a serious physical injury. *McAlphin v. Toney,* 281 F.3d 709, 710 (8th Cir.2002). Conditions which have been held to rise to a sufficient threshold level include denial of treatment for infected gums, resulting in damages of infection, *McAlphin,* 281 F.3d at 710; denial of adequate treatment for Hepatitis C, a "chronic and potentially fatal disease," *Ibrahim,* 463 F.3d at 6-7; and heart palpitations, chest pains and labored breathing, *Ciarpaglini v. Saini,* 352 F.3d 328, 330-31 (7th Cir.2003) (finding upon reaching the merits, however, that plaintiff's complaint did not state an Eighth Amendment claim).

**\*5** Plaintiff's complaint addresses an assault which occurred on September 22, 2006, while he was confined at Clinton. While plaintiff's complaint intimates that the matter was not an isolated incident, there is nothing in his complaint, particularly in view of the fact that he is no longer incarcerated at the facility at which the alleged assaults occurred, having since been transferred to the Southport Correctional Facility, to demonstrate that he is in imminent danger of serious physical injury. Accordingly, I find no basis not to invoke three strikes provision of section 1915(g).

IV. *SUMMARY AND RECOMMENDATION*

The plaintiff, a prodigious litigator, has commenced this action and been granted IFP status. Because it appears, based upon the fact that three of his prior actions have been dismissed as either frivolous or for failure to state a claim upon which relief may be granted, that the decision to grant him IFP status was improvident, and finding no basis to conclude the plaintiff qualifies under the imminent danger exception to 28 U.S.C. § 1915(g), it is hereby

RECOMMENDED that:

1) The order granting the plaintiff IFP status (Dkt. No. 4) be VACATED;

2) Defendants' motion to dismiss plaintiff's complaint (Dkt. No. 20) be GRANTED as to all defendants and all claims unless Gamble pays the full required filing fee of $350.00 within thirty days after the entry of a final order by the district judge addressing this recommendation; and it is further

ORDERED that pending final determination with respect to this report and recommendation and, if it is approved, the payment by plaintiff of the required filing fee, all discovery in this action be and is hereby STAYED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 150364

**Footnotes**

1   In light of the procedural posture in this case, the allegations set forth in plaintiff's complaint, though undoubtedly contested by the defendants, have been accepted as true for purposes of the instant motion.

    *See* *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965 (2007)); *see also* *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

2   An inmate injury report, which is included as an exhibit to plaintiff's complaint, presumably generated as a result of that examination, reveals that no injuries were apparent to the medical official who examined Gamble.

3   The deadline for submission by the plaintiff of papers in opposition to defendants' motion passed on June 25, 2007 and has not been extended by the court.

4   The Second Circuit has expressed its view that the time for determination of "strikes" is only when the

    section 1915(g) issue is ripe for adjudication, and that because of the potentially significant consequences flowing from such a finding, a court should not, when dismissing an inmate complaint, contemporaneously

    signal whether the dismissal should count as a "strike" for the purposes of that section. *DeLeon v. Doe,* 361 F.3d 93, 95 (2d Cir.2004); *see also* *Snider v. Melindez,* 199 F.3d 108, 115 (2d Cir.1999) ("We ... doubt whether the entry of a strike is properly considered at the time an action is dismissed.").

---

**End of Document**                                 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3338704
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jaime LUEVANO, Plaintiff,

v.

Hillary Rodham CLINTON, et al., Defendants.

No. 5:10–CV–754.
|
July 1, 2010.

**Attorneys and Law Firms**

Jaime Luevano, El Paso County Detention Facility Annex, El Paso, TX, pro se.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the Court for review a complaint, together with an application to proceed *in forma pauperis* filed by plaintiff, Jaime Luevano ("Plaintiff" or "Luevano"). (Dkt.Nos.1, 2).

**I. *In Forma Pauperis (IFP) Application***
A review of Plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The form indicates that Plaintiff does not have *any* income at all. *Id.* Thus, for purposes of this Order, the Court finds that Plaintiff meets the economic criteria for proceeding without the payment of fees.

In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The Court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. *Complaint***
In this almost incomprehensible complaint, plaintiff names Secretary of State Hillary Rodham Clinton; S. Reyes, a U.S. Congressman, and "E.S.," purportedly a United States Senator. (Compl.) (Dkt. No. 1). Although plaintiff has filed this action on a form for complaints under 42 U.S.C. § 1983, and states that he demands a jury trial, the next line of the document is handwritten and states that this is a "Writ of Mandamus [sic] Compel to Reopen—n—Review." *Id.* In his statement of facts, plaintiff claims that during Secretary (then-Senator) Clinton's campaign, she apparently went to El Paso, Texas. (Compl. at 4). Plaintiff claims that, during that time, a commercial for Secretary Clinton aired on television, and that this commercial somehow "inflame[ed] a set-up jury panel." *Id.*

**\*2** On the last page of the complaint, under plaintiff's signature, he includes some additional facts, stating that an

innocent man could be killed, and that his life is in danger. (Compl. at 6). He mentions that police falsely testified that certain reports were made at nine or ten o'clock in the morning, when they were really made at three o'clock in the morning, [1] but the "Insane Judge" denied all the evidence, "even the videotapes." *Id.* Plaintiff claims that the "Jurors" conspired with the District Clerk and attorneys. *Id.* Plaintiff lists three "Causes of Action." (Compl. at 5). The first merely states "F.B.I. etc. al. [sic]," the second states "U.S. Senators, etc. al. [sic]," and the third cause of action states "U.S. Congress, Rep. etc. al. [sic] ." *Id.*

His "Prayer for Relief" states that he is making an "Innocence claim in general." (Compl. at 6). Plaintiff asks this court to appoint the "Innocence Project of New York;" Prof. Barry C. Scheck, and Peter Neufeld, Esq. He asks for "Emergency Hearings—Discovery—Summons—U.S. Marshal Service." *Id.* He cites the "Innocence Protection Act." *Id.* Reading the entire document leads this court to find that plaintiff is somehow attempting to challenge a conviction, rather than bring a civil rights complaint. However, regardless of the basis of this document, and the claims therein, it must be dismissed for many reasons.

### III. *Venue*

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

When the defendants are officers or employees of the United States, acting in their official capacities, section 1391(e) provides that venue is proper

> in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

In this case, plaintiff is in prison in Texas, and plaintiff has listed all the defendants as residents of Washington, D.C. Plaintiff states that the Congressman and Senator are from Texas. Regardless of the statute used for venue in this action, and regardless of the residence of any individual listed on the complaint, neither plaintiff, nor any of the defendants reside in the Northern District of New York, and the Northern District of New York has no other connection to plaintiff's case. Thus, venue in the Northern District of New York is clearly improper.

**\*3** Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district, shall dismiss" or, in the interests of justice, shall transfer the case to the district in which it could have been brought. 28 U.S.C. § 1406(a). The Second Circuit has cautioned that a court should not dismiss for improper venue on its own motion "except in ***extraordinary circumstances.***" *Stich v. Rehnquist,* 982 F.2d 88, 89 (2d Cir.1992) (emphasis added). This court finds, however, that this plaintiff's case presents precisely those extraordinary circumstances that were present in *Stich.*

In *Stich,* plaintiff brought his action in the Southern District of New York, including among other defendants, the Justices of the Supreme Court; a former United States Attorney General; and bankruptcy judges in the Ninth Circuit, where he had been classified as a vexatious litigant and had been barred from bringing suits without leave of court. *Id.* at 88. The Second Circuit in *Stich* quoted the District Court's finding that "neither the activities nor the parties alleged in this complaint have any relation to this district" because the plaintiff was domiciled in Nevada and resided in California, while all the defendants were residents of the District of Columbia. *Id.* at 89. Based on these facts, the Second Circuit determined that the "case presented appropriate circumstances for the court's exercise of its power to dismiss" *sua sponte,* based on improper venue." *Id.* As discussed below, plaintiff's complaint in this action is completely frivolous and may have been filed in this district to avoid dismissal in Texas.

Therefore, the court should dismiss, rather than transfer the action.

### IV. *Three Strikes*

Congress passed the Prison Litigation Reform Act ("PLRA") "with the principal purpose of deterring frivolous prisoner lawsuits and appeals." *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997) (citing *Leonard v. Lacy,* 88 F.3d 181, 185 (2d Cir.1996)). Section 1915(g) provides that

> [i]n *no* event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [*in forma pauperis* ] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). This section of the PLRA has been referred to as the "three strikes" provision. *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000)

The Second Circuit has held that the three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the enactment of section 1915(g). *Id.* This interpretation of section 1915(g) is valid because the provision does not *prevent* an individual from bringing an action, it merely affects the inmate's ability to file the action *in forma pauperis. Id.* (citations omitted). A case may be conditionally dismissed under section 1915(g) even if the court originally granted plaintiff IFP status. *See McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (dismissing under section 1915(g) and finding that IFP status was "improvidently granted").

**\*4** If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent IFP action unless the plaintiff is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). The "imminent danger" exception to section 1915(g) has been interpreted to apply only if the plaintiff is imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002). In addition, the Second Circuit has held that there must be a nexus between the "imminent danger" and the legal claims asserted in the complaint. *Pettus v. Morgenthau,* 554 F.3d 293, 297 (2d Cir.2009).

A review of this plaintiff's litigation history, listed in the U.S. Party/Case Index,[2] shows that he has filed at least forty-six cases in courts all over the country, often raising many of the same claims regarding his alleged conviction. He has filed at least ten appeals in various circuits. Plaintiff has a multitude of strikes, and several of his cases have been conditionally dismissed based on the three-strikes rule, and subsequently subject to final dismissal after plaintiff failed to pay the filing fee. *See e.g. Luevano v. Bush,* No. 08–5038 (D.C.Cir. March 24, 2010) (denying plaintiff's petition for rehearing after three-strikes dismissal and failure to pay fee); *Luevano v. Trent,* No. 08–8274 (4th Cir. Feb. 26, 2009) (denying appeal of a three-strikes dismissal); *Luevano v. United States District Court,* No. 3:10–CV–335 (N.D.Tex. March 24, 2010) (adopting Magistrate Judge's recommendation that plaintiff's case be dismissed pursuant to section 1915(g)); *Luevano v. Criminal Court of Appeals of El Paso,* No. A–09–CA–942–LY (W.D.Tex. Jan. 5, 2010) (dismissing pursuant to section 1915(g) and citing *Luevano v. United States President of America,* No. 08–CV–53 (D.D.C. Jan. 2, 2008) (dismissed for failure to state a claim); *Luevano v. Board of Disciplinary Appeals,* No. 5:08–CV–107 (W.D.Tex. March 20, 2008) (frivolous); *Luevano v. Doe,* No. 1:07–CV–1025 (W.D.Tex. Jan. 18, 2008) (frivolous); *Luevano v. Perry,* No. 1:07–CV–1026 (W.D.Tex. Jan. 18, 2008) (frivolous); *Luevano v. Clinton,* No. 2:08–CV–1360 (E.D.N.Y. April 4, 2008) (frivolous); *Luevano v. Richardson,* No. 1:08–CV–781 (D.N.M. Oct. 31, 2008) (failure to state a claim); *Luevano v. Boykin,* No. 5:08–CV–1844 (N.D.Ohio Oct. 31, 2008) (failure to state a claim)). *See also Luevano v. Sanchez,* No. EP 09–CV–441, 2010 U.S. Dist. LEXIS 48026, \*4 & n. 4 (W.D.Tex. Jan. 4, 2010) (citing many strikes and overruling objections to Magistrate Judge's Report–Recommendation and dismissing plaintiff's case for three-strikes); *Luevano v.*

*Northern Circuit of Illinois,* No. 09–CV–128 (S.D.Ill. July 15, 2009) (conditional dismissal for three strikes) (citation of strikes omitted).

One of the most recent cases filed by this plaintiff in the District of Nevada makes many of the same allegations about his trial, including mentioning Hillary Rodham Clinton's 3:00 a.m. commercial. *Luevano v. El Paso Texas Corruptions,* No. 2:10–CV–784 (D.Nev.). Plaintiff filed his Nevada case on May 26, 2010. The District Court in Nevada has not yet addressed the complaint. Thus, although plaintiff sprinkles the words "imminent danger" throughout his complaints, there is absolutely no showing that plaintiff is in "imminent danger" of serious physical injury, and since this complaint ultimately deals with a challenge to his conviction in Texas, there is no nexus between the legal claims asserted in his complaint.

**\*5** Because plaintiff has many strikes, his motion to proceed IFP would have to be denied, and plaintiff would be instructed to pay the $350.00 filing fee or risk dismissal of the action. However, a review of the merits shows that the court need not give plaintiff this option because the action is clearly frivolous and would be dismissed outright even if plaintiff paid the filing fee.

**V. *Merits***

Even a liberal reading of plaintiff's complaint cannot salvage the frivolous nature of his assertions. First, as stated above, although plaintiff has filed his complaint on a form for civil rights actions under 🔖 section 1983, none of the defendants act "under color of state law." To the extent that plaintiff is filing what he refers to as a "Writ of Mandamus" to "reopen" or "review," the court assumes that he is asking the court to order these defendants to reopen and review plaintiff's criminal conviction. A federal court is authorized to issue a writ in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff. 28 U.S.C. § 1361.

None of the defendants listed owe any duty to plaintiff regarding his Texas criminal conviction, regardless of which conviction he may be challenging. On April 15, 2010, United States District Judge Kathleen Cardone denied Luevano's petition for a writ of habeas corpus, brought under 🔖 28 U.S.C. § 2254, in which he challenged two convictions in 2010 for burglary of a habitation. *Luevano v. Abbott,* No. EP–10–CV–128, 2010 WL 1544605 (W.D. Tex. April 15,

2010). The court denied Luevano's petition for failure to exhaust his administrative remedies. *Id.* Plaintiff in this case has not indicated what convictions he wishes the defendants to reopen.[3] Plaintiff cites a civil action number in the caption of his complaint that appears to be the number of one of his previous cases. (Compl. at 1) (citing "08–CV–1360"). The case matching the civil action number cited by plaintiff is the Eastern District of New York action against Hillary Rodham Clinton that was dismissed as frivolous as stated above. It is impossible to discern from his complaint what plaintiff is challenging and what he actually would like the court to do, other than assign various attorneys to his case.

Based on a review of this complaint and of many other similar actions brought by plaintiff throughout the country, this court must recommend dismissing this action as frivolous, rather than transferring it to a district where it might have been brought. Dismissal of an action is proper when allegations are the "product of delusion or fantasy." 🔖 *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998). Additionally, because there is no possible way that plaintiff could state a valid claim against the defendants he has named, relating to his conviction, this court will recommend that no leave to amend be allowed and that the District Court certify that an appeal would not be taken in good faith.

**\*6** **WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motion for IFP (Dkt. No. 2) is **DENIED,** and it is

**RECOMMENDED,** that plaintiff's complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 🔖 28 U.S.C. § 1915(e)(2)(B) (i)-(ii) and it is

**RECOMMENDED,** that if the District Court approves this recommendation, the court certify that any appeal from this matter would not be taken in good faith pursuant to 🔖 28 U.S.C. § 1915(a)(3).

Pursuant to 🔖 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 🔖 *Roldan v. Racette,* 984 F.2d 85, 89 (2d

Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3338704

## Footnotes

1    This apparently has some connection to Secretary Clinton's television commercial.
2    https://pacer.uspci.uscourts.gov
3    The court notes that plaintiff has been bringing civil rights actions from prison since 2003, thus, it is possible that there are other convictions for which he has been incarcerated.

**End of Document**                                               © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Dillon v. Adams, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 159 of 164

2016 WL 1426305
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick DILLON, Plaintiff,
v.
Dr. R. ADAMS, et al., Defendants.

9:15–CV–106 (BKS/ATB)
|
Signed March 10, 2016

**Attorneys and Law Firms**

FREDERICK DILLON, Plaintiff pro se.

JOSHUA L. FARRELL, AAG, Attorney for Defendants.

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Brenda K. Sannes, United States District Judge.

In this civil rights complaint, [1] plaintiff alleges that while he was confined at the Clinton Correctional Facility ("Clinton"), Dr. Adams denied plaintiff proper medical care for his genital warts, [2] that defendant Johnson sexually assaulted plaintiff and then hit him in the head in retaliation for grievances that he filed, and that defendant Ludwig failed to protect plaintiff from the assault. (Dkt. No. 25 at 6, 8–18). Plaintiff seeks substantial monetary relief. Presently before the court is defendants' motion to revoke plaintiff's in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(g). (Dkt. No. 42). Plaintiff has responded in opposition to defendants' motion, and defendants have filed a reply. (Dkt.Nos.43, 44). Plaintiff has also filed what has been called a motion to "amend" and "requesting reconsideration for Dr. Adams to be a party to this action." [3] (Dkt. No. 29). Plaintiff has also moved for appointment of counsel. (Dkt. No. 41). For the following reasons, this court finds that, based on the analysis in Judge Sannes's April 30, 2015 Order, plaintiff has satisfied the "imminent danger" exception for this action and will recommend denying defendants' motion to dismiss.

**I. "Three Strikes" Provision of the PLRA**

**A. Legal Standards**
The "three strikes" section of the PLRA prohibits the filing of an IFP action when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g). The purpose of section 1915(g) is to "stem the tide of egregiously meritless lawsuits" by "forcing prisoners to go through the same thought process non-inmates go through before filing a suit, i.e. is filing this suit worth the costs?" Tafari v. Hues, 473 F.3d 440, 443 (2d Cir.2007) (citations omitted).

**\*2** Section 1915(g) provides that:

> [i]n no event shall a prisoner bring **a civil action or appeal a judgment in a civil action or proceeding** [IFP] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought **an action or appeal** in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

(Emphasis added). An action may be dismissed pursuant to section 1915(g), even if the court originally granted plaintiff IFP status. See, e.g., Gamble v. Maynard, 9:06–CV–1543 (DNH/DEP), 2008 WL 150364, at \*5 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that IFP status was improvidently granted); Luevano v. Clinton, 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at \*3 (N.D.N.Y. July 1, 2010).

If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action IFP [4] unless the plaintiff is under imminent danger of serious physical injury.

Case 9:19-cv-00428-BKS-TWD Document 44 Filed 08/05/20 Page 160 of 164

Dillon v. Adams, Not Reported in Fed. Supp. (2016)

28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002).

Congress enacted the "imminent danger" exception to create a safety valve to prevent *impending* harms to prisoners who would otherwise be barred from proceeding IFP. *See Id.* at 563. The danger must be present when the plaintiff files his complaint. *Id.* Allegations of "ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury" may qualify for the imminent danger exception. *Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir.2004). (internal quotations omitted). However, "a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau,* 554 F.3d 293, 296 (2d Cir.2009) (citations omitted).

In considering whether plaintiff has sufficiently demonstrated that he is entitled to in forma pauperis status pursuant to the "imminent danger" exception to the three-strikes rule, the Court is guided by the Second Circuit's recent decision in *Chavis v. Chappius,* 618 F.3d 162 (2d Cir.2010). In *Chavis,* the court found that

> Chavis's attempt to expand on his complaint stated that one of the officers who had allegedly beaten him on July 17 had 'verbally threatend[ed] to assault [him] again,' and that another of those officers had visited his cell 'for intimidation reasons.' This by itself would appear to be sufficient to allege imminent danger of serious physical injury. An allegation of a *recent* brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.

*3 618 F.3d at 170 (emphasis added). The court also stated that the feared physical injury must be "serious," and that the court should not make an "overly detailed inquiry into whether the allegations qualify for the exception because section 1915(g) concerns only "a threshold procedural question," while other portions of section 1915 deal with the early screening of meritless suits. *Id.* at 169–70

(quoting *Andrews, v. Cervantes,* 493 F.3d 1047, 1055 (9th Cir.2007)) (other citation omitted).

Finally, the court in *Chavis* also held that if plaintiff adequately alleges imminent danger on some claims, the action may proceed on any other claims contained in the same complaint, even though they may lack a nexus to imminent danger. 618 F.3d at 171. Read another way, *Chavis* holds that at least one of the claims must have a nexus to the "imminent danger" that plaintiff asserts". *See also Pettus,* 554 F.3d at 298 (the imminent danger must be "fairly traceable to unlawful conduct asserted in the complaint, and a favorable outcome would redress that injury". This court does not read *Chavis* or *Pettus* to hold that a "general" allegation of danger will suffice to allow a "three strikes" plaintiff to file multiple complaints with claims that are entirely unrelated to the allegation of danger.

In *Brown v. Philidelphia,* the Third Circuit held that it "need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit 'factual claims of imminent danger that are 'clearly baseless,' *i.e.* allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' " *Brown v. Philadelphia,* 331 F. App'x 898, 900 (3d Cir.2009). The court may consider "judicially noticable facts in determining whether the allegations are baseless or wholly incredible." *Id.*

(citing *Denton v. Hernandez,* 504 U.S. 25, 33 (1992)).

In *Brown,* the court took "judicial notice of the fact that Brown has demonstrated a pattern of abusing judicial process by repeatedly filing frivolous actions" and considered that Brown had managed to evade the three strikes rule and continue to pursue filings by "repeatedly invoking the imminent danger exception under § 1915(g)." *Id.* The court examined Brown's other actions and "confirmed that they are all substantially similar, setting forth myriad vague, generalized, and unsupported claims." *Id.*

**B. Application**
There is no dispute in this case that plaintiff has three strikes. Plaintiff's strikes were discussed by United States District Court Judge Nicholas G. Garaufis in his transfer order. (Dkt. No. 4). In a footnote, Judge Garaufis stated that "[s]ince 2012, plaintiff has filed 24 other civil actions in the United States Court for the Eastern and Southern Districts of New

York...." (Dkt. No. 4 at 1 n.1). Judge Garaufis further stated that "many" of those cases were dismissed for failure to state a claim, "thus qualifying as strikes under section 804 of the [PLRA]...." The Eastern District of New York had "recently ... denied Plaintiff permission to proceed IFP in several actions upon finding that Plaintiff was not in danger of imminent harm at the time he filed his complaints...." (*Id.*) (citations omitted).

In her April 30, 2015 Order, Judge Sannes discussed Judge Garaufis's order, citing the above footnote and noting the plaintiff's cases that were found to constitute strikes.[5] (Dkt. No. 11 at 3 n.4). The April 30, 2015 order concluded that "based upon the plaintiff's prior litigation history and the prior Orders from the Eastern District of New York, unless it appears that the imminent danger exception to the three-strikes rule is applicable in this action, plaintiff may not proceed with this action [IFP]." (Dkt. No. 11 at 4–5).

**\*4** In analyzing the imminent danger exception, Judge Sannes found that based upon the holding in *Chavis,* the court did not need to decide whether plaintiff's medical care claim was sufficient to constitute "imminent danger," because plaintiff included his sexual assault claim in his motion for preliminary injunction. (Dkt. No. 11 at 6). The court found that plaintiff's allegations regarding defendant Johnson's alleged sexual abuse and plaintiff's fear of retaliation were preliminarily sufficient to grant IFP based on the imminent danger exception. (Dkt. No. 11 at 7). However, Judge Sannes specifically stated that "[t]his conclusion is a preliminary finding, and plaintiff's [IFP] status will be revoked if, as the case progresses, it is determined that he did not face imminent danger of serious physical injury when he commenced this action or is otherwise not entitled to proceed [IFP]." (*Id.*) (emphasis in original). The order noted that the "Defendants are entitled to refute this preliminary finding in future filings." (*Id.* at 7 n.9).

### B. Application

In their memorandum of law, defendants argue that plaintiff's transfer out of Clinton to another facility "moots" his claim of imminent danger. Defendants cite *Welch v. Selsky*[6] and *Salahuddin v. Goord,*[7] and argue that even though plaintiff filed his action while he was still at Clinton, in light of his subsequent transfer, he cannot establish any imminent danger. The body of the *Welch* decision states that the plaintiff was attempting to raise new facts in his response to the

motion to dismiss in an attempt to establish imminent danger. Magistrate Judge Peebles stated that "[p]laintiff ... did not propound this claim in his complaint now before the court. Based on the pleadings before me, it is apparent that this allegation also does not relate to circumstances in existence at the time he filed this lawsuit, and therefore does not provide a basis for me to find that plaintiff is under imminent danger...." 2008 WL 238553, at \*6. However, *Chavis,* which was relied upon by Judge Sannes, was decided by the Second Circuit two years after *Welch* and clarified the state of the law with respect to imminent danger in conjunction allegation of conduct occurring subsequent to the filing of complaint.[8] In a footnote, Judge Peebles cited *Salahuddin* and stated that it was "arguable" that Welch could no longer satisfy the imminent danger exception due to his transfer. *Id.* at \*6 n.4. This statement was not a holding.[9]

Plaintiff Dillon filed his complaint while he was still at Clinton. If he had been transferred *prior to filing,* then the danger would have "dissipated" by the time the complaint was filed and would not qualify as "imminent" under the statute. *Chavis,* 618 F.3d at 169. Judge Sannes has interpreted *Chavis* to hold that the plaintiff may supplement his allegations regarding imminent danger. (Dkt. No. 11 at 6). In this case, plaintiff supplemented his claims prior to being transferred to another facility, and although the incident with Johnson was over,[10] plaintiff alleged that he "fear[ed] for [his] life that Clinton staff in correctional facility [sic] is going to retaliation [sic] against [him]." (Dkt. No. 9 (Supplement)) – 4/6/15 at 3; Dkt. No. 12 – (Change of Address Effective 4/27/15).

**\*5** While Judge Sannes stated that her finding regarding imminent danger was "preliminary," defendants have not presented anything in their motion that would change Judge Sannes's finding. Thus, this court must rely Judge Sannes's findings and must recommend denying the defendants' motion to dismiss.

The court notes that plaintiff has also filed a motion for appointment of counsel. (Dkt. No. 41). Plaintiff has also filed a motion that has been interpreted as a request for "reconsideration for Dr. Adams to be a party to this action and to amend his complaint." (Dkt. No. 29). These motions will be addressed separately.

**WHEREFORE**, based on the findings above, it is

Dillon v. Adams, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 162 of 164

**RECOMMENDED**, that defendants' motion to revoke plaintiff's IFP status and dismiss the action without prejudice be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.

Roldan v. Racette, 984 F.2d 85 (2d Cir.1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1426305

---

## Footnotes

1    Plaintiff's "complaint" consists of a complaint that was transferred to the Northern District of New York from the Eastern District of New York on January 28, 2015, together with a "supplement" to the complaint that plaintiff filed on April 6, 2015. (Dkt.Nos.1, 9).

2    The complaint has also been interpreted as raising a claim against D. Quinn, First Deputy Superintendent because plaintiff forwarded the "concerns" about his medical care to D. Keysor, who "stated [that] he forward[ed] [plaintiff's] concerns to D. Quinn.... " (Dkt. No. 25 at 18) (citing Compl. at 5).

3    This part of plaintiff's motion is completely unclear because Dr. Adams was not dismissed in Judge Sannes's order of August 25, 2015, and Dr. Adams is still a party to this action. In a subsequent submission, plaintiff asked "make a relief" against Dr. Adams for $10,000.00, and on the same day, filed another document stating that he wished to "settle" this case against Dr. Adams for $3,000.00. (Dkt.Nos.29, 30).

4    A plaintiff who is subject to the three-strikes rule is not barred from filing the action, but he must pay the filing fee before the case can proceed.

5    The actions found to constitute "strikes" by the court in the Eastern District of New York were: (1) *Dillon v. City of New York,* 12–CV–7775, 2014 WL 658095 (S.D.N.Y. Feb. 19, 2014); (2) *Dillon v. City of New York,* 12–CV–6740, Order (S.D.N.Y. Dec. 19, 2013); (3) *Dillon v. City of New York,* 12 CV 7113, 2013 WL 6978959 (S.D.N.Y.Nov.18, 2013); (4) *Dillon v. City of New York,* 12 CV 6746, 2013 WL 3776252 (S.D.N.Y. July 18, 2013); (5) *Dillon v. City of New York,* 12 CV 7112, 2013 WL 3776167 (S.D.N.Y. July 18, 2013); and (6) *Dillon v. City of New York,* 12 CV 3872, Order (S.D.N.Y. June 24, 2013).

6    No. 9:06–CV–812, 2008 WL 238533, at *6 n.4 (N.D.N.Y. Jan. 28, 2008).

7    467 F.3d 263, 272 (2d Cir.2006).

8    In *Chavis,* the plaintiff added new allegations in a motion for preliminary injunction and in a motion to amend that were considered by the court in its analysis of imminent danger. 618 F.3d at 166, 170–71.

9    The court notes that *Welch* has been interpreted as finding no imminent danger "in part because plaintiff had been transferred to another facility *prior to* filing the Complaint." *Dillon v. Blake,* No. 14–CV–2416, 2014 WL 4966086, at *2 n.4 (E.D.N.Y. Oct. 3, 2014) (one of this plaintiff's cases in which Judge Garaufis revoked IFP, finding no imminent danger because plaintiff was transferred "prior to" filing the complaint). It is also interesting to note that plaintiff was claiming sexual misconduct by the defendant in *Dillon v. Blake. Id.* at *2. Plaintiff was claiming that defendant Blake had threatened to sexually assault or forcibly rape the plaintiff. *Id.* The court noted that it did not take such claims lightly, but because plaintiff had already been transferred out of the facility when he filed the action, the court did not find imminent danger. *Id.*

10    As stated above, plaintiff may not show imminent danger if the danger has "dissipated" by the time he files his action. *Pettus,* 554 F.3d at 296.

**Dillon v. Adams, Not Reported in Fed. Supp. (2016)**

---

**End of Document**                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Dillon v. Adams, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00428-BKS-TWD    Document 44    Filed 08/05/20    Page 164 of 164

2016 WL 1435693
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frederick DILLON, Plaintiff,

v.

Dr. R. ADAMS, et al., Defendants.

9:15-cv-0106 (BKS/ATB)
|
Signed 04/11/2016

**Attorneys and Law Firms**

Frederick Dillon, 14-A-0649, Marcy Correctional Facility,
P.O. Box 3600, Marcy, NY 13403, Pro se Plaintiff.

Hon. Eric T. Schneiderman, New York State Attorney
General, Joshua L. Farrell, Esq., Assistant Attorney General,
The Capitol, Albany, NY 12224, For Defendants.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge

 **\*1** On January 20, 2015, Plaintiff Frederick Dillon
commenced this civil rights action under 42 U.S.C. §
1983 alleging that the Defendants violated his constitutional
rights while he was incarcerated at the Clinton Correctional
Facility. (Dkt. No. 1). On April 30, 2015, the Court granted
Plaintiff's application for leave to proceed in forma pauperis
after making a preliminary finding that Plaintiff had satisfied
the "imminent danger" exception to the three strikes provision
in 28 U.S.C. § 1915(g). (Dkt. No. 11). On October 26,
2015, Defendants filed a motion to revoke Plaintiff's in forma
pauperis status and conditionally dismiss the complaint. (Dkt.
No. 42). Plaintiff filed a response to the motion on November
3, 2015. (Dkt. No. 43). A reply was filed by Defendants on
November 30, 2015. (Dkt. No. 44).

This matter was referred to United States Magistrate Judge
Andrew T. Baxter, and on March 10, 2016, Magistrate Judge
Baxter issued a Report-Recommendation recommending that
Defendants' motion to conditionally dismiss be denied. (Dkt.
No. 45). Magistrate Judge Baxter advised the parties that they
had fourteen days to file written objections to the report and
that the failure to object to the report within fourteen days
would preclude appellate review. *See* Roldan v. Racette,
984 F.2d 85 (2d Cir. 1993); 28 U.S.C. 636(b)(1); Fed. R.
Civ. P. 72, 6(a), 6(e); Dkt. No. 45, at pp. 9-10. No objections
to the Report-Recommendation have been filed.

Since no objections to the Report-Recommendation have
been filed, and the time for filing objections has expired,
the Court has reviewed the Report-Recommendation for clear
error. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y.
2012); Fed. R. Civ. P. 72(b), advisory committee's note to
the 1983 addition. Under this standard, "the court need only
satisfy itself that there is no clear error on the face of the record
in order to accept the recommendation." *Id.* Having reviewed
the Report-Recommendation for clear error and having found
none, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 45)
is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' Motion to Conditionally
Dismiss (Dkt. No. 42) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon
the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1435693