UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAY BRADSHAW,

                        Plaintiff,

      v.                                    9:19-CV-0428
                                                  (BKS/TWD)

FLETCHER, et al.,

                        Defendants.

---

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                        JONATHAN REINER, ESQ.
New York State Attorney General          Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS
United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.    INTRODUCTION

Plaintiff Jay Bradshaw, proceeding pro se in this 42 U.S.C. § 1983 ("Section 1983") civil rights action, alleges wrongdoing while he was incarcerated at Upstate Correctional Facility.  Dkt. No. 75 ("Amended Complaint").  Presently before the Court is defendants' motion to dismiss certain of the claims in plaintiff's amended complaint pursuant to Fed. R.

Civ. P. 12(b)(6), and plaintiff's motion to supplement his amended complaint, together with a proposed supplemental complaint. Dkt. No. 86 ("Motion to Dismiss"); Dkt. No. 89 ("Motion to Supplement"); Dkt. No. 89-1 ("Prop. Supp. Compl."). Defendants have opposed plaintiff's Motion to Supplement. *See* Dkt. No. 93 ("Opposition to the Motion to Supplement").

## II.     PROCEDURAL HISTORY

By Decision and Order entered on May 9, 2019, the Honorable Brenda K. Sannes granted plaintiff's application to proceed in forma pauperis in accordance with 28 U.S.C. § 1915(g), and, following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed some of plaintiff's claims and some of the defendants, and directed service and a response for the claims against the named defendants that survived sua sponte review. *See generally*, Dkt. No. 8 ("May 2019 Order").[1]

Thereafter, plaintiff filed a motion to amend his complaint, together with a proposed amended complaint wherein he named certain individuals in place of certain "Doe" defendants. Dkt. No. 70 ("Motion to Amend"); Dkt. No. 70-1 ("Prop. Am. Compl."). By Decision and Order entered on June 15, 2021, this Court granted the Motion to Amend in part and denied it in part, and the Clerk was directed to update the docket to make the following substitutions: (1) Corrections Officer Collinger for C.O. John Doe #2; (2) Corrections Officer Adam Gallagher for C.O. John Doe #3; (3) Corrections Officer Walrath for C.O. John Doe #4 and C.O. John Doe #6; and (4) Corrections Officer Thomas for C.O. John Doe #5.

---

[1] With respect to plaintiff's claims against certain "Doe" defendants that survived sua sponte review, plaintiff was directed to take reasonable steps to ascertain the identity of these "Doe" defendants, and when identified, seek to amend the complaint to add the appropriate individuals as defendants pursuant to Federal Rule of Civil Procedure 15(a). *See* May 2019 Order at 34.

Dkt. No. 74 ("June 2021 Order").[2]

Following the June 2021 Order, the following claims remained in this action: (1) plaintiff's Eighth Amendment failure-to-protect claims against defendants Fletcher, Gollinger,[3] Gallagher, Walrath, Thomas, and Woodruff based on alleged wrongdoing that occurred on and around October 2, 2018 (hereinafter referred to as "Incident 2"); (2) plaintiff's Eighth Amendment failure-to-protect claims against defendants Fletcher, Trombley, Woodruff, Healy, Jeffries, Walrath, and St. Mary based on alleged wrongdoing that occurred on January 8, 2019; and (3) plaintiff's Eighth Amendment failure-to-protect claims against defendants Fletcher and Woodruff based on alleged wrongdoing that occurred on March 11, 2019.  *See* June 2021 Order at 6-7.

The Motion to Dismiss seeks dismissal of plaintiff's claims based on Incident 2.  *See generally*, Motion to Dismiss.

### III.    DISCUSSION

#### A.    Allegations in the Amended Complaint Regarding Incident 2

On October 2, 2018, defendant Corrections Sergeant Fletcher "directed several officers to forcefully bring Inmate Burton in the cell with plaintiff."  Amended Complaint at 3. Defendants Fletcher and Woodruff approved Inmate Burton's placement in a cell with plaintiff even though they knew that Inmate Burton was a member of the "Bloods" gang and plaintiff "was labeled a snitch by the Bloods[.]"  *Id.* at 4.

---

[2]  The procedural history leading up to the June 2021 Order was discussed at length in that Order and will not be restated herein.  *See* June 2021 Order at 1-6.

[3]  Plaintiff spelled this official's last name as "Collinger" in the amended complaint.  *See* Amended Complaint at 2.  However, the acknowledgment of service filed on this person's behalf makes clear that the spelling is "Gollinger."  *See* Dkt. No. 82.  The Clerk is directed to update the docket accordingly.

3

"While in the cell, Inmate Burton made repeated threats to defendant Fletcher . . . that he will 'snap plaintiff's neck,'" and further assault plaintiff once his (Inmate Burton's) arm healed. Amended Complaint at 3. Defendant Fletcher responded, "I know," then "laughed as he walked away." *Id*. Inmates in the adjoining cells also urged Inmate Burton to attack plaintiff. *Id.*

On October 5, 2018, between the hours of 2 a.m. and 8 a.m., Inmate Burton "repeatedly attacked plaintiff." Amended Complaint at 3. Defendant Gollinger, who was "the tour 10-6 gallery officer, knew that plaintiff was attacked but failed to intervene or . . . report the incident." *Id.* Defendant Gallagher and defendant Walrath, who were the mail officers that collected mail at approximately 6 a.m., also "knew that plaintiff was attacked but failed to intervene, or . . . report the incident." *Id.* Defendant Gallagher and defendant Thomas served plaintiff food at approximately 7:30 a.m., and "collected the food trays and gave out supplies at about 8 a.m." *Id.* Through these activities, these officials also "knew that plaintiff was attacked but failed to intervene, or . . . report the incident." *Id.*

At approximately 9:30 a.m., plaintiff was removed from his cell for a "legal call." Amended Complaint at 4. "Plaintiff informed his attorney that he had been repeatedly attacked by Inmate Burton," and that officials failed to intervene, report the incident, or seek medical assistance for him. *Id.* Thereafter, plaintiff's attorney called the facility, and plaintiff was subsequently seen by medical staff for his injuries. *Id.*

**B.     Overview of the Motion to Dismiss**

In their memorandum of law in support of the Motion to Dismiss, defendants contend that the Court should dismiss all of plaintiff's Eighth Amendment claims arising out of Incident 2. *See* Dkt. No. 86-1 at 6. With respect to defendants Woodruff and Fletcher, defendants

4

argue that the allegations in the amended complaint are insufficient to plausibly suggest that plaintiff's placement in a double-bunk cell with inmate Burton presented a substantial risk of serious harm to him.  *Id*. at 7-8.[4]  With respect to defendants Gollinger, Gallagher, Walrath, and Thomas, defendants argue that the allegations in the amended complaint are insufficient to plausibly suggest that any of these officials had a reasonable opportunity to intervene in the incident between plaintiff and his cellmate and prevent further harm from occurring.  *Id*. at 8-9.

    **C.**    **Overview of the Motion to Supplement and Proposed Supplemental Complaint**

In lieu of filing an opposition to the Motion to Dismiss, plaintiff filed the Motion to Supplement, together with his proposed supplemental complaint.  *See* Motion to Supplement.  Plaintiff expressly states in his Motion to Supplement that he "seeks leave to supplement his pleading to cure the defective pleading for 'Incident 2[.]'"  *Id*. at 2.  The following facts are set forth as alleged in the proposed supplemental complaint.

On July 23, 2018, plaintiff was transferred to Upstate Correctional Facility.  Prop. Supp. Compl. at 1.  Upon arrival, plaintiff notified a corrections sergeant that he "was attack[ed] while in transit by a member of the blood gang because he is labeled a snitch by the bloods."  *Id*.

On September 28, 2018, "plaintiff was attacked by a prisoner who was affiliated with the Patrias gang[.]"  Prop. Supp. Compl. at 1.  On October 1, 2018, plaintiff "refused to allow another prisoner in the cell with him and was subsequently served with a misbehavior report."

---

[4]  Defendants also argue, with respect to defendant Woodruff, that the allegations in the amended complaint regarding what this official knew about plaintiff having been labeled a snitch and his cellmate being a member of the "Bloods" gang are entirely conclusory, and therefore should not be accepted as true.  Dkt. No. 86-1 at 11.

5

*Id*. The same day, plaintiff submitted a grievance wherein he "claim[ed] that he feared being in a double-bunk cell" because "he is vulnerable to attack." *Id*.

The next day, defendant Fletcher and "several" other officers "brought inmate Burton into the recreation pen of plaintiff['s] cell -- which is unusual and never done -- and opened the recreation pen door connected to plaintiff's cell." Prop. Supp. Compl. at 1. Inmate Burton "threatened that he would beat-up plaintiff in the cell once his arm get [sic] better." *Id*. Defendant Fletcher "laughed and stated 'I know', as he walked away." *Id*. Thereafter, "[i]nmates in the adjoining cell urged Inmate Burton to attack plaintiff" and identified him as "a snitch" and "a rapo[,]" to which inmate Burton responded, "I already know[,] I know who he is." *Id*.

On October 5, 2018, between the hours of 2:00 a.m. and 8:00 a.m., inmate Burton "repeatedly attacked plaintiff in the cell." Prop. Supp. Compl. at 2. Between 2:00 a.m. and 5:00 a.m., defendant Gollinger "conducted rounds every half hour" and "observed plaintiff being attacked in the cell[.]" *Id*. At 6:00 a.m., defendants Gallagher and Walrath "stopped at plaintiff's cell to collect the mail protruding from the side of the door, at which time plaintiff was being attacked by inmate Burton, but they failed to intervene." *Id*. At approximately 7:30 a.m., defendants Thomas and Gallagher brought food to plaintiff's cell, at which time plaintiff was also being attacked by inmate Burton, yet they failed to intervene. *Id*. Inmate Burton stopped attacking plaintiff "only when the cell hatch was opened and he collected the breakfast[.]" *Id*.

Prior to plaintiff's placement in a cell with inmate Burton, defendants Fletcher and Woodruff were aware that plaintiff was vulnerable to an attack based on his "history and criminal case." Prop. Supp. Compl. at 2. These officials also knew that inmate Burton was a

6

member of the Blood gang, and that plaintiff had been labeled a snitch by this gang. *Id*.

### D. Opposition to the Motion to Supplement

Defendants argue that the Motion to Supplement should be denied because the proposed supplemental complaint does not contain supplemental allegations regarding events that occurred after the filing date of the complaint, as required by Rule 15(d) of the Federal Rules of Civil Procedure, and is instead a proposed amended pleading that does not comply with the requirements for amended pleadings set forth in the Local Rules of Practice for this District. *See* Opposition to the Motion to Supplement at 1-2. Defendants further argue that because the Motion to Supplement is improper, the Motion to Dismiss should be deemed unopposed, and granted. *Id*. at 2.

### E. Relevant Legal Standards

#### 1. Motions to Dismiss

When considering a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Selevan v. New York Thruway Auth*., 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief

that is "'plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]")); *see also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible. . . .") (internal quotation marks and citation omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

Furthermore, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)). Indeed, "[t]he mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the [p]laintiff's complaint."  *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a pro se is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil*, 824 F.2d at 195 (in reviewing district court's dismissal of pro se plaintiff's claim, Second Circuit considered plaintiff's

8

affidavit submitted in opposition to motion to dismiss).

### 2. Motions to Supplement

Rule 15(d) of the Federal Rules of Civil Procedure allows a party, "[o]n motion and reasonable notice, . . . to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party." *Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991). "It is also proper to permit the filing of a supplemental pleading to add additional parties." *Tobin v. Rell*, No. 3:05-CV-1079, 2007 WL 1520111, at *2 (D. Conn. May 18, 2007) (citing *Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 227 (1964)).

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Fed. R. Civ. P. 15(a). *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993) (Fisher, M.J.), *adopted by* 835 F. Supp. at 713 (W.D.N.Y. 1993) (Telesca, D.J.). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F. 3d 208, 212-13 (2d Cir. 2011) (citation omitted). The decision to grant or deny a motion to amend or supplement is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of

9

discretion.  *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

    **F.**    **Analysis**

        **1.  Motion to Supplement**

As an initial matter, the Court agrees with defendants that plaintiff's proposed supplemental complaint is in actuality an incomplete proposed second amended complaint, accompanied by an improper motion to supplement, as opposed to a motion to amend.  The Court, however, disagrees with defendants that the Motion to Dismiss should be deemed unopposed for this reason.

For starters, had plaintiff attached his proposed supplemental complaint to his Amended Complaint, modified the paragraph numbers in the proposed supplemental complaint so as not to overlap with the paragraph numbers in the Amended Complaint, captioned the combined documents as a proposed second amended complaint, and styled the Motion to Supplement as a cross-motion to amend, the submission would have been an entirely appropriate response to the Motion to Dismiss.  *See, e.g., Cusamano v. Sobek,* 604 F. Supp. 2d 416, 462 n.79, 492 (N.D.N.Y. 2009) (Suddaby, J., and Lowe, M.J.) (noting that "special solicitude permits a pro se plaintiff to effectively amend the allegations in his complaint while responding to a motion to dismiss for failure to state a claim."); *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) ("Where plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." (internal quotation marks and citation omitted)).  Similarly, had plaintiff packaged the contents of his proposed

supplemental complaint in argument form, and styled the submission as an opposition to the Motion to Dismiss, it would have been entirely permissible for the Court to consider plaintiff's papers as effectively amending the allegations in the operative pleading. *See Donhauser*, 314 F. Supp. 2d at 121; *Gil*, 824 F.2d at 195.

In light of the foregoing, the Court declines to favor form over substance and disregard the allegations in the proposed supplemental complaint. Indeed, ignoring the contents of the proposed supplemental complaint solely because of the manner in which the submission was presented would run afoul of this Court's mandate to read the papers of pro se litigants generously. Furthermore, defendants were afforded an opportunity to respond to plaintiff's Motion to Supplement, of which they availed themselves.

Accordingly, the Court recommends that the Motion to Supplement be granted insofar as plaintiff wishes to have the allegations in the proposed supplemental complaint considered in opposition to the Motion to Dismiss. *See Robles*, 2008 WL 4693153, at *6 and n.41; *Haag*, 866 F. Supp. 2d at 140 ("As plaintiffs do not seek to add new defendants and MVP had sufficient opportunity to respond to the proposed amended complaint, the merits of the motion to dismiss will be considered in light of the proposed amended complaint.").

### 2. Motion to Dismiss

Under the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (noting that prison officials have a duty, under the Eighth Amendment, "'to protect inmates from violence at the hands of other inmates'" (quoting *Farmer*, 511 U.S. at 833)). In

*Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id*.

A plaintiff may satisfy the objective element by showing either a substantial risk of harm from "a specific assailant" or "a more general risk of harm due to the conditions at the time of the attack." *Hurst v. Perez*, No. 15-CV-4703, 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017); *see also Farmer*, 511 U.S. at 842. With respect to the subjective element, deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Hines v. Lacy*, 189 F.3d 460 (2d Cir. 1999). A defendant's knowledge of a substantial risk of harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quotation marks omitted)).

### a. Fletcher

Insofar as the Motion to Dismiss seeks dismissal of plaintiff's Eighth Amendment claim against defendant Fletcher, the amended complaint and proposed supplemental complaint each allege that inmate Burton told this official, after being placed in a cell with plaintiff, that

he intended to assault plaintiff once he healed from an existing arm injury. *See* Amended Complaint at 3; Prop. Supp. Compl. at 1. The amended complaint and proposed supplemental complaint also allege that defendant Fletcher "laughed" and stated, "I know," in response to inmate Burton's comment. *See* Amended Complaint at 3; Prop. Supp. Compl. at 1. In addition, plaintiff alleges in each of these pleadings that inmate Burton was a known Bloods gang member, and he was labeled a "snitch" by the Bloods gang, and in the proposed supplemental complaint, he alleges that he had been attacked on two recent occasions by gang members, including a few days before inmate Burton became his cellmate. *See* Amended Complaint at 4; Prop. Supp. Compl. at 1-2.

Defendants argue that these allegations are insufficient to plausibly suggest that plaintiff faced a substantial risk of serious harm that was known to defendant Fletcher on October 2, 2018. *See* Dkt. No. 86-1 at 7-9. In support of their contention, defendants cite to three cases where a prisoner-plaintiff's Eighth Amendment failure-to-protect claims were dismissed despite evidence showing that (1) prison officials were aware of a threat made against the plaintiff-inmate by another inmate, (2) the prison officials did not take action, and (3) the plaintiff-inmate was thereafter attacked. *Id*. at 7-8 (citing *Davidson v. O'Lone*, 752 F.2d 817, 829 (3d Cir. 1984) (en banc) *aff'd* 474 U.S. 344 (1986); *Murray v. Goord*, 668 F. Supp. 2d 344, 358 (N.D.N.Y. 2009); and *Garcia v. Rodriguez*, No. 05-CV-5915, 2007 WL 2456631, at *1 (S.D.N.Y. Aug. 24, 2007)).

As an initial matter, each of the cases on which defendants rely were decided at the summary judgment stage. In addition, accepting the non-conclusory allegations in plaintiff's pleadings as true, theses cases are also factually distinguishable from this case. For example, in this case, plaintiff alleges that before he was housed with inmate Burton, he had

13

been attacked on two occasions by gang members, and took steps to avoid being housed with another inmate based on his expressed fear of being assaulted. There are no similar facts in any of the cases on which defendants rely. *See Garcia*, 2007 WL 2456631, at *1-2; *Davidson*, 752 F.2d at 820; *Murray*, 668 F. Supp. 2d at 359. In addition, it is plausible to infer from the allegations in plaintiff's pleadings that defendant Fletcher (1) was aware, when he assigned inmate Burton to be plaintiff's cellmate, that inmate Burton was a gang member, (2) became aware, through inmate Burton's alleged statement, that inmate Burton wished to harm plaintiff, (3) believed that inmate Burton would follow through on his stated intention, and (4) was indifferent to such an outcome.[5] In the cases cited by the defendants, no similar evidence was introduced. *See Garcia*, 2007 WL 2456631, at *1-2; *Davidson*, 752 F.2d at 820; *Murray*, 668 F. Supp. 2d at 359.

Simply put, the cases cited by defendants do not support dismissal of plaintiff's Eighth Amendment claim against defendant Fletcher at this stage of the proceeding. Accordingly, the Court recommends that the Motion to Dismiss be denied insofar as it seeks dismissal of this claim. *See, e.g., Caswell v. Uhler*, No. 9:19-CV-0141 (LEK/ATB), 2020 WL 1245123, at *1, *4 (N.D.N.Y. Mar. 16, 2020) (finding plaintiff sufficiently stated an Eighth Amendment claim against Fletcher where complaint alleged that plaintiff informed Fletcher that he is

---

[5] Although plaintiff conclusorily alleges that defendant Fletcher was aware of inmate Burton's gang affiliation, *see* Prop. Supp. Compl. at 3, neither the amended complaint nor the proposed supplemental complaint explain how defendant Fletcher allegedly became aware of this fact, or plaintiff's belief that he was vulnerable to an attack. However, without evidence to the contrary, the Court believes it is reasonable to assume that some level of due diligence occurs before inmates are housed in a double-bunk cell together. *See, e.g., Murray*, 668 F. Supp. 2d at 359 (discussing record evidence "detailing the process by which two inmates are double-celled together[,]" which included "reviewing both inmates' prior conflicts/violence, disciplinary history, gang affiliations, known enemies, and height and weight"). Moreover, the allegations in the proposed supplemental complaint plausibly suggest that it was defendant Fletcher's decision to place inmate Burton in a cell with plaintiff. Thus, the Court believes it would be inappropriate to entirely disregard plaintiff's allegations regarding what defendant Fletcher knew about him and inmate Burton before housing them in a cell together, or assume at this stage of the proceeding that these allegations are untrue.

14

homosexual and requested that he not be housed with a bunkmate known to be hostile toward homosexuals, and Fletcher responded that Plaintiff should "save the semen" if he is ever sexually assaulted by his bunkmate then assigned Plaintiff to a SHU cell that already housed "an alleged rapist"); *Blandon v. Aitchison*, No. 17-CV-0065, 2019 WL 1206370, at *8 (S.D.N.Y. Mar. 14, 2019) ("Defendants fail to address the newly added allegation that a witness indicated he overheard [Defendant Corrections Officer] Lerouge tell [Inmate] Ebanks shortly before the attack on Plaintiff, 'I know you have issues on the Unit. I'm leaving the cells open. Go handle your business.' . . . Lerouge's statement permits the inference that he was aware that Ebanks specifically intended to harm other inmates, and acted in violation of ICP policy to enable Ebanks to do so. Plaintiff therefore has sufficiently alleged that Lerouge was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . [drew] the inference.'" (quoting *Farmer*, 511 U.S. at 837)); *Polson v. Fischer*, No. 9:08-CV-030, 2010 WL 2985476, at *7 (N.D.N.Y. June 16, 2010) (noting that allegations that inmate plaintiff "was subjected to threats of physical harm from at least two inmates [,] . . . moved out of two different cells as a result of those threats. . . [and thereafter] notified an unidentified officer that the cell mate who ended up attacking him on the following day had been threatening him, and requested to be moved out of that cell . . . could arguably establish that prison officials were more than merely negligent in failing to protect him from a known risk of harm"), *report and recommendation adopted by* 2010 WL 2925362 (N.D.N.Y. July 21, 2010); *Scott v. Warden & Adm'r of Jurisdiction Correction Dep't & Med. Dep't*, No. 08-CV-5729, 2010 WL 3785252, at *6 (S.D.N.Y. Aug. 23, 2010) ("Read liberally, the SAC alleges that C.O. Rebello heard Haastrup threaten Scott and then recklessly released Haastrup from his cell. If C.O. Rebello actually heard the threat and shortly thereafter allowed

15

Haastrup out of his cell, he might have disregarded a substantial risk that Haastrup would injure Scott, which is sufficient to state a federal constitutional claim."); *cf. Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *11 (S.D.N.Y. June 23, 2010) (finding prison officials acted with deliberate indifference to an inmate's safety where the prisoner, though never actually assaulted, was a member of a prison gang and placed in a rival gang's housing area); *Montero v. Crusie*, 153 F. Supp. 2d 368, 377 (S.D.N.Y. 2001) (concluding correction officers acted with deliberate indifference in failing to protect a plaintiff when they encouraged another inmate to attack the plaintiff, even though that inmate never actually assaulted the plaintiff).

### b. Woodruff

The amended complaint alleges that defendants Fletcher and Woodruff approved "Inmate Burton, who they knew is a member of the Bloods, to be placed in a double-bunk cell with Plaintiff, who they knew was labeled a snitch by the Bloods." Amended Complaint at 4. However, neither the amended complaint nor the proposed supplemental complaint explain how plaintiff knew that defendant Woodruff approved of inmate Burton being housed with him. Moreover, plaintiff does not allege in either pleading that defendant Woodruff physically facilitated the transfer of inmate Burton to his cell, as he does with defendant Fletcher. Thus, the Court finds that plaintiff has failed to allege sufficient facts to plausibly suggest that defendant Woodruff was personally involved in housing plaintiff and inmate Burton together.

Furthermore, even if this Court were to assume that defendant Woodruff approved of the housing arrangement, inmate Burton's alleged statement that he wished to harm plaintiff did not happen until after he and plaintiff were placed in a cell together. Moreover, plaintiff's pleadings are devoid of any allegations which plausibly suggest that inmate Burton made a

16

similar statement before he and plaintiff were placed in a cell together.  Thus, the Court finds that plaintiff has also failed to allege sufficient facts to plausibly suggest that defendant Woodruff approved of inmate Burton and plaintiff being housed together out of deliberate indifference to a known risk of harm posed to plaintiff.  *See, e.g., Rodriguez v. Goins*, No. 9:18-CV-1380 (TJM/DJS), 2020 WL 6150984, at *4 (N.D.N.Y. Aug. 17, 2020) ("In order for a corrections officer to be held liable for failing to protect an inmate from another inmate, the corrections officer must have been aware of a 'clear and specific threat' of harm to that inmate."), *report and recommendation adopted by* 2020 WL 6146597 (N.D.N.Y. Oct. 20, 2020); *Velez v. City of New York*, No. 1:17-CV-9871, 2019 WL 3495642, at *5 (S.D.N.Y. Aug. 1, 2019) ("Even if Officer Mateo was aware that Sparber had some propensity towards violence—a proposition arguably supported by Officer Mateo's statement that Sparber was 'a real bad ass'—there is no evidence in this record that Officer Mateo was aware or should have been aware of a specific risk to Plaintiff."), *appeal dismissed* (2d Cir. Oct. 17, 2019); *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) ("Here, Plaintiff has merely alleged that he was celled with an inmate who was known to be violent. . . . Given that inmates in federal prison are often incarcerated specifically because of some record of violence, it can hardly be said that Plaintiff's comments to [Corrections Officer] Rodriguez warranted a need for further protection, especially in the absence of any history of violence between Michaels and Plaintiff. . . . Accordingly, Rodriguez did not consciously disregard any substantial risk to Plaintiff's safety and, as such, his conduct does not rise to the level of an Eighth Amendment violation. Plaintiff's claims in this respect are dismissed without prejudice."); *Blandon v. Capra*, No. 17-CV-0065, 2017 WL 5624276, at *8 (S.D.N.Y. Nov. 20, 2017) ("[A]side from a conclusory allegation that '[D]efendants[ ] w[ere]

fully aware of [the] unsafe condition and refused to take any measures whatsoever to protect the safety of the most vulnerable mental health offenders,' the Complaint is devoid of any allegations that any Defendant specifically knew that Ebanks was infected with HIV or Hepatits C, that he had a propensity to assault other inmates, or that Plaintiff personally was in danger of being assaulted by Ebanks. . . . The Complaint therefore fails to allege that Defendants were 'aware of facts from which the inference could be drawn that' Ebanks specifically posed a substantial risk of harm to Plaintiff, or that Defendants in fact drew such an inference.").

Accordingly, the Court recommends that the Motion to Dismiss be granted insofar as it seeks dismissal of plaintiff's Eighth Amendment claim against defendant Woodruff arising out of Incident 2.

### c.  Gollinger, Gallagher, Walrath, and Thomas

The proposed supplemental complaint alleges that defendants Gollinger, Gallagher, Walrath, and Thomas each witnessed inmate Burton "attack[ing]" plaintiff, yet failed to intervene. Plaintiff does not describe the manner of the "attack" against him that each of these officials allegedly witnessed. Nor does he allege that he said anything to any of these officials when they allegedly witnessed him being "attacked" by inmate Burton.

While the absence of such allegations gives the Court pause, the proposed supplemental complaint does detail how (and when) plaintiff encountered these officials, as well as injuries that he suffered as a result of the "attack." *See* Prop. Supp. Compl. at 2. Thus, the Court believes that plaintiff has alleged enough, albeit barely, to plausibly suggest that defendants Gollinger, Gallagher, Walrath, and Thomas each had an opportunity to intervene to prevent inmate Burton from subjecting plaintiff to further physical harm, yet failed

18

to do so.

Accordingly, the Court recommends that the Motion to Dismiss be denied insofar as it seeks dismissal of plaintiff's Eighth Amendment claims against defendants Gollinger, Gallagher, Walrath, and Thomas. *See, e.g., Morales v. New York State Dep't of Corr*., 842 F.2d 27, 30 (2d Cir. 1988) ("An inmate's claim based on negligence, however, 'is quite different from one involving injuries caused by another prisoner where officials simply stood by and permitted the attack to proceed.'" (alteration omitted) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986))).

## IV.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk update the docket to change the spelling of defendant "Collinger" to "Gollinger"; and it is further

**RECOMMENDED** that plaintiff's Motion to Supplement (Dkt. No. 89) be **GRANTED** insofar as plaintiff wishes to have the allegations in the proposed supplemental complaint (Dkt. No. 89-1) considered in opposition to the Motion to Dismiss; and it is further

**RECOMMENDED** that defendants' Motion to Dismiss (Dkt. No. 86) be **GRANTED IN PART AND DENIED IN PART** as set forth above; and it is further

**RECOMMENDED** that plaintiff be directed to submit a second amended complaint that combines the allegations in the Amended Complaint (Dkt. No. 75) with the allegations in the proposed supplemental complaint (Dkt. No. 89-1), in proper numbering form, without any other changes; and it is further

**RECOMMENDED** that defendants Gollinger, Thomas, Gallagher, Walrath, and Fletcher be directed to respond to the second amended complaint within twenty-one (21)

days of plaintiff's filing of the second amended complaint; and it is further

**ORDERED** that the discovery deadline is reset to January 31, 2021, and the dispositive motion deadline is reset to March 31, 2022; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: November 2, 2021
          Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge