UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

JAY BRADSHAW,

                        Plaintiff,

            v.                                          9:19-CV-0428
                                                        (BKS/TWD)
FLETCHER, et al.,

                        Defendants.

―――――――――――――――――――――――

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                    MATTHEW GALLAGHER, ESQ.
New York State Attorney General       Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


THÉRÈSE WILEY DANCKS
United States Magistrate Judge


## ORDER AND REPORT-RECOMMENDATION

**I.    INTRODUCTION**

        Plaintiff Jay Bradshaw, proceeding pro se in this 42 U.S.C. § 1983 ("Section 1983")

civil rights action, alleges wrongdoing while he was incarcerated at Upstate Correctional

Facility ("Upstate C.F.").  Dkt. No. 126 ("TAC").  Discovery is now closed, and the named

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure.  Dkt. No. 140 ("Motion for Summary Judgement").  Plaintiff has opposed the motion, and Defendants have filed a reply to the opposition.  Dkt. No. 148 ("Opposition to Motion for Summary Judgment"); Dkt. No. 151 ("Reply to Opposition").[1]

For the reasons that follow, the Court recommends that Defendants' Motion for Summary Judgment be granted in part and denied in part.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action by filing a pro se complaint asserting claims pursuant to Section 1983, together with an application to proceed in forma pauperis ("IFP"), and a motion for preliminary injunctive relief.  Dkt. No. 1 ("Compl."); Dkt. No. 6 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion").  By Decision and Order entered on May 9, 2019, the Honorable Brenda K. Sannes granted Plaintiff's IFP Application in accordance with 28 U.S.C. § 1915(g), and, following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed some of Plaintiff's claims and some of the Defendants, and directed service and a response for the claims against the named Defendants that survived sua sponte review.  Dkt. No. 8 ("May 2019 Order").[2]

Thereafter, counsel appeared and filed a pre-answer motion seeking summary judgment on certain claims based on non-exhaustion, and dismissal of certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally*, Dkt. No. 29-1.

After the motion was fully briefed, this Court issued a Report-Recommendation and

---

[1]  Plaintiff has also filed a motion for injunctive relief and a related letter request for video evidence, which will be decided separately, and in due course.  *See* Dkt. No. 162 ("Motion for Injunctive Relief"); Dkt. No. 165 ("Letter Request for Video Evidence").

[2]  Among the claims dismissed were Plaintiff's claims against the Superintendent of Upstate Correctional Facility Donald Uhler.  *See* May 2019 Order at 24-30, 33-34.

Order on August 5, 2020, which recommended that Defendants' motion for summary judgment be granted, and Defendants' motion to dismiss be granted in part and denied in part. Dkt. No. 44 ("August Report-Recommendation"). By Memorandum-Decision and Order entered on September 4, 2020, the Honorable Brenda K. Sannes accepted and adopted the August Report-Recommendation in its entirety. Dkt. No. 45 ("September 2020 Order"). Thereafter, Defendants Fletcher, Healy, Jeffries, St. Mary, Trombley, and Woodruff answered the complaint, and a Mandatory Pretrial Discovery and Scheduling Order was issued. *See* Dkt. No. 47 ("Answer"); Dkt. No. 48 ("Scheduling Order").[3]

By Order entered on March 2, 2021, the deadline for amendment and joinder of parties was extended to April 5, 2021. *See* Dkt. No. 59 ("March 2021 Order"). Shortly thereafter, Plaintiff filed a letter request seeking to substitute certain named officials for "Doe" defendants. Dkt. No. 66. On April 1, 2021, this Court denied Plaintiff's letter request without prejudice to him filing a proper motion to amend, together with a proposed amended complaint, within thirty days. Dkt. No. 67. Thereafter, Plaintiff timely filed a motion to amend the complaint to add certain individuals as defendants in place of certain "Doe" defendants, together with a proposed amended complaint. Dkt. No. 70 ("Motion to Amend"); Dkt. No. 70-1 ("Prop. Am. Compl."). Defendants did not oppose the Motion to Amend.

By Decision and Order entered on June 15, 2021, the Motion to Amend was granted in part and denied in part, and the Clerk was directed to docket the proposed amended complaint as the amended complaint in this case and update the docket to name previously

---

[3] After the September 2020 Order was issued, and before the Answer was filed, Plaintiff submitted objections to the August Report-Recommendation, together with evidence that the objections were timely filed under the prison mailbox rule. Dkt. No. 46. As a result, by Memorandum-Decision and Order entered on January 26, 2021, the Court vacated the September 2020 Order, reviewed the August Report-Recommendation in light of Plaintiff's objection, and once again adopted the August Report-Recommendation in its entirety. Dkt. No. 55 ("January 2021 Order").

identified "Doe" defendants as follows: (1) C.O. John Doe #2 as Corrections Officer Collinger; (2) C.O. John Doe #3 as Adam Gallagher; (3) C.O. John Doe #4 as Corrections Officer Walrath; (4) C.O. John Doe #5 as Corrections Officer Thomas; and (5) C.O. John Doe #6 as Corrections Officer Walrath.  Dkt. No. 74 ("June 2021 Order").

In light of this Decision and Order, the following claims remained in this action: (1) Plaintiff's Eighth Amendment failure-to-protect and failure-to-intervene claims against Defendants Fletcher, Gollinger,[4] Gallagher, Walrath, Thomas, and Woodruff based on alleged wrongdoing that occurred on and around October 2, 2018 (hereinafter referred to as "Incident 2"); (2) Plaintiff's Eighth Amendment failure-to-protect and failure-to-intervene claims against Defendants Fletcher, Trombley, Woodruff, Healy, Jeffries, Walrath, and St. Mary based on alleged wrongdoing that occurred on or around January 8, 2019 (hereinafter referred to as "Incident 4"); and (3) Plaintiff's Eighth Amendment failure-to-protect claims against Defendants Fletcher and Woodruff based on alleged wrongdoing that occurred on March 11, 2019 (hereinafter referred to as "Incident 7").  *See* June 2021 Order; Dkt. No. 95 at 3.

Following the June 2021 Order, Defendants Gollinger, Gallagher, Thomas, and Walrath were served, and counsel filed a motion to dismiss the claims against these officials, and Defendants Fletcher and Woodruff, arising out of Incident 2.  Dkt. No. 86 ("Second Motion to Dismiss").  Instead of opposing the Second Motion to Dismiss, Plaintiff filed a motion to supplement his amended complaint, together with a proposed supplemental complaint, which Defendants opposed.  Dkt. No. 89 ("Motion to Supplement"); Dkt. No. 89-1

---

[4] Plaintiff spelled this official's last name as "Collinger" in the Amended Complaint.  *See* Amended Complaint at 2.  However, the acknowledgment of service filed on this person's behalf clarified that the spelling is "Gollinger", *see* Dkt. No. 82, and the docket was subsequently updated accordingly.

("Prop. Supp. Compl."); Dkt. No. 93 ("Opposition to the Motion to Supplement").

By Report-Recommendation and Order entered on November 2, 2021, this Court recommended that (1) Plaintiff's Motion to Supplement be granted insofar as Plaintiff sought to have the allegations in the proposed supplemental complaint considered in opposition to the Second Motion to Dismiss, and (2) Defendants' Second Motion to Dismiss be granted insofar as it sought dismissal of Plaintiff's Eighth Amendment claim against Defendant Woodruff arising out of Incident 2, and otherwise denied.  Dkt. No. 95 ("November 2021 Report-Recommendation").  On November 24, 2021, Judge Sannes issued a Decision and Order accepting and adopting the November 2021 Report-Recommendation in its entirety. Dkt. No. 99 ("November 2021 Order").  As a result, Plaintiff was directed to submit a second amended complaint that combined the allegations in the Amended Complaint with the allegations in the proposed supplemental complaint, in proper numbering form and without any other changes, within thirty days, and Defendants Gollinger, Thomas, Gallagher, Walrath, and Fletcher were directed to respond to the second amended complaint within twenty-one days of filing.  *Id*.  Plaintiff subsequently filed the second amended complaint, which was docketed on December 28, 2021.  *See* Dkt. No. 103 ("SAC").

At the time the second amended complaint was filed, Plaintiff had an omnibus motion pending, which sought the following: (1) partial reconsideration of the January 2021 Order; (2) leave to amend to add new claims for relief against proposed new defendants; (3) appointment of class counsel; and (4) certification of this case as a class action.  Dkt. No. 94 ("Omnibus Motion").

By Decision and Order entered on February 7, 2022, the Omnibus Motion was granted only insofar as Plaintiff sought reconsideration of the portion of the January 2021 Order that

dismissed his Eighth Amendment failure-to-protect claim against Corrections Officer Locke based on alleged wrongdoing that occurred on September 28, 2018 (hereinafter referred to as "Incident 1"), and this claim and official were reinstated into the case.  Dkt. No. 124 ("February 2022 Order").  The Omnibus Motion was denied in all other respects, and Plaintiff was ordered to file a revised pleading in accordance with the November 2021 Order.  *Id*. at 34-35.[5]

Thereafter, Plaintiff filed the third amended complaint, and the remaining Defendants answered the pleading.  Dkt. No. 126; Dkt. No. 132 ("Answer to TAC").

III.    **FACTUAL BACKGROUND REGARDING PLAINTIFF'S REMAINING CLAIMS**

Plaintiff Jay Bradshaw arrived at Upstate Correctional Facility on or about June 28, 2018.  Dkt. No. 148 at 15, ¶ 8.  According to Plaintiff, by this time, he was aware that he had been labeled a "snitch" by Bloods gang members.  Dkt. No. 140-10 at 21.

On the date of Plaintiff's arrival to Upstate, he claims he "informed [a] sergeant that [he] had been labeled a snitch by the gangs."  Dkt. No. 140-10 at 22.  Although this official denies that this conversation with Plaintiff occurred, Dkt. No. 140-14 at 1, ¶ 5, there is no dispute that this official did not "report[] to anyone that [P]laintiff believed he was labeled a snitch by the Bloods."  Dkt. No. 140-14 at 1, ¶ 6.[6]

Between June 28 and September 21, 2018, Plaintiff was housed in a double-bunk cell

_____

[5]  Page citations herein are those assigned by the Court's electronic filing system, CM/ECF.

[6]  Plaintiff identified this person as "the same sergeant who wrote the misbehavior reports for the incident involving [Plaintiff] and Inmate Burton." Dkt. No. 140-10 at 24. The official who wrote this misbehavior report is C. St. Hilaire.  *See* Dkt. No. 140-14, Declaration of C. St. Hilaire, ¶¶ 8-9.

with "the individual he arrived with[.]"  Dkt. No. 148 at 15, ¶ 13.[7]  After this inmate was

removed from Plaintiff's cell on September 21, 2018, Plaintiff "refused to volunteer to being

double-cell[ed] due to fear of his safety."  Dkt. No. 148 at 3, ¶ 16.

    **A.**    **Incident 1**

       On September 28, 2018, Defendant Corrections Officer Locke brought Inmate Jordan,

a "Patria gang member[,]" to Plaintiff's cell.  TAC, ¶ 5; Dkt. No. 148 at 16, Plaintiff's

Declaration, ¶ 19.  According to Plaintiff, Inmate Jordan "attacked another inmate

immediately before being placed in the cell with [P]laintiff" and Defendant Locke "was aware"

of this fact.  TAC, ¶¶ 5-6.

       Plaintiff claims that at some point after Inmate Jordan was in the cell with him, Inmate

Jordan stopped a non-party official performing rounds to advise that he did not want to be in

the cell with Plaintiff, and might attack him.  TAC, ¶ 7.  Plaintiff further claims that other

inmates in an adjoining cell "urged [I]nmate J[ordan] to attack [P]laintiff and stated '[Plaintiff]

is a snitch and a rapo[.']"  *Id*., ¶ 8.

       According to Plaintiff, at some point either before, during, or after the aforementioned

events, Inmate Jordan told him that Defendant "Locke stated 'you can get him[,]'" referring to

Plaintiff.  TAC, ¶ 6.  Thereafter, Inmate Jordan allegedly attacked Plaintiff in their shared cell,

which resulted in Plaintiff suffering "physical injuries, mental and emotional pain and anguish,

. . . embarrassment, [and] humiliation." TAC, ¶¶ 9, 11.

       Plaintiff acknowledges that Defendant Locke did not witness the attack or other

---

     [7]  According to Defendant Woodruff, the Deputy Superintendent of Security at Upstate Correctional
Facility, Plaintiff had been deemed "double bunk suitable by DOCCs Headquarters in Albany" at all times
following his transfer to the facility.  Dkt. No. 140-18, Declaration of Paul Woodruff at 1 ¶ 4.

inmates encouraging the attack.  Dkt. No. 148 at 26, ¶ 92.  Defendant Locke also stated that he did not verbally or physically provoke an assault on Plaintiff.  Dkt. No. 140-9, Declaration of Nate Locke, ¶ 8.

### B.    Incident 2

According to Plaintiff, on October 1, 2018, he "refused to allow another prisoner in the cell with him" and "submitted a grievance wherein [he] stated . . . he feared being in a double-bunk cell because [he wa]s vulnerable to attack."  *See* TAC, ¶¶ 14-15.  In the grievance, Plaintiff stated he "informed [C.O.] Tourville and Sergeant [St.] Hil[air]e of [his] concern[] to be in a cell with prisoners due to orchestrated attacks" and/or "being victimized - perhaps sexually. My safety and well-being [are] in jeopardy here at Upstate."  Dkt. No. 148-1 at 3.

On October 2, 2018, multiple Upstate Correctional Facility employees, including Defendant Corrections Sergeant Fletcher, brought Inmate Burton into the recreation pen attached to Plaintiff's cell.  Dkt. No. 140-10 at 33.  According to Plaintiff, his cell could be entered from either a hallway, or the recreation pen, but inmates normally entered the cell through the hallway.  *Id*. at 33-36.

Plaintiff testified that Inmate Burton was handcuffed when he was brought into the recreation pen, and facility officials removed the handcuffs and left Burton "hogtied."  Dkt. No. 140-10 at 33.  Plaintiff further testified that officials next opened the door between Plaintiff's cell and the recreation pen, then exited the recreation pen.  *Id*. at 34.[8]

---

[8] According to Plaintiff, Inmate Burton was hogtied "[b]ecause he was refusing to double-bunk with . . . another prisoner[,]" and facility officials forced Burton to enter Plaintiff's cell "because they knew that [Burton] was going to attack [Plaintiff]."  Dkt. No. 140-10 at 96.  Plaintiff also claims that Inmate Burton was able to free himself from the "hogtie" restraints by wiggling out of the ties.  *Id*.

According to Plaintiff, while Defendant Fletcher remained near the cell, "Inmate Burton threatened [to] . . . beat-up [P]laintiff . . . once his arms got better [and] Defendant Fletcher laughed and stated 'I know' as he walked away."  TAC, ¶ 17.  Plaintiff also stated during his deposition that Inmate Burton told Plaintiff at some point that he was a member of the Bloods gang.  Dkt. No. 140-10 at 20.

Plaintiff claims that on October 5, 2018, between the hours of 2:00 a.m. and 8:00 a.m., Inmate Burton repeatedly attacked him in the cell.  TAC, ¶ 19.  According to Plaintiff, Defendant Gollinger, a gallery officer, was performing rounds between 2:00 a.m. and 5:30 a.m., and at least once shined a flashlight into the cell window, and then "continued to walk past the cell, knowing that [Plaintiff] was being attacked."  Dkt. No. 140-10 at 38; Dkt. No. 148 at 19, ¶ 42.  However, when asked whether he saw Defendant Gollinger looking into the cell during the alleged attack, Plaintiff answered "[t]he only thing that I've seen was his flashlight."  Dkt. No. 140-10 at 38-39.[9]

Plaintiff also claims that Defendants "Gallagher and Walrath stopped at [his] cell to collect the mail protruding from the side of the door" at approximately 6:00 a.m., at which time "[P]laintiff was being attacked by inmate Burton," yet these officials "failed to intervene" and instead walked away.  TAC, ¶ 20; Dkt. No. 148 at 19, ¶ 43; Dkt. No. 140-10 at 40-41.  However, when asked to confirm whether these officials saw him being attacked, Plaintiff answered "apparently they s[aw] me being attacked because they came and took the mail off the door."  Dkt. No. 140-10 at 40.  Defendants Gallagher and Walrath both deny ever seeing

---

[9]  Plaintiff has not introduced any evidence regarding the manner of force being used against him when he allegedly saw the flashlight shine into his cell, and Defendant Gollinger stated that he "neither saw nor heard any violence between Plaintiff and his cellmate on October 5, 2018."  Dkt. No. 140-6, Declaration of Robert Gollinger, ¶ 5.

or hearing "any violence between Plaintiff and his cellmate on October 5, 2018."  Dkt. No. 140-5, Declaration of Adam Gallagher, ¶ 6; Dkt. No. 140-16, Declaration of Joshua Walrath, ¶ 5.

Plaintiff further claims that Defendants Thomas and Gallagher brought food to his cell at approximately 7:30 a.m., "at which time [P]laintiff was also being attacked by inmate Burton, yet they failed to intervene."  TAC, ¶ 21.  Plaintiff alleges that "Inmate Burton stopped attacking [P]laintiff only when the cell hatch was opened and when he collected the breakfast."  TAC, ¶ 22.  Defendants Thomas and Gallagher both stated that they "neither saw nor heard any violence between Plaintiff and his cellmate on October 5, 2018."  Dkt. No. 140-15, Declaration of Kirk Thomas, ¶ 5; Dkt. No. 140-5, Declaration of Adam Gallagher, ¶ 6.

Plaintiff alleges that as a result of Inmate Burton's attack, he suffered "physical injuries" including a "2 ½ inch cut on his right eyebrow, a swollen and bruised and blurry vision in his right eye, a pounding headache, loss of consciousness, pains and bruise[s] about his body[,] and seemingly high blood pressure."  TAC, ¶¶ 23, 27.  Plaintiff claims he also suffered "emotional distress, embarrassment, [and] humiliation" as a result of the assault.  TAC, ¶ 27.

### C.    Incident 4

Plaintiff states that on the morning of January 8, 2019, he was sharing a double-cell with Inmate Holby, who was not gang affiliated, when Defendant Fletcher stopped at the cell and stated, "I am giving you a new bunky, . . . he will handle you."  TAC, ¶ 28.[10]  According to Plaintiff, the following day, Defendants Trombley and St. Mary removed him from the cell

---

[10]  Plaintiff testified that this exchange occurred after he complained that he had been denied a tray of breakfast.  *See* Dkt. No. 140-10 at 76-77.

"under the pretense of a cell search."  TAC, ¶ 29; *see also* Dkt. No. 140-10 at 77.  Plaintiff

claims that when he was returned to the cell, Inmate Holby had been replaced by Inmate

Wright.  TAC, ¶ 30.[11]  Plaintiff testified that Inmate Wright was "dressed like he [was] ready to

fight" even though Plaintiff had no prior relationship with this inmate.  Dkt. No. 140-10 at 52,

77.

On January 10, 2019, between 9:00 a.m. and 11:00 a.m., Inmate Wright allegedly

attacked Plaintiff repeatedly and "threatened to cut him with a scalpel" if Plaintiff did not have

oral sex with him.  TAC, ¶ 34.[12]  Plaintiff claims that he notified Defendants Healy, Jeffries,

Walrath, and Trombley about the assaults when they made rounds during this time period,

yet each official failed to intervene.  *Id*., ¶¶ 34-35; *see also* Dkt. No. 140-10 at 51-59; Dkt. No.

148 at 22, ¶ 63.  Plaintiff also alleges that at 11:00 a.m., when lunch was served, he

prevented the feeding slot to his cell from closing because Defendants Trombley and St.

Mary were ignoring his injuries and requests for medical treatment, which ultimately triggered

sergeant review and Plaintiff's receipt of medical treatment.  TAC, ¶¶ 36-37; Dkt. No. 140-10

at 65-66; Dkt. No. 148 at 22-23, ¶¶ 64-65; Dkt. No. 148-1 at 12-13.  Defendants Healy,

Jeffries, Walrath, and St. Mary each deny being aware that Plaintiff was being physically

assaulted in his cell.  *See* Dkt. No. 140-7, Declaration of James Healy, ¶ 6; Dkt. No. 140-8,

Declaration of Darrin Jeffrey, ¶ 5; Dkt. No. 140-13, Declaration of Kevin St. Mary, ¶¶ 4-5; Dkt.

---

[11]  Plaintiff testified, somewhat inconsistently, that when he was returned to the cell following the search, Defendant Trombley and another Officer "opened the recreation pen door" to allow Inmate Wright to enter the cell.  *See* Dkt. No. 140-10 at 40-41.

[12]  Plaintiff testified that Inmate Wright also "attacked" him at approximately 8:15 a.m., when he was returned to his cell following his removal for a search, and Defendants Trombley and the other officer present "walked away" despite witnessing the attack.  *See* Dkt. No. 140-10 at 57-60.  Plaintiff offered a similar statement in his declaration.  Dkt. No. 148 at 21,¶¶ 57-58.  However, the Third Amended Complaint does not contain any allegations of any such event.

No. 140-16, Declaration of Joshua Walrath, ¶¶ 6-7.[13]

Plaintiff states that as a result of Inmate Wright's attack, he suffered jaw pain, temporary hearing loss in his right ear, bruising on his ribs and face, cuts to his left eye and eyebrow, a bite mark to his face, and embarrassment, humiliation, and emotional distress. *See* Dkt. No. 148 at 23, ¶ 65; Dkt. No. 140-10 at 68-69.

According to Plaintiff, Defendants Fletcher and Woodruff approved Inmate Wright's placement in a cell with Plaintiff despite knowing Wright was a member of the Bloods gang and that Plaintiff had been labeled a snitch by the Bloods.  TAC, ¶ 37.  Plaintiff further states that these officials were aware that he was vulnerable to attack because of "his history and criminal case[,]" and Defendant Fletcher was also aware that Inmate Wright had a history of violence against other prisoners.  *See* TAC, ¶ 38; Dkt. No. 148 at 21, ¶ 55.  Defendants Woodruff and Fletcher deny any awareness that Plaintiff was vulnerable to an attack.  Dkt. No. 140-4, Declaration of Paul Fletcher, ¶ 8; Dkt. No. 140-18, Declaration of Paul Woodruff, ¶ 5.

### D.    Incident 7

According to Plaintiff, on March 11, 2019, at about 8:30 p.m., Defendant Fletcher directed corrections officers to bring Inmate Cobb into Plaintiff's cell through the recreation pen.  TAC, ¶ 40; Dkt. No. 140-10 at 86.  Plaintiff claims Inmate Cobb was a member of the Bloods gang.  TAC, ¶ 41; Dkt. No. 140-10 at 86.

Plaintiff testified that Inmate Cobb told Plaintiff and another inmate in a neighboring cell that Defendant Fletcher "direct[ed] him to come in the cell and attack [Plaintiff.]"  Dkt. No. 140-10 at 87.  Plaintiff also claims Inmate Cobb told Plaintiff that he had agreed to work for

---

[13]  Defendants did not submit a declaration on behalf of Defendant Trombley.

Defendant Fletcher for extra food and that "the ball w[ould] start rolling" once Cobb received his sneakers from the state shop.  TAC, ¶ 42; Dkt. No. 140-10 at 88.  According to Plaintiff, two days later, after Inmate Cobb received his property, he threatened to cut Plaintiff with a makeshift weapon and sexually assaulted him.  TAC, ¶ 43; Dkt. No. 140-10 at 89-90.

Plaintiff also claims that Inmate Cobb assaulted him two more times on March 14, 2019.  TAC, ¶¶ 44-45; *see also* Dkt. No. 140-10 at 89.  Plaintiff acknowledges that he did not call for help during the assaults, which he claims is because he believed corrections officers had already decided not to help him.  *Id*. at 90.

At some point after 1:00 p.m. on March 14, 2019, Plaintiff was seen by facility medical staff and evaluated at a hospital.  TAC, ¶ 46; Dkt. No. 140-10 at 100; Dkt. No. 148-1 at 20-21.  Plaintiff states that as a result of Inmate Cobb's attacks, he suffered physical injuries, including an abrasion and cuts to his rectum, mental anguish, and humiliation.  TAC, ¶ 48; Dkt. No. 140-10 at 100; Dkt. No. 148-1 at 20-21.

Plaintiff claims Defendants Fletcher and Woodruff approved Inmate Cobb's placement with Plaintiff despite knowing that Cobb was a member of the Bloods gang and that Plaintiff had been labeled a snitch by Bloods gang members and requested protective custody.  TAC, ¶ 41.  Plaintiff further contends that Defendants Fletcher and Woodruff were aware that he was vulnerable to an attack based on "his history and criminal case[,]" and testified that both officials knew that he claimed he was sexually assaulted following Incident 4.  TAC, ¶ 47; Dkt. No. 140-10 at 70-72.  In addition, evidence in the record shows that Plaintiff requested placement in protective custody on or before February 26, 2019, which he was not granted.  Dkt. No. 148-1 at 15.

Defendants Fletcher and Woodruff both stated that, at all times relevant to this action,

they were not aware of Plaintiff being "vulnerable" in any way, did not know any gang had

labeled Plaintiff a snitch, did not know Plaintiff had issues with any gang, and were not aware

of any protective custody request made by Plaintiff.  Dkt. No. 140-4, Declaration of Paul

Fletcher, ¶¶ 8-11; Dkt. No. 140-18, Declaration of Paul Woodruff, ¶¶ 5-8.  Defendant

Woodruff further stated that if he "knew Plaintiff would not be able to safely share a cell with

a particular inmate due to gang affiliations, [he] would not have approved such a celling

arrangement."  Dkt. No. 140-18, Declaration of Paul Woodruff, ¶ 9.  Defendant Fletcher

similarly declared that if he "knew Plaintiff would not be able to safely share a cell with a

particular inmate due to gang affiliations, [he] would not have placed [P]laintiff in that cell."

Dkt. No. 140-4, Declaration of Paul Fletcher, ¶ 12.

## IV.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment may be granted only if the submissions of the parties taken

together "show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see Anderson v. Liberty Lobby,*

*Inc*., 477 U.S. 242, 251-252 (1986).  The party moving for summary judgment bears the initial

burden of showing, through the production of admissible evidence, that no genuine issue of

material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of

fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467

F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . .

of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). The nonmovant must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit.[14] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id*. (citation and internal quotation marks omitted). "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted). "[T]o satisfy Rule

---

[14] The Court finds that Plaintiff's third amended complaint is properly verified. *See* TAC at 6.

56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations."
*Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements
that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a
properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435,
452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve
all ambiguities and draw all reasonable inferences against the moving party. *Major League
Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is
proceeding *pro se*, the court is obliged to "read [the pro se party's] supporting papers
liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos
v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a pro se party's 'bald assertion,'
unsupported by evidence, is not sufficient to overcome a motion for summary judgment."
*Cole v. Artuz*, No. 93-CV-5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999)[15] (citing
*Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## V.    LEGAL STANDARD GOVERNING PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

"The Eighth Amendment requires prison officials to take reasonable measures to
guarantee the safety of inmates in their custody." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d
614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To prevail on
claim that officials failed to intervene, a plaintiff must show that "(1) the officer had a realistic
opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's
position would know the victim's constitutional rights were being violated; and (3) the officer

---

[15] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron
v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

d[id] not take reasonable steps to intervene." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010).

To prevail on a claim that officials have failed to protect an inmate from harm, a plaintiff must demonstrate that, objectively, the conditions of his incarceration posed a substantial risk of serious harm and, subjectively, that the defendant acted with deliberate indifference. *See Farmer*, 511 U.S. at 834; *Hayes*, 84 F.3d at 620. "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620. A plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his safety: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

## VI.    ANALYSIS

Defendants move for judgment as a matter of law and dismissal of all of Plaintiff's remaining claims, raising slightly different arguments as to why each alleged incident of wrongdoing should not survive summary judgment. *See generally,* Dkt. No. 140-1. Plaintiff has opposed the motion, and submitted record evidence in support of his opposition, including a declaration. *See* Dkt. No. 148; 148-1.

### A.    Incident 1

Plaintiff claims that on September 28, 2018, at approximately 5:30 p.m., Defendant Locke and a non-party corrections officer placed Inmate Jordan, a member of the "Patria" gang, into his cell even though this inmate "attacked another inmate immediately before being placed in the cell with Plaintiff." TAC, ¶ 5; Dkt. No. 148 at 16, ¶ 19. According to

17

Plaintiff, Defendant Locke (1) "was aware that Inmate J[ordan] intended to attack any prisoner he was placed in the cell with[,]" and (2) "remain[ed] in front of the cell for above five minutes" before walking away. *Id.*, ¶¶ 6, 9. Plaintiff further alleges that Inmate Jordan subsequently told Plaintiff that Defendant Locke encouraged him to "get" Plaintiff, and eventually attacked Plaintiff. *Id.*

Defendants argue that this claim should be dismissed because (1) it fails to state a claim upon which relief may be granted, (2) the evidence in the record "undermines both the subjective and objective components" of the claim, and (3) the claim was not properly exhausted. *See* Dkt. No. 140-1 at 10-16. Insofar as Defendants argue that dismissal is warranted based on the evidence in the record, the Court agrees.

As an initial matter, Plaintiff testified at his deposition that Defendant Woodruff decides which inmates are housed together. *See* Dkt. No. 140-10 at 95. Thus, there is no evidence in the record that Defendant Locke played any role in the decision to house Inmate Jordan and Plaintiff together.

In addition, Plaintiff has not offered any admissible evidence in support of his contention that Defendant Locke knew that Inmate Jordan intended to cause Plaintiff harm.[16]

---

[16] Plaintiff claims that Inmate Jordan told him that Defendant Locke stated that Inmate Jordan could "get" Plaintiff, but this vague statement is inadmissible hearsay. *Savarese v. City of New York*, 547 F. Supp. 3d 305, 351-52 (S.D.N.Y. 2021), appeal withdrawn, No. 21-1883, 2022 WL 351054 (2d Cir. Jan. 14, 2022) ("Plaintiff argues that a genuine factual issue exists because [an] unidentified correction officer . . . told [Plaintiff] a couple of hours after his arrival at Central Booking that he would be able to see a judge that night . . . The flaw[] in Plaintiff's argument [is] that the [] statement, purportedly from the unidentified correction officer, is hearsay when taken for the truth on this motion for summary judgment . . . ." (citation omitted)); *Montanez v. Lee*, No. 14-CV-3205, 2019 WL 1409451, at *4 (S.D.N.Y. Mar. 28, 2019) ("Plaintiff's assertion that he was informed by other inmates that Cocuzza and Thorpe referred to him as a snitch meets the classic definition of a hearsay statement."). In addition, Plaintiff claims that the misbehavior report issued to him as a result of Incident 1 was dismissed based on a statement from Defendant Gallagher that Inmate Jordan had assaulted another inmate immediately before being placed in a cell with Plaintiff. Dkt. No. 148 at 17, ¶ 23. Even if the Court were to accept the accuracy of this statement, it does not show that Defendant Locke was aware that Inmate Jordan intended to assault Plaintiff.

18

Indeed, there is no evidence in the record that Plaintiff or Inmate Jordan ever made any statements to Defendant Locke about potential harm resulting from sharing a cell even though, according to Plaintiff, Defendant Locke waited at the cell for roughly five minutes after the two inmates were placed together. *See* Dkt. No. 148 at 15-16. There is also no evidence in the record that Inmate Jordan and Plaintiff had a negative history, or that Plaintiff had a negative history with the "Patria" gang, or his prior cellmate.[17] Moreover, Defendant Locke has declared under penalty of perjury that he did not have any knowledge that Inmate Jordan intended to harm Plaintiff (and did not verbally or physically provoke an assault against Plaintiff). Dkt. No. 140-9, ¶¶ 6-10.

In light of the foregoing, the Court finds that Plaintiff has failed to adduce sufficient evidence from which a reasonable factfinder could conclude that Defendant Locke acted with deliberate indifference to Plaintiff's well-being in allowing him to share a cell with Inmate Jordan. *See, e.g., Smith v. Huggler*, No. 9:20-CV-1435 (GTS/CFH), 2022 WL 18402297, at *6 (N.D.N.Y. Nov. 29, 2022) (explaining that "a failure to protect claim can not to be based on a defendant's knowledge of a 'general risk' of harm to an inmate"), *report and recommendation adopted by* 2023 WL 356205 (N.D.N.Y. Jan. 23, 2023); *House v. City of New York*, No. 18-CV-6693, 2020 WL 6891830, at *16 (S.D.N.Y. Nov. 24, 2020) (noting that a "sparse" communication by an inmate to a corrections official that he does not "feel safe" and would like to move lacks sufficient "details that would give a reasonable officer a non-speculative basis to perceive a serious risk to an inmate's safety"); *Haughton v. Clinton*,

---

[17] Plaintiff states in his declaration that on September 21, 2018, he "refused to volunteer" for placement in a double-bunk cell "due to fear for his safety[.]" *See* Dkt. No. 148 at 15-16, ¶¶ 13, 16, 17. However, Plaintiff has not offered any evidence showing that this "fear" was based on events that occurred while he was housed with another inmate leading up to this date, or any negative history with Inmate Jordan or the "Patria" gang.

No. 15-CV-1160, 2015 WL 9244398 (S.D.N.Y. Dec. 17, 2015) (concluding that an inmate's statement to his jailer that he "feared for his safety" was insufficient, without more, to sustain a deliberate indifference claim); *Fernandez v. New York City Dep't of Correction*, No. 08-CV-4294, 2010 WL 1222017 at *4 (S.D.N.Y. Mar. 29, 2010) (absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks"); *Wilson v. Campbell*, No. 06-CV-175 (GLS/RFT), 2008 WL 902187, at *5 (N.D.N.Y. Mar. 31, 2008) ("A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can been drawn that such inmate's . . . safety is actually at risk."); *Desulma v. City of New York*, No. 98-CV-2078, 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (corrections officer had "no reason to infer the existence of a threat of harm, much less a life-threatening danger," to inmate where there had not been any prior altercations, even where inmate had asked for protective measures).

Accordingly, the Court recommends that the Motion for Summary Judgment be granted with respect to Plaintiff's failure-to-protect claim against Defendant Locke arising out of Incident 1, and that this claim be dismissed.[18]

## B.    Incident 2

Plaintiff alleges that on October 2, 2018, Defendant Fletcher brought Inmate Burton to Plaintiff's cell and Inmate Burton, in the presence of Defendant Fletcher, threatened to beat Plaintiff.  TAC, ¶¶ 16-17.  According to Plaintiff, Defendant Fletcher responded by stating, "I know" and then walking away.  *Id.*, ¶ 17.

Plaintiff further alleges that between 2:00 a.m. and 8:00 a.m. on October 5, 2018,

---

[18]  Because the Court recommends that this claim be dismissed on the merits, the Court declines to address Defendants' alternative argument that the claim was not properly exhausted.

20

Inmate Burton beat him repeatedly. TAC, ¶ 19. According to Plaintiff, Defendant Gollinger observed Inmate Burton beating Plaintiff while conducting rounds between 2:00 a.m. and 5:00 a.m., Defendants Gallagher and Walrath observed Inmate Burton beating Plaintiff when they collected mail at 6:00 a.m., and Defendants Thomas and Gallagher observed Inmate Burton beating Plaintiff when they brought breakfast at 7:30 a.m., yet each of these officials failed to intervene to stop the attack from continuing. *Id.*, ¶¶ 19-21.

Defendants argue that summary judgment for all of the Defendants is appropriate because (1) "Plaintiff suffered no injuries following the cell fight in Incident 2" and therefore he is unable to satisfy the objective component of his claim, and (2) the record fails to show that any of the Defendants acted with the requisite deliberate indifference to Plaintiff's well-being. Dkt. No. 140-1 at 18.

With respect to Defendants' first argument, "[w]hen considering whether an inmate's violence against another inmate is 'sufficiently serious,'" for purposes of analyzing the objective element of a failure-to-protect claim, "'the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm.'" *Sanchez v. City of New York*, No. 18-CV-01259, 2020 WL 5238604, at *6 (S.D.N.Y. Feb. 11, 2020) (quoting *Blake v. Kelly*, No. 12-CV-7245, 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014)), *report and recommendation adopted by* 2020 WL 2094097 (S.D.N.Y. May 1, 2020); *Mazyck v. Keller*, 531 F. Supp. 3d 630, 642 (W.D.N.Y. 2021) (noting with respect to a failure to protect claim that "the objective prong can be satisfied even where no serious physical injury results"). Thus, the fact that the evidence in the record shows that Plaintiff suffered only a 2-centimeter abrasion above his right eye as a result of his altercation with Inmate Burton does not mean that Plaintiff was not exposed to a sufficiently serious risk

21

of harm when Inmate Burton was placed in a cell with him. *See* Dkt. No. 140-17, ¶ 8; 140-17 at 4, 6.

With respect to the subjective element, the Court must analyze Plaintiff's failure-to-protect claim against Defendant Fletcher, which is based on events that occurred before the alleged inmate-on-inmate assault, separately from Plaintiff's failure-to-intervene claims against Defendants Gollinger, Gallagher, Walrath, and Thomas, which are based on events that occurred while the alleged assault was ongoing.

### 1. Defendant Fletcher

Plaintiff testified that on October 2, 2018, Defendant Fletcher "forcefully" brought a "hogtied" Inmate Burton into the "recreation pen" area that adjoined Plaintiff's cell, which was atypical in Plaintiff's experience, and opened the recreation access door for Inmate Burton to enter the cell from outside. Dkt. No. 140-10 at 33-36, 96. Plaintiff further testified that while Defendant Fletcher was present, Inmate Burton threatened "to attack [Plaintiff] when his arms -- or when his injuries go away, or something to that extent[,]" and Defendant Fletcher was aware that Inmate Burton did not wish to be placed in a double-cell, which is why he was "hogtied[.]" *Id.* Plaintiff also alleged in his original complaint and third amended complaint -- both sworn to under penalty of perjury -- that after Inmate Burton threatened to "beat-up" Plaintiff, Defendant Fletcher "laughed and stated[,] 'I know'" and then "walked away." Compl., ¶ 24; TAC, ¶ 17.

When construed in the light most favorable to the non-movant, the foregoing evidence is enough for a reasonable factfinder to conclude that Defendant Fletcher was aware that

Plaintiff faced a risk of harm when Inmate Burton was placed in a cell with him.[19]

Defendants appear to agree with this conclusion, acknowledging in their memorandum of law that there is some evidence in the record that Plaintiff informed Defendant Fletcher on October 2, 2018, that "he may be assaulted" by Inmate Burton.  Dkt. No. 140-1 at 19. According to Defendants, however, evidence that Defendant Fletcher was aware that Plaintiff may be assaulted only establishes, at most, "mere negligence."  *Id.* (citing *Davidson v. O'Lone*, 752 F.2d 817, 829 (3d Cir. 1984) (en banc) *aff'd* 474 U.S. 344 (1986) and later *Murray v. Goord*, 668 F. Supp. 2d 344, 358 (N.D.N.Y. 2009)).

There are two problems with Defendants' argument.  First, construing the evidence in the light most favorable to the non-movant, this is not a situation in which Defendant Fletcher (1) failed to investigate a reported concern over a threat made outside of his presence, as in *Davidson*,[20] or (2) disregarded a threat made by an inmate the day before being placed in a double-bunk cell, which he might not have viewed as serious, as in *Murray*.[21]  Rather, there is evidence in the record before this Court that Defendant Fletcher heard a threat made by Inmate Burton after he was in a cell with Plaintiff, and believed this inmate would follow through with that threat.

---

[19]  According to the applicable New York State Department of Corrections and Community Supervision ("DOCCS") Directive governing double-celling, if an inmate who has been housed in a double-cell for sixty (60) days "does not volunteer to remain in a double-cell, the inmate shall be moved to a single-cell or multiple occupancy housing at either his or her current facility or a new facility."  7 N.Y.C.R.R. § 1701.7(d).  The evidence in the record shows that Plaintiff had already been housed in a cell with another inmate for more than sixty days on the date Inmate Burton was placed in a cell with him.  *See* Dkt. No. 148 at 16, ¶ 16.  There is also evidence in the record that Plaintiff (1) was involved in an altercation with his prior cellmate a few days before Inmate Burton was placed in a cell with him, and (2) refused to leave his cell in an effort to prevent another inmate from being placed in his cell on October 2, 2018.  *See* TAC, ¶ 14; Dkt. No. 148 at 18, ¶¶ 33-38; Dkt. No. 148-1 at 2-3.

[20]  *See Davidson*, 752 F.2d at 819.

[21]  *See Murray*, 668 F. Supp. 2d at 358.

Second, unlike in *Murray*, there is no record evidence before this Court regarding any compatibility assessment undertaken by officials before Inmate Burton was placed in a cell with Plaintiff. *See Murray*, 668 F. Supp. 2d at 359.[22]

In light of these factual differences, the Court finds that questions of fact remain regarding both the objective and subjective elements of Plaintiff's failure-to-protect claim against Defendant Fletcher arising out of Incident 2. *See Nova v. Smith*, No. 9:19-CV-0072 (GTS/TWD), 2022 WL 4389158, at *16-17 (N.D.N.Y. Sept. 1, 2022) ("Plaintiff testified under oath that Willett threatened to kill him shortly after the 9:50 a.m. incident, Smith and Bond witnessed the threat, and that Plaintiff immediately brought his 'personal safety' concerns to the attention of Smith and Bond. . . . Plaintiff also testified that during the 12:40 p.m. incident, Smith and Bond were both 'inside the cell' and they did not intervene or say anything despite Plaintiff's 'plea for help.' . . . On this record, the Court finds there are genuine material issues of fact concerning Bond's personal involvement in the March 1, 2018, 12:40 p.m. incident. Therefore, the Court recommends denying summary judgment to Bond on this ground."), *report and recommendation adopted by* 2022 WL 4379642 (N.D.N.Y. Sept. 22, 2022); *A'Gard v. Locke*, No. 9:14-CV-0613 (GTS/DEP), 2016 WL 8735653, at *6 (N.D.N.Y. June 24, 2016) (recommending summary judgment be granted on qualified immunity grounds with respect to a failure-to-protect claim and denied on the merits where record evidence showed that an inmate who attacked the inmate-plaintiff in a cell initially "refused to allow" the plaintiff to enter the cell, in the presence of the named defendant, and became "hostile[,]" concluding that "reasonable factfinders could disagree as to whether [defendant] notifying his supervisor

---

[22] It does not appear that the plaintiff in *Davidson* was cellmates with the inmate who assaulted him. *See Davidson*, 752 F.2d at 819.

24

of Inmate Heath's conduct but otherwise failing to take any further action to protect plaintiff from impending harm was sufficiently reasonable"), *supplemented by* 2016 WL 11480155 (N.D.N.Y. Aug. 17, 2016), *report and recommendation adopted by* 2016 WL 5137273 (N.D.N.Y. Sept. 21, 2016); *Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *12 (S.D.N.Y. Oct. 23, 2017) ("[T]here is no question that instructing or encouraging other [prisoners] to attack an inmate poses an objectively serious risk of harm."); *Scott v. Warden & Adm'r of Jurisdiction Correction Dep't & Med. Dep't*, No. 08-CV-5729, 2010 WL 3785252, at *6 (S.D.N.Y. Aug. 23, 2010) ("[T]he SAC alleges that C.O. Rebello heard Haastrup threaten Scott and then recklessly released Haastrup from his cell. If C.O. Rebello actually heard the threat and shortly thereafter allowed Haastrup out of his cell, he might have disregarded a substantial risk that Haastrup would injure Scott, which is sufficient to state a federal constitutional claim. Scott therefore has stated a failure-to-protect claim against C.O. Rebello and the Defendants' motion should be denied with respect to this claim.").

Accordingly, the Court recommends that the Motion for Summary Judgment be denied with respect to Plaintiff's failure-to-protect claim against Defendant Fletcher arising out of Incident 2.

### 2.  Defendants Gollinger, Gallagher, Walrath, and Thomas

Plaintiff alleges that between 2:00 a.m. and 8:00 a.m. on October 5, 2018, Inmate Burton beat him repeatedly.  TAC, ¶ 19.  According to Plaintiff, Defendants Gollinger, Gallagher, Walrath, and Thomas each became aware of the alleged assault while it was ongoing when they passed by his cell at various times.

With respect to Defendant Gollinger, Plaintiff testified that this official pointed a flashlight through his cell window while making rounds "during the night[.]"  Dkt. No. 140-10

at 38-39.  With respect to Defendants Gallagher and Walrath, Plaintiff testified that these officials "came and took mail off the door" at "about six o'clock in the morning[.]"  Dkt. No. 140-10 at 40-41.  In addition, Plaintiff alleges that at about 7:30 a.m., Defendants Gallagher and Thomas "brought food to [his] cell, at which time Plaintiff was being attacked by Inmate Burton, yet they failed to intervene."  TAC, ¶ 21.

Insofar as Plaintiff claims that Defendants Gallagher and Thomas witnessed the altercation between Plaintiff and Inmate Burton through the cell window immediately before opening the "cell hatch" to deliver food at approximately 7:30 a.m., Plaintiff concedes that the altercation ended by the time Defendants Gallagher and Thomas opened the "cell hatch[,]" *see* Dkt. No. 148 at 19, ¶ 44, and there is no evidence in the record that Plaintiff and Inmate Burton continued to fight thereafter.  Thus, these officials could not have taken any steps to prevent any of the harm that Plaintiff suffered.  *See, e.g., Williams v. Salvucci*, No. 20-CV-5098, 2022 WL 17586326, at *8 (S.D.N.Y. Dec. 12, 2022) ("Where an inmate-on-inmate 'fight was not of sufficient duration that an officer present as the scene would have had a reasonable opportunity to attempt to prevent the attack from continuing, the plaintiff cannot establish a Section 1983 failure to intervene claim.'" (quoting *Henry v. County of Nassau*, No. 13-CV-7427, 2015 WL 2337393, at *7 (E.D.N.Y. May 13, 2015)).

Furthermore, with respect to the alleged fighting that occurred earlier, Plaintiff concedes in his declaration submitted in opposition to the Motion for Summary Judgment that the altercation between him and Inmate Burton stopped and started at various points between 2:00 a.m. and 6:00 a.m.  *See* Dkt. No. 148 at 19, ¶¶ 41-43 (stating that Inmate Burton "would resume his assault" on Plaintiff during the times that officials passed by his

cell).[23]  While Plaintiff contends in his declaration that he was being assaulted on each occasion that Defendants Gollinger, Gallagher, and Walrath passed or stopped by his cell, he acknowledged in his deposition testimony that he did not see Defendant Gollinger look into his cell, but rather only saw a flashlight, and only knows that Defendants Gallagher and Walrath passed by his cell because mail was retrieved from the slot.  Dkt. No. 140-10 at 40-41.  In addition, Plaintiff has not introduced any record evidence that he requested help on any of the occasions when these officials passed by his cell, and has also not indicated what exactly was witnessed by any of them.  In other words, Plaintiff's belief that Defendants Gollinger, Gallagher, and Walrath were aware that he was involved in an altercation that stopped and started at various points between 2:00 a.m. and 6:00 a.m. is entirely speculative.  Moreover, these officials have sworn under penalty of perjury that they never saw or heard any violence between Plaintiff and Inmate Burton.  *See* Dkt. No. 140-5, ¶ 6; Dkt. No. 140-6, ¶¶ 4-5; Dkt. No. 140-16, ¶ 5.  Thus, Plaintiff has failed to adduce sufficient record evidence from which a reasonable factfinder could conclude that Defendants Gollinger, Gallagher, and Walrath were aware, when they passed by his cell at various points between 2:00 a.m. and 6:00 a.m. on October 5, 2018, that he faced a substantial risk of serious harm.[24]

---

[23]  Plaintiff also testified that Inmate Burton placed mail in the mail slot at some point before it was retrieved at around 6:00 a.m. on October 5, 2018, which belies any suggestion that the altercation was non-stop. *See* Dkt. No. 140-10 at 40-41.

[24]  The lack of evidence indicating that Plaintiff verbally requested help from any corrections officials at any point between 2:00 a.m. and 6:00 a.m., including after he allegedly saw an official's flashlight pointed into his cell, is curious given that (1) there is no evidence in the record that Plaintiff was unable to speak at any point during the alleged assault, (2) these are the same officials that he now claims should have intervened to help him, and (3) he states that he repeatedly "shouted" for help when he was being assaulted at various points by a different cellmate on January 10, 2019, as discussed below.  Plaintiff's deposition testimony is also internally inconsistent in that he testified, on the one hand, that Inmate Wright was assaulting him on each occasion that Defendants Gollinger, Gallagher, and Walrath passed by his cell, and, on the other hand, that he did not see these officials pass by his cell.  *See* Dkt. No. 140-10 at 38-41.  The Court has taken these points into

In light of the foregoing, Plaintiff has failed to offer sufficient evidence from which a rational factfinder could conclude that Defendants Gollinger, Gallagher, Walrath, and Thomas acted with deliberate indifference to his well-being on October 5, 2018.  *See Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."); *Smith v. Rosati*, No. 9:10-CV-1502 (DNH/DEP), 2013 WL 1500422, at *13 (N.D.N.Y. Feb. 20, 2013) ("Because, in the face of defendant Zarnetski's denial, plaintiff's allegations amount to nothing more than his rank speculation that defendant Zarnetski knew or should have known that defendant Rosati would assault plaintiff, I find that no reasonable factfinder could conclude that defendant Zarnetski had a duty to intervene."), *report and recommendation adopted by* 2013 WL 1501022 (N.D.N.Y. Apr. 10, 2013).

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted with respect to Plaintiff's Eighth Amendment claims against Defendants Gollinger, Gallagher, Walrath, and Thomas arising out of Incident 2, and that these claims be dismissed.

### C.    Incident 4

Plaintiff alleges that on the morning of January 8, 2019, he was in a double-bunk cell with Inmate Holbdy, who was not gang affiliated, and encountered Defendant Fletcher, who stated, "I am giving you a new bunky, . . . he will handle you." TAC, ¶ 28.  Plaintiff claims that the next day, Defendants Trombley and St. Mary removed him from his cell "at the

---

consideration in rejecting, as wholly speculative, Plaintiff's contention that Defendants Gollinger, Gallagher, and Walrath each knew that Inmate Burton was assaulting him while the assault was ongoing.  *See Jeffreys*, 426 F.3d at 554-55 ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . .. there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.").

direction of Fletcher," and when he returned, Inmate Wright was present in place of Inmate

Holbdy, having been approved as Plaintiff's cellmate by Defendants Fletcher and Woodruff

even though these officials knew that Inmate Wright was a member of the "Bloods" gang and

Plaintiff "was labeled a snitch by the Bloods[.]" *Id.*, ¶¶ 29-31.

According to Plaintiff, on January 10, 2019, between 9:00 a.m. and 11:00 a.m., Inmate

Wright repeatedly attacked him and "threatened to cut him with a scalpel" if Plaintiff did not

have oral sex with him.  TAC, ¶ 34.  Plaintiff claims that he notified Defendants Healy,

Jeffries, Walrath, and Trombley about the assaults when they made rounds during this time

period, yet each official failed to intervene.  *Id.*, ¶¶ 34-35.  Plaintiff also alleges that at 11:00

a.m., when lunch was served, he prevented the feeding slot to his cell from closing because

Defendants Trombley and St. Mary were ignoring his injuries and requests for medical

treatment, which ultimately triggered sergeant review and his receipt of medical treatment.

*Id.*, ¶¶ 36-37.

Defendants argue that summary judgment is appropriate because the record fails to

show that any of the Defendants acted with the requisite deliberate indifference to Plaintiff's

well-being.  Dkt. No. 140-1 at 23-26.[25]  Defendants also argue that Plaintiff's claim against

Defendant Woodruff arising out of this incident should be dismissed because (1) "[t]he

entirety of the evidence demonstrates that Defendant Woodruff neither knew nor had reason

---

[25]  Defendants also contend that summary judgment is appropriate because Plaintiff participated in the altercation with Inmate Wright, causing him injuries. Dkt. No. 140-1 at 22-23.  However, as Defendants concede, the corrections official who investigated the altercation between Plaintiff and Inmate Wright was unable to determine which inmate was the aggressor in the fight. Dkt. No. 140-12 at 1-12.  Thus, accepting Defendants' argument would amount to accepting a legal proposition that an inmate who may have only defended himself against an attack from another inmate can never succeed on a failure-to-protect claim, which the Court declines to do. *Cf. Louis-Charles v. Courtwright*, No. 9:11-CV-0147 (GLS/TWD), 2014 WL 457951, at *6-7 (N.D.N.Y. Feb. 4, 2014) (recommending summary judgment with respect to a prisoner plaintiff's failure-to-protect claim where "[t]he undisputed evidence shows that [Plaintiff] was the physical aggressor in each of his altercations with other inmates").

to know Plaintiff had allegedly been labeled by any gangs as a snitch[,]" and (2) "[w]ithout

that knowledge, Defendant Woodruff could not have subjective awareness of the risks of

placing Plaintiff in a cell with an alleged member of a particular gang." *Id*. at 17.

### 1. Defendant Woodruff

Plaintiff claims that Defendant Woodruff, as the Deputy Superintendent of Security at

Upstate Correctional Facility, was responsible for placing Inmate Wright in a cell with him.

*See* Dkt. No. 140-10 at 95. Defendant Woodruff does not deny this fact. *See generally*, Dkt.

No. 140-18.

According to Defendant Woodruff, "[a]t all times . . . on or before March 11, 2019[,]

Plaintiff . . . was deemed, per directive, double bunk suitable by DOCCS Headquarters in

Albany." Dkt. No. 140-18, ¶ 4. Once an inmate is deemed eligible for double-cell housing,

the Deputy Superintendent for Security is responsible for cellmate selection. *See generally*,

7 N.Y.C.R.R. § 1701.5(a).[26]  In deciding which inmates to cell together, DOCCS Directives

require the Deputy Superintendent of Security or his designee to perform an "assessment of

compatibility" and consider factors such as physical status (size, age), criminal history, and

known enemies. *See* 7 N.Y.C.R.R. § 1701.5(c), (d), (e); 7 N.Y.C.R.R. § 1701.9.

A SHU Double-Cell Information Sheet was completed upon Plaintiff's arrival to

Upstate Correctional Facility. *See* Dkt. No. 148-1 at 1. The document indicates Plaintiff was

not deemed highly assaultive or victim prone and had no history of same gender sexual

violence. *Id*. However, the box for "extremely violent nature of the instant offense or criminal

history" was checked "yes[,]" and no "override reason" was indicated on the form, as

---

[26]  Inmates who are victim prone, assaultive, have a criminal history that involves a pattern of acts of
violence, as well as those found guilty of engaging in same gender sexual violence while incarcerated will not be
approved for double cell housing. *See* 7 N.Y.C.R.R. § 1701.5(c)(4).

required.  *Id.*

Moreover, there is evidence in the record that in the months leading up to Incident 4, Plaintiff (1) was involved in altercations with two different cellmates, and (2) filed grievances regarding these altercations.  *See, e.g.*, Dkt. No. 140-10; Dkt. No. 148 at 15-21; Dkt. No. 148-1 at 3, 5-7, 23-43.  Plaintiff also claims that he is incarcerated for a crime that makes him vulnerable to an attack.  *See* TAC, ¶ 38.  In addition, Plaintiff alleged in his original complaint that Inmate Wright indicated that he had a history of assaulting other cellmates when he was in a cell with Plaintiff, *see* Compl., ¶ 48, and Plaintiff was not asked about this allegation during his deposition, which was also not challenged by any of the Defendants in any of their declarations in support of the Motion for Summary Judgment.[27]

When construed in the light most favorable to Plaintiff, a reasonable factfinder could conclude from these disputed facts that placing Inmate Wright in a cell with Plaintiff presented a sufficiently serious risk of harm to Plaintiff.  Furthermore, in light of the required compatibility assessment and absence of any record evidence showing that Defendant

---

[27] Defendants argue, without any supporting case law, that Inmate Wright's alleged statement that he "works for Defendant Fletcher . . . by beating up any bunkies he wants" is hearsay, and should not be considered at this stage of the proceeding.  Dkt. No. 140-1 at 9-10.  While it is true that hearsay statements without an applicable exception are typically not considered at the summary judgment stage, *see Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004), it is also true that threats are verbal acts, which are not hearsay. *See, e.g., United States v. Feliz*, 794 F.3d 123, 132 (1st Cir. 2015) (district court erred in excluding as hearsay a witness's testimony of a threat that she heard an officer make to the defendant; threats are verbal acts offered not for truth of matter asserted and are not hearsay); *United States v. Bowles*, 751 F.3d 35, 40 (1st Cir.2014) (words offering a bribe or making a threat are "verbal acts that are not hearsay"); *United States v. Ledford*, 443 F.3d 702, 706 (10th Cir. 2005) (deputy sheriff's testimony that defendant's wife told deputy that the defendant "told her that if she called the cops he would kill her" was not hearsay, because it was not offered for truth of matter asserted and, even if it were hearsay, the statement would be admissible under the "excited utterance exception"); *Tompkins v. Cyr*, 202 F.3d 770, 779 n. 3 (5th Cir. 2000) (threats are verbal acts that are not hearsay); *United States v. Thomas*, 86 F.3d 647, 653 n. 12 (7th Cir. 1996) (same); *United States v. Stratton*, 779 F.2d 820, 830 (2d Cir. 1985) (noting that threats are not hearsay but "verbal acts"), *cert. denied by Stratton v. United States*, 476 U.S. 1162 (1986); *see also United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness rather than for the truth of the matter asserted therein, are not hearsay.").  Thus, in the absence of further briefing by the parties, the Court declines to disregard Inmate Wright's alleged statement for purposes of deciding Defendant Woodruff's entitlement to summary judgment.

Woodruff played no role in any such assessment, a reasonable factfinder could conclude that Defendant Woodruff was aware of, and deliberately indifferent to, this risk.[28]

Accordingly, the Court recommends that the Motion for Summary Judgment be denied with respect to Plaintiff's failure-to-protect claim against Defendant Woodruff arising out of Incident 4. *See, e.g., Sanchez*, 2020 WL 5238604, at *6 ("It is undisputed that Plaintiff was attacked by inmates on four occasions within a five-month period. And Plaintiff has offered evidence that before the fourth attack he repeatedly requested to be placed in protective custody. At his deposition, Plaintiff testified that following each attack, he requested to be transferred to protective custody. . . . Thus, on these disputed facts, a reasonable jury could conclude that Plaintiff was incarcerated under conditions posing a serious harm [even though he did not have a prior history with his attacker]."), *report and recommendation adopted by* 2020 WL 2094097 (S.D.N.Y. May 1, 2020); *Hill v. McGrath*, No. 9:18-CV-1203 (DNH/TWD), 2021 WL 4255040, at *4 (N.D.N.Y. Aug. 10, 2021) (holding that lack of evidence of a prior adverse history with a cellmate or request for placement in protective custody were not grounds for dismissing failure-to-protect claim where record evidence showed that the plaintiff had been "subjected to prior threats and attacks" by other inmates), *report and recommendation adopted by* 2021 WL 4243420 (N.D.N.Y. Sept. 17, 2021); *Heisler v. Kralik*, 981 F. Supp. 830, 838 (S.D.N.Y. 1997) ("The danger to Heisler stemmed from the nature of the crime he had committed and the likelihood of how any inmate population would react to

---

[28]  There is no evidence before the Court regarding (1) why Plaintiff was assigned a new cellmate despite not having conflict with Inmate Holbdy, or (2) any compatibility assessment conducted before Inmate Wright became Plaintiff's cellmate.  The lack of evidence regarding a compatibility assessment is particularly problematic because any such assessment presumably would have shown that the very issues that Plaintiff now contends presented a foreseeable risk of harm -- i.e., Inmate Wright's alleged history of violence against other inmates, gang membership, and Plaintiff's negative history with gang members -- were investigated and deemed unfounded and/or not sufficient to present a safety concern.

knowledge of that crime. There is nothing to suggest that the defendants had a basis to believe that the inmates in RCCC were indifferent to these matters. In any event, these are issues of fact properly decided at trial."), *aff'd sub nom. Heisler v. Rockland Cnty*., 164 F.3d 618 (2d Cir. 1998).

### 2. Defendant Fletcher

As with Defendant Woodruff, there is evidence in the record from which a reasonable factfinder could conclude that Defendant Fletcher was aware that (1) Plaintiff was involved in altercations with cellmates prior to January 8, 2019, and (2) Inmate Wright had a history of assaulting other inmates. Dkt. No. 140-10 at 74-79; TAC, ¶¶ 28-32, 38; Dkt. No. 148 at 20-21, ¶¶ 52-53, 55. There is also evidence in the record that Defendant Fletcher (1) threatened to subject Plaintiff to harm before January 8, 2019, and (2) threatened to provide Plaintiff with a new cellmate to "handle" him on January 8, 2019. TAC, ¶¶ 17, 28-32; Dkt. No. 148 at 20-21, ¶¶ 52-53; Dkt. No. 140-10 at 74-77.

Construed in the light most favorable to the non-movant, the aforementioned evidence is enough for a reasonable factfinder to could conclude that Plaintiff faced a sufficiently serious risk of harm when Inmate Wright was placed in a cell with him, to which Defendant Fletcher was deliberately indifferent. *See Montero v. Crusie*, 153 F. Supp. 2d 368, 377 (S.D.N.Y. 2001) (denying summary judgment on failure to protect claim where record evidence showed that correction officers encouraged another inmate to attack the plaintiff, even though that inmate never actually assaulted the plaintiff).

Accordingly, the Court recommends that the Motion for Summary Judgment be denied with respect to Plaintiff's failure-to-protect claim against Defendant Fletcher arising out of Incident 4.

### 3. Defendants Trombley and St. Mary

#### i. January 9, 2019

According to Plaintiff, on January 9, 2019, Defendants Trombley and St. Mary removed him from his cell "at the direction of [ ] Fletcher," and when he returned to his cell, Inmate Wright was present in place of Inmate Holbdy, having been approved as Plaintiff's cellmate by Defendants Fletcher and Woodruff.  TAC, ¶¶ 29-31; *see also* Dkt. No. 148 at 21, ¶ 55.  There is no evidence in the record that Defendants Trombley and St. Mary (1) were responsible for the cell reassignment, (2) were aware that Plaintiff was vulnerable to an attack from another inmate, (3) were aware that Inmate Wright had a history of violence, or (4) witnessed or heard Inmate Wright threaten Plaintiff with harm.  Thus, the Court recommends that Defendants' Motion for Summary Judgment be granted insofar as Plaintiff's Eighth Amendment claim against these officials is based on wrongdoing that occurred on January 9, 2019.

#### ii. January 10, 2019

Plaintiff testified that at approximately 8:15 a.m. on January 10, 2019, Defendants Trombley and St. Mary removed him from his cell for a search and thereafter witnessed Inmate Wright attack him.  *See* Dkt. No. 140-10 at 56-57.  Plaintiff offered a similar statement in his declaration.  Dkt. No. 148 at 21, ¶¶ 57-58.  Plaintiff, however, did not identify any such wrongdoing in his complaint, before he was deposed.  *See generally*, Compl.  Nor did Plaintiff include this claim in any of his subsequent pleadings *after he was deposed*.  *See generally*, Am. Compl.; SAC; TAC.  Indeed, the only wrongdoing identified in any of Plaintiff's pleadings with respect to Defendant St. Mary is that this official (1) assisted with placing Inmate Wright in a cell with Plaintiff on January 9, 2019, and (2) ignored Plaintiff's injuries

34

and requests for medical treatment after the altercation between Plaintiff and Inmate Wright concluded on January 10, 2019. *See generally*, Compl.; Am. Compl.; SAC; TAC.

In light of the foregoing, insofar as Plaintiff asserts in his Opposition to the Motion for Summary Judgment that Defendants St. Mary and Trombley witnessed him being assaulted sometime before 9:00 a.m. on January 10, 2019, this is a new claim that is not properly before this Court. *See Lyman v. CSX Transp., Inc*., 364 Fed. App'x 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." (citation omitted)); *Abdul-Matiyn v. Allen*, No. 9:06-CV-1503 GTS/DRH, 2010 WL 3880510, at *4 n.9 (N.D.N.Y. Sept. 28, 2010) (collecting cases that stand for the same proposition); *Thomas v. Egan*, 1 Fed. App'x 52, 54 (2d Cir. 2001) ("Thomas' retaliation claim was raised for the first time in her opposition papers to defendants' motion for summary judgment. A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim."); *Warren v. Ewanciw*, No. 7:15-CV-8423, 2019 WL 589488, at *8 n.17 (S.D.N.Y. Feb. 13, 2019) ("To the extent Plaintiff seeks to bring a separate failure-to-intervene claim against Lieutenant Ewanciw, the Court cannot consider it because he did not plead this claim in his Complaint."); *Jackson v. Onondaga Cnty*., 549 F. Supp. 2d 204, 219-20 (N.D.N.Y. 2008) (finding, where the plaintiff included in his memorandum of law in opposition to defendants' motion for summary judgment "several factual allegations fleshing out, somewhat, the allegations contained in the Complaint[,]" that "it would be inappropriate to consider [Plaintiff's] four new factual allegations" because "(1) the four new allegations are almost entirely inconsistent with the allegations of his Complaint (which is conspicuously silent as to the new facts); and (2) the four new allegations are not made in response to a motion to dismiss . . . but in response to a motion for summary

judgment").[29]  Accordingly, the Court recommends dismissal of any intended Eighth

Amendment claim against Defendants Trombley and St. Mary based on these officials failing

to intervene in an altercation between Plaintiff and Inmate Wright at approximately 8:15 a.m.

on January 10, 2019.

Aside from the aforementioned event, Plaintiff has introduced evidence with respect to

Defendants Trombley and St. Mary showing that (1) Defendant Trombley was on rounds

while Plaintiff was involved in an altercation with Inmate Wright between 9:00 a.m. and 11:00

a.m., and walked past Plaintiff's cell while ignoring his "shout[s]" for "emergency medical[,]"

Dkt. No. 148 at 22, ¶ 63, and (2) Defendants Trombley and St. Mary disregarded Plaintiff's

"explicit request for emergency medical" when they delivered lunch, after the altercation

stopped, Dkt. No. 148 at 22, ¶ 64.

Insofar as Plaintiff's Eighth Amendment claim against Defendant Trombley is based

on this official ignoring his requests for assistance while an altercation with Inmate Wright

was ongoing, the Court recommends that Defendants' Motion for Summary Judgment be

denied.  *See, e.g., Morales v. New York State Dep't of Corr*., 842 F.2d 27, 30 (2d Cir. 1988)

("An inmate's claim based on negligence, however, 'is quite different from one involving

injuries caused by another prisoner where officials simply stood by and permitted the attack

to proceed.'" (alteration omitted) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986));

---

[29]  Plaintiff's grievance regarding Incident 4 states that he was first attacked by Inmate Wright between 9:00 and 9:30 a.m., after Plaintiff returned to his cell from a search, and does not identify any officials as having witnessed this initial attack, or identify Defendant St. Mary as one of the officials aware of Plaintiff's requests for help while the attack was ongoing.  *See* Dkt. No. 148-1 at 8-9.  Thus, it also appears that this claim was not properly exhausted.  *See, e.g., Bailey v. Weckesser*, No. 18-CV-06292, 2020 WL 1333451, at *6 (W.D.N.Y. Mar. 23, 2020) (finding, where a grievance did "not hint at the fact that more than one correction officer" was involved in the incident giving rise to the plaintiff's claim, it failed to "'provide enough information . . . to allow prison officials to take appropriate responsive measures'" (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

*Smith v. Huggler*, No. 9:20-CV-1435 (GTS/CFH), 2022 WL 18402297, at *5 (N.D.N.Y. Nov. 29, 2022) ("As the issue of whether Defendants had a reasonable opportunity to intervene, and failed to do so must be resolved by the jury, summary judgment on the issue of whether Defendants' 'inaction rose to the level of deliberate indifference' is not appropriate." (quoting *Rosen v. City of New York*, 667 F. Supp. 2d 355, 361 (S.D.N.Y. 2009)), *report and recommendation adopted by* 2023 WL 356205 (N.D.N.Y. Jan. 23, 2023).

Insofar as Plaintiff's Eighth Amendment claim against Defendants Trombley and St. Mary is based on these officials initially disregarding Plaintiff's requests for medical aid after the altercation concluded, the failure to act more diligently after an inmate-on-inmate assault has concluded cannot give rise to an Eighth Amendment claim under a failure-to-intervene theory of liability. *See, e.g., Williams*, 2022 WL 17586326, at *8. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted with respect to Plaintiff's Eighth Amendment claims against Defendants Trombley and St. Mary arising out of their conduct after the altercation between Plaintiff and Inmate Wright concluded.

### 4. Defendants Healy, Jeffries, and Walrath

With respect to Defendants Healy, Jeffries, and Walrath, Plaintiff has introduced evidence showing that each of these officials was on rounds while he was involved in an altercation with Inmate Wright between 9:00 a.m. and 11:00 a.m., and walked past Plaintiff's cell while ignoring his requests for "emergency medical[.]" Dkt. No. 148 at 22, ¶¶ 59-62. Such evidence, construed in the light most favorable to the non-movant, is enough for a reasonable factfinder to conclude that these officials acted with deliberate indifference to an ongoing risk of serious harm that Plaintiff faced. *See Rosen*, 667 F. Supp. 2d at 359-60 ("In the context of a failure to intervene claim, '[a]n officer displays deliberate indifference when

37

he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene.'" (quoting *Baker v. Tarascio*, No. 3:05-CV-548, 2009 WL 581608, at *4 (D.Conn. Mar. 6, 2009)).

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be denied with respect to Plaintiff's Eighth Amendment claims against Defendants Healy, Jeffries, and Walrath arising out of Incident 4.

### D.    Incident 7

Plaintiff alleges that on March 11, 2019, at approximately 8:30 p.m., Defendant Fletcher directed officers to bring Inmate Cobb into Plaintiff's cell.  TAC, ¶ 40.  According to Plaintiff, Defendants Fletcher and Woodruff approved Inmate Cobb's placement in the cell even though they knew Inmate Cobb was a member of the "Bloods" gang and Plaintiff had been "labeled a snitch by the Bloods and . . . requested protective custody[.]"  *Id*., ¶ 41.

Plaintiff alleges that after Inmate Cobb was in the cell, he informed Plaintiff that "he has agreed to work for [Defendant] Fletcher for extra food and when he get[s] his sneaker[s] from state shop the ball will start rolling."  TAC, ¶ 42.  Two days later, Inmate Cobb allegedly "threatened to cut Plaintiff with his weapon if Plaintiff did not turn around and pull down his pants[,]" and Inmate Cobb then sexually assaulted Plaintiff in the cell for the first time.  *Id*., ¶ 43.  According to Plaintiff, Inmate Cobb also sexually assaulted him two more times the next day.  *Id*., ¶¶ 44-45.

Defendants argue that summary judgment for Defendants Woodruff and Fletcher is appropriate because the record fails to show that either of these officials acted with the requisite deliberate indifference to Plaintiff's well-being.  Dkt. No. 140-1 at 26-27.

According to Plaintiff, Defendant Woodruff was responsible for placing Inmate Cobb in

a cell with him, and Defendant Fletcher played a role in recommending which inmates should be housed together, as well as the timing of Inmate Cobb's placement in the cell with Plaintiff. *See* Dkt. No. 140-10 at 86-87, 92, 95. Defendants Woodruff and Fletcher do not deny these facts. *See* Dkt. No. 140-18; Dkt. No. 140-4. Nor do either of them deny Plaintiff's claim that Inmate Cobb was a member of the Bloods gang. *See* Dkt. No. 140-18; Dkt. No. 140-4.

There is also evidence in the record that in the months leading up to Incident 7, the following occurred: (1) Plaintiff was assaulted by three different cellmates; (2) Plaintiff filed grievances regarding these assaults; (3) Plaintiff requested placement in protective custody; (4) Defendant Fletcher threatened Plaintiff with harm and displayed indifference to a threat of harm that he observed; and (5) the DOCCS Office of Special Investigation interviewed Plaintiff regarding Incident 4, which was known to Defendants Fletcher and Woodruff. Dkt. No. 148-1 at 3, 5-10, 15-17, 23-43; TAC at 2-4; Dkt. No. 148 at 20-25, ¶¶ 52-53, 68-71; Dkt. No. 140-10 at 70-73. Furthermore, as with Incident 4, there is no evidence in the record regarding any compatibility assessment that may or may not have been performed before Plaintiff and Inmate Cobb were celled together.

In light of the aforementioned record, the Court finds that questions of fact remain regarding both the objective and subjective elements of Plaintiff's Eighth Amendment claims against Defendants Fletcher and Woodruff arising out of Incident 7. Accordingly, the Court recommends that the Motion for Summary Judgment be denied with respect to Plaintiff's failure-to-protect claims against Defendants Woodruff and Fletcher arising out of Incident 7.

## VII.    CONCLUSION

**WHEREFORE**, it is hereby

39

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 140) be **GRANTED in part** and **DENIED in part** as follows: (1) granted insofar as it seeks dismissal of Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Locke arising out of Incident 1; (2) granted insofar as it seeks dismissal of Plaintiff's Eighth Amendment failure-to-intervene claims against Defendants Gollinger, Gallagher, Walrath, and Thomas arising out of Incident 2; (3) granted insofar as it seeks dismissal of any Eighth Amendment failure-to-intervene claim asserted against Defendants St. Mary and Trombley based on alleged events that occurred before 9:00 a.m., or after the alleged inmate-on-inmate assault concluded, on January 10, 2019; and (4) denied in all other respects; and it is further

**RECOMMENDED** that Defendants Locke, Gollinger, Gallagher, Thomas, and St. Mary be **TERMINATED** as parties to this action; and it is further

**ORDERED** that the Clerk provide Plaintiffs with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[30]  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

---

[30]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

40

636(b)(1); Fed. R. Civ. P. 72.

Dated:      February 23, 2023
             Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge

41