UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAY BRADSHAW,

                      Plaintiffs,                9:19-cv-428 (BKS/TWD)

v.

PAUL FLETCHER, PAUL WOODRUFF, MICHAEL
TROMBLEY, JAMES HEALY, JEFFRIES,[1] and
JOSHUA WALRATH,

                      Defendants.

**Appearances:**

*Plaintiff pro se:*
Jay Bradshaw
DIN: 08-A-3654
Upstate Correctional Facility
P.O. Box 2000
Malone, New York 12953

*For Defendants:*
Letitia A. James
Attorney General of the State of New York
Matthew J. Gallagher
Thomas Cullen
Assistant Attorney Generals, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       This action arises from alleged constitutional violations that occurred during Plaintiff Jay Bradshaw's incarceration at Upstate Correctional Facility ("Upstate"). The case is set for trial on

---

[1] Defendants refer to this defendant as "Darrin Jeffrey" in their trial brief. (Dkt. No. 208, at 3).

January 22, 2024, on Plaintiff's Eighth Amendment: (1) failure to protect claims against Defendants Sergeant Paul Fletcher and Deputy Superintendent Paul Woodruff; and (2) failure to intervene claims against Defendant Correction Officers Michael Trombley, James Healey, Darrin Jeffrey, and Joshua Walrath.

Presently before the Court are the parties' motions in limine and responses. (Dkt. Nos. 201, 210, 213, 214).[2] Plaintiff moves to (1) preclude evidence of his criminal convictions, length of sentence, and prison record, or in the alternative, limit such evidence to the fact that Plaintiff is a convicted felon; and (2) permit Plaintiff to appear in the courtroom without shackles or restraints in front of the jury and to wear civilian clothing at trial.[3] (Dkt. Nos. 201, 201-1). Defendants move to (1) admit evidence of Plaintiff's criminal convictions for purposes of impeachment; (2) preclude evidence or argument that Defendants or the Department of Corrections and Community Supervision ("DOCCS") are involved in a conspiracy in relation to Plaintiff's claims; (3) preclude the admission of various inmate statements as hearsay; (4) preclude the admission of certain medical impressions and diagnoses where the diagnosing physician does not testify; (4) preclude evidence regarding Defendants' disciplinary histories, personnel files, or other lawsuits; (5) preclude evidence regarding the potential indemnification of Defendants; and (6) preclude Plaintiff from suggesting a particular sum as compensation for non-economic damages during his closing statements. (Dkt. No. 210). The Court heard oral argument on the parties' motions at the final pretrial conference on January 8, 2024. For the following reasons, the parties' motions are granted in part and denied in part.

---

[2] Plaintiff's motion in limine (Dkt. No. 201), and response to Defendant's motion in limine (Dkt. No. 214) were filed by pro bono counsel. Plaintiff subsequently decided to proceed pro se. (*See* Dkt. No. 217).

[3] Plaintiff raised two other evidentiary issues in a subsequent pro se filing. (Dkt. No. 222). The Court has provided Defendants with an opportunity to respond in writing.

2

## II.     DISCUSSION

### A.     Plaintiff's Motion in Limine

#### 1.     Plaintiff's Criminal Convictions

Plaintiff moves to preclude the admission of his "criminal convictions [and] length of sentence, or in the alternative, to limit any such evidence to the fact that Plaintiff is a convicted felon." (Dkt. No. 201, at 1). Plaintiff argues that his prior convictions have limited probative value to assess his credibility and would be distracting and unduly prejudicial. (Dkt. No. 201-1, at 5–7). Defendants correspondingly move to admit into evidence Plaintiff's criminal convictions for purposes of impeachment under Rule 609(a)(1) of the Federal Rules of Evidence, arguing that the criminal convictions are probative of the Plaintiff's credibility which is "imperative in deciding this case." (Dkt. No. 210 at 5–8).

Plaintiff was convicted in 2010 of burglary in the first degree, rape in the first degree, aggravated sexual abuse in the fourth degree, criminal sexual act in the first degree, and robbery in the first degree and received a 25-year sentence. (Dkt. No. 201-1, at 4; Dkt. No. 210, at 7; *see also* Dkt. No. 210-1, at 3–4). Plaintiff was also convicted in 2016 for criminal sexual act in the first degree and received a 10-year sentence. (Dkt. No. 201-1, at 4; Dkt. No. 210, at 7; *see also* Dkt. No. 210-1, at 3–4).

Rule 609(a)(1) of the Federal Rules of Evidence provides that, in a civil case, "subject to Rule 403," evidence of a prior criminal conviction "must be admitted" to impeach a witness where the conviction was "for a crime that . . . was punishable . . . by imprisonment for more than one year." Fed. R. Evid. 609(a)(1)(A). "The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

3

time, or needless presentation of cumulative evidence.'" *United States v. Estrada*, 430 F.3d 606, 620–21 (2d Cir. 2005) (quoting Fed. R. Evid. 403). Rule 609(a)(2) provides that, "for any crime regardless of the punishment," evidence of a criminal conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Unlike Rule 609(a)(1), Rule 609(a)(2) does not require a balancing under Rule 403: "evidence of conviction of a certain type of crime[,] one involving dishonesty o[r] false statement[,] must be admitted, with the trial court having no discretion." *United States v. Bumagin*, 136 F. Supp. 3d 361, 375 (E.D.N.Y. 2015) (first and third alterations in original) (quoting *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977)).

The applicability of Rule 609(a) is, however, limited by Rule 609(b), which provides that "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," then "[e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

As an initial matter, Plaintiff was sentenced to a term greater than one year and is still incarcerated for the convictions at issue. (Dkt. No. 201-1, at 4; Dkt. No. 210, at 7; *see also* Dkt. No. 210-1, at 3–4). Accordingly, Rule 609(a), rather than Rule 609(b), applies. *See* Fed R. Evid. 609. Furthermore, Plaintiff is convicted of theft and sex crimes (*see* Dkt. No. 201-1, at 4; Dkt. No. 210, at 7), which are not crimes that require a dishonest or false statement as encompassed under Rule 609(a)(2). *See Hayes*, 553 F.2d at 827. Therefore, Rule 609(a)(2) is inapplicable and Rule 609(a)(1) applies. *See* Fed. R. Evid. 609. Thus, for each conviction, the Court must balance the probative value of introducing evidence of Plaintiff's conviction against its prejudicial effect

4

under Rule 403. *See Brandon v. Kinter*, No. 13-cv-00939, 2021 WL 3032693, at *2, 2021 U.S. Dist. LEXIS 133484, at *3–4 (N.D.N.Y. July 19, 2021); *see also Estrada*, 430 F.3d at 615–16.

"In balancing probative value against prejudicial effect under Rule 609, courts examine: '(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.'" *Starmel v. Tompkin*, 634 F. Supp. 3d 41, 45 (N.D.N.Y. 2011) (quoting *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)). "Although all of these factors are relevant, prime among them is the first factor, i.e., whether the crime, by its nature, is probative of a lack of veracity." *Id.* (internal quotation marks omitted) (quoting *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009)).

"Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," although "all Rule 609(a)(1) felonies are not equally probative of credibility." *Estrada*, 430 F.3d at 617. Crimes of violence are not, in general, particularly probative as to honesty or veracity. *See id.* at 617–18 (approving of view that convictions for violent or assaultive crimes are generally less probative of credibility). Crimes of sexual violence similarly lack probative value as to honesty or veracity. *See Thomas v. Leifeld*, No. 13-cv-321, 2018 WL 3387690, at *2, 2018 U.S. Dist. LEXIS 116008, at *5 (N.D.N.Y. July 12, 2018) ("[C]onvictions for Rape in the First Degree, Attempted Rape in the First Degree, Sexual Abuse in the First Degree, [and] Sexual Abuse in the Second Degree . . . are not particularly probative as to honesty and veracity."); *see also Maize v. Nassau Health Care Corp.*, No. 05-cv-4920, 2012 WL 139261, at *3, 2012 U.S. Dist. LEXIS 37058, at *7–8 (E.D.N.Y. Jan. 18, 2012) ("[A] conviction for rape [is] not highly probative of credibility." (second alteration in original) (quoting *Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir. 1985))). However, "theft crimes,

and other crimes involving stealth . . . bear on a witness's propensity to testify truthfully." *Estrada*, 430 F.3d at 621. And "crimes requiring planning or preparation bear more strongly on veracity than violence alone suggests because planning indicates deliberate and injurious violation of basic standards rather than impulse or anger, and usually it involves some element of deceiving the victim." *Id.* at 618 (quotation omitted). Thus, the Court concludes that Plaintiff's convictions for rape, aggravated sexual abuse, and criminal sexual act are of less probative value and that Plaintiff's burglary and robbery convictions are at least somewhat probative of Plaintiff's honesty.

The Court notes that Plaintiff's 2010 convictions are relatively remote in time—they occurred over thirteen years ago—and are therefore of lesser probative value than would be more recent convictions. *See Twitty v. Ashcroft*, No. 04-cv-410, 2010 WL 1677757, at *2, 2010 U.S. Dist. LEXIS 40499, at *6 (D. Conn. Apr. 23, 2010) ("[T]he 'probative value of a conviction decreases as its age increases.'" (quoting 4 Weinstein's Federal Evidence § 609.05(3)(d) at 609–41 (2d ed. 2010))). While Plaintiff's 2016 conviction may be of more probative value than the 2010 convictions, at more than seven-years old, it is "neither so old as to decrease its probative value nor so new as to increase its probative value." *See Brown*, 606 F. Supp. 2d at 320.

On the other hand, the fact that Plaintiff's convictions do not bear similarity to the conduct at issue in this case generally weighs in favor of admission. *See Thomas*, 2018 WL 3387690, at *3, 2018 U.S. Dist. LEXIS 116008, at *5–6; *see also Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1471180, at *5, 2009 U.S. Dist. LEXIS 43334, at *13 (E.D.N.Y. May 21, 2009) ("The less similar the pending case to the prior conviction, the less prejudicial its admission is." (citing *Hayes*, 553 F.2d at 828)). And because the Plaintiff's version of the events differs dramatically from the Defendants' version of the events, (*see generally* Dkt. No. 198, Dkt. No.

6

208), Plaintiff's credibility will have to be assessed against the credibility of the Defendants. Plaintiff's character for veracity is therefore a central issue in this case, and the existence of prior felony convictions is probative of his credibility. *See Crenshaw v. Herbert*, 409 F. App'x 428, 431–32 (2d Cir. 2011) (summary order) (finding no abuse of discretion in admitting evidence of a prior conviction in a § 1983 case because "[e]vidence of [the plaintiff's prior conviction] was probative of his veracity, a central issue in this case because the jury was required to choose between two contradictory versions of the underlying incident" (internal citation omitted)).

As to prejudicial effect, the jury will know by the nature of his claim against correctional officers that Plaintiff was convicted of a crime and was serving a prison sentence, which limits the prejudicial effect of introducing the fact that Plaintiff has prior convictions. *See Espinosa v. McCabe*, No. 10-cv-497, 2014 WL 988832, at *6, 2014 U.S. Dist. LEXIS 31741, at *16 (N.D.N.Y. 2014). But the introduction of Plaintiff's convictions for rape, aggravated sexual abuse, and criminal sexual act in particular "has the possibility of 'inflam[ing] the jurors' prejudice against [Plaintiff], their . . . emotional response to an event otherwise factually unconnected to his testimony or the facts of the case eclipsing whatever veracity he may otherwise have had in their eyes.'" *See Maize*, 2012 WL 139261, at *3, 2012 U.S. Dist. LEXIS 37058, at *9 (quoting *United States v. Devery*, 935 F. Supp. 393, 408 (S.D.N.Y. 1996)).

Therefore, having weighed the relevant factors, the Court finds evidence of Plaintiff's 2010 convictions for burglary in the first degree and robbery in the first degree is admissible to impeach Plaintiff. But Defendants may only inquire into the "the 'essential facts' of [the] convictions"—that is, "the statutory name of each offense, the date of conviction, and the sentence imposed." *Estrada*, 430 F.3d at 615. Plaintiff's convictions for rape in the first degree, aggravated sexual abuse in the fourth degree, and criminal sexual act in the first degree are not

admissible to impeach Plaintiff because the probative value of evidence of these convictions is substantially outweighed by the danger of unfair prejudice.

### 2. Plaintiff's Disciplinary Record

Plaintiff seeks to exclude his prison disciplinary record (Dkt. No. 201), contending that the record is not relevant to any issue in the case and would be outweighed by the evidence's prejudicial effect (Dkt. No. 201-1, at 7). Defendants state they "do not intend to offer evidence of Plaintiff's disciplinary history at trial except for discipline arising out of the October 5, 2018 and January 10, 2019 incidents," as this disciplinary history is relevant to determine "what actually happened on those dates." (Dkt. No. 213). Plaintiff was issued an Inmate Misbehavior Report for fighting with his cellmate on both October 5 and January 10, and each time he was found guilty on the charge of fighting following a disciplinary hearing. (*See* Dkt. No. 208, at 4–5). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such usually inadmissible evidence "may be admissible for another purpose." Fed. R. Evid. 404(b)(2). Here, Defendants seek to introduce Plaintiff's disciplinary history to explain the events arising out of the incidents that occurred on those dates. Defendants argue that these events are directly in dispute and relevant to whether Defendants are liable for the claims asserted. (*See* Dkt. No. 198, at 5–6 ; Dkt. No. 208, at 3–5).

While the fact that Plaintiff was charged with fighting on the specific dates in question is relevant to explain the events of the two days in question, the resolution of those charges – the Plaintiff's disciplinary convictions for fighting – has little, if any probative value, as to the issues the jury must decide: whether the corrections officers failed to intervene and whether the supervisory officers were deliberately indifferent to a substantial risk of harm in placing inmates in Plaintiff's cell. Introduction of the disciplinary convictions would create a risk of unfairly

prejudicing the Plaintiff and confusing the issues before the jury. *See* Rule Fed. R. Evid. 403. The Court finds that any probative value of the disciplinary convictions is substantially outweighed by the danger of unfair prejudice and confusion of issues and that the disciplinary convictions are not therefore admissible.

### 3. Civilian Clothing and Restraints

Plaintiff seeks permission to appear in civilian clothing during trial and to be free of shackles and restraints. (Dkt. No. 201-1, at 8). Defendants do not take a position on these requests. (Dkt. No. 13). Plaintiff's request to wear civilian clothing is granted. *See Brisman v. Volpe*, No. 15-cv-466, 2018 WL 3691236, at *4, 2018 U.S. Dist. LEXIS 130518, at *8–9 (N.D.N.Y. Aug. 3, 2018), and the Court will address the issue of restraints on the morning of trial after talking to the officers responsible for bringing Plaintiff to Court.

### B. Defendants' Motion in Limine

#### 1. Hearsay Statements Made by Other Inmates

##### a. Inmate Burton's Statement

Arguing it is inadmissible hearsay, Defendants seek to preclude Plaintiff from testifying that when Defendant Fletcher placed Inmate Burton in Plaintiff's cell as a cellmate on October 2, 2018, Inmate Burton threatened to assault Plaintiff when "his arms got better." (Dkt. No. 210, at 11). Plaintiff responds that Inmate Burton's statement is admissible under Rule 803(3), the "state of mind" exception to the hearsay rule. (Dkt. No. 214, at 8). Rule 803(3) provides that: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" is "not excluded by the rule against hearsay." Fed. R. Evid. 803(3); *see also United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds." (citing Fed. R. Evid. 803(3)). As it appears that the statement reflects Inmate Burton's "then-existing state of mind"—his intent to

9

attack Plaintiff—it would be admissible under Rule 803(3). *See also United States v. Lea*, 131 F. App'x 320, 321 (2d Cir. 2005) (summary order) (finding testimony sought to be admitted that lower court excluded as hearsay "constituted statements of [defendant's] intent to undertake a certain act in the future-namely, to seek repayment of a debt from" another individual and should have been admitted under Rule 803(3)).

### b. Testimony that Plaintiff is Known as "Snitch"

Defendants ask this Court to prevent Plaintiff from testifying that the Bloods gang labeled Plaintiff a snitch, claiming this too is hearsay. (Dkt. No. 210, at 11–12). Plaintiff responds that his testimony regarding statements by others that the Bloods had labeled him a snitch is admissible under Rule 803(3), arguing that "a declarant's state of mind includes motive." (Dkt. No. 214, at 9 ("Being a 'snitch' distinguished the Plaintiff from other inmates and provided gang members with motivation to harass and assault him.")). The Court disagrees. Plaintiff's proffered testimony that he had been told by a Blood (or overheard it being said) that the Bloods had labeled him a snitch, is a factual assertion offered for the truth of the matter asserted, not a statement of the declarant's motive or intent. *See* Fed. R. Evid 803(3); *see also, e.g.*, *United States v. Dawkins*, 999 F.3d 767, 790 (2d Cir. 2021) (upholding lower court's exclusion of hearsay statement finding declarant's "statement regarding his relationship with [management company] was an assertion of fact—that is, an archetypal hearsay statement—not a statement of motive or intent" within the meaning of 803(3)).

However, Plaintiff also asserts that he told a Sergeant, upon admission to Upstate, that he had been labeled a snitch by gangs. That testimony would be admissible for its effect on the listener, not for its truth. *See United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("[A]

10

statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice." (citing *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990))).

### c. Inmate Wright's Statement

Defendants seek to preclude Plaintiff from testifying that on January 9, 2019, Inmate Wright "told Plaintiff that he worked for Sgt. Fletcher to get extra food," on the basis that Inmate Wright's statement is hearsay. (Dkt. No. 210, at 12). According to his trial brief, Plaintiff intends to testify that on January 9, 2019, Defendants Fletcher and Woodruff placed Wright in Plaintiff's cell, and that shortly after they met, Wright told Plaintiff that "he work[ed] for Defendant Fletcher to get extra [food] trays by beating up any bunkies he wants and do[es] not get in trouble for it." (Dkt. No. 198, at 5–6, 10). In response to Defendants' objection, Plaintiff contends that this statement is admissible as an exception to the hearsay rule under Rule 803(3). (Dkt. No. 214, at 9).

The Court disagrees. To be admissible under 803(3), a statement must be "a statement of what [the declarant] was thinking in the present." *United States v. Lawal*, 736 F.2d 5, 8 (2d Cir. 1984) (quoting *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984)). "In order for a statement to qualify for the benefits of Rule 803(3), it must 'face forward, rather than backward.'" *Broga v. Ne. Utilities*, 315 F. Supp. 2d 212, 218 (D. Conn. 2004) (quoting *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir.1993)). Statements of what the declarant "or someone else had done in the past [are] properly excludable as inadmissible hearsay not within the terms of Rule 803(3)." *Lawal*, 736 F.2d at 8. Here, Wright's statement is an assertion of fact regarding his relationship with Fletcher – not a statement of Wright's "then-existing state of

11

mind (such as motive, intent, or plan)" within Fed. R. Evid. 803(3). *See*, *e.g.*, *Dawkins*, 999 F.3d at 790. The Court therefore finds this alleged statement by Wright to be inadmissible hearsay.

### d. Other Inmates' Statements Regarding Inmate Wright

Defendants look to preclude Plaintiff from testifying "that another incarcerated individual told him that [Inmate] Wright gave up certain privileges that he had in a different housing unit to go to Plaintiff's housing unit to attack Plaintiff." (Dkt. No. 210, at 12). As Plaintiff acknowledges (Dkt. No. 214, at 9), a hearsay exception would be necessary both for Wright's initial declaration and then for the declaration made to Plaintiff. *See* Fed R. Evid 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

Plaintiff argues that because Fletcher and Inmate Wright "had an employer-employee relationship," Wright acted as an agent of Fletcher, and therefore Wright's statements to other inmates could be admitted as party opponent statements under Rule 801(d)(2)(D). (Dkt. No. 214, at 9); *see* Fed. R. Evid. 801(d)(2)(D) (a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"). However, a "sufficient foundation" must exist before such a statement may be considered—a party must show "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Leser v. U.S. Bank Nat'l Ass'n*, No. 9-cv-2362, 2012 WL 6738402, at *4, 2012 U.S. Dist. LEXIS 182975, *9–10 (E.D.N.Y. Dec. 29, 2012) (citing *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992). The record does not reflect any such foundation..

And, in any event, the statements by another inmate to Plaintiff about what Wright said would not fall within a hearsay exception. Plaintiff argues that the statement shows Wright's

12

intent, and thus is admissible under Rule 803(3). (Dkt. No. 214, at 10). However, Rule 803(3) only provides an exception to the hearsay rule when the statement is "of the *declarant's* then-existing state of mind," and consequently would not apply to a declarant's statement about another's state of mind, as is the testimony proffered here. *See* Fed R. Evid. 803(3) (emphasis added).

        e.      **Calls for Medical Assistance**

Defendants argue that Plaintiff should be precluded from testifying that on January 10, 2019, other inmates called for medical attention on behalf of Plaintiff. (Dkt. 210, at 12). Plaintiff responds that that these statements are admissible as exceptions to the hearsay rule under Rule 803(1), as present sense impressions, or Rule 803(2), as excited utterances, (*see* Dkt. No. 214, at 10). "[I]t is a condition precedent to the admissibility of a statement under either exception that the declarant has personally observed the events described." *United States v. Lloyd*, 859 F. Supp. 2d 387, 395 (E.D.N.Y. 2012). Here, Plaintiff asserts that "the declarations by the other inmates were made while or immediately after the [January 10] assault on the Plaintiff." (Dkt. No. 214, at 10), but the record does not reflect exactly what statements Plaintiff seeks to admit or what declarants personally observed. The Court will consider at trial whether there is an adequate foundation for the admission of any such statements. *See Karam v. Cnty. of Rensselaer*, No. 13-cv-01018, 2016 WL 3029951, at *1, 2016 U.S. Dist. LEXIS 68460, at *2 (N.D.N.Y. May 25, 2016) ("Courts considering a motion in limine may reserve decision until trial so that the motion is placed in the appropriate factual context." (citing *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)).

        **2.**      **Medical Records**

Defendants do not object to the admission of the medical records of Plaintiff's treatment at Alice Hyde Medical Center on March 15, 2019, *see* Fed. R. Evid. 803(4), but, in the event the

13

diagnosing physician does not testify, seek to redact the "impression" and "diagnosis" of "adult sexual abuse, suspected" from the records. (Dkt. No. 210, at 13–14). Defendants argue that these portions should be excluded under Rule 403 because, given Plaintiff's ability to otherwise testify and present evidence on sexual assault, these portions are of low probative value, while the danger of unfair prejudice and misleading the jury is high. (*Id.* at 13–14). Plaintiff objects to Defendant's sought exclusion, arguing that the balance weighs in favor of admitting the medical records without requiring the diagnosing physician to testify, considering the records' use of non-specialized terms and strong credibility. (Dkt. No. 214, at 11–12).

Here, as Defendants explain, the medical records do not reveal whether the "diagnosis" and "impression" of "suspected" sexual abuse– is based on Plaintiff's reports alone, or whether a medical provider has independently made an evaluation that sexual abuse or assault likely occurred. (Dkt. No. 210, at 13–14). The language is ambiguous, and absent some explanatory testimony from the medical professionals, the introduction of this evidence presents a danger of confusing the jury and unfairly prejudicing the Defendants. Given this ambiguity, the probative value is limited. And, as Defendants noted, the medical records are otherwise admissible: the medical findings that Plaintiff can use to support his allegations will be before the jury.

As a result, if Plaintiff is not able to secure the relevant medical providers for trial, the Court finds that the dangers of unfair prejudice and confusing the jury are substantially outweighed by the limited probative value of the ambiguous notations of an impression and diagnosis of suspected sexual abuse. Defense counsel is directed to have a version of the medical

records for trial, containing these redactions, to be used in the event the medical professionals are not called as witnesses.

### 3. Specific Amounts in Damages

Defendants seek to preclude Plaintiff from suggesting a sum as compensation for non-economic damages during closing statements. (Dkt. No. 210, at 16–17). At the pre-trial conference, Plaintiff stated that he seeks to argue that the jury should award him $25,000 in compensatory damages for each of the three incidents. He did not have an explanation for how he arrived at this figure.

In the Second Circuit, the decision of whether to permit an attorney to argue for specific amounts in damages "is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). However, "specifying target amounts for the jury to award is disfavored." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglass Corp.*, 518 U.S. 1031 (1996). Target amounts "anchor the jurors' expectations of a fair award at the place set by counsel, rather than by the evidence." *Ferreira v. City of Binghamton*, No. 13-cv-107, 2016 WL 4991600, at *5, 2016 U.S. Dist. LEXIS 126011, at *14 (N.D.N.Y. Sept. 16, 2016) (quoting *Consorti*, 72 F.3d at 1016). Additionally, courts within the Second Circuit often preclude plaintiffs from naming particular sums when the damages are non-economic. *Ross v. Guy*, 2022 WL 768196, at *7, 2022 U.S. Dist. LEXIS 44714, at * 19 (E.D.N.Y. Mar. 14, 2022).

Plaintiff's request to ask the jury to award $25,000 for each incident is therefore denied.[4]

---

[4] Plaintiff should be aware that the Prison Litigation Reform Act contains a limitation on recovery that "is generally interpreted to preclude a prisoner complaining of mental and emotional injury during imprisonment, without a

####    4.      Defendants' Remaining Arguments

In their motion in limine, Defendants seek to preclude Plaintiffs from introducing evidence or argument that Defendants or DOCCS are involved in a conspiracy, (Dkt. No. 210, at 8–11). Plaintiff has not opposed Defendants' motion in this regard. Accordingly, Defendants' motion on this issue is granted.

Defendants also argue that their disciplinary histories, personnel files, and other lawsuits should be excluded under Rule 404. (Dkt. No. 210, at 14–15). Plaintiff had previously acknowledged he did not have such evidence (*see* Dkt. No. 214, at 12), but at the pre-trial conference, Plaintiff for the first time suggested that there is a lawsuit concerning Defendant Fletcher that he seeks to admit. Plaintiff has not provided any evidence or argument to show how such evidence would be relevant and admissible and the Court does not consider it further at this time.[5]

Finally, Defendants ask the Court to preclude Plaintiff from introducing evidence on the potential indemnification of any Defendant. (Dkt. No. 210, at 15–16). Plaintiff at the pre-trial conference stated he did not plan to present such evidence. Accordingly, Defendants' motion on this evidence is denied as moot.

### III.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion in limine, (Dkt. No. 201), and Defendants' motion in

---

showing of physical injury, from receiving an award of compensatory damages." *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022); *see also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.")

[5] Plaintiff may not raise this issue in the presence of the jury.

limine, (Dkt. No. 210), are **GRANTED in part** and **DENIED in part** as set forth above.

**IT IS SO ORDERED.**

Dated: January 12, 2024
      Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge